**CASE NO. 25-2050**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| **SHANON S. RILEY,** | ) |
| | ) |
| **Plaintiff-Appellee,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **HEATHER JORDAN, in her** | ) |
| **individual and official capacities** | ) |
| **as the Director of the New Mexico** | ) |
| **Workers' Compensation** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant-Appellant.** | ) |

_____

On Appeal from the United States District Court
for the District of New Mexico
The Honorable Kea W. Riggs
D. Ct. No. 1:25-cv-00044-KWR-KK

_____

**RESPONSE IN OPPOSITION TO DEFENDANT/APPELLANT'S
MOTION FOR STAY PENDING APPEAL**

_____

Plaintiff-Appellee, Shanon S. Riley, through her counsel of record, Kennedy,

Hernandez & Harrison, P.C., hereby respectfully submits this response in opposition

to Defendant-Appellant's Motion for Stay Pending Appeal ("Motion"). *See* 10th Cir.

R. 8.1; Fed. R. App. P. 8 & 27(a)(3)(A). Shirking this Court's procedural rules,

Defendant urges the Court to issue a stay of the district court's well-reasoned order granting Plaintiff's Motion for Preliminary Injunction. As argued below, this Court should deny Defendant's motion because it fails to comply with the requirements of Fed. R. App. P. 8(a)(2)(A), and more generally, it fails to meet the necessary requirements for the issuance of a stay.

## FACTUAL BACKGROUND

On August 20, 2011, Plaintiff was appointed to an initial one-year term as a Workers' Compensation Judge (WCJ) for the New Mexico Workers' Compensation Administration (WCA). Motion for Preliminary Injunction (Doc. 2), filed Jan. 14, 2025, at 1. After her first year, and following review by the Director of the WCA, Plaintiff was appointed to subsequent five-year terms as established by N.M. Stat. Ann. § 52-5-2(B). *Id.* Plaintiff was reappointed to a five-year term in August of 2012, August of 2017, and again in August of 2022. *Id.*; (Doc. 8-1), filed Feb. 6, 2025, at 3.

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. (Doc. 2), at 2. Later that day, she was driven home by a colleague to obtain her vehicle. *Id.* Plaintiff drove to a polling location and found that there was a line. *Id.* Because Plaintiff was feeling ill, she decided to forgo voting and returned home. *Id.* Due to a variety of circumstances, Plaintiff simply forgot to edit her timesheet. *Id.* At the time,

Plaintiff had accrued over 200 hours of annual leave and over 240 hours of sick leave that she could have used to substitute the two hours of administrative voting leave. Joint Status Rep. & Provisional Discovery Plan (Doc. 19), filed Apr. 14, 2025, at 3, ¶ 4.

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. (Doc. 2), at 2. The very next day, November 13, 2024, the Defendant and another WCA employee walked into Plaintiff's office and asked whether she voted on Election Day. *Id.* Plaintiff responded that she had left work and attempted to vote but ultimately did not do so. *Id.* Defendant then handed Plaintiff a letter—signed by the Defendant—immediately terminating Plaintiff's employment. *Id.*; (Doc. 19), at 3, ¶ 5; (Doc. 35-1), filed June 2, 2025. The letter alleged that Plaintiff violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. (Doc. 35-1). According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

Plaintiff asked Defendant if there was anyone she could speak to regarding her termination. (Doc. 2), at 2–3. Defendant explained that Plaintiff could try to contact someone, but the decision regarding Plaintiff's termination had already been made. *Id.* at 3. On November 13 and 14, 2024, Plaintiff called the Office of the

3

Governor of the State of New Mexico to request an opportunity to speak with someone and explain the events surrounding her timesheet error. *Id.* On both occasions, Plaintiff's request was denied. *Id.*

## PROCEDURAL HISTORY

On January 14, 2025, Plaintiff filed the underlying lawsuit alleging procedural and substantive due process violations under 42 U.S.C. § 1983. *See generally* Complaint (Doc. 1). Plaintiff also filed a Motion for Preliminary Injunction seeking reinstatement to her position as a WCJ pending resolution of the case on the merits. (Doc. 2), at 1. On February 6, 2025, the WCA filed a complaint with the State Personnel Board (the "Board") alleging that Plaintiff's trivial timesheet error amounted to a violation of the Code of Judicial Conduct. *See* (Doc. 8-1), at 1–2. Shortly after the WCA filed the complaint, Defendant sent Plaintiff a letter of reinstatement. (Doc. 8-2), filed Feb. 6, 2025. According to the letter, Plaintiff would be reinstated and immediately placed on paid administrative leave while the Complaint to the Board was pending. *Id.* On February 14, 2025, Plaintiff rejected the letter of reinstatement because it required Plaintiff to give up her property interest in continued employment and violated her First Amendment rights to freedom of speech and association. *See* (Doc. 10-1) & (Doc. 10-2), filed Feb. 18, 2025. The letter also failed to preserve the status quo by fully reinstating Plaintiff. (Doc. 10-2).

After rejecting the WCA's letter of reinstatement, Plaintiff filed a motion to dismiss the pending complaint with the Board on February 17, 2025. (Doc. 14-1), filed Mar. 4, 2025, at 1. On March 4, 2025, the Board found Plaintiff's motion well taken and dismissed the complaint. *Id.* at 2.

On February 28, 2025, Plaintiff received a new letter of reinstatement from Defendant. (Doc. 15), filed Mar. 5, 2025, at 8. Unlike Defendant's previous letter, the new letter no longer contained provisions requiring Plaintiff to become "an at-will exempt employee[,]" and the new letter allowed Plaintiff to speak with NMWCA staff on matters unrelated to her employment. *Id.* Plaintiff considered these changes and rejected the letter of reinstatement. (Doc. 18-1), filed Apr. 8, 2025. On March 7, 2025, Plaintiff's counsel delivered the signed rejection to defense counsel via email, explaining that Defendant's terms of reinstatement continued to violate Plaintiff's freedoms of speech and association and failed to preserve the status quo by fully reinstating Plaintiff to her position as a WCJ. (Doc. 18-2), filed Apr. 8, 2025. Plaintiff's counsel expressed that Plaintiff would continue to pursue preliminary injunctive relief to preserve the status quo and that Plaintiff was entitled to back pay for the time Plaintiff was wrongfully unemployed. *Id.*

On May 9, 2025, the district court issued its Amended Memorandum Opinion and Order Granting Plaintiff's Motion for Preliminary Injunction (Doc. 26) ("Preliminary Injunction Order"). The court found that Plaintiff was substantially

likely to succeed on her procedural due process claim, but that Plaintiff had not demonstrated a likelihood of success on her substantive due process claim. *Id.* at 6–12. Based on the procedural due process violation, the district court also found that Plaintiff had demonstrated irreparable harm, that this harm would outweigh any harm to Defendant, and that the injunction was not adverse to the public interest. *Id.* at 12–14.

On May 19, 2025, Defendant filed a Motion for Stay with the district court, arguing that the court should stay the injunction pending Defendant's appeal to the Tenth Circuit. That same day, Defendant filed a Notice of Appeal (Doc. 31).

## **LEGAL STANDARD**

Fed. R. App. P. 8(a)(2)(A) permits a party to obtain a stay of the judgment of a district court pending appeal. As an initial matter, the party seeking relief must either "show that moving first in the district court would be impracticable" or having already made a motion in the district court, state that "the district court denied the motion or failed to afford the relief requested[.]" *Id.*

Assuming the party has met the requirements of Fed. R. App. P. 8(a)(2)(A), the motion for stay must address the following requirements: (A) the basis for the district court's subject matter jurisdiction and the basis for this Court's jurisdiction; "(B) the likelihood of success on appeal; (C) the threat of irreparable harm if the stay or injunction is not granted; (D) the absence of harm to opposing parties if the stay

or injunction is granted; and (E) any risk of harm to the public interest." 10th Cir. R. 8.1.

## ARGUMENT

### I. Defendant failed to fulfill the requirements of Fed. R. App. P. 8(a)(2)(A).

As stated above, Fed. R. App. P. 8(a)(2)(A) requires that the movant show relief in the district court is either impracticable or that the district court has already denied a motion to stay. Ms. Jordan has done neither. On May 16, 2025, she filed a Motion for Stay Pending Appeal in the district court. *See* (Doc. 29). However, the district court has yet to rule on that motion. Ms. Jordan obviously cannot argue that "moving first in the district court would be impracticable," as she has already done so, nor can she show that the district court denied the motion. On this basis alone, the Court should deny her motion. *See Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996) ("Only upon completion of the district court's factfinding role, should this court consider any relief pending appeal.").

### II. Defendant cannot meet the requirements of 10th Cir. R. 8.1.

#### A. Plaintiff does not contest jurisdiction.

In her Motion, Defendant asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) and that "Plaintiff alleged that the district court had

jurisdiction under 28 U.S.C. § 1331." Motion, at 9. These statements of jurisdiction are correct.

**B. Defendant cannot demonstrate a likelihood of success on appeal.**

First, Defendant must make a "strong showing" of success on the merits; a mere possibility of relief is insufficient. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Notably, the Tenth Circuit reviews the grant of a preliminary injunction using the abuse-of-discretion standard. *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1252 (10th Cir. 2006). Under this standard, the reviewing court gives "considerable deference" to the district court in recognition that "in many cases there will be a range of possible outcomes the facts and law at issue can fairly support." *Vincent v. Nelson*, 51 F.4th 1200, 1213 (10th Cir. 2022) (citation omitted). The reviewing court "will defer to the district court's judgment so long as it falls within the realm of the[] rationally available choices." *Id.* (citation omitted). Given the low bar here, Defendant has virtually no chance of success on appeal.

In obtaining a preliminary injunction, Plaintiff had to demonstrate that "(1) [she was] substantially likely to succeed on the merits; (2) [she would] suffer irreparable injury if the injunction is denied; (3) [her] threatened injury outweigh[ed] the injury the opposing party [would] suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v.*

*Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).[1] The district court did not abuse its discretion in finding that Plaintiff met all four requirements. Instead, it applied established law to find a clear deprivation of Plaintiff's constitutional right to procedural due process.

### 1. First Preliminary Injunction Factor

Prior to the expiration of her term, the WCA could only fire Plaintiff for violations of the New Mexico Code of Judicial Conduct. *See* N.M. Stat. Ann. § 52-5-2(C). As the district court recognized, that statutory guarantee conferred upon Plaintiff "a constitutionally protected property interest in her ongoing employment[.]" Preliminary Injunction Order, at 7. The district court's conclusion finds overwhelming support in both Supreme Court and Tenth Circuit precedent. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985) (finding protected property interest where Ohio law permitted dismissal of state employees only when they committed "misfeasance, malfeasance, or nonfeasance in office");

---

[1] Plaintiff initially (and erroneously) argued that the requested injunction was a disfavored, mandatory preliminary injunction. However, as the district court observed in its Preliminary Injunction Order, at 5 n.1, recent caselaw from this Court suggests otherwise. *See Pryor v. School Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024). Because the requested injunction preserved the status quo, it is not mandatory, and the Court should not use a heightened standard of review. Although Plaintiff caused this error, "a reviewing court must apply the correct law." *See Lazy S Ranch Properties, LLC v. Valero Terminaling & Distribution Co.,* 92 F.4th 1189, 1203 (10th Cir. 2024).

*Perry v. Sindermann*, 408 U.S. 593, 600 (1972) (finding professor had a protected property interest in continued employment where faculty handbook provided de facto tenure so long as professor's "teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers"); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest.").

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). As the district court recognized, despite holding a protected property interest in her continued employment, "Plaintiff received no notice or opportunity to be heard[.]" Preliminary Injunction Order, at 9. Therefore, the district court rationally concluded that "Plaintiff has demonstrated [a] substantial likelihood of success on her procedural due process claim." *Id.* at 10.

On this point, Defendant's Motion merely parrots the arguments it made before the district court in the first instance. Defendant argues that she "offered Plaintiff all the due process to which she was entitled, and her refusal to accept it negates her standing and entitlement to a preliminary injunction." Motion, at 16.

Defendant's argument rests primarily on an out-of-circuit decision, *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994). In *Pate*, the Eleventh Circuit reasoned that "the state may cure a procedural deprivation by providing a later procedural remedy[.]" *Id.* Defendant contorts that decision to stand for a clearly false proposition: that a government actor may deprive a person's constitutionally protected property interest without notice and an opportunity to be heard and remedy the violation ex post facto. That is incorrect.

In a subsequent decision, the Eleventh Circuit clarified and squarely rejected Defendant's interpretation of *McKinney*: "Properly understood, *McKinney*'s holding that a state 'may cure a procedural deprivation by providing a later procedural remedy' is true only where post-deprivation procedures satisfy due process." *Galbreath v. Hale Cty., Ala. Comm'n*, 754 F. App'x 820, 828 (11th Cir. 2018). "But where a due process violation is already complete because no hearing was held as required by *Loudermill*, *McKinney* has no application." *Id.* The district court correctly recognized this subsequent holding, stating that "[w]here there were no pretermination proceedings whatsoever," post-termination proceedings cannot remedy the constitutional violation. Preliminary Injunction Order, at 9–10. Defendant's failure to provide Plaintiff with any form of process whatsoever was sufficient to constitute a procedural due process violation.

Defendant argues that Plaintiff never provided any authority to support her argument that the WCA's multiple letters of reinstatement were inadequate. Motion, at 19. That is also incorrect. Plaintiff repeatedly argued that her placement on administrative leave did not preserve the status quo. The district court recognized this principle: "[T]he very purpose of a preliminary injunction" is to preserve the status quo, i.e. "the last uncontested period preceding the injunction." Preliminary Injunction Order, at 5 & n.1 (quoting *Porter v. Allbaugh*, No. 18-CV-0472, 2019 WL 2167415, at *6 (N.D. Okla. May 17, 2019); *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024)). Here, the last uncontested period—the status quo— was when Plaintiff presided over an active caseload as a duly enacted WCJ. The preliminary injunction standard, not the due process clause, required that Plaintiff be returned to that position.[2]

---

[2] Defendant argues that Plaintiff never explained why the letters of reinstatement "violated her first amendment rights by not allowing her to speak freely to everyone at the WCA." Motion, at 18–19. Plaintiff continues to believe that the WCA's reinstatement letters violated her First Amendment freedoms of speech and association. While that claim was undoubtedly one of the reasons for Plaintiff's rejection of the letters, it is irrelevant here. Plaintiff rejected the reinstatement letters because they altered the status quo. As the district court recognized, "Plaintiff was not on administrative leave or barred from speaking with her colleagues before Defendant fired her." Preliminary Injunction Order, at 5. Neither party contests this fact. Thus, contrary to Defendant's assertion, it was *not* "incumbent on her to provide the court with authority to the contrary[.]" *See* Motion, at 19.

Finally, Defendant cites several cases for the proposition that Plaintiff's rejection of the reinstatement letters "broke any causal connection between Defendant's actions and her purported injury and she, therefore, no longer had standing to seek preliminary injunctive relief against Defendant." Motion, at 20. Neither case stands for Defendant's proposition. In *Pennsylvania v. New Jersey*, the Supreme Court held that "[n]o State can be heard to complain about damage inflicted by its own hand." 426 U.S. 660, 664 (1976). That was a general statement of law where the Court found that the defendant had not "inflicted *any* injury upon the plaintiff[.]" *Id.* Here, however, Defendant clearly injured Plaintiff when she deprived her of adequate process. And in *Dusanek v. Hannon*—unlike this case—there was "no question that the [government entity] and its employees complied with the [entity]'s rules and the state statutes in their procedural treatment of [the plaintiff]." 677 F.2d 538, 542 (7th Cir. 1982). Prior to his termination, the plaintiff in *Dusanek* received multiple medical examinations before his supervisors determined he did not meet the medical standard for teaching. *Id.* at 540–41. Thus, the process afforded in *Dusanek* was far more comprehensive than the process Plaintiff received here.

## 2. Remaining Preliminary Injunction Factors

The district court did not abuse its discretion in analyzing the remaining preliminary injunction factors. As for irreparable injury, the district court recognized the holding in *Free the Nipple-Fort Collins v. City of Fort Collins*, that

demonstrating a substantial "likelihood of success on the merits simultaneously demonstrates irreparable injury." Preliminary Injunction Order, at 12 (citing *Free the Nipple*, 916 F.3d 792, 805–06 (10th Cir. 2019)). As the district court had already found that Plaintiff demonstrated a substantial likelihood of success, it merely applied binding precedent to arrive at the logical conclusion that Plaintiff had simultaneously demonstrated irreparable harm. *Id.* But the district court didn't stop there. It also recognized (correctly) that Plaintiff would face reputational harm from her unlawful termination, which the Defendant did not dispute. *Id.* at 12–13.

Next, the district court addressed the balance of injuries and the public interest, two factors which merge when the government is the opposing party. *Id.* at 13–14 (quoting *Chiles v. Salazar*, 116 F.4th 1178, 1199 (10th Cir. 2024)). Based, in part, on the complete absence of evidence in the record that Defendant or the public interest would be harmed by an injunction, the district court correctly concluded that "the collapsed third and fourth factors counsel towards the preliminary injunction." *Id.* at 14. Even though Defendant must necessarily demonstrate a strong likelihood of success on her appeal for this Court to grant her motion, Defendant fails to explain why she utterly failed to address the balance of the injuries and the public interest in her Response in Opposition to Plaintiff's Motion for Preliminary Injunction. The district court was thus deprived of any briefing on that point from Defendant. Defendant cannot raise those arguments here.

### C. Ms. Jordan cannot demonstrate irreparable harm absent a stay.

Next, Defendant must show that she will be irreparably injured in the absence of a stay. *Nken*, 556 U.S. at 425–26. Defendant attempts to dramatize the harm she faces if this Court preserves its injunction. According to Defendant, the injunction "*could* delay case resolutions, invite challenges to [Plaintiff's] rulings, and increase the risk of reversible error[.]" Motion, at 21. But Defendant's parade of horribles is speculative at best. "[S]imply showing some 'possibility of irreparable injury[]' . . . fails to satisfy the second factor." *Nken*, 556 U.S. at 434–35. "Irreparable harm justifying a stay of an injunction must be 'actual and imminent' as opposed to 'speculative' harm, . . . ." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585, 2015 WL 5051769, at *2 (S.D.N.Y. Aug. 26, 2015); *see also Bench Billboard Co. v. City of Covington, Ky.*, No. 06-75, 2012 WL 12974009, at *2 (E.D. Ky. Aug. 30, 2012) (finding no likelihood of irreparable harm for stay pending appeal where harm alleged was speculative and unsubstantiated). Defendant also argues that Plaintiff, if reinstated, will be operating under "a cloud of ethical and legal scrutiny" and that her reinstatement will send "a signal that suspected misconduct does not warrant immediate action." Motion, at 21. Common sense indicates otherwise, especially where Plaintiff had no motive to "steal time" given her ample annual and sick leave. As the district court recognized,

"the decision to fire Plaintiff over two hours of mislabeled time seems overblown[.]" Preliminary Injunction Order, at 11.

In a footnote, Defendant also argues that she can demonstrate irreparable harm based on the district court's failure to require Plaintiff to post a bond pursuant to Fed. R. Civ. P. 65(c). Motion, at 22. Defendant failed to raise this argument at any point prior to the district court's Preliminary Injunction Order. This argument is waived. *See Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1234 (10th Cir. 2018) (quotations and alterations omitted) ("Generally, an issue is waived if it was not raised below in the district court.").

### D. Plaintiff faces significant harm if the injunction is stayed.

In arguing that the issuance of a stay will not cause substantial injury to Plaintiff, Defendant once again argues that "Plaintiff has no due process right to avoid paid administrative [leave] . . . [n]or does she have an unqualified first amendment right to be able to talk to other WCA staff about her employment or the investigation[.]" Motion, at 24. Again, these points are irrelevant. Plaintiff's rejection of paid administrative leave and assertion of a first amendment right concerns the scope of injunctive relief, not a constitutional entitlement. The only constitutional entitlement at issue here is Plaintiff's right to procedural due process, which Plaintiff has yet to receive.

With that in mind, the injury to Plaintiff is substantial. Throughout this litigation, Plaintiff maintained that a preliminary injunction was necessary to prevent irreparable harm to Plaintiff, namely, the violation of Plaintiff's constitutional rights. "Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple*, 916 F.3d at 805–06 (finding that equal protection violation alone constituted irreparable harm); *see also Awad v. Ziriax*, 670 F.3d 1111, 1119 (10th Cir. 2012) (finding First Amendment violation alone constituted irreparable harm); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable harm is necessary.").

If this Court stays the preliminary injunction, it will enable the Defendant's ongoing violation of Plaintiff's constitutional rights. This is sufficient to show substantial injury. But Plaintiff faces more than just constitutional injury—Plaintiff also faces the loss of her reputation, the loss of her livelihood, and the loss of social benefits that accrue from employment. *See Dominion Video Satellite*, 269 F.3d at 1156–57 (finding irreparable harm where denial of injunctive relief would have resulted in the plaintiff's loss of reputation, good will, and marketing potential); Wright et al., § 2948.1 ("Injury to reputation or goodwill is not easily measurable in

monetary terms, and so often is viewed as irreparable."). These losses have only grown more painful with each passing day that Plaintiff has been deprived of her position, and they will continue if this Court stays the preliminary injunction. Although Plaintiff remains confident in her position, the duration of the appeal— including briefing and the possibility of oral argument—will likely take a significant amount of time. The Court should deny Defendant's Motion and maintain the injunction during the pendency of the appeal.

### E. The public interest lies in the vindication of Plaintiff's constitutional rights.

The Tenth Circuit has repeatedly held that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Pryor*, 99 F.4th at 1243; *Free the Nipple*, 916 F.3d at 792; *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1147 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Awad*, 670 F.3d at 1132. Accordingly, in this case, it is in the public interest to deny Defendant's Motion for Stay, which will undeniably delay the continuing violation of Plaintiff's constitutional rights.

Defendant points out that Plaintiff's "entire caseload has already been reassigned to other WCA judges" and that reinstating Plaintiff "only for her to potentially be placed back on paid administrative leave and ultimately terminated" would create confusion and disruption. Motion, at 23. These arguments, however, were never raised in Defendant's Response in Opposition to Plaintiff's Motion for

Preliminary Injunction, (Doc. 8), filed Feb. 6, 2025, or at any other point before the Court issued its Preliminary Injunction Order. "A motion for stay pending appeal is not a second bite at the preliminary injunction apple." *Autobar Sys. of N.J. v. Berg Liquor Sys., LLC*, No. 23-3790, 2024 WL 919183, at *3 (D.N.J. Mar. 4, 2024). The WCA and Defendant were aware that Plaintiff's cases were reassigned, and they were aware of the possibility that the requested relief in the injunction could result in multiple reassignments of Plaintiff's prior cases. Yet Defendant excluded these statements from its Response to Plaintiff's Motion for Preliminary Injunction and failed to raise them at any point thereafter.

The district court's Preliminary Injunction Order recognized Defendant's lack of supporting evidence in prior briefing. In analyzing the final two preliminary injunction factors, the district court reasoned that "Defendant makes no effort to demonstrate harm" and, regarding the public interest, "Defendant does not contest this factor at all[.]" Preliminary Injunction Order, at 13–14. As argued above, Defendant's failure to raise such arguments and evidence at first blush dooms her ability to raise them now. *See Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1234 (10th Cir. 2018) (quotations and alterations omitted) ("Generally, an issue is waived if it was not raised below in the district court.").

In any event, logistical challenges are a foreseeable consequence of any unlawful termination. What's more, allowing the government to claim that it is

irreparably injured by logistical challenges when it *created* those challenges would incentivize the government to terminate employees without due process and evade accountability by simply declaring that reinstatement would cause irreparable injury.

## **CONCLUSION**

For the reasons stated herein, Plaintiff-Appellee respectfully requests that this Court deny Defendant-Appellant's Motion for Stay Pending Appeal.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Paul J. Kennedy
Jeffrey D. Vescovi
201 12th Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662
pkennedy@kennedyhernandez.com
jvescovi@kennedyhernandez.com

*Attorneys for Plaintiff-Appellee Shanon S. Riley*

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the word limit on reply briefs in Fed. R. App. P. 27(d)(2)(A) because it contains less than 5,200 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

*/s/Jeffrey D. Vescovi*
Jeffrey D. Vescovi
KENNEDY, HERNANDEZ & HARRISON, P.C.
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662
jvescovi@kennedyhernandez.com
*Attorney for Plaintiff-Appellee Shanon S. Riley*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2024, I electronically filed the foregoing using the Court's CM/ECF filing system, which caused a copy to be served on all parties through their counsel of record.

*/s/ Jeffrey D. Vescovi*
Jeffrey D. Vescovi