# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**SHANON S. RILEY,**

    **Plaintiff/Appellee,**

**v.**

**HEATHER JORDAN, in her individual and official capacities as the Director of the New Mexico Workers' Compensation Administration,**

    **Defendant/Appellant.**

**Case No. 25-2050**

---

Appeal from the Honorable Kea W. Riggs of the
United States District Court for the District of New Mexico
No. 1:25-cv-00044-KWR-KK

---

## DEFENDANT/APPELLANT'S
## OPENING BRIEF

---

-ORAL ARGUMENT NOT REQUESTED-

Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
*Attorneys for Defendant/Appellant*

-September 29, 2025-

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................iii-vi

STATEMENT OF PRIOR OR RELATED APPEALS ...........................................vi

INTRODUCTION ....................................................................................1

JURISDICTION......................................................................................3

STATEMENT OF THE ISSUES....................................................................3

STATEMENT OF THE CASE .......................................................................3

SUMMARY OF THE ARGUMENT ...............................................................9

ARGUMENT .........................................................................................10

    I.      Standard of review for disfavored preliminary injunctions ...............10

    II.     Plaintiff failed to make a strong showing that she is likely to succeed on her claim for injunctive relief.........................................................12

          A.     Plaintiff failed to make a strong showing that Defendant violated her due process rights ...............................................................13

          B.     Plaintiff's claims for injunctive relief were (and are) moot and barred by sovereign immunity.....................................................17

          C.     Plaintiff's rejection of the offer of reinstatement defeated her standing to seek an injunction because she failed to make a strong showing that she was entitled to any additional relief ...............20

    III.    Plaintiff failed to demonstrate any irreparable harm in the absence of a disfavored preliminary injunction .......................................................24

CONCLUSION.......................................................................................26

CERTIFICATE OF COMPLIANCE................................................................27

CERTIFICATE REGARDING DIGITAL SUBMISSION AND PRIVACY
REDACTIONS .......................................................................................27

CERTIFICATE OF SERVICE ...............................................................27

ATTACHMENT 1: District Ct.'s Order Granting Pl.'s Req. for Prelim. Inj. entered
on May 8, 2025 ....................................................................................28

ATTACHMENT 2: District Ct.'s Order Denying Def.'s Mtn. for Stay Pending
Appeal entered on June 16, 2025 ...........................................................43

# TABLE OF AUTHORITIES

## CASE LAW

**U.S. Supreme Court Cases**

*Carey v. Piphus*,
      435 U.S. 247 (1978)..............................................................21

*Cleveland Bd. of Educ. V. Loudermill*,
      470 U.S. 532 (1985)........................................... 8, 13-17, 19, 21

*Ex parte Young*,
      209 U.S. 123 (1908)..............................................................17

*Nken v. Holder*,
      556 U.S. 418 (2009)................................................................9

*Sampson v. Murray*,
      415 U.S. 61 (1974)................................................................25

*Younger v. Harris*,
      401 U.S. 37 (1971)............................................................. 5-6

*Zinermon v. Burch*,
      494 U.S. 113 (1990)..............................................................19

**U.S. Courts of Appeals Cases**

*Atencio v. Bd. of Educ. of Penasco Indep. Sch. Dist. No. 4*,
      658 F.2d 774 (10th Cir. 1981) ...........................................14

*Brady v. Gebbie*,
      859 F.2d 1543 (9th Cir. 1988) ...........................................21

*Citizen Band Potawatomi Indian Tribe of Oklahoma v. Oklahoma Tax Comm'n*,
969 F.2d 943 (10th Cir. 1992) ...........................................................................23

*Colorado v. U.S. Envtl. Prot. Agency*,
989 F.3d 874 (10th Cir. 2021) ..................................................................... 23-24

*Dargis v. Sheahan*,
526 F.3d 981 (7th Cir. 2008) ...........................................................................21

*Diné Citizens Against Ruining Our Env't v. Jewell*,
839 F.3d 1276 (10th Cir. 2016) .............................................. 2, 10, 13, 22-23

*Dusanek v. Hannon*,
677 F.2d 538, 543 (7th Cir. 1982) ..................................................................24

*Facio v. Jones*,
929 F.2d 541 (10th Cir. 1991)..........................................................................17

*Farhat v. Jopke*,
370 F.3d 580 (6th Cir. 2004) ...........................................................................22

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) .........................................................................12

*Free Speech Coal., Inc. v. Anderson*,
119 F.4th 732 (10th Cir. 2024).........................................................................17

*Free the Nipple-Fort Collins v. City of Fort Collins*,
916 F.3d 792 (10th Cir. 2019) .........................................................................10

*Heideman v. S. Salt Lake City*,
348 F.3d 1182 (10th Cir. 2003) .......................................................................24

*Hetreed v. Allstate Ins. Co.*,
135 F.3d 1155 (7th Cir. 1998) ..................................................................... 25-26

*Hicks v. City of Watonga, Okl.*,
942 F.2d 737 (10th Cir. 1991)...................................................................... 21-22

iv

*Hunter v. Hirsig*,
    614 Fed. Appx. 960 (10th Cir. 2015) ............................................................25

*Kikumura v. Hurley*,
    242 F.3d 950 (10th Cir. 2001) ....................................................................11

*McKinney v. Pate*,
    120 F.3d 1550 (11th Cir. 1994) .............................................................. 18-19

*NiGen Biotech, L.L.C. v. Paxton*,
    804 F.3d 389 (5th Cir. 2015) ......................................................................17

*O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*,
    389 F.3d 973 (10th Cir. 2004) ....................................................................11

*O'Connor v. Pierson*,
    426 F.3d 187, 199 (2d Cir. 2005).................................................................22

*Planned Parenthood of Kan. v. Andersen*,
    882 F.3d 1205 (10th Cir. 2018) ...................................................................12

*Powell v. Mikulecky*,
    891 F.2d 1454 (10th Cir. 1989) ...............................................8, 13, 15-17, 19

*Primas v. City of Okla. City*,
    958 F.2d 1506 (10th Cir. 1992) ...................................................................23

*Prison Legal News v. Fed. Bureau of Prisons*,
    944 F.3d 868 (10th Cir. 2019)......................................................................20

*Riggins v. Goodman*,
    572 F.3d 1101 (10th Cir. 2009) ...................................................................16

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
    601 F.3d 1096 (10th Cir. 2010).....................................................................20

*Roberts v. Springfield Util. Bd.*,
    68 F.4th 470, 475 (9th Cir. 2023)................................................................22

*Roberts v. Winder*,

     16 F.4th 1367 (10th Cir. 2021)......................................................13

*Rocky Mountain Gun Owners v. Polis*,
     121 F.4th 96 (10th Cir. 2024).......................................................25

*Roe v. Cheyenne Mountain Conference Resort, Inc.*,
     124 F.3d 1221 (10th Cir. 1997)............................................... 18-19

*Schrier v. Univ. Of Co.*,
     427 F.3d 1253 (10th Cir. 2005) ............................... 2, 11, 13, 24, 26

*Specht v. City of New York*,
     15 F.4th 594, 601 (2d Cir. 2021) .................................................22

*Veal v. Jones*,
     349 Fed. Appx. 270 (10th Cir. 2009)...........................................20

*Wessel v. City of Albuquerque*,
     299 F.3d 1186 (10th Cir. 2002).....................................................20

*West v. Grand Cnty.*,
     967 F.2d 362 (10th Cir. 1992) ......................................... 8, 13, 19

*Winters v. Bd. of Cnty. Com'rs*,
     4 F.3d 848 (10th Cir. 1993) .........................................................19

## STATUTES, LAWS, & REGULATIONS

28 U.S.C. § 1292................................................................................3

28 U.S.C. § 1331................................................................................3

NMSA 1978, § 52-5-2 (2004)....................................................... 1, 4, 6

1.7.12.25 NMAC.......................................................... 4, 7, 16, 18

## RULES

10th Cir. R. 28.2..............................................................................v

## SECONDARY SOURCES

11A Wright & Miller, Federal Practice & Procedure Civ. (2d ed.) ........................25

## STATEMENT OF PRIOR OR RELATED APPEALS

Pursuant to Tenth Circuit Rule 28.2(C)(3), Defendant/Appellant states that there are no prior or related appeals.

# INTRODUCTION

Shortly after learning that Plaintiff, a workers' compensation judge, may have taken voting leave without actually voting in violation of state policies, Defendant, the Director of the New Mexico Workers' Compensation Administration ("WCA"), met with Plaintiff and asked her if this was true. When Plaintiff admitted this was true, Defendant handed her a letter terminating her for violating the New Mexico Code of Judicial Conduct, in compliance with NMSA 1978, Section 52-5-2(C) (2004). Plaintiff subsequently came to federal court claiming that Defendant violated her procedural due process rights by not first allowing her to go through a hearing process with the State Personnel Board designed to adjudicate "complaints" from members of the public. And she demanded a disfavored preliminary injunction requiring Defendant to reinstate her as an active judge.

Despite disagreeing with the merits of Plaintiff's due process claim and Plaintiff's reading of state law, Defendant agreed to give Plaintiff exactly what she wanted: Defendant offered to reinstate Plaintiff, initiate the State Personnel Board proceedings, and place Plaintiff on paid administrative leave in the interim with minimal restrictions on contacting co-workers about her employment or the proceedings. But Plaintiff rejected the reinstatement and dismissed the very proceedings she demanded on the erroneous basis that she was entitled to actively serve as a judge and have unlimited access to coworkers. The district court agreed

and issued a disfavored preliminary injunction forcing Defendant to immediately reinstate Plaintiff with an active docket during the pendency of the federal litigation. *See* Attachment 1: District Ct.'s Order Granting Pl.'s Req. for Prelim. Inj. entered on May 8, 2025. While the district court has since corrected its initial error of requiring Plaintiff to serve as an active judge (as opposed to remaining on paid administrative leave), it has refused to stay or lift its injunction in whole. *See* Attachment 2: District Ct.'s Order Denying Def.'s Mtn. for Stay Pending Appeal entered on June 16, 2025.

The preliminary injunction must be reversed since Plaintiff failed to demonstrate a "clear and unequivocal" right to such extraordinary and disfavored relief. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (cleaned up). Plaintiff failed to demonstrate a strong likelihood of success on the merits when it was undisputed that Defendant met with her and provided her with notice and an opportunity to be heard. Regardless, Plaintiff's request for an injunction was (and is) moot since Defendant had offered to reinstate her and provide her with the process she wanted. And Plaintiff's rejection of the offer of reinstatement negated her standing to seek an injunction because she failed to show that she was entitled to the additional relief of being able to actively serve as a judge and talk to coworkers about her employment or the State Personnel Board proceedings. For the same reasons, Plaintiff failed to demonstrate that a preliminary

injunction was needed to prevent "irreparable injury that will surely result without [its] issuance." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005). Accordingly, this Court should reverse the district court's preliminary injunction.

## JURISDICTION

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1292(a)(1) because this is an appeal from the grant of a preliminary injunction. Plaintiff alleged that the district court had jurisdiction under 28 U.S.C. § 1331.

## STATEMENT OF THE ISSUES

Whether the district court improperly granted a disfavored preliminary injunction?

## STATEMENT OF THE CASE

Plaintiff, who was serving as a WCA judge, took two hours of voting leave to vote on November 5, 2024. *See* Appendix ("App.") at 15-16. But Plaintiff never actually voted. *Id.* Instead of correcting her time sheet, she certified that her use of voting leave was "true and accurate." *Id.* On November 13, 2024, Defendant discovered that Plaintiff may have committed time fraud because she took voting leave without voting. *Id.* That same day she and another WCA employee met with Plaintiff and asked her if she voted on Election Day. *Id.* Plaintiff admitted that she did not but asserted that she simply "forgot to edit her timesheet." *Id.* Given Plaintiff's confirmation of Defendant's suspicions and inadequate excuse,

Defendant handed Plaintiff a letter terminating her pursuant to Section 52-5-2 for "violating the code of judicial conduct, which requires [Plaintiff] to promote the integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

On January 14, 2025, Plaintiff filed the instant suit claiming that Defendant violated her procedural and substantive due process rights when she dismissed Plaintiff for violating the New Mexico Code of Judicial Conduct without first going through the State Personnel Board process set out in 1.7.12.25 NMAC, which governs the adjudication of "complaints" submitted against workers' compensation judges. App. at 1-13. Plaintiff requested, *inter alia*, a disfavored preliminary injunction ordering Defendant to "reinstate Plaintiff to her position as a Workers' Compensation Judge." *Id.* at 24.

On February 4, 2025, the WCA submitted a complaint about Plaintiff's purported time fraud and corresponding violation of the code of judicial conduct to the State Personnel Board in order to initiate the hearing process Plaintiff desired. *Id.* at 58-69.[1] The WCA additionally offered Plaintiff a modified form of reinstatement in which she would be placed on paid administrative leave pending the outcome of the State Personnel Board proceedings. *Id.* at 70. The offer

---

[1] In undertaking these actions, Defendant in no way concedes that the initial termination of Plaintiff without first following this specific procedure—which is designed for handling complaints from members of the public—was improper. Rather, this was simply done out of an abundance of caution to address Plaintiff's concerns.

inadvertently contained the standard "governor exempt" boilerplate language typically contained in similar forms that provided: "as an at-will exempt employee, you will serve at the pleasure of the Office of the Governor." *Id.* It also specified that Plaintiff was "not to contact any member of the [WCA] staff . . . while [she is] on paid administrative leave." *Id.*

Defendant responded to the motion on February 6, 2025. While Defendant maintained that her meeting with Plaintiff satisfied pre-deprivation due process, *id.* at 48 n.1, 55, she emphasized that Plaintiff's claims for injunctive relief were moot because she was going to be reinstated with pay and given the process she desired. *Id.* at 48-51. Defendant also argued that the court should abstain pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), given the then-ongoing proceedings in the State Personnel Board. App. at 51-54. In addition, Defendant pointed out that Plaintiff's request for greater relief "goes beyond any procedural protections afforded by New Mexico law . . . or the constitution." *Id.* at 55 n.4. For these same reasons, Defendant filed a partial motion to dismiss without prejudice and stay, asking the court to dismiss Plaintiffs' injunctive claims without prejudice and stay her claims for damages pending the State Personnel Board's resolution of the WCA complaint. *Id.* at 26-33.

On February 14, 2025, Plaintiff rejected Defendant's offer of reinstatement, asserting that it varied from her original employment and that its restrictions on

communication violated her First Amendment right. *Id.* at 80-81. Plaintiff also asked the State Personnel Board to dismiss the WCA complaint since she rejected the offer of reinstatement. *Id.* at 75 n.2.[2] Plaintiff subsequently filed a reply in support of her motion for a preliminary injunction, arguing that *Younger* abstention did not apply and her claims were not moot since she had rejected the offer of reinstatement. App. at 71-81. Plaintiff responded to Defendant's motion to dismiss and stay with the same arguments. *Id.* at 82-90.

On February 26, 2025, the WCA sent Plaintiff an updated offer of reinstatement. *Id.* at 8-12 The updated offer of reinstatement was identical to the first except that the "at-will" language was replaced with language that mirrored Section 52-5-2(C): "As a Workers Compensation Judge . . . you are subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900." App. at 96, 102-03. The updated offer of reinstatement also clarified that Plaintiff was "not to contact any member of the [WCA] staff . . . while you are on paid administrative leave *regarding matters related to your employment or the State Personnel Board investigation.*" *Id.* at 102 (emphasis added).

---

[2] The State Personnel Board granted Plaintiff's motion to dismiss on the basis that she is no longer a WCA judge and therefore the Board lacked jurisdiction on March 4, 2025. *Id.* at 93-94.

Defendant filed her reply in support of her partial motion to dismiss and stay on March 5, 2025. *Id.* at 95-101 Defendant pointed out that Plaintiff had not responded to the WCA's updated offer of reinstatement as of the time of filing. *Id.* at 1. Accordingly, Defendant argued, Plaintiff's refusal to accept reinstatement with paid administrative leave and her dismissal of the State Personnel Board proceedings broke the causal link between Defendant's actions and Plaintiff's purported injury—defeating her Article III standing to seek an injunction. *Id.* at 96-98. Plaintiff subsequently filed a notice confirming that she rejected the updated offer of reinstatement on the grounds that it allegedly "continued to violate Plaintiff's freedoms of speech and association and failed to preserve the status quo by fully reinstating Plaintiff to her position as a WCJ." *Id.* at 108-11. Plaintiff, however, provided no authority in support of her position. *See id.*

On May 9, 2025, the district court granted Plaintiff's request for a preliminary injunction. *Id.* at 149-63. The court found that Plaintiff had a protected interest in continued employment and that she was likely to succeed on her procedural due process claim because she "received no notice or opportunity to respond prior to her termination." *Id.* at 155-57.[3] It also found that Plaintiff was likely to suffer

---

[3] Strangely, the district court did not even mention Defendant's meeting with Plaintiff in its opinion. To support its conclusion, the court simply cited Defendant's stipulation that "[p]rior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any other required procedure under the

irreparable harm because she was likely to succeed on her procedural due process claim and she would allegedly suffer reputational harm. App. at 160-61. Accordingly, the court ordered Defendant to "reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits"—meaning that she could resume hearing cases and speak to coworkers about her employment and the State Personnel Board investigation. *Id.* at 153, 63.

The district court also denied Defendant's partial motion to dismiss and stay in a separate order issued at the same time. *Id.* at 164-73. In the court's opinion, Plaintiff's claims were not moot since she rejected Defendant's offer of reinstatement and Plaintiff successfully had the State Personnel Board proceedings dismissed. *Id.* at 164-73. The court further concluded that Plaintiff's actions did not defeat her Article III standing because Defendant's offer of reinstatement did not give her "the precise remedy she requested" (i.e., full reinstatement as an active

New Mexico Administrative Code in terminating Plaintiff." *Id.* at 157. However, Defendant's stipulation that "she did not provide Plaintiff with a hearing" was meant in the sense that she did not provide Plaintiff with the hearing outlined in 1.7.12.25 NMAC—not an informal "hearing" in the general due process sense. Defendant consistently maintained that her meeting with Plaintiff was sufficient to satisfy pre-deprivation due process. *See id.* at 48 n.1, 55 (citing *West v. Grand Cnty.*, 967 F.2d 362, 368 (10th Cir. 1992) ("A brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of [*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)]." (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989))); *see also* App. at 116 (listing Defendant's contentions about meeting).

WCA judge without being placed on paid administrative leave and unrestricted access to her co-workers during the life of the federal litigation). *Id.* at 170-73.

On May 16, 2025, Defendant filed a notice of appeal and requested the district court stay it injunction or at least clarify that Plaintiff may be placed on paid administrative leave while the State Personnel Board considers Defendant's complaint. *Id.* at 174-88. A week later, Defendant filed a request for stay with this Court. *See* No. 25-2050, Doc. 11184282 (May 23, 2025). On June 16, 2025, the district court denied Defendant's request for a stay but modified the preliminary injunction to "allow Defendant to place Plaintiff on paid administrative leave pending the resolution of this litigation." App. at 237. However, the court insisted—without providing any authority—that "Defendant may not restrict Plaintiff's ability to speak with her colleagues." *Id.* at 247. This Court subsequently denied Defendant's motion to stay as largely moot given the district court's clarification. *See* No. 25-2050, Doc. 11192202 (June 25, 2025). The Court also summarily found that Defendant failed to demonstrate "that the circumstances justify an exercise of [the Court's] discretion [to issue a stay]" to the extent Defendant challenged the district court's requirement that Plaintiff be allowed to communicate freely with her colleagues during the State Personnel Board proceedings. *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)).

### SUMMARY OF ARGUMENT

Plaintiff fell far short of meeting her heavy burden of demonstrating that she was entitled to the extraordinary relief of a disfavored preliminary injunction. Plaintiff failed to show a strong likelihood of success on the merits of her injunctive claim when (1) it was undisputed that Defendant met with her and provided her with notice and an opportunity to be heard prior to her termination; (2) Plaintiff's injunctive claim was (and is) moot and barred by sovereign immunity because Defendant offered to reinstate her and provide her with the process she wanted; and (3) Plaintiff's rejection of Defendant's offer of reinstatement defeated her standing to seek an injunction because she failed to make a strong showing that she was entitled to any additional relief. Plaintiff likewise failed to demonstrate that a preliminary injunction was necessary to prevent irreparable harm when she failed to demonstrate a strong likelihood of success on the merits of her injunctive claim and her purported reputational injury could be remedied with a final judgment. Accordingly, the district court erred in granting a disfavored preliminary injunction.

## ARGUMENT

## I.    Standard of review for disfavored preliminary injunctions

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (cleaned up). To obtain a preliminary injunction, the movant must establish each of the following: "(1) a substantial likelihood of prevailing on

the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens*, 839 F.3d at 1281 (cleaned up). A plaintiff bringing claims for both damages and permanent injunctive relief must demonstrate a substantial likelihood of prevailing on the latter claim. *See Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001); *see generally Schrier*, 427 F.3d at 1267 (explaining that "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance"). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Diné Citizens*, 839 F.3d at 1281 (cleaned up).

Plaintiffs seeking a disfavored injunction face an even higher burden. This Court specifically disfavors preliminary injunctions that alter the status quo or require affirmative action by the defendants. *See Schrier*, 427 F.3d at 1258-59 (cleaned up). "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* (cleaned up). Plaintiff here admits she requested such a disfavored preliminary injunction. App. at 18. Accordingly, she was required to "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms[.]" *O Centro Espirita*

*Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc).

This Court reviews the district court's grant of a preliminary injunction for abuse of discretion and must reverse if that grant is premised on an erroneous conclusion of law or lacks a rational basis in the record. *See Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). This Court reviews the district court's factual findings for clear error and its legal conclusions de novo. *Id.*

## II. Plaintiff failed to make a strong showing that she is likely to succeed on her claim for injunctive relief

The Tenth Circuit recognizes that the first factor, likelihood of success on the merits, is perhaps the "most important." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1229 (10th Cir. 2018). Plaintiff failed to make a strong showing that she is likely to succeed on the merits of her injunctive claim for three reasons. First, Plaintiff failed to demonstrate that Defendant violated her due process rights when it was undisputed that Defendant met with her and provided her with notice and an (albeit brief) opportunity to be heard prior to her termination. Second, even if Defendant's meeting with Plaintiff provided insufficient pre-deprivation due process, Plaintiff's injunctive claim is moot and barred by sovereign immunity because Defendant offered to reinstate her and provide her with the process she wanted. Lastly, Plaintiff's rejection of Defendant's offer of reinstatement defeated

her standing to seek an injunction because she failed to make a strong showing that she was entitled to any additional relief.

### A. Plaintiff failed to make a strong showing that Defendant violated her due process rights

As the party asking for the extraordinary remedy of a disfavored preliminary injunction, it was incumbent on Plaintiff to make a strong showing that Defendant violated her procedural due process rights. *See Schrier*, 427 F.3d at 1258-59; *Diné Citizens*, 839 F.3d at 1281. While Defendant did not dedicate significant briefing to the matter given the fact that Plaintiff's claims were moot, she made it clear that she "dispute[d] the merits of [P]laintiff's procedural due process claim." App. at 55; *see also id.* 48 n.1, 97 n.2. To this end, Defendant cited *Roberts v. Winder*, 16 F.4th 1367, 1380 (10th Cir. 2021), where this Court found no procedural due process violation when an employer informed an employee that his rank and pay would be reduced and subsequently sent a letter to the employee's counsel rejecting his grievance and explaining termination. *See* App. at 48 n.1. Defendant also pointed to *West*, 967 F.2d at 368 (citing *Powell*, 891 F.2d at 1459), where this Court explained that "[a] brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of *Loudermill*." App. at 48 n.1.

Neither Plaintiff nor the district court addressed this authority or explained why Defendant's meeting did not satisfy due process when discussing the merits of Plaintiffs' procedural due process claim. *See* App. at 71-79, 154-58. Instead, they ignored the fact of the meeting entirely and simply cited caselaw about the need for a pre-termination hearing as if none ever occurred. *See* App. at 78, 154-58. To support its conclusion that Defendant did not provide any pre-deprivation due process, the district court simply cited Defendant's stipulation that "[p]rior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any *other required procedure under the New Mexico Administrative Code* in terminating Plaintiff." App. at 157 (emphasis added); *see supra* note 3. But "a breach of state procedural requirements is not, in and of itself, a violation of the Due Process Clause." *Atencio v. Bd. of Educ. of Penasco Indep. Sch. Dist. No. 4*, 658 F.2d 774, 779 (10th Cir. 1981). Moreover, it was undisputed that, at a minimum: (1) Defendant met with Plaintiff and asked her if she voted; (2) Plaintiff admitted she did not vote and had the opportunity to explain that she allegedly simply forgot to edit her timesheet; (3) Defendant handed Plaintiff a letter informing her that actions constituted a violation of the code of judicial conduct and grounds for her termination; and (4) Plaintiff has had the opportunity to go through the State Personnel Board hearing process since February 4, 2025—which will

provide robust procedural due process protections. *See* App. at 15-16, 47-70, 96, 102-03. The foregoing constituted sufficient due process.

Tenth Circuit law confirms this conclusion. In *Powell*, a fire department chief heard that a firefighter (and union member) had met with officials from neighboring cities' departments and requested that they not respond to any calls for mutual aid until a labor dispute was resolved. 891 F.2d at 1455. The chief then met with the firefighter and asked if he had asked the officials not to provide mutual aid. *Id.* When the firefighter responded in the affirmative, the chief "informed [him] that he was discharged, effective immediately." *Id.* After eventually being reinstated, the firefighter filed a § 1983 action claiming his due process rights were violated. *Id.* at 1456. However, this Court concluded the meeting accorded with *Loudermill* because the firefighter "received oral notice of the charge against him when [the chief] confronted him face-to-face" and the firefighter "had an opportunity to rebut that charge but chose instead to admit to it." *Powell*, 891 F.2d at 1459. Notably, the Court rejected the firefighter's argument that he was not afforded an opportunity to "explain his side of the story" because "once [he] admitted to asking the other Fire Chiefs not to sign the proposed agreement, an opportunity for further explanation would not have contributed to the prevention of an erroneous termination." *Id.* Given the availability of more a robust post-deprivation hearing, the Court concluded "that

the manner in which defendants discharged [the firefighter] did not violate his rights under *Loudermill*." *Powell*, 891 F.2d at 1462.[4]

The instant situation is nearly identical to *Powell*. Like the firefighter in that case, Plaintiff "received oral notice of the charge[s] against [her]" (i.e., falsely certifying that she properly took voting leave) when Defendant "confronted [her] face-to-face." *Powell*, 891 F.2d at 1459. And, just like the firefighter, Plaintiff "had an opportunity to rebut that charge but chose instead to admit to it." *Id.* While Plaintiff may have desired an opportunity to elaborate her side of the story beyond her initial excuse, "an opportunity for further explanation would not have contributed to the prevention of an erroneous termination" because she admitted to the basic facts constituting the misconduct. *Id.* Like the firefighter in *Powell*, Plaintiff has been given the opportunity to receive post-deprivation due process by going through a robust State Personnel Board hearing process set out in 1.7.12.25 NMAC—which includes the right to present evidence and call/cross examine witnesses before a neutral hearing officer. Accordingly, "the manner in which

---

[4] While the *Powell* court indicated it reached this conclusion because the firefighter failed to meet his burden to demonstrate a violation of a clearly established right under qualified immunity analysis, this Court has since indicated this conclusion stands for the broader conclusion that the meeting satisfied due process. *See Riggins v. Goodman*, 572 F.3d 1101, 1109 (10th Cir. 2009) (observing that the *Powell* Court "concluded that the pretermination process 'accorded with the requirements established in *Loudermill*' when an employee was terminated during a meeting after he was asked and admitted to having had unauthorized communications").

[Defendant] discharged [Plaintiff] did not violate [her] rights under *Loudermill*."
*Powell*, 891 F.2d at 1462. The district court's summary conclusion to the contrary—
which rested on an obvious misreading of one of Defendant's stipulations and
ignored the undisputed facts—was clearly erroneous and should be reversed.

### B. Plaintiff's claims for injunctive relief were (and are) moot and barred by sovereign immunity

Even if Plaintiff demonstrated that Defendant violated her due process rights
when she initially terminated Plaintiff, Plaintiff failed to show that she was entitled
to an injunction protecting against future or ongoing violations. Generally, a suit
against a state official in her official capacity is treated as one against the state itself
and barred by sovereign immunity unless it "seeks prospective relief for an ongoing
violation of federal law." *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736
(10th Cir. 2024) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). The analysis
for determining whether this exception applies overlaps to a significant degree with
the analysis of whether the request for injunctive relief has become moot, thereby
depriving the plaintiff standing to obtain injunctive relief. *See NiGen Biotech, L.L.C.
v. Paxton*, 804 F.3d 389, 395 n.5 (5th Cir. 2015). The requirement of standing means
that a "plaintiff cannot maintain a[n] injunctive action unless he or she can
demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*,
929 F.2d 541, 544 (10th Cir. 1991). Put another way, because "[t]he purpose of an

injunction is to prevent future violations[,]" Plaintiff must show that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. . . . To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997) (cleaned up)).

Plaintiff could not, and cannot, point to any ongoing harm stemming from her complaint that requires preliminary or permanent injunctive relief. The crux of Plaintiff's suit is that she was purportedly deprived of due process when Defendant terminated her without going through the State Personnel Board hearing process set out in 1.7.12.25 NMAC. *See* App. at 6-12. To this end, Plaintiff requested an injunction "restor[ing] Plaintiff to her position" and "ensur[ing] compliance with constitutional due process requirements." App. at 12. Defendant demonstrated that she was willing to do both things long before the district court issued a preliminary injunction: Defendant initiated the State Personnel Board hearing process and offered to reinstate Plaintiff and place her on paid administrative leave with minimal communication restrictions pending the State Personnel Board proceedings in early February. *Id.* at 47-70, 96, 102-03.

By offering to reinstate Plaintiff and making the State Personnel Board proceedings available, Defendant cured any potential procedural due process

violation caused by the initial dismissal. *See McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) ("[A] procedural due process violation is not complete 'unless and until the State fails to provide due process.' In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990));[5] *accord Winters v. Bd. of Cnty. Com'rs*, 4 F.3d 848, 856 (10th Cir. 1993) ("The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures." (citing *Zinermon*, 110 S. Ct. at 983-84)).

Even if Defendant's actions did not technically "cure" any procedural due process violation (as the district court concluded), they indisputably negated the need for an injunction. Why would Plaintiff need an injunction ordering Defendant to do what she was already doing (i.e., reinstating Plaintiff and giving her the process she wanted)? The answer is that none was necessary. Plaintiff could no longer show that

---

[5] The district court distinguished *McKinney* because it concluded Plaintiff received "no pretermination proceedings whatsoever." App. at 158. However, this is clearly contradicted by the record. It is undisputed that Defendant met with Plaintiff and gave her an opportunity to be heard prior to her termination. *Id.* at 4-5, 16-17. Thus, *McKinney* applies. *See West*, 967 F.2d at 368 (10th Cir. 1992) ("A brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of *Loudermill*." (citing *Powell*, 891 F.2d at 1459)).

"there exists some cognizable danger of recurrent violation," *Roe*, 124 F.3d at 1230, that required injunctive relief—let alone disfavored preliminary injunctive relief, which "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course," *Schrier*, 427 F.3d at 1258-59 (cleaned up). Accordingly, the district court should have denied Plaintiff's request for a preliminary injunction. *See Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 886 (10th Cir. 2019) (finding procedural due process claim moot when the defendant affirmed he would provide procedural protections going forward); *Veal v. Jones*, 349 Fed. Appx. 270, 272 (10th Cir. 2009) (finding procedural due process claim moot when plaintiff received the remedy requested); *cf. Wessel v. City of Albuquerque*, 299 F.3d 1186, 1194 (10th Cir. 2002) (holding that plaintiffs failed to show need for permanent injunction when the government defendant issued a corrected notice and committed itself to include the required information in future notices); *see generally Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1118 (10th Cir. 2010) ("[A]lthough governmental defendants might take action as a direct response to litigation, at any rate, self-correction again provides a secure foundation for mootness so long as it seems genuine." (cleaned up)).

## C. Plaintiff's rejection of the offer of reinstatement defeated her standing to seek an injunction because she failed to make a strong showing that she was entitled to any additional relief

Despite receiving what she wanted, Plaintiff rejected Defendant's offer of reinstatement as "inadequate," dismissed the State Personnel Board proceedings, and asserted she was still entitled to a disfavored preliminary injunction. App. at 108-10. Plaintiff summarily claimed this was necessary because Defendant's offer of reinstatement (1) did not allow her to resume her duties as a WCA judge and (2) purportedly violated her First Amendment rights by not allowing her to speak freely to everyone at the WCA.[6] *Id.* Plaintiff was wrong on both counts.

---

[6] The district court also claimed Defendant's offer of reinstatement was inadequate because it did not expressly guarantee Plaintiff would be reinstated for the duration of the federal proceedings (as opposed to the duration of the State Personnel Board proceedings). *See* App. at 171. However, Plaintiff never specifically took issue with this. *See id.* at 80-81, 108-11. Even if she had, it was no reason to issue a preliminary injunction. Plaintiff provided no evidence suggesting that the State Personnel Board process would conclude prior to the federal litigation, nor did she provide any evidence suggesting she would be terminated again after the State Personnel Board proceedings. *See Schrier*, 427 F.3d at 1267 (finding speculative harm insufficient to grant preliminary injunction). More importantly, the provision of the State Personnel Board process *necessarily* remedied any alleged procedural due process violation requiring injunctive relief. *See Dargis v. Sheahan*, 526 F.3d 981, 989-90 (7th Cir. 2008) (finding that the appropriate remedy for denial of plaintiff's procedural due process rights was ordering his public employer to hold the employment hearing required by state law); *Brady v. Gebbie*, 859 F.2d 1543, 1551 (9th Cir. 1988) ("This court and the Supreme Court have repeatedly held that the appropriate remedy for deprivation of a liberty and/or property interest without due process is to order the process that was due and any attendant damages which directly resulted from the failure to give the proper procedure."); *see generally Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the *mistaken or unjustified* deprivation of life, liberty, or property." (emphasis added)).

As Defendant explained below, nothing "prohibit[ed] putting plaintiff on administrative leave pending the State Personnel Board's hearing process." App. at 55 n.4; *accord Hicks v. City of Watonga, Okl.*, 942 F.2d 737, 746 n.4 (10th Cir. 1991) ("Suspension with pay does not raise due process concerns." (citing *Loudermill*, 470 U.S. at 544-45); *O'Connor v. Pierson*, 426 F.3d 187, 199 (2d Cir. 2005) (noting that "no court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties"). Defendant also provided authority demonstrating that it is permissible to temporarily prevent public employees from talking to co-workers about matters relating to their employment during ongoing investigations. *See* App. at 96 n.1; *accord Roberts v. Springfield Util. Bd.*, 68 F.4th 470, 475 (9th Cir. 2023) ("Where, as here, a public employer instructs an employee not to communicate with potential witnesses regarding a workplace misconduct investigation during the pendency of that investigation, the impacted speech generally is not on a matter of public concern[.]"); *Farhat v. Jopke*, 370 F.3d 580, 598 (6th Cir. 2004) (finding that employer could prohibit employee from speaking to co-workers during investigation); *Specht v. City of New York*, 15 F.4th 594, 601 (2d Cir. 2021) (observing that "internal workplace grievances" are "not matters of public concern").

Plaintiff, on the other hand, failed to support her position to the contrary with any authority whatsoever. App. at 71-90, 108-10. This deficiency necessarily

defeated her claim to a disfavored preliminary injunction awarding greater relief than that already offered by Defendant. *See Diné Citizens*, 839 F.3d at 1281 ("Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." (cleaned up)); *Primas v. City of Okla. City*, 958 F.2d 1506, 1511 (10th Cir. 1992) (holding that a party must cite to authority for any argument raised). The only argument Plaintiff could muster was that an injunction was still necessary simply because Defendant's actions did not restore the full "status quo" prior to Plaintiff's termination. App. at 73-74, 86-87. But this ignores the "well-settled principle that an injunction must be narrowly tailored to remedy *the harm shown*." *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Oklahoma Tax Comm'n*, 969 F.2d 943, 948 (10th Cir. 1992) (emphasis added). If Defendant can lawfully place Plaintiff on paid administrative leave and minimally restrict her communications with co-workers while she receives the very process she claims was owed, then Plaintiff failed to show a "clear and unequivocal" right to a disfavored injunction requiring otherwise—regardless of whatever the status quo ante was. *Diné Citizens*, 839 F.3d at 1281.

The upshot of all this is that Plaintiff had no grounds to reject Defendant's offer of reinstatement and initiation of the State Personnel Board proceedings— which indisputably remedied the very injuries she claimed when she filed suit. Therefore, her rejection broke any causal connection between Defendant's actions

and her purported injury, and she no longer had standing to seek prospective relief against Defendant as a result. *See Colorado v. U.S. Envtl. Prot. Agency*, 989 F.3d 874, 888 (10th Cir. 2021) (explaining that self-inflicted injuries cannot satisfy the requirements for Article III standing because they break the causal chain linking the defendant's conduct to the asserted injury); *cf. Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them."). It follows that Plaintiff failed to make a strong showing of a substantial likelihood of success on the merits of her claim for injunctive relief.

## III. Plaintiff failed to demonstrate any irreparable harm in the absence of a disfavored preliminary injunction

"[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Schrier*, 427 F.3d at 1268 (cleaned up). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical. . . . The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (cleaned up).

Here, the district court found that Plaintiff was likely to suffer irreparable harm because she demonstrated a likelihood of success on the merits of her

procedural due process claim and that Plaintiff would allegedly suffer reputational harm in the absence of a preliminary injunction. App. at 160-61. However, as explained above, Plaintiff failed to show any likelihood of success on her claim for injunctive relief because Defendant already provided her with all the due process to which she was possibly owed. *See Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024) (concluding that the plaintiffs failed to demonstrate irreparable harm when they failed to demonstrate a likelihood of success on the merits); *cf.* 11A Wright & Miller, Federal Practice & Procedure Civ. § 2948.1 (2d ed.) ("Not surprisingly, a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted.").

Likewise, Plaintiff's alleged reputational injury from temporarily being placed on paid administrative leave while she goes through the State Personnel Board process is not irreparable. *See Hunter v. Hirsig*, 614 Fed. Appx. 960, 963 (10th Cir. 2015) ("We . . . have embraced the principle that '[a]ny loss of prestige, standing, or reputation that [the plaintiff] may have suffered prior to filing this action can be remedied through money damages and does not justify a preliminary injunction.'" (quoting *Schrier*, 427 F.3d at 1266)); App. at 88 (Plaintiff claiming she can obtain such damages); *see also Sampson v. Murray*, 415 U.S. 61, 89 (1974) (holding that "damage to reputation" is insufficient to constitute irreparable harm). Even if it was, a preliminary injunction would not help Plaintiff. *See Hetreed v.*

*Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998) (Easterbrook, J.) ("Loss of face and reputation likewise may be palliated by a favorable decision at the end of the case as effectively as by interlocutory relief—which, although it comes sooner, is tentative and therefore does less to rehabilitate a reputation."). Plaintiff, therefore, failed to demonstrate the irreparable injury necessary for a disfavored preliminary injunction. *See Schrier*, 427 F.3d at 1267 (explaining that "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance").

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's grant of a disfavored preliminary injunction.

Respectfully submitted,

By */s/ Cody R. Rogers*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
**Attorneys for Defendant/Appellant**

## CERTIFICATE OF COMPLIANCE

1.    This filing complies with the word limitation of Fed. R. App. P. 27(d)(2)(A) because this motion contains 6,444 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2.    This filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type.

*/s/ Cody R. Rogers*
Cody R. Rogers


## CERTIFICATE REGARDING DIGITAL SUBMISSION
## AND PRIVACY REDACTIONS

1.    All required privacy redactions have been made to this document and, with the exception of those redactions, this document and any other document(s) submitted in Digital Form or scanned PDF format are an exact copy of any written document(s) required to be filed with the Clerk.

2.    The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program and, according to the program, are free of viruses.

*/s/ Cody R. Rogers*
Cody R. Rogers


## CERTIFICATE OF SERVICE

I certify that on September 26, 2025, I filed the foregoing electronically through the CM/ECF system, which caused all parties or counsel of record in this matter to be served by electronic means.

*/s/ Cody R. Rogers*
Cody R. Rogers

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

SHANNON S. RILEY,

         Plaintiff,

    vs.                                 No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN _in her individual
and official capacities as the
Director of the New Mexico Workers'
Compensation Administration_,

         Defendant.

## MEMORANDUM ORDER AND OPINION GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER comes before the Court based on Plaintiff's Motion for Preliminary Injunction and the associated briefing (**doc. 2; doc. 8, doc. 10**).  Having considered the parties' briefing and applicable law, finds that Plaintiff's Motion is **well taken** and is therefore **GRANTED**.

## BACKGROUND

     Plaintiff served as a Workers' Compensation Judge (WCJ) for the New Mexico Worker's Compensation Administration (WCA) from her appointment on August 20, 2011, to her termination on November 13, 2024.  **Doc. 2 at 1–2**.  This action arises from the events leading to her termination, beginning on November 5, 2024.  **_Id._**

     On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting.  **_Id._ at 2**.  While she arrived at the polls, Plaintiff ultimately did not vote because there was a line and because she was sick.  **_Id._**  Plaintiff was aware that she needed to make corrections to her timesheet and intended to make the corrections. the following morning on November 7, 2024.  **_Id._**  Prior to the commencement of this action, Plaintiff had over 200 hours of annual leave and over 240 hours of sick leave, which she

could have substituted, or alleges that she alternatively could have removed the two hours of as she had already worked a significant number of hours that day. *Id.* The WCA office was closed on November 7 due to inclement weather, and Plaintiff did not have access to her laptop. *Id.* She alleges that as a result of these events, she "simply forgot to edit her timesheet." *Id.*

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. *Id.* Defendant fired Plaintiff on November 13, 2024, alleging that she had committed time fraud and had thus violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

Plaintiff filed suit on January 14, 2024, seeking injunctive relief and damages under 42 U.S.C. §1983 for civil rights violations, including being deprived of her property interest in her employment without due process of law. **Doc. 1**. At the time of the initial lawsuit, Defendant had not submitted a complaint about the events to the State Personnel board. **Doc. 7 at 2**. On February 4, 2025, the Workers' Compensation Administration subsequently submitted a complaint to the State Personnel Board, in accordance with Section 52-5-2(C) and New Mexico Administrative Code, 1.7.12.25. *Id.* On March 4, 2025, the Board granted Plaintiff's motion and filed an Order of Dismissal dismissing the WCA's complaint for lack of jurisdiction. **Doc. 14-1**.

Defendant offered Plaintiff a modified form of reinstatement on February 6, 2025. **Doc. 7-2**. The offer involved being reinstated to her former position as a Workers' Compensation Judge and placed on paid administrative leave pending the outcome of the State Personnel Board proceedings. *Id.* It also departed from Plaintiff's original employment in that it made her an at-will employee serving at the pleasure of the Governor, rather than subject to firing only for

violations of the judicial code of conduct. *Id.*; **doc. 10 at 2**. Plaintiff rejected the modified offer on February 14, 2025. **Doc. 10-1.** Plaintiff asserted that it varied substantively from her original employment and that its restrictions on communication violated her First Amendment right to freedom of speech.

Defendant gave Plaintiff an updated offer of reinstatement on February 26, 2025, that would still place her on administrative leave until the completion of proceedings but changed the at-will employee language to render Plaintiff able to be fired only in cases of violations of the code of judicial misconduct. **Doc. 18-1.** Plaintiff rejected the offer on the grounds that it continued to violate her First Amendment right to freedom of speech and still did not restore the status quo. **Doc. 18-2.** Defendant now contends that Plaintiff's second rejection renders her responsible for her ongoing unemployment and moots her cause of action. **Doc. 15 at 1.** Plaintiff maintains that she is entitled to a preliminary injunction and that the Court should not grant Defendant's motion to dismiss. **Doc. 12 at 1.**

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir.2012) (citations omitted).

To obtain a preliminary injunction, Plaintiff must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4)

that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

Courts disfavor preliminary injunctions that "exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797). Because Plaintiff's request mandates action, she faces "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors." *Id.*

## ANALYSIS

Plaintiff has demonstrated that she is entitled to a preliminary injunction, even when considering the higher burden she must bear in seeking an affirmative injunction.

Courts disfavor preliminary injunctions that (1) mandate action (rather than prohibiting it), (2) change the status quo, or (3) grant all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797). The Supreme Court has affirmatively stated that purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The goal is to preserve the status quo until the Court can more completely resolve the issue on its merits. *Id.* To determine the status quo, the Court looks to the "last peaceable uncontested status existing between the parties before the dispute developed[.]" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948, at 136 (2d ed.1995)). "[I]t is defined by the reality of the existing status and relationships between the parties, regardless of

whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* at 1259. The Court's findings of fact and conclusions of law when granting a preliminary injunction are not binding at a trial on the merits. *Camenisch*, 451 U.S. at 395.

Plaintiff's requested preliminary injunction would likely return the parties to their last peaceable position prior to this conflict arising.[1] Plaintiff seeks to return to her position as a WCJ (without being on paid administrative leave), resume hearing cases, serve the rest of her appointment, and to engage with her colleagues. **Doc. 1 at ¶67**. That would be the last peaceable uncontested status existing between the parties before this dispute developed— Plaintiff was not on administrative leave or barred from speaking with her colleagues before Defendant fired her. *Schrier*, 427 F.3d at 1260. "Thus, in reality, Plaintiff seeks to preserve the status quo," which is the very purpose of a preliminary injunction. *Porter v. Allbaugh*, No. 18-CV-0472-JED-FHM, 2019 WL 2167415, at *6 (N.D. Okla. May 17, 2019); *Camenisch*, 451 U.S. at 395. However, because Plaintiff's requested injunction mandates action—that is, reinstating an already-fired party— the Court still applies some elevated level of scrutiny to Plaintiff's likelihood of success on the merits and the balancing of harms factors. *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232.

---

[1] It is worth noting that the Tenth Circuit has recently noted that "An injunction is mandatory when it requires defendants to do something they were not doing during the most recent peaceable status quo—that is, the last uncontested period preceding the injunction." *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024). Given that the last peaceable period preceding the injunction was prior to Plaintiff's firing, one could argue that requiring Defendant to restore Plaintiff to her position does not "disturb the last peaceable status quo." *Id.*; *see Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) ("In the instant case, the "last peaceable uncontested status existing between the parties before the dispute developed," . . . was on October 9, 2002, when Dr. Schrier was still serving as Chair of the Department of Medicine, a position he had held in excess of twenty-six years."). However, because Plaintiff's Motion survives the higher burden of affirmative injunctions, it is unnecessary to delve deeper into whether Plaintiff has sought a mandatory or a prohibitive injunction.

A.  *Plaintiff has demonstrated a substantial likelihood of success on her procedural due process claim.*

One of the two factors the Court must weight particularly heavily is Plaintiff's likelihood of success on the merits.  "All courts agree that plaintiff must present a prima facie case but need not show a certainty of winning." *Logan v. Pub. Emps. Ret. Ass'n*, 163 F. Supp. 3d 1007, 1033 (D.N.M. 2016) (internal citations omitted).

Here, Plaintiff presents two claims: deprivation of her right to procedural due process and deprivation of her right to substantive due process.  Both claims arise under 42 U.S.C. § 1983. §1983 claims mandate that a person be acting under color of state law.  42 U.S.C. § 1983 (covering the conduct of "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.").  The parties stipulated that Defendant was a state actor and that she acted under color of state law.  **Doc. 14 at 3**.  The Court will therefore find that Plaintiff has satisfied this requirement for a § 1983 claim and look only to whether she has alleged a prima facie case for both of her due process claims.  The Court finds that Plaintiff has demonstrated likelihood of success on her procedural due process claim, but not on her substantive due process claim.

a.  *Procedural due process*

Plaintiff has alleged a prima facie case of a violation of her procedural due process rights because she received no pretermination notice or process.

The Tenth Circuit requires a two-step inquiry in determining whether an individual's procedural due process rights were violated.  First, the Court asks whether the individual possesses a protected property or liberty interest to which due process is applicable.  *Camuglia v. City of*

6

*Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006); *ETP Rio Rancho Park, LLC v. Grisham*, 522 F. Supp. 3d 966, 1018 (D.N.M. 2021). If the party does possess such an interest, the court then asks if the individual was afforded the appropriate level of process. *Camuglia*, 448 F.3d at 1219. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Salazar*, 776 F. Supp. 2d at 1238.

"That [Plaintiff] satisfies the first prong, whether [she] possessed a protected interest, is beyond dispute." *Garcia v. City of Albuquerque,* 232 F.3d 760, 769 (10th Cir. 2000). Public employees who can be discharged only for cause retain a constitutionally protected property interest in their continued employment and cannot be fired without due process. *Gilbert v. Homar,* 520 U.S. 924, 928–29 (1997); *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1253 (10th Cir. 1998) (The "standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment."). Neither party disputes that Plaintiff was a public employee who could only be fired for cause—that is, violations of the Code of Judicial Conduct. Plaintiff thus retains a constitutionally protected property interest in her ongoing employment and is entitled to due process.

What constitutes adequate procedural due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, (1976). Generally, [a]n essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). The Supreme Court has emphasized that this "root requirement" is *pretermination* process, meaning "that an individual be given an

opportunity for a hearing *before* [they are] deprived of any significant property interest. *Id.* (citing *Boddie v. Connecticut,* 401 U.S. 371, 379(1971) (emphasis in original); *Bell v. Burson,* 402 U.S. 535, 542 (1971)).

Pretermination due process is necessary due to the "severity of depriving a person of the means of livelihood. *Loudermill*, 470 U.S. at 543. "While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which [they] left [their] previous job." *Id.* "[The] the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* And "[the] governmental interest in immediate termination does not outweigh these interests," even where an employee poses some significant hazard. *Id.* at 544. Pretermination process poses no significant administrative burden, it prevents disruption and erroneous decisions, and keeps qualified employees usefully employed. *Id.* In situations where an employee poses a hazard, the government has the option of suspension pending pretermination proceedings. *Id.* at 545.

Plaintiff received no such process here. While Defendant attempted to retroactively rectify the situation by filing a complaint with the Personnel Board *after* Plaintiff had already been fired, Plaintiff received no notice or opportunity to respond *prior* to her termination. *Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services*, 936 F.2d 483, 491 (10th Cir. 1991) ("Where the state action is the dismissal of a tenured public employee, the procedural safeguard required by the Constitution typically includes a pre-termination as well as a post-termination hearing."). As a tenured public employee, Plaintiff is entitled to some form of pretermination process, including notice of the charge and an opportunity to respond. This process, laid out in New Mexico state law, involves filing a complaint with the New Mexico Personnel Board and holding hearing

proceedings in which both sides may argue their case.  *See Garcia v. City of Albuquerque*, 232 F.3d 760, 770 (10th Cir. 2000) ("Moreover, Garcia was afforded three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing. In the circumstances, Garcia received all of the process that he was due.").  Plaintiff received no notice or opportunity to be heard, and Defendant concedes as such. **Doc. 14 at ¶6** (Both parties stipulate that "[p]rior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any other required procedure under the New Mexico Administrative Code in terminating Plaintiff.").

Defendant argues that by submitting a complaint to the Personnel Board after she already terminated Plaintiff, Defendant has rectified any due process concern.  Indeed, Defendant argues that Plaintiff has shirked the process she is being given by filing a motion to dismiss for lack of jurisdiction with the Personnel Board.  To support her argument, Defendant relies on an Eleventh Circuit case, *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994), which ostensibly supports the argument that one can remedy a due process violation ex post facto by providing an opportunity to be heard after the deprivation has already taken place.  But Defendant's reliance on *McKinney* is misplaced for two reasons.  First, the Eleventh Circuit is persuasive, but not binding.  Tenth Circuit case law seems to clearly require *pretermination* process, and the Court can locate no precedent suggesting that *ex post facto* remedies can make up for a lack of pretermination process. *Garcia*, 232 F.3d at 769 (discussing pretermination process); *Nard v. City Of Oklahoma City*, 153 Fed. Appx. 529, 534 (10th Cir. 2005) ("The undisputed facts demonstrate that Defendant Oklahoma City provided Plaintiff with all of the procedure he was due under the Fourteenth

Amendment *prior* to *demoting him.*" (emphasis added)); *Archuleta*, 936 F.2d at 490 (discussing at length the pretermination process plaintiff received).

Second, even if *McKinney* did bind this Court, so would its progeny, including *Galbreath v. Hale Cnty., Alabama Comm'n*, 754 F. App'x 820 (11th Cir. 2018). *Galbreath* expressly rejects Defendant's *ex post facto* argument. The Eleventh Circuit found that "where a due process violation is already complete because no hearing was held as required by *Loudermill*, *McKinney* has no application." *Id.* at 828. Where there were *no* pretermination proceedings whatsoever, *McKinney* has no effect. Here, Plaintiff was fired with no notice or opportunity to be heard at a pretermination hearing, as required by *Loudermill*. *Galbreath* is thus significantly more persuasive in demonstrating that Plaintiff suffered a complete due process violation.

Because Plaintiff received no pretermination process, the Court finds that Plaintiff has demonstrated substantial likelihood of success on her procedural due process claim.

### b. *Substantive due process*

Plaintiff has not demonstrated substantial likelihood of success on her substantive due process claim because Defendant's action was not arbitrary or conscience-shocking and because it was rationally connected to a legitimate interest.

It is not clear whether a property interest in continued employment is protected by substantive due process. *Ishoo v. Bd. of Regents Univ. of New Mexico*, No. CV-06-0747 MV/ACT, 2007 WL 9729216, at *15 (D.N.M. Sept. 29, 2007) (citing *Archuleta*, 936 F.2d at 489 n.6). However, even assuming that Plaintiff does have a fundamental property interest in performing the duties and functions of her employment that is subject to substantive due process protection, Plaintiff has not shown substantial likelihood of success on the merits. This is because where a plaintiff has recourse to an "explicit textual source of constitutional protection," *Graham v.*

*Connor*, 490 U.S. 386, 395 (1989), a more general claim of substantive due process is not available. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Plaintiff's substantive due process claim essentially restates her procedural due process claim, inserting the standard for substantive due process instead. *Ishoo*, 2007 WL 9729216 at *16.

Even operating as if Plaintiff did have a substantive due process right, she cannot show substantial likelihood on the merits. Assuming a protected property interest, "[S]ubstantive due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis. . . [the] Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998) (internal quotations omitted) (citing *Bishop v. Wood,* 426 U.S. 341, 350 (1976)). The standard for judging substantive due process violations is whether the challenged government action would "shock the conscience of federal judges." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (internal quotations omitted).

Plaintiff has not demonstrated that Defendant acted in a manner that was wholly arbitrary or conscience-shocking. Even acting ill-advisedly and without affording Plaintiff procedural due process, Defendant did not act with a "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 574. Defendant's reasoning for firing Plaintiff was not arbitrary—a possible violation of the Code of Judicial Conduct is a serious charge. While the decision to fire Plaintiff over two hours of mislabeled time seems overblown, it does not surmount the high standard of being completely arbitrary or conscience-shocking.

Moreover, the decision to terminate Plaintiff is rationally related to the interests laid out in the Code of Judicial Conduct. The Code of Conduct is meant to prevent conduct that reflects adversely on the judge's honesty, Rule 21-003(K), NMRA, or create in reasonable minds conduct

11

that would impugn a judge's credibility or honestly.   Rule 21-003(B), NMRA.  Plaintiff admits that she ultimately submitted a timesheet that did not accurately reflect her time worked and time taken off.  That could create in some reasonable mind an assumption that Plaintiff is dishonest. Terminating her is thus rationally related to the interest of preventing impropriety.

Plaintiff has thus not demonstrated a likelihood of success on the merits of her substantive due process claim.  However, she has demonstrated a substantial likelihood of success on her procedural due process claim.  The Court will therefore find that this factor counsels towards granting Plaintiff relief.

B. *Plaintiff has demonstrated she would likely suffer irreparable harm.*

Plaintiff has demonstrated that she would likely suffer irreparable harm unable to be remedied solely by monetary damages.

Plaintiff asserts that she has automatically demonstrated irreparable harm where she has demonstrated a constitutional violation.  The Tenth Circuit has suggested that in the context of constitutional claims, the first and second preliminary injunction factors collapse, and a plaintiff who demonstrates a likelihood of success on the merits simultaneously demonstrates irreparable injury. *Free the Nipple-Fort Collins*, 916 F.3d at 792.  Because Plaintiff has demonstrated substantial likelihood of success on at least one of her constitutional claims, this alone is sufficient to find the second factor skews in favor of Plaintiff.

Moreover, Plaintiff also asserts that "[i]f an injunction is not granted, Plaintiff will have to explain her termination to future employers, colleagues, and other members of the bar," which is a disproportionately dangerous harm in a small legal community like New Mexico.  **Doc. 2 at 8**. "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to

ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001).  The Tenth Circuit has held that "no remedy could repair the damage to . . . reputation and credibility," enabling district courts to grant preliminary injunctions where there is risk of reputational harm.  *Id.* at 1156–57.  Defendant does not dispute this in any of her pleadings.  The Court will therefore take the assertions at face value and find that Plaintiff has demonstrated an additional risk of irreparable harm.

      C.   *Defendant is unlikely to suffer any injury, and the injunction is not adverse to the public interest.*

The discernible harm factor also counsels towards granting the preliminary injunction because it is not clear that Defendant would suffer any harm, much less harm that would outweigh Plaintiff's risk of harm.  Nor is the preliminary injunction adverse to the public interest.

The final two factors merge where the Government is the opposing party, meaning the Court analyzes the potential harm to Defendant and the harm to the public interest in the same prong.  *Chiles v. Salazar*, 116 F.4th 1178, 1199 (10th Cir. 2024), *cert. granted,* No. 24-539, 2025 WL 746313 (U.S. Mar. 10, 2025).

Here, there is a lack of demonstrable harm to Defendant, meaning there is nothing to outweigh Plaintiff's risk of harm.  There is no evidence, for example, that Defendant has replaced Plaintiff and that restoring Plaintiff to her position would therefore cost the government hundreds of thousands of dollars.  Nor is there any evidence that restoring Plaintiff to her position would somehow cause Defendant reputational harm, or some other harm not easily remedied by money.  And Defendant makes no effort to demonstrate harm, leaving the Court to decide this factor solely on Plaintiff's word.  Given the absence of ascertainable harm, the Court will find for Plaintiff on this factor.  *See Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024)

("Balancing Pineda's non-existent harms against the real harms of non-enforcement of SB 23-169 weighs in favor of Governor Polis.").

Likewise, there is nothing in the record demonstrating that the preliminary injunction would be adverse to the public interest. Plaintiff points out several public policy interests that counsel towards relief: maintaining public confidence in the WCA and in the state's administrative disciplinary procedures, increasing the efficiency of the WCA by allowing Plaintiff to quickly resolve those cases she is already familiar with rather than assigning them to new judges. *See Core Progression Franchise LLC v. O'Hare*, No. 21-1151, 2022 WL 1741836, at *4 (10th Cir. May 31, 2022) (finding the fourth factor counsels towards an injunction where there are several public policy interests favoring it); *Rocky Mountain Gun Owners*, 121 F.4th at 128 (same). The public also has a demonstrated interest in preventing civil rights violations. Given that Defendant does not contest this factor at all, the Court will find that the injunction is not only not adverse to the public interest, it is arguably in the public's interest.

The Court will therefore find that the collapsed third and fourth factors counsel towards the preliminary injunction. The Court therefore finds that Plaintiff has met her burden of demonstrating a clear right to relief because she has demonstrated substantial likelihood of success on at least one of her claims and has demonstrated a risk of irreparable harm. The Court will grant her motion for a preliminary injunction.

## CONCLUSION

Preliminary "injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 129 S.Ct. 365. Plaintiff has shown that she is entitled to preliminary injunctive relief here. Therefore, the Court will grant Plaintiff's preliminary injunction.

An order granting an injunction must describe in reasonably specific detail what acts are required. *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024); Fed. R. Civ. P. 65(d)(1)(c). Defendant is specifically required to reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits. Doing so restores the status quo at the last peaceable position of the parties, as is the purpose of an injunction.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Preliminary Injunction **(Doc. 2)** is **GRANTED.**

_____/S/_____

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

———————————————

SHANON S. RILEY,

       Plaintiff,

   vs.                                    No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN *in her individual*
*and official capacities as the*
*Director of the New Mexico Workers'*
*Compensation Administration*,

       Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR STAY PENDING APPEAL OR CLARIFICATION

THIS MATTER comes before the Court based on Defendant's Emergency Motion for Stay or Clarification and the associated briefing (**doc. 29; doc. 35, doc. 38**).  Having considered the parties' briefing and applicable law, finds that Defendant's Motion is not **well taken** and is therefore **DENIED in part**. The Court will **modify its injunction** to allow Defendant to place Plaintiff on paid administrative leave pending the resolution of this litigation.

## BACKGROUND

Plaintiff served as a Workers' Compensation Judge (WCJ) for the New Mexico Worker's Compensation Administration (WCA) from her appointment on August 20, 2011, to her termination on November 13, 2024. **Doc. 2 at 1–2**.  This action arises from the events leading to her termination, beginning on November 5, 2024.  **Id.**

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting.  **Id. at 2**.  While she arrived at the polls, Plaintiff ultimately did not vote because there was a line and because she was sick.  **Id.**  Plaintiff was aware that she needed to make corrections to her timesheet and intended to make the

1

corrections. the following morning on November 7, 2024. *Id.* The WCA office was closed on November 7 due to inclement weather, and Plaintiff did not have access to her laptop. *Id.* She alleges that as a result of these events, she "forgot to edit her timesheet." *Id.*

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. *Id.* Defendant fired Plaintiff on November 13, 2024, alleging that she had committed time fraud and had thus violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

Plaintiff filed suit on January 14, 2025, seeking injunctive relief and damages under 42 U.S.C. §1983 for civil rights violations, including being deprived of her property interest in her employment without due process of law. **Doc. 1**. At the time of the initial lawsuit, Defendant had not submitted a complaint about the events to the State Personnel board. **Doc. 7 at 2**. On February 4, 2025, the Workers' Compensation Administration subsequently submitted a complaint to the State Personnel Board, in accordance with Section 52-5-2(C) and New Mexico Administrative Code, 1.7.12.25. *Id.* On March 4, 2025, the Board granted Plaintiff's motion and filed an Order of Dismissal dismissing the WCA's complaint for lack of jurisdiction. **Doc. 14-1**.

Defendant offered Plaintiff a modified form of reinstatement on February 6, 2025. **Doc. 7-2**. The offer involved being reinstated to her former position as a Workers' Compensation Judge and placed on paid administrative leave pending the outcome of the State Personnel Board proceedings and made her an at-will employee, rather than subject to firing only for violations of the judicial code of conduct. *Id.***; doc. 10 at 2**. Plaintiff rejected the modified offer on February 14, 2025 on the grounds that it varied from her previous employment and violated her First

2

Amendment rights. **Doc. 10-1.** Defendant gave Plaintiff an updated offer of reinstatement on February 26, 2025, that would still place her on administrative leave until the completion of proceedings but changed the at-will employee language to render Plaintiff able to be fired only in cases of violations of the code of judicial misconduct. **Doc. 18-1**. Plaintiff rejected the offer on the grounds that it continued to violate her First Amendment right to freedom of speech and still did not restore the status quo. **Doc. 18-2**.

This Court issued its Amended Memorandum Opinion and Order Granting Plaintiff's Motion for Preliminary Injunction on May 9, 2025. **Doc. 26**. The Court granted Plaintiff's request for a preliminary injunction, finding that Plaintiff had demonstrated a substantial likelihood of success on her procedural due process claim, that she would likely suffer irreparable harm absent the injunction, that Defendant would not suffer injury, and that the injunction was not adverse to the public interest. *See generally id.* The Court ordered that Defendant reinstate "Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits." *Id.* **at 15**. Defendant now seeks to have the Court stay its preliminary injunction pending appeal or allow her to place Plaintiff on paid administrative leave. **Doc. 29**. The Court considers Defendant's arguments and the associated briefing below.

## LEGAL STANDARD

Courts must consider four factors when deciding whether to stay an order pending appeal: (1) whether the stay applicant has made a strong showing that they are likely to succeed on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The Supreme Court has characterized the standard for a stay pending appeal as requiring

3

a "strong showing" that the applicant is likely to succeed on the merits. *Hilton v. Braunskill*, 481 U.S. at 776, 107 S.Ct. 2113 (citations omitted); *accord Nken v. Holder*, 556 U.S. at 434, 129 S.Ct. 1749 (requiring a "strong showing" of likelihood of success).

ANALYSIS

Defendant argues that she has demonstrated substantial likelihood of success on the merits of her appeal because her actions following the initial controversy have mooted any due process concerns. Likewise, Defendant argues that it is Plaintiff who now deprives herself of due process by not taking advantage of the administrative process to which she allegedly has access. Defendant claims that this, combined with the harms the state will ostensibly suffer, is sufficient for the Court to stay its injunction. For the reasons discussed below, the Court disagrees.

**I.** **The Court will not consider Defendant's Declaration in its reconsideration of the preliminary injunction.**

Defendant filed a sworn declaration discussing the purported harm she would suffer should the Court maintain its preliminary injunction. **Doc. 34**. Interestingly, Defendant does not cite to it in her Emergency Motion, and only cites to it once in her Reply. *See* **Doc. 29; Doc. 38 at 8**. However, she alludes to the harms discussed in the Declaration several times. The Court thus must decide whether it needs to give weight to this document in its decision.

The Court in its discretion declines to consider Defendant's new evidence in deciding whether to stay the preliminary injunction. Defendant appears to request reconsideration of an interlocutory order by seeking "clarification" about whether the Court would allow Defendant to place Plaintiff on administrative leave, despite the Court's order mandating reinstatement. The Court has discretion to reconsider an interlocutory order, and its discretion is not cabined by the standards which apply to Fed. R. Civ. P. 59 and 60 motions. "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225

4

(10th Cir. 2007). Moreover, the Court has discretion to "reconsider" an interlocutory order under Fed. R. Civ. P. 54(b).

The Court has discretion in deciding what standard to apply to reconsideration of an interlocutory order. *Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013) (stating that in considering a motion to reconsider an interlocutory order, the "court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e)"). The Rule 59(e) framework is useful when considering a motion to reconsider an interlocutory order. *Id.*

"Grounds for granting a Rule 59(e) motion include '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)); *see also Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (Rule 59(e) relief is appropriate where "the court has misapprehended the facts, a party's position, or the controlling law."). However, "[Rule 59(e)] 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.' " *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted). Additionally, Rule 59 "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *see also Servants of Paraclete*, 204 F.3d at 1012 (Filing a motion pursuant to Rule 59 is not appropriate "to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").

Applying these standards in its discretion to this interlocutory order, the Court concludes that Defendant has not explained why she could not have made these arguments or advanced this evidence in her original Response to the Motion for a Preliminary Injunction. The fact that Defendant had reassigned or would be imminently reassigning Plaintiff's caseload, and the subsequent alleged upheaval would have been abundantly clear at the time Plaintiff filed this action. Moreover, in determining whether Defendants have made a strong showing that they are likely to succeed on appeal, Defendant's declaration is irrelevant. Appellate courts generally decide appeals based on the record before the district court at the time it made its decision.

The Court will therefore not consider Defendant Heather Jordan's declaration in its analysis of Defendant's request that the Court reconsider its preliminary injunction.

II.    **Defendant has not satisfied the factors for a stay of the Court's injunction.**

First, none of the factors required for the Court to stay its injunction counsel towards Defendant. Defendant has demonstrated little possibility of success on appeal, and the harm to Plaintiff and the public interest outweighs any harm to Defendant.

   A.  *Defendant has not demonstrated likelihood of succeeding on appeal.*

First, Defendant has not shown a substantial likelihood of success on appeal because she has not demonstrated the Court erred in its application of the preliminary injunction factors.

The Court largely reincorporates its analysis from its order. **Doc. 26**. The Court found that Plaintiff demonstrated substantial likelihood of success on her procedural due process claim. The Supreme Court has held that "[a]n essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). The Supreme Court has

emphasized that this "root requirement" is *pretermination* process, meaning "that an individual be given an opportunity for a hearing *before* [they are] deprived of any significant property interest. *Id.* (citing *Boddie v. Connecticut,* 401 U.S. 371, 379(1971) (emphasis in original); *Bell v. Burson,* 402 U.S. 535, 542 (1971)). Pretermination due process is necessary due to the "severity of depriving a person of the means of livelihood. *Loudermill,* 470 U.S. at 543.

The fact remains that Plaintiff received no such process, and Defendant offers no new information to demonstrate otherwise. While Defendant attempted to retroactively rectify the situation by filing a complaint with the Personnel Board after Plaintiff had already been fired, Plaintiff received no notice or opportunity to respond prior to her termination—Defendant walked into Plaintiff's office, inquired about her timesheet, and immediately fired her. *Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services*, 936 F.2d 483, 491 (10th Cir. 1991) ("Where the state action is the dismissal of a tenured public employee, the procedural safeguard required by the Constitution typically includes a pre-termination as well as a post-termination hearing."). Plaintiff was entitled to some form of pretermination process, including notice of the charge and an opportunity to respond. This process, laid out in New Mexico state law, involves filing a complaint with the New Mexico Personnel Board and holding hearing proceedings in which both sides may argue their case. *See Garcia v. City of Albuquerque*, 232 F.3d 760, 770 (10th Cir. 2000) ("Moreover, Garcia was afforded three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing. In the circumstances, Garcia received all of the process that he was due."). Plaintiff received no notice or opportunity to be heard, and Defendant conceded that she did not provide Plaintiff with any form of process prior to her termination. **Doc. 14 at ¶6** (Both parties stipulate that "[p]rior to delivering the termination letter, Defendant did not submit a complaint to the State

Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any other required procedure under the New Mexico Administrative Code in terminating Plaintiff."). Given her concession and reiteration of old arguments in her new Motion, Defendant has not made the strong showing necessary for a stay. [1]

Defendant is incorrect that Plaintiff has somehow created her harm by failing to take advantage of the post-deprivation offer of pre-deprivation process Defendant claims to have offered her. By the time Defendant offered Plaintiff paid administrative leave, Defendant had already completed a procedural due process violation by failing to provide Plaintiff with notice and the opportunity to be heard before terminating her. *See e.g.*, Doc. 1 at ¶¶20–21 (detailing how Defendant immediately terminated Plaintiff without notice upon discussing whether Plaintiff had voted). Nothing in Defendant's Motion changes the Court's understanding of the sequence of events. Nor is Plaintiff somehow ignoring or avoiding the administrative process to which she is entitled. The State Personnel Board dismissed Defendant's complaint because it lacked jurisdiction. Defendant filed her Complaint after she had terminated Plaintiff, divesting the Board of jurisdiction because Plaintiff was not a current WCJ. That is a result of Defendant's failure to follow procedure, and Plaintiff cannot be compelled to take part in proceedings where the governing body lacks jurisdiction. Tenth Circuit case law requires *pretermination* process, and the Court can locate no precedent suggesting that *ex post facto* remedies can make up for a lack of pretermination process. *Garcia*, 232 F.3d at 769 (discussing pretermination process); *Nard v. City Of Oklahoma City*, 153 Fed. Appx. 529, 534 (10th Cir. 2005) ("The undisputed facts demonstrate that Defendant Oklahoma City provided Plaintiff with all of the procedure he was due under the

---

[1] Defendant objects to the Court's consideration of Plaintiff's reputational harm in its initial Order. And it is true that reputational harm alone is not sufficient to sustain a preliminary injunction. *Hunter v. Hirsig*, 614 F. App'x 960, 963 (10th Cir. 2015). However, Plaintiff's reputational harm was incidental to her constitutional deprivation. Her reputational harm informs, but does not decide, the Court's analysis.

Fourteenth Amendment *prior* to *demoting him*." (emphasis added)); *Archuleta*, 936 F.2d at 490 (discussing the pretermination process plaintiff received).

The Court also found that Plaintiff would suffer irreparable injury. The Tenth Circuit collapses the first and second factors in the context of constitutional claims, and a plaintiff who demonstrates a likelihood of success on the merits simultaneously demonstrates irreparable injury. *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 792 (10th Cir. 2019). Because Plaintiff has demonstrated substantial likelihood of success on her procedural due process claim, this alone was sufficient to find the second factor skews in favor of Plaintiff.

The third and fourth factors collapse in a constitutional analysis. Defendant offered in a sworn declaration that an injunction would irreparably harm her and the state. **Doc. 34**. However, those were not the facts before the Court at the time, and as discussed *supra*, a motion to reconsider is not a second bite at the injunctive apple. *See supra* at Section I; *see also Autobar Sys. of N.J. v. Berg Liquor Sys., LLC*, No. CV233790MASJBD, 2024 WL 919183, at *3 (D.N.J. Mar. 4, 2024) (citing *Int'l Brotherhood of Teamsters, Loc. 211 v. PG Publ'g Co.*, 19-1472, 2019 WL 9101872, at *2 (W.D. Pa. Dec. 27, 2019) and *O'Donnell v. Harris County*, 260 F. Supp. 3d 810, 815 (S.D. Tex. 2017)). At the time Plaintiff's Motion was fully briefed, Defendant did not proffer any supposed harm she might suffer if the Court were to grant Plaintiff's Motion. And even if Defendant had originally alleged the additional facts included in her declaration, it is "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple-Fort Collins*, 916 F.3d at 807. Defendant cannot show that the collapsed factors are likely to weigh against her on appeal. She thus cannot make any showing, much less a strong one, that she is substantially likely to succeed on appeal.

B. *There would be no irreparable harm to the state absent a stay.*

Defendant argues that the "Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415 (2025). The Supreme Court has held that the "governmental interest in termination does not outweigh [the plaintiff's constitutional right to due process." *Loudermill*, 470 U.S. at 544–45. The fact remains that "a loss of a constitutional right usually trumps any harm to the defendant, even under a heightened standard." *Springer v. Grisham*, 704 F. Supp. 3d 1206, 1221 (D.N.M. 2023); *Free the Nipple-Fort Collins*, 916 F.3d at 806-7 ("When a constitutional right hangs in the balance, though, even a temporary loss usually trumps any harm to the defendant.... (internal quotations and citations omitted)). Certainly, Defendant's alleged harms—disruption of the workplace, reassigning of cases, upheaval should Defendant have to terminate Plaintiff once more—do not override the substantial harm Plaintiff suffered and continues to suffer from Defendant's due process violation. The Court therefore finds that Defendant has not satisfied the second stay factor.

C. *There would be substantial injury to other parties in proceedings were the Court to stay the injunction.*

Likewise, there would be substantial injury to Plaintiff if the Court stayed its injunction. Plaintiff continues to be deprived of her property interest to which she has a due process right. *See Springer*, 704 F. Supp. 3d at 1221 ("A loss of a constitutional right usually trumps any harm to the defendant, even under a heightened standard."); *see also Loudermill*, 470 U.S. at 543 ("[T]he significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood."). A loss of a constitutional right trumps harm to Defendant, particularly where Defendant already cannot satisfy any of the other stay factors. The Court therefore finds this factor counsels against a stay as well.

D. *Public interest considerations counsel against a stay.*

Finally, Defendant does not satisfy the public interest factor. Defendant maintains that the public retains an interest in preserving judicial legitimacy. *See Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 446 (2015) (Public perception of judicial integrity is "a state interest of the highest order."). However, it is "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple-Fort Collins*, 916 F.3d at 807. The Court finds Defendant has not made the requisite "strong showing" to find that this factor counsels towards staying the injunction. *Nken*, 556 U.S. at 434. The Court therefore will not stay its preliminary injunction.

### III.    The Court will modify its injunction to allow Defendant to place Plaintiff on paid administrative leave pending the resolution of the litigation.

The Court declines to stay its injunction because Defendant has not satisfied the factors, and Plaintiff still demonstrates substantial likelihood of success on the merits. However, given the recent language in *Trump v. Wilcox*, it finds that modifying its injunction is "appropriate to avoid the disruptive effects of repeated removal and reinstatement of officers during the pendency of this litigation. 145 S. Ct. 1415 (2025). Fed. R. Civ. P. 62 allows a district court to "suspend, modify, restore, or grant an injunction" while an appeal is pending. Defendant therefore may place Plaintiff on paid administrative leave. Defendant must provide Plaintiff with the adequate pre-deprivation process she is owed. Defendant may not restrict Plaintiff's ability to speak with her colleagues, nor may Defendant modify the conditions of Plaintiff's employment such that she serves at the pleasure of the Governor rather than subject to removal for violations of the Judicial Code of Conduct.

**CONCLUSION**

IT IS THEREFORE ORDERED THAT:

1.  Defendant's Emergency Motion to Stay (**Doc. 29**) is **DENIED in part;** and

2.  Defendant may place Plaintiff on Paid administrative leave in lieu of full restoration pending the conclusion of this litigation.


_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE