# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

SHANON S. RILEY,

    Plaintiff/Appellee,

v.

HEATHER JORDAN, in her individual and official capacities as the Director of the New Mexico Workers' Compensation Administration,

    Defendant/Appellant.

Case No. 25-2050

---

Appeal from the Honorable Kea W. Riggs of the
United States District Court for the District of New Mexico
No. 1:25-cv-00044-KWR-KK

---

## APPENDIX

---

Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
*Attorneys for Defendant/Appellant*

# TABLE OF CONTENTS

Document 1, Complaint (Jan. 1, 2025)..................................................App. 1

Document 1-1, Civil Cover Sheet (Jan. 14, 2025)...........................App. 14

Document 2, Motion for Preliminary Injunction (Jan. 14, 2025)..................App. 15

Document 7, Defendant's Partial Motion to Dismiss Without Prejudice and
    Stay Pending the Administrative Proceedings (Feb. 6, 2025)..............App. 26

Document 7-1, Workers' Compensation Administration complaint to NM
    State Personnel Board (Feb. 6, 2025)....................................App. 34

Document 7-2, Notice of paid administrative leave (Feb. 6, 2025) ...............App. 46

Document 8, Defendant's Response in Opposition to Plaintiff's Motion
    for Preliminary Injunction (Feb. 6, 2025) .............................App. 47

Document 8-1, Workers' Compensation Administration Complaint from Farrell
    to NM State Personnel Board (Feb. 6, 2025) .......................App. 58

Document 8-2, Notice of paid administrative leave (Feb. 6, 2025) ...............App. 70

Document 10, Reply to Response to Motion for Preliminary Injunction
    (Feb. 18, 2025)........................................................App. 71

Document 10-1, Signed notice of paid administrative leave
    (Feb. 18, 2025)........................................................App. 80

Document, 10-2, Email to Cody Rogers and Blade Allen from Jeff Vescovi
    (Feb. 18, 2025)........................................................App. 81

Document 12, Response in Opposition to Defendant's Partial Motion to Dismiss
    without Prejudice and Stay Pending the Administrative Proceedings
    (Feb. 19, 2025)........................................................App. 82

Document 14, Notice of Supplemental Exhibit (Mar. 4, 2025)......................App. 91

Document 14-1, Order of Dismissal (Mar. 4, 2025)........................App. 93

Document 15, Defendant's Reply in Support of Partial Motion to Dismiss without
Prejudice and Stay Pending the Administrative Proceedings
(Mar. 5, 2025) ......................................................................................App. 95

Document 17, Order Directing Parties to Supplement Record
(Apr. 8, 2025)......................................................................................App. 107

Document 18, Notice of Supplemental Exhibits (Apr. 8, 2025)...................App. 108

Document 18-1, Signed notice of paid administrative leave
(Apr. 8, 2025)......................................................................................App. 110

Document 18-2, Email to Cody Rogers and Blade Allen from Jeff Vescovi
(Apr. 8, 2025)......................................................................................App. 111

Joint Status Report and Provisional Discovery Plan .....................................App. 112

Document 24, Memorandum Order and Opinion Granting Plaintiffs' Motion
For Preliminary Injunction (May 8, 2025) ..........................................App. 124

Document 25, Memorandum Order and Opinion Denying Defendant's Partial
Motion to Dismiss and Stay (May 9, 2025) ........................................App. 139

Document 26, Amended Memorandum Opinion and Order Granting Plaintiff's
Motion for Preliminary Injunction (May 9, 2025) ..............................App. 149

Document 27, Amended Memorandum Opinion and Order Denying Defendant's
Partial Motion to Dismiss and Stay (May 9, 2025)............................App. 164

Document 29, Defendant's Emergency Motion for Stay Pending Appeal or
Clarification (May 16, 2025) ...............................................................App. 174

Document 31, Defendant's Notice of Appeal (May 19, 2025).....................App. 188

Document 34, Declaration of Heather Jordan (May 27, 2025) ....................App. 190

Document 35, Response in Opposition to Defendant's Emergency Motion for
Stay Pending Appeal or Clarification (June 6, 2025).........................App. 193

Document 35-1, Letter to Riley from Jordan (June 2, 2025)........................App. 210

Document 36, Plaintiff's Motion for Partial Summary Judgment as to Counts I
    and IV (June 2, 2025) ..........................................................................App. 211

Document 38, Defendant's Reply in Support of Emergency Motion for Stay
    Pending Appeal or Clarification (June 5, 2025) .................................App. 226

Document 38-1, Letter to Riley from Jordan (June 5, 2025)........................App. 236

Document 42, Memorandum Opinion and Oder Denying Defendant's Emergency
    Motion for Stay Pending Appeal or Clarification
    (June 16, 2025) ...................................................................................App. 237

Document 44, Response in Opposition to Plaintiff's Motion for Partial Summary
    Judgment as to Counts I and IV (June 20, 2025) ...............................App. 249

Document 44-1, Declaration of Heather Jordan (June 20, 2025)................App. 268

Document 45, Defendant's Motion for Summary Judgment
    (June 20, 2025) ...................................................................................App. 272

Document 45-1, Declaration of Heather Jordan (June 20, 2025)................App. 291

# U.S. District Court
## United States District Court - District of New Mexico (Albuquerque)
## CIVIL DOCKET FOR CASE #: 1:25-cv-00044-KWR-KK

Riley v. Jordan
Assigned to: District Judge Kea W. Riggs
Referred to: Magistrate Judge Kirtan Khalsa
Case in other court: Tenth Circuit Court of Appeals, 25-02050
Cause: 42:1983 Civil Rights Act

Date Filed: 01/14/2025
Jury Demand: None
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

## Plaintiff

**Shanon S. Riley**

represented by **Elizabeth Harrison**
Kennedy, Hernandez & Associates, P.C.
201 Twelfth Street NW
Albuquerque, NM 87102
505-842-8662
Fax: 505-842-0653
Email: eharrison@kennedyhernandez.com
*ATTORNEY TO BE NOTICED*

**Jeffrey Vescovi**
Kennedy, Hernandez & Harrison, P.C.
201 Twelfth Street, NW
Albuquerque, NM 87102
505-842-8662
Email: jvescovi@kennedyhernandez.com
*ATTORNEY TO BE NOTICED*

**Jessica M Hernandez**
Kennedy, Hernandez & Harrison, P.C.
201 12th Street NW
Albuquerque, NM 87102
505-842-8662
Fax: 505-842-0653
Email: jhernandez@kennedyhernandez.com
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**Heather Jordan**
*in her individual and official capacities as
the Director of the New Mexico Workers'
Compensation Administration*

represented by **Blade Allen**
Serpe Andrews, PLLC
2540 El Paseo Rd
Las Cruces, NM 88001
713-452-4454
Email: ballen@serpeandrews.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cody R. Rogers**
Serpe Andrews, PLLC
2540 El Paseo Rd, Suite D
Las Cruces, NM 88001
575-288-1453
Email: crogers@serpeandrews.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/14/2025 | 1 | COMPLAINT *for Injunctive Relief and Damages Under 42 U.S.C. § 1983 for Civil Rights Violations* against Heather Jordan ( Filing Fee - Online Payment), filed by Shanon S. Riley. (Attachments: # 1 Civil Cover Sheet)(Vescovi, Jeffrey) (Entered: 01/14/2025) |
| 01/14/2025 | 2 | MOTION for Preliminary Injunction by Shanon S. Riley. (Vescovi, Jeffrey) (Entered: 01/14/2025) |
| 01/14/2025 |  | United States District Judge Kea W. Riggs and United States Magistrate Judge Kirtan Khalsa assigned. (eh) (Entered: 01/14/2025) |
| 01/14/2025 | 3 | NOTICE by Shanon S. Riley *Informing Court of Service upon Defendant and Relevant Parties through Electronic Mail* (Vescovi, Jeffrey) (Entered: 01/14/2025) |
| 01/15/2025 |  | Filing and Administrative Fees Received: $ 405 receipt number ANMDC-9728813 re 1 Complaint filed by Shanon S. Riley (Payment made via Pay.gov)(Vescovi, Jeffrey) (Entered: 01/15/2025) |
| 01/15/2025 |  | Summons Issued as to Heather Jordan and U.S. Attorney. (eh) (Entered: 01/15/2025) |
| 01/21/2025 | 4 | SUMMONS Returned Executed by Shanon S. Riley. Heather Jordan served on 1/15/2025, answer due 2/5/2025. (Hernandez, Jessica) (Entered: 01/21/2025) |
| 01/21/2025 | 5 | SUMMONS Returned Executed by Shanon S. Riley. (Hernandez, Jessica) (Entered: 01/21/2025) |
| 01/21/2025 | 6 | SUMMONS Returned Executed by Shanon S. Riley. Heather Jordan served on 1/17/2025, answer due 2/7/2025. (Hernandez, Jessica) (Entered: 01/21/2025) |
| 02/06/2025 | 7 | MOTION to Dismiss *Without Prejudice*, MOTION to Stay *Pending the Administrative Proceedings* by Heather Jordan. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Rogers, Cody) (Entered: 02/06/2025) |
| 02/06/2025 | 8 | RESPONSE in Opposition re 2 MOTION for Preliminary Injunction filed by Heather Jordan. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Rogers, Cody) (Entered: 02/06/2025) |
| 02/07/2025 | 9 | NOTICE of Appearance by Cody R. Rogers on behalf of Heather Jordan (Rogers, Cody) (Entered: 02/07/2025) |
| 02/18/2025 | 10 | REPLY to Response to Motion re 2 MOTION for Preliminary Injunction filed by Shanon S. Riley. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Vescovi, Jeffrey) (Entered: 02/18/2025) |
| 02/18/2025 | 11 | NOTICE of Briefing Complete by Shanon S. Riley re 2 MOTION for Preliminary Injunction filed by Shanon S. Riley (Vescovi, Jeffrey) (Entered: 02/18/2025) |

| 02/19/2025 | 12 | RESPONSE in Opposition re 7 MOTION to Dismiss *Without Prejudice* MOTION to Stay *Pending the Administrative Proceedings* filed by Shanon S. Riley. (Vescovi, Jeffrey) (Entered: 02/19/2025) |
|---|---|---|
| 02/28/2025 | 13 | INITIAL SCHEDULING ORDER by Magistrate Judge Kirtan Khalsa. Counsel and any pro se parties are to meet and confer by 4/2/2025. The parties' Joint Status Report and Provisional Discovery Plan is due by 4/14/2025. A Telephonic Rule 16 Initial Scheduling Conference is set for 4/23/2025 at 10:30 AM before Judge Khalsa. Counsel and any pro se parties are to call the Court's WebEx conference line at (855) 244-8681 and enter the code 23081079716 to connect to the proceedings. (dr) (Entered: 02/28/2025) |
| 03/04/2025 | 14 | NOTICE by Shanon S. Riley *of Supplemental Exhibit* (Attachments: # 1 Exhibit 1) (Vescovi, Jeffrey) (Entered: 03/04/2025) |
| 03/05/2025 | 15 | RESPONSE in Support re 7 MOTION to Dismiss *Without Prejudice* MOTION to Stay *Pending the Administrative Proceedings* filed by Heather Jordan. (Rogers, Cody) (Entered: 03/05/2025) |
| 03/10/2025 | 16 | NOTICE of Briefing Complete by Heather Jordan re 7 MOTION to Dismiss *Without Prejudice* MOTION to Stay *Pending the Administrative Proceedings* filed by Heather Jordan (Rogers, Cody) (Entered: 03/10/2025) |
| 04/08/2025 | 17 | ORDER DIRECTING PARTIES TO SUPPLEMENT RECORD by District Judge Kea W. Riggs. (cab) (Entered: 04/08/2025) |
| 04/08/2025 | 18 | NOTICE by Shanon S. Riley *of Supplemental Exhibits* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Vescovi, Jeffrey) (Entered: 04/08/2025) |
| 04/14/2025 | 19 | Joint Status Report *and Provisional Discovery Plan* by Shanon S. Riley (Vescovi, Jeffrey) (Entered: 04/14/2025) |
| 04/15/2025 | 20 | CERTIFICATE OF SERVICE by Shanon S. Riley *Initial Disclosures* (Vescovi, Jeffrey) (Entered: 04/15/2025) |
| 04/15/2025 | 21 | CERTIFICATE OF SERVICE by Heather Jordan *Initial Disclosures* (Allen, Blade) (Entered: 04/15/2025) |
| 04/23/2025 | 22 | Clerk's Minutes for proceedings held before Magistrate Judge Kirtan Khalsa: Telephonic Rule 16 Initial Scheduling Conference held on 4/23/2025. (dr) (Entered: 04/23/2025) |
| 04/23/2025 | 23 | ORDER ADOPTING JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN WITH CHANGES AND SETTING CASE MANAGEMENT DEADLINES by Magistrate Judge Kirtan Khalsa. Plaintiff to seek leave to join and amend by 6/14/25. Defendants to seek leave to join and amend by 7/7/25. Plaintiff's expert disclosures due by 8/18/2025. Defendants' expert disclosures due by 9/17/2025. Discovery is due by 10/17/25. Discovery motions are due by 11/7/25. Pretrial Motions are due by 11/17/25. A proposed pretrial order is due from Plaintiff to Defendant by 2/17/26. Consolidated proposed Pretrial Order due from Defendants to Court by 3/3/26. (dr) (Entered: 04/23/2025) |
| 05/08/2025 | 24 | MEMORANDUM ORDER AND OPINION GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION by District Judge Kea W. Riggs re: 2 MOTION for Preliminary Injunction filed by Shanon S. Riley. (cab) (Entered: 05/08/2025) |
| 05/09/2025 | 25 | MEMORANDUM ORDER AND OPINION by District Judge Kea W. Riggs DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS AND STAY 7 MOTION to Dismiss *Without Prejudice* MOTION to Stay *Pending the Administrative Proceedings* filed by Heather Jordan. (cab) (Entered: 05/09/2025) |

| 05/09/2025 | 26 | AMENDED MEMORANDUM OPINION AND ORDER granting 2 MOTION for Preliminary Injunction by District Judge Kea W. Riggs. (cab) Modified text on 5/12/2025 (bap). (Entered: 05/09/2025) |
|---|---|---|
| 05/09/2025 | 27 | AMENDED MEMORANDUM OPINION AND ORDER denying 7 MOTION to Dismiss *Without Prejudice* MOTION to Stay *Pending the Administrative Proceedings* by District Judge Kea W. Riggs. (cab) Modified text on 5/12/2025 (bap). (Entered: 05/09/2025) |
| 05/15/2025 | 28 | ORDER SETTING TELEPHONIC STATUS CONFERENCE by Magistrate Judge Kirtan Khalsa. A Telephonic Status Conference to discuss the scheduling of a Rule 16 Settlement Conference is set for **June 11, 2025, at 1:30 p.m.** before Judge Khalsa. Counsel are to call the Court's WebEx conference line at (855) 244-8681 and enter the code 23081079716 to connect to the proceedings. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (bkr) (Entered: 05/15/2025) |
| 05/16/2025 | 29 | Emergency MOTION to Stay by Heather Jordan. (Allen, Blade) (Entered: 05/16/2025) |
| 05/16/2025 | 30 | ***FILED IN ERROR*** NOTICE of APPEAL by Heather Jordan (Allen, Blade) Modified on 5/19/2025 to edit text to reflect Notice of Appeal (fs). Modified on 5/19/2025 to mark FIE. Emailed attorneys of record to re-file (fs). (Entered: 05/16/2025) |
| 05/19/2025 | 31 | NOTICE OF APPEAL by Heather Jordan. (Filing Fee - Online Payment) (Allen, Blade) (Entered: 05/19/2025) |
| 05/19/2025 | 32 | Transmission of Preliminary Record to US Court of Appeals re 31 Notice of Appeal (Attachments: # 1 Preliminary Record) (fs) (Entered: 05/19/2025) |
| 05/20/2025 | | Filing Fee Received: $ 605 receipt number ANMDC-9967240 re 31 Notice of Appeal filed by Heather Jordan (Payment made via Pay.gov)(Allen, Blade) (Entered: 05/20/2025) |
| 05/20/2025 | 33 | USCA Information Letter with Case Number 25-2050 for 31 Notice of Appeal filed by Heather Jordan. (bap) (Entered: 05/20/2025) |
| 05/27/2025 | 34 | DECLARATION *of Heather Jordan* by Heather Jordan (Allen, Blade) (Entered: 05/27/2025) |
| 06/02/2025 | 35 | RESPONSE in Opposition re 29 Emergency MOTION to Stay *Pending Appeal or Clarification* filed by Shanon S. Riley. (Attachments: # 1 Exhibit 1) (Vescovi, Jeffrey) (Entered: 06/02/2025) |
| 06/02/2025 | 36 | MOTION for Partial Summary Judgment *as to Counts I and IV* by Shanon S. Riley. (Vescovi, Jeffrey) (Entered: 06/02/2025) |
| 06/05/2025 | 37 | TRANSCRIPT ORDER FORM by Heather Jordan (transcript not necessary) for the 31 Notice of Appeal (Rogers, Cody) Modified on 6/5/2025 (bap). (Entered: 06/05/2025) |
| 06/05/2025 | 38 | REPLY to Response to Motion re 29 Emergency MOTION to Stay filed by Heather Jordan. (Attachments: # 1 Exhibit Plaintiff's Reinstatement Letter) (Allen, Blade) (Entered: 06/05/2025) |
| 06/05/2025 | | Minute order filed - Notice due that record is complete by 06/12/2025 for Mitchell R. Elfers, Clerk of Court (oclk). (Text Only - No Attachment) [25-2050] (bap) (Entered: 06/05/2025) |
| 06/05/2025 | 39 | NOTICE TO USCA that Record is Complete re 31 Notice of Appeal. (bap) (Entered: 06/05/2025) |
| 06/11/2025 | 40 | NOTICE of Briefing Complete by Heather Jordan re 29 Emergency MOTION to Stay filed by Heather Jordan (Allen, Blade) (Entered: 06/11/2025) |

| | | |
|---|---|---|
| 06/11/2025 | 41 | Clerk's Minutes for proceedings held before Magistrate Judge Kirtan Khalsa: Telephonic Status Conference to Discuss Scheduling Settlement held on 6/11/2025. (Recording Info: N/A) (dr) (Entered: 06/11/2025) |
| 06/16/2025 | 42 | MEMORANDUM OPINION AND ORDER by District Judge Kea W. Riggs denying in part 29 Emergency Motion to Stay (bap) (Entered: 06/16/2025) |
| 06/17/2025 | 43 | Unopposed MOTION for Extension of Time to File Response/Reply as to 36 MOTION for Partial Summary Judgment *as to Counts I and IV* by Heather Jordan. (Allen, Blade) (Entered: 06/17/2025) |
| 06/20/2025 | 44 | RESPONSE in Opposition re 36 MOTION for Partial Summary Judgment *as to Counts I and IV* filed by Heather Jordan. (Attachments: # 1 Exhibit Heather Jordan Declaration) (Allen, Blade) (Entered: 06/20/2025) |
| 06/20/2025 | 45 | First MOTION for Summary Judgment by Heather Jordan. (Attachments: # 1 Exhibit Heather Jordan Declaration) (Allen, Blade) (Entered: 06/20/2025) |
| 06/23/2025 | 46 | ORDER by District Judge Kea W. Riggs granting 43 Motion for Extension of Time to File Response/Reply [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (cab) (Entered: 06/23/2025) |
| 06/25/2025 | 47 | ORDER OF USCA denying motion for stay filed by Heather Jordan, See Order for specifics. (bap) (Entered: 06/25/2025) |
| 06/27/2025 | 48 | NOTICE by Shanon S. Riley *of Stipulated Extension of Time to File Response to Defendant's MSJ* (Vescovi, Jeffrey) (Entered: 06/27/2025) |
| 07/02/2025 | 49 | NOTICE by Shanon S. Riley *of Stipulated Extension of Time to File Reply in Support of Plaintiff's Motion for Partial Summary Judgment* (Vescovi, Jeffrey) (Entered: 07/02/2025) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SHANON S. RILEY,**

       **Plaintiff,**

**v.**                                       **No. _____**

**HEATHER JORDAN, in her individual**
**and official capacities as the Director**
**of the New Mexico Workers'**
**Compensation Administration,**

       **Defendant.**

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
### UNDER 42 U.S.C. § 1983 FOR CIVIL RIGHTS VIOLATIONS

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., brings this Complaint against Defendant Heather Jordan, for injunctive relief and damages under 42 U.S.C. § 1983 for civil rights violations of due process under color of state law.

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1331. This case presents a civil action arising under the Constitution, laws, or treaties of the United States.

2.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to these claims occurred in this district.

## PARTIES

3.      Plaintiff was a resident of Bernalillo County, New Mexico at all times relevant to this action.

4.      Plaintiff was a duly appointed Workers' Compensation Judge (WCJ) pursuant to New Mexico law, regulation, and procedure.

5.      Upon information and belief, at all relevant times, Defendant Heather Jordan was the Director of the New Mexico Workers' Compensation Administration (WCA) and acting within the scope of her duties.

## FACTUAL ALLEGATIONS

6.      On August 20, 2011, Plaintiff was appointed to an initial one-year term as a WCJ pursuant to NMSA 1978, Section 52-5-2(B).

7.      Following review by the Director of the WCA, Plaintiff was appointed to subsequent five-year terms as established by Section 52-5-2(B).

8.      Plaintiff was reappointed to five-year terms in August of 2012, August of 2017, and August of 2022.

9.      As a WCJ, Plaintiff was required to conform to substantially all Canons of the New Mexico Code of Judicial Conduct. *See* § 52-5-2(C).

10.     WCA policy and procedure requires all WCJs to account for a minimum of forty hours a week in the State of New Mexico payroll system (SHARE) by either working that time or entering leave. So long as these requisites are met, WCJs have considerable discretion in setting their schedules. While WCJs are required to log a minimum of forty hours per week, they are not awarded overtime nor are they awarded comp time for working longer hours. It is not uncommon for a WCJ to work in excess of forty hours per week.

**App. 2**

11.    As the head of her division (Adjudication), Plaintiff was tasked with many administrative responsibilities.

12.    On November 4, 2024, Plaintiff took a vacation day for which she entered eight hours of leave. But in order to fulfill her duties that morning, Plaintiff performed WCA work while on leave.

13.    On November 5, 2024 (Election Day), after returning from vacation, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. That afternoon, Plaintiff left work to vote. She was driven home by a colleague to obtain her vehicle. She then drove to a polling location and discovered there was a line. As Plaintiff was feeling ill, she decided to forgo voting and returned home.

14.    The following day, November 6, 2024, was a very busy day at the office. On her way home from work, Plaintiff realized that, among other matters, she needed to make corrections to her timesheet in SHARE. She intended to do so first thing the following morning.

15.    However, on November 7, 2024, the Albuquerque WCA office was closed due to heavy snowfall the night before. In addition to other administrative duties, Plaintiff was responsible for informing Adjudication staff that the Albuquerque WCA office was closed, ensuring that time was entered in SHARE for Adjudication employees, changing time entries for the day to account for the office closure, and approving employee time for the pay period. Plaintiff had until noon on November 7 to submit her approval, otherwise Adjudication employees would not have received pay for that period.

16.    As the result of the office closure, Plaintiff did not have access to her computer or email, making her tasks that morning extremely difficult. Ultimately, Plaintiff completed her payroll obligations, but given her technological difficulties, administrative responsibilities, and

time constraints, Plaintiff simply forgot to substitute or remove the two hours of administrative voting leave that she had previously entered.

17.    At the time, Plaintiff had accrued over 200 hours of annual leave and over 240 hours of sick leave. Furthermore, Plaintiff entered eight hours of annual leave on November 4, 2024, despite having worked almost half of that time, and she worked the majority of the day on November 5, 2024.

18.    Had Plaintiff remembered to amend the two hours of administrative leave on the morning of November 7, 2024, she could have substituted that time for annual leave or sick leave. Alternatively, Plaintiff could have removed the administrative voting leave from her timesheet altogether, as she had already fulfilled the time required by the terms of her employment.

19.    On November 12, 2024, New Mexico Governor Michelle Lujan Grisham appointed Defendant to serve as the Director of the WCA.

20.    The very next day, November 13, 2024, Plaintiff was fulfilling her duties as a WCJ when Defendant and another WCA employee entered Plaintiff's office and asked if she voted on Election Day. Plaintiff responded that she had left work and attempted to vote but ultimately did not do so.

21.    To Plaintiff's surprise, Defendant immediately delivered Plaintiff a written notice, signed by Defendant, informing Plaintiff that "effective immediately, your employment as a Worker's [*sic*] Compensation Judge for the Workers [*sic*] Compensation Administration is terminated."

22.    The letter stated that Plaintiff was "a Governor Exempt employee . . . required to follow the Governor's Code of Conduct."

**App. 4**

23.    The letter alleged that Plaintiff violated the Code of Judicial Conduct when she "entered two (2) hours of Voting leave for purposes of voting" on her timesheet but did not in fact vote.

24.    Plaintiff asked Defendant whether there was anyone she could speak with to explain the situation. Defendant stated that, although Plaintiff could try, the decision had already been made.

25.    On November 13 and 14, 2024, Plaintiff called the Office of the Governor of the State of New Mexico (Governor's Office) to request an opportunity to explain the events surrounding her failure to change her timesheet. On both occasions, Plaintiff's request was denied.

26.    Under New Mexico law, the exclusive grounds for Plaintiff's dismissal as a WCJ prior to the expiration of her term are violations of the Code of Judicial Conduct. *See* § 52-5-2(C).

27.    Prior to dismissal for a violation, a complaint must be submitted to the State Personnel Board. *Id.*

28.    The procedural requirements for filing a complaint and conducting a hearing are provided for in the New Mexico Administrative Code. *See* 1.7.12.25 NMAC.

29.    Upon receipt of the complaint, the Board's duly appointed hearing officer "shall serve a copy of the complaint on the [WCJ] by certified mail." 1.7.12.25(C) NMAC.

30.    During a hearing, a WCJ "shall have the right and reasonable opportunity to defend against the charges by introduction of evidence, to be represented by counsel and to examine and cross-examine witnesses." 1.7.12.25(G)(4) NMAC.

31.    Following a hearing, the State Personnel Board must consider the hearing officer's report and hearing record before making a finding "as to whether there was a violation of the code

of judicial conduct." 1.7.12.25(K) NMAC. The State Personnel Board then shares its findings with the WCA director. *Id.*

32.     On November 20, 2024, Plaintiff filed a Notice of Appeal of Termination with the State Personnel Board regarding her dismissal from the WCA, explaining that she did not receive a copy of a complaint, nor was she aware of any record, evidence introduced, hearing officer's ruling, or findings from the State Personnel Board concerning her alleged violation of the Code of Judicial Conduct.

33.     On November 25, 2024, Judge Haught of the State Personnel Board issued an Order of Dismissal based on Plaintiff's Notice of Appeal of Termination. The Order stated, "[t]his forum is not aware of a complaint to the Board, which was filed against the Appellant." As no complaint had been filed, the appeal was dismissed for lack of jurisdiction.

34.     As of the date of this filing, Director Jordan has neither filed a complaint with the State Personnel Board nor reinstated Plaintiff to her previous position as a WCJ with the WCA.

35.     The WCA has a history of terminating WCJs without following the procedures required by New Mexico law. For instance, in *Fuller v. Varela*, No. 1:03-cv-00311-WJ-RHS (D.N.M. 2003), the District of New Mexico considered a consolidated case brought by two WCJs who were terminated without reason and without a hearing. *See also Harmon v. Varela*, No. 1:03-cv-00370-WJ-ACT (D.N.M. 2003). The court granted preliminary injunctions reinstating both wrongfully terminated WCJs.

## COUNT I: CONSTITUTIONAL VIOLATIONS OF PLAINTIFF'S PROCEDURAL DUE PROCESS AGAINST DEFENDANT JORDAN IN HER INDIVIDUAL CAPACITY

36.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

37.     Plaintiff has a clearly established right and a legitimate claim of entitlement under New Mexico law to complete her five-year statutory term pursuant to Section 52-5-2(B).

38.    New Mexico law conferred upon Plaintiff a property interest in her position that she expected could not be terminated or taken away except as provided in Section 52-5-2(C). *See also Fuller*, No. 1:03-cv-00311-WJ-RHS.

39.    Plaintiff's property interest in her position is protected by the Due Process Clause under the Fourteenth Amendment of the United States Constitution.

40.    Plaintiff reasonably expected that Defendant Jordan would abide by New Mexico's statutes, regulations, and rules governing the WCA.

41.    Defendant Jordan was required to file a complaint with the State Personnel Board and allow the Board to conduct a hearing and make findings prior to terminating Plaintiff for alleged violations of the Code of Judicial Conduct. *See* § 52-5-2(C); 1.17.12.25 NMAC.

42.    Defendant Jordan acted under color of state law, as her ability to dismiss Plaintiff was a power possessed by virtue of state law.

43.    Defendant Jordan's dismissal of Plaintiff, under color of state law, without filing a complaint or providing the State Personnel Board an opportunity to conduct a hearing and make findings, deprived Plaintiff of her property interest in continued employment as a WCJ without due process of law.

44.    Defendant Jordan undertook her course of action with deliberate indifference to Plaintiff's civil rights.

45.    Defendant Jordan is liable for her acts and omissions described above pursuant to 42 U.S.C. § 1983.

46.    Defendant's acts and omissions resulted in harm to Plaintiff, including job loss, loss of past and future wages, loss of past and future employment benefits, humiliation, emotional and

mental pain and suffering, stress, uncertainty, frustration, and concomitant mental, emotional, and financial damages.

WHEREFORE, Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs under 42 U.S.C. § 1983.

## COUNT II: CONSTITUTIONAL VIOLATIONS OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS AGAINST DEFENDANT JORDAN IN HER INDIVIDUAL CAPACITY

47.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

48.     The substantive component of the Fourteenth Amendment's Due Process Clause protects against arbitrary deprivations of individual property rights. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845–47 (1998); *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222–23 (10th Cir. 2006).

49.     On her second day as Director of the WCA, Defendant Jordan terminated Plaintiff's protected property interest in her continued employment as a WCJ merely because Plaintiff forgot to amend her timesheet.

50.     Defendant Jordan alleged that Plaintiff's oversight compromised her judicial duties "to promote integrity" and "avoid impropriety and the appearance of impropriety."

51.     The Code of Judicial Conduct defines "Impropriety" as "conduct that violates the law, court rules, . . . and conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." Rule 21-003(K), NMRA.

52.     The Code of Judicial Conduct defines the "Appearance of impropriety" as "conduct that would create in reasonable minds a perception that the judge violated the Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." Rule 21-003(B), NMRA.

**App. 8**

53.    The Code of Judicial Conduct defines "Integrity" as "probity, fairness, uprightness, and soundness of character." Rule 21-003(M), NMRA.

54.    Plaintiff's inadvertent oversight was a minor mistake. It did not compromise her judicial duties to "promote integrity" or "avoid impropriety and the appearance of impropriety."

55.    Instead, Defendant Jordan used the Code of Judicial Conduct as pretext to terminate Plaintiff.

56.    Defendant Jordan's arbitrary termination of Plaintiff's protected property interest in her continued employment was so extreme and outrageous that it shocks the conscience.

57.    Defendant Jordan deprived Plaintiff of her Substantive Due Process protections guaranteed by the Fourteenth Amendment's Due Process Clause.

58.    Defendant Jordan is liable for her acts and omissions described above pursuant to 42 U.S.C. § 1983.

59.    Defendant's acts and omissions resulted in harm to Plaintiff, including job loss, loss of past and future wages, loss of past and future employment benefits, humiliation, emotional and mental pain and suffering, stress, uncertainty, frustration, and concomitant mental, emotional, and financial damages.

WHEREFORE, Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs under 42 U.S.C. § 1983.

## COUNT III: PRELIMINARY INJUNCTIVE RELIEF AGAINST DEFENDANT JORDAN IN HER OFFICIAL CAPACITY

60.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

61.    A district court may order an injunction or other appropriate prospective relief to prevent the deprivation of constitutional rights, restore due process, and ensure the lawful protection of public officials' statutory interests.

62.     Plaintiff has demonstrated a substantial likelihood of success on the merits given her entitlement to continued employment under state law and the factual evidence of her dismissal without the processes established by the New Mexico statutes, New Mexico administrative code, and federal law.

63.     If an injunction is not issued, Plaintiff would suffer irreparable harm, including the permanent loss of her employment as a WCJ, the loss of associated benefits and income from employment, permanent damage to her professional reputation, and most importantly, the deprivation of her Due Process rights secured by the Fourteenth Amendment to the U.S. Constitution.

64.     A remedy of damages alone would not compensate Plaintiff for the harm suffered, because such a remedy would not reinstate Plaintiff's employment, repair Plaintiff's damaged professional reputation, or address the violation of Plaintiff's due process rights.

65.     The balance of equities favors Plaintiff because the aforementioned harm to Plaintiff significantly outweighs any potential harm to the WCA if the injunction is granted. Plaintiff suffers the grave loss of her employment and associated benefits, irreparable damage to her professional reputation, and deprivation of her constitutional rights, while the Defendant would face only minor consequences. Defendant would be forced to reinstate an experienced, qualified, and proficient WCJ and withdraw her severe sanction against Plaintiff for Plaintiff's reasonable (and minor) mistake in failing to amend her timesheet. Furthermore, Defendant suffered no harm from Plaintiff's entry of two hours of administrative voting leave since, excluding that leave, Plaintiff's actual work performed and entry of annual leave, on November 4, and November 5, 2024, exceeded the sixteen hours required under the terms of her employment.

66.    An order compelling Defendant to reinstate Plaintiff in her former position as a WCJ with the WCA serves the public interest by upholding Plaintiff's statutory and constitutional rights, ensuring due process, and maintaining public confidence in the judicial system and New Mexico's administrative procedures for employee discipline. As Plaintiff has pending cases to adjudicate, an order of reinstatement would obviate the need for Plaintiff's successor or colleagues to shoulder the burden of Plaintiff's cases. This would improve the WCA's efficiency to the benefit of the public interest.

67.    Pending resolution on the merits, Plaintiff seeks a preliminary injunction to temporarily reinstate Plaintiff to her position and to prevent ongoing harm caused by her unlawful dismissal. *See Meiners v. University of Kansas*, 359 F.3d 1222, 1232–33 (10th Cir. 2004) ("Reinstatement of employment is a form of prospective equitable relief that is within the doctrine of *Ex parte Young*.").

WHEREFORE, Plaintiff seeks preliminary injunctive relief directing Defendant to immediately reinstate Plaintiff to her former position as a Workers' Compensation Judge with the New Mexico Workers' Compensation Administration.

## COUNT IV: PERMANENT INJUNCTIVE RELIEF AGAINST DEFENDANT JORDAN IN HER OFFICIAL CAPACITY

68.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

69.    The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction, with the exception that the plaintiff must show actual success on the merits rather than a substantial likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence*, 22 F.4th 892, 908 (10th Cir. 2022) ("The only measurable difference between the two is that a

permanent injunction requires showing actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits." (cleaned up)).

70.     As demonstrated in Count III, Plaintiff has established the requisite showing for preliminary injunctive relief.

71.     Accordingly, upon a showing of actual success on the merits, Plaintiff seeks a permanent injunction as part of final relief to restore Plaintiff to her position as a Workers' Compensation Judge and ensure compliance with constitutional due process requirements.

WHEREFORE, Plaintiff seeks permanent injunctive relief directing Defendant to immediately reinstate Plaintiff to her former position as a Workers' Compensation Judge with the New Mexico Workers' Compensation Administration.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

**App. 12**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**SHANON S. RILEY,**

Plaintiff,

v.                                                              No. _____

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,**

Defendant.

**<u>VERIFICATION</u>**

STATE OF NEW MEXICO        )
                           ) ss.
COUNTY OF BERNALILLO       )

I, SHANON S. RILEY, being first duly sworn upon oath, deposes and says:

I am the Plaintiff in the above-entitled cause. I have read, know, and understand the

contents of the foregoing Complaint for Injunctive Relief and Damages Under 42 U.S.C. § 1983

for Civil Rights Violations, and the statements made therein are true and correct to the best of my

knowledge.

SHANON RILEY

SUBSCRIBED AND SWORN TO before me this 14 day of January 2025, by Shanon

S. Riley.

ANDREA VICTORIA GOODWIN
Notary Public
State of New Mexico
Comm. # 1123269
My Comm. Exp. Sep 19, 2026

Notary Public

My Commission Expires:

Sept 19, 2026

**App. 13**

JS 44  (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Riley, Shanon S.

### DEFENDANTS

Workers' Compensation Administration, Jordan, Heather, Director of the Worker's Compensation Administration

**(b)** County of Residence of First Listed Plaintiff   Bernalillo
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kennedy, Hernandez & Harrison, P.C.
201 Twelfth St. NW Albuquerque, NM 87102
(505) 842-8662

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(Transfer)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Complaint for Injunctive Relief and Damages under 42 U.S.C. § 1983 for Civil Rights Violations and Deprivations of Due Process

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Injunction/Damages

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
January 14, 2025

SIGNATURE OF ATTORNEY OF RECORD
Jeffrey D. Vescovi

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**App. 14**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**SHANON S. RILEY,**

                **Plaintiff,**

**v.**                                                                 **No. _____**

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,**

                **Defendant.**

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., and pursuant to Federal Rule of Civil Procedure 65(a), hereby respectfully moves this Court for an order granting a preliminary injunction to reinstate Plaintiff to her position as a Workers' Compensation Judge pending resolution of this case on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2011, Plaintiff was appointed to an initial one-year term as a Workers' Compensation Judge (WCJ) for the New Mexico Workers' Compensation Administration (WCA). After her first year, and following review by the Director of the WCA, Plaintiff was appointed to subsequent five-year terms as established by NMSA 1978, Section 52-5-2(B). Plaintiff was reappointed to a five-year term in August of 2012, August of 2017, and again in August of 2022. Under Section 52-5-2(C), a WCJ must comply with substantially all canons of the New Mexico Code of Judicial Conduct. "Violation of those canons shall be **exclusive** grounds for dismissal" prior to the expiration of the WCJ's term. *Id.* (emphasis added).

**App. 15**

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. Later that day, she was driven home by a colleague to obtain her vehicle, drove to a polling location, and found that there was a line. Because Plaintiff was feeling ill, she decided to forgo voting and returned home.

On her way home from work the following day, November 6, 2024, Plaintiff realized that, in addition to other matters, she needed to make corrections to her timesheet. Plaintiff intended to make these corrections the following morning on November 7, 2024. At the time, Plaintiff had over 200 hours of annual leave and over 240 hours of sick leave which she could have used to substitute the two hours of administrative voting leave. Alternatively, Plaintiff could have simply removed the two hours of administrative voting leave altogether, as she had already worked a significant number of hours that day.

Unfortunately, the WCA office was closed on November 7 due to inclement weather. As a result of the closure, Plaintiff's numerous administrative responsibilities, and lack of technological resources at home, Plaintiff simply forgot to edit her timesheet.

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. The very next day, November 13, 2024, the Defendant and another WCA employee walked into Plaintiff's office and asked whether she voted on Election Day. Plaintiff responded that she had left work and attempted to vote but ultimately did not do so. Defendant then handed Plaintiff a letter—signed by the Defendant—immediately terminating Plaintiff's employment. The letter alleged that Plaintiff violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" Plaintiff asked Defendant

if there was anyone she could speak to regarding her termination. Defendant explained that Plaintiff could try to contact someone, but the decision regarding Plaintiff's termination had already been made. On November 13 and 14, 2024, Plaintiff called the Office of the Governor of the State of New Mexico (Governor's Office), to request an opportunity to speak with someone and explain the events surrounding her timesheet error. On both occasions, Plaintiff's request was denied.

On November 20, 2024, Plaintiff filed an appeal of her termination with the New Mexico State Personnel Board (the "Board"). In her letter of appeal, Plaintiff noted that she was not provided a copy of the complaint filed with the Board, she was not given an opportunity to respond to whether her conduct justified dismissal, and she was not aware of "any record that was kept, any evidence that was introduced, any hearing officer's ruling," or any of the Board's findings.

This lack of procedure was contrary to the provisions of the New Mexico Administrative Code. For instance, upon receiving a complaint, the Board's duly appointed hearing officer "shall serve a copy of the complaint on the [Workers' Compensation Judge] by certified mail." 1.7.12.25(C) NMAC. During a hearing conducted by the Board, the WCJ "shall have the right and reasonable opportunity to defend against the charges by introduction of evidence, to be represented by counsel and to examine and cross-examine witnesses." 1.7.12.25(G)(4) NMAC. And after the hearing is conducted, the Board must consider the hearing officer's report and hearing record before making a finding "as to whether there was a violation of the code of judicial conduct." 1.7.12.25(K) NMAC. The Board then shares its findings with the WCA director. *Id.* Defendant failed to comply with any of these procedures. With no complaint to review, the Board had no choice but to dismiss the appeal for lack of jurisdiction.

**App. 17**

## LEGAL ARGUMENT

To obtain a preliminary injunction, the movant must demonstrate that "(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). If, however, the movant seeks a disfavored preliminary injunction, the movant must make a "heightened showing of the four factors." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 (10th Cir. 2009). Here, Plaintiff seeks a disfavored, mandatory preliminary injunction—"one which requires the nonmoving party to take affirmative action"—that is, the preliminary reinstatement of Plaintiff pending resolution of the case on the merits. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Thus, Plaintiff must make a heightened showing for each factor.

### 1. Substantial Likelihood of Success on the Merits

#### a. Plaintiff held a constitutionally protected property interest in her continued employment with the WCA.

The Fourteenth Amendment prohibits state actors from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Thus, to prevail on a procedural due process claim, a plaintiff must first establish that the defendant deprived the plaintiff of a protected property interest. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). The property interest must arise from the plaintiff's "legitimate claim of entitlement" to the benefit, rather than an abstract desire or expectation. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Generally, state law creates the protected property interest, and "federal constitutional law determines whether the interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

**App. 18**

The Supreme Court and Tenth Circuit have consistently held that a state employee obtains a protected property interest in continued employment where state law limits the grounds for termination to just cause. For example, in *Cleveland Bd. of Educ. v. Loudermill*, the Supreme Court concluded that state employees had a property interest in continued employment where Ohio law entitled state employees to retain their positions "during good behavior and efficient service" and permitted dismissal of these employees only when they committed "misfeasance, malfeasance, or nonfeasance in office[.]" 470 U.S. 532, 538–39 (1985); *see also Perry v. Sindermann*, 408 U.S. 593, 600 (1972) (finding professor had a protected property interest in continued employment where faculty handbook provided de facto tenure so long as professor's "teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers"). Similarly, the Tenth Circuit held that state employees had a protected property interest in continued employment where the Colorado Constitution limited the state's ability to dismiss employees to instances of "failure to comply with standards of efficient service . . . willful misconduct . . . or final conviction of a felony[.]" *Tiegen*, 511 F.3d at 1079; *see also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest.").

Here too, state law *clearly* limited Plaintiff's dismissal to violations of the Code of Judicial Conduct. Under Section 52-5-2, "[v]iolation of those canons shall be *exclusive* grounds for dismissal prior to the expiration of the term." Even if an alleged violation occurred, the New Mexico Administrative Code entitled Plaintiff to elaborate hearing procedures, further narrowing the possible bases for termination and securing Plaintiff's right in her continued employment. The "constitutional purpose" of procedure "is to protect a substantive interest to which the individual

has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *see also*

*Teigen*, 511 F.3d at 1072 ("[D]etailed and extensive procedural requirements may be relevant as

to whether a separate substantive property interest exists[.]"). Thus, Plaintiff had a protected

property interest in continued employment with the WCA. By terminating Plaintiff, Defendant

deprived her of her constitutionally protected legitimate claim of entitlement to continue working

as a WCJ.

>   **b.    Defendant terminated Plaintiff's property interest without affording Plaintiff notice and an opportunity to be heard.**

"An essential principle of due process is that a deprivation of life, liberty, or property 'be

preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*,

470 U.S. at 542. While "procedural due process often requires confrontation and cross-

examination of those whose word deprive a person of his [or her] livelihood[,]" *Willner v. Comm.*

*on Character*, 373 U.S. 96, 103 (1963), "[t]he essential requirements of due process . . . are notice

and an opportunity to respond[,]" *Loudermill*, 470 U.S. at 546. Thus, a "tenured public employee

is entitled to oral or written notice of the charges against him, an explanation of the employer's

evidence, and an opportunity to present his side of the story." *Id.*

Although Plaintiff received written notice of the charges against her, she did not receive an

explanation of the WCA's evidence or an opportunity to present her side of the story. Defendant's

termination letter set out the basic facts—that Plaintiff entered two hours of voting leave into her

timesheet and failed to vote—and alleged that Plaintiff violated the Code of Judicial Conduct. But

the letter completely failed to explain in any detail why Plaintiff's conduct failed to "promote

integrity" or avoid the appearance of impropriety. Had Plaintiff been provided an opportunity to

respond to the allegations, she could have explained why she chose not to vote and that her failure

to correct her timesheet was a simple mistake—not a violation of the Code of Judicial Conduct.

**App. 20**

Despite the elaborate administrative procedures laid out by the New Mexico Administrative Code for the termination of WCJs, not a single procedure was followed to terminate Plaintiff. Thus, in addition to terminating Plaintiff's protected property interest in her continued employment with the WCA, there is no question that Defendant clearly failed to provide Plaintiff with notice and an opportunity to respond.

### 2. Irreparable Injury

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). "Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805–06 (10th Cir. 2019) (finding that equal protection violation alone constituted irreparable harm); *see also Awad v. Ziriax*, 670 F.3d 1111, 1119 (10th Cir. 2012) (finding First Amendment violation alone constituted irreparable harm); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable harm is necessary."). The Tenth Circuit has suggested that in the context of constitutional claims, the first and second preliminary-injunction factors are collapsed, and a Plaintiff who demonstrates a likelihood of success on the merits simultaneously demonstrates irreparable injury. *Free the Nipple-Fort Collins*, 916 F.3d at 792.

Here, as discussed above, Plaintiff has already demonstrated a substantial likelihood of success on her constitutional due process claim. That success alone is sufficient to show that she

**App. 21**

faces irreparable injury. Assuming, however, that the Court disagrees, there are additional facts which demonstrate that Plaintiff faces irreparable harm. While damages could easily compensate Plaintiff for her lost wages and benefits, no ascertainable amount of damages can compensate Plaintiff for her lost reputation. *See Dominion Video Satellite*, 269 F.3d at 1156–57 (finding irreparable harm where denial of injunctive relief would have resulted in the plaintiff's loss of reputation, good will, and marketing potential); Wright et al., § 2948.1 ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable."). If an injunction is not granted, Plaintiff will have to explain her termination to future employers, colleagues, and other members of the bar. This particular harm would be exacerbated by the small size of the New Mexico and Albuquerque legal communities, where reputation has a disproportionate impact on success and employment.[1]

### 3. Balancing the Injuries

Under the third factor, the plaintiff must demonstrate that the irreparable harm flowing from the alleged injury outweighs the harm caused to the defendant by the preliminary injunction. *Free the Nipple-Fort Collins*, 916 F.3d at 806. Given that the injunction sought is disfavored, Plaintiff must make an even stronger "showing that the balance of harms tips in [her] favor." *Id.* Of course, "[w]hen a constitutional right hangs in the balance," as it does here "'even a temporary loss' usually trumps any harm to the defendant." *Id.* (quoting Wright, et al., § 2948.2 & n. 10).

As demonstrated above, Defendant deprived Plaintiff of her constitutional right to procedural due process in violation of the Fourteenth Amendment. That fact alone should trump

---

[1] Additionally, when Plaintiff was terminated, she had several pending cases on her docket which await entry of Compensation Orders following trial. Some of these cases require immediate attention. If the injunction is not granted, Plaintiff will be unable to adjudicate these disputes or fulfill her duties as a WCJ.

any harm to Defendant here. Even assuming, however, that the loss of Plaintiff's constitutional rights alone is insufficient, there is little, if any, harm to the Defendant if the court orders an injunction reinstating Plaintiff. While Plaintiff faces the loss of her livelihood, reputation, caseload, wages, and benefits if an injunction is not granted, Defendant would merely be required to reinstate an otherwise excellent WCJ. Plaintiff has worked for the WCA since 2011—she has nearly fourteen years of experience. Her performance was evaluated at the end of every term, in 2012, 2017, and 2022, and each time, the WCA chose to retain her. Even Plaintiff's termination letter was silent on her performance as a WCJ.

It seems that Defendant's only reason for terminating Plaintiff was her failure to vote in accordance with her entry of two hours of voting leave. Under the circumstances of this case, this reasonable and trivial error does not amount to a violation of the Code of Judicial Conduct nor is it the type of poor performance or misconduct that could seriously injure the Defendant or the WCA if Plaintiff was reinstated, especially when weighed against Plaintiff's experience, tenure, and performance.

### 4. The Public Interest

Under the final factor, the party seeking a preliminary injunction must demonstrate that the injunction would not be adverse to the public interest. *Beltronics USA, Inc.*, 562 F.3d at 1070. Here, there is no question that Plaintiff meets this factor, because it is "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple-Fort Collins*, 916 F.3d at 807 (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)); *Awad*, 670 F.3d at 1133. The injunction here also serves to maintain public confidence in the WCA and in the state's administrative disciplinary procedures. The injunction would also increase the efficiency of the WCA. Rather than re-assigning Plaintiff's cases to a new WCJ, who will need time to study

**App. 23**

and resolve each matter, the injunction will allow Plaintiff to quickly resolve those cases she is already familiar with.

## **CONCLUSION**

For the reasons argued above, Plaintiff respectfully moves this Court for an order granting a preliminary injunction to reinstate Plaintiff to her position as a Workers' Compensation Judge pending resolution of this case on the merits.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

**App. 24**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SHANON S. RILEY,**

       **Plaintiff,**

**v.**                                      No. _____

**HEATHER JORDAN, in her individual**
**and official capacities as the Director**
**of the New Mexico Workers'**
**Compensation Administration,**

       **Defendant.**

## VERIFICATION

STATE OF NEW MEXICO      )
                              ) ss.
COUNTY OF BERNALILLO   )

     I, SHANON S. RILEY, being first duly sworn upon oath, deposes and says:

     I am the Plaintiff in the above-entitled cause. I have read, know, and understand the contents of the foregoing Motion for Preliminary Injunction, and the statements made therein are true and correct to the best of my knowledge.

                                        _____
                                        SHANON RILEY

     SUBSCRIBED AND SWORN TO before me this __14__ day of January 2025, by Shanon S. Riley.

                                        _____
                                        Notary Public

                                        My Commission Expires:

                                        Sept 19, 2026

```
ANDREA VICTORIA GOODWIN
      Notary Public
    State of New Mexico
     Comm. # 1123269
  My Comm. Exp. Sep 19, 2026
```

**App. 25**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**SHANON S. RILEY,**

          **Plaintiff,**

**v.**                                                      **Case 1:25-cv-00044-KWR-KK**

**HEATHER JORDAN, in her individual**
**and official capacities as the Director**
**of the New Mexico Workers'**
**Compensation Administration,**

          **Defendant.**

## DEFENDANT'S PARTIAL MOTION TO DISMISS WITHOUT PREJUDICE AND STAY PENDING THE ADMINSTRATIVE PROCEEDINGS

Defendant Heather Jordan, in her individual and official capacities, respectfully submits her Partial Motion to Dismiss Without Prejudice and Stay Pending the Administrative Proceedings.

### Introduction

As set forth in plaintiff's *Complaint* (Doc. 1, filed 1/14/2025) ("Complaint"), plaintiff served as a Workers' Compensation Judge until she was terminated from her employment after she claimed voting leave to vote in the November 5, 2024 election, but did not vote. *See* Complaint, attached hereto as **Exhibit A**. Rather than correct this error, plaintiff instead certified that her use of voting leave was true and accurate, until such time as it was discovered by Defendant. Plaintiff's employment was terminated as a result of this violation of the Code of Judicial Conduct on November 13, 2024. Plaintiff subsequently filed the instant suit claiming that, pursuant to NMSA 1978, § 52-5-2(C) (2004), and the New Mexico Administrative Code, 1.7.12.25, she was due additional process before her termination. *See* Doc. 1, generally.

On February 4, 2025, the Workers' Compensation Administration ("WCA") submitted a complaint to the State Personnel Board, in accordance with Section 52-5-2(C) and New Mexico

**App. 26**

Administrative Code, 1.7.12.25.  *See Complaint Pursuant to NMSA 1978, 52-5-2(C) RE: Shanon Riley*, attached hereto as **Exhibit A**. Plaintiff has been reinstated to her former position as a Workers' Compensation Judge and placed on paid administrative leave pending the outcome of the State Personnel Board proceedings. *See Letter of* Reinstatement, attached hereto as **Exhibit B.** As set forth in Defendant's *Response to Plaintiff's Motion for Preliminary Injunction*, filed contemporaneously and incorporated herein by reference, WCA's actions have rendered plaintiff's request for injunctive relief moot.  In addition, the Court should apply the *Younger* abstention doctrine because the ongoing State Personnel Board process provides a full and adequate remedy to plaintiff.  Accordingly, Defendant requests that the Court dismiss Counts III and IV without prejudice and stay proceedings on the remaining claims for damages until such time as the State Personnel Board proceedings are concluded.

### Argument & Authorities

### A.  Standard of review

Motions to dismiss on the basis of *Younger* abstention or mootness are properly raised under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Peters v. United States*, 2024 WL 3086003, at *1 n.1 (10th Cir. June 21, 2024) (unpublished); *Unified Sch. Dist. No. 259 v. Disability Rights Ctr. Of Kan.*, 491 F.3d 1143, 1146-47 (10th Cir. 2007); *see also Balderama v. Bulman*, 2023 WL 1433140, at *8 (D.N.M. Feb. 1, 2023) ("Because *Younger* is a jurisdictional bar in the Tenth Circuit, a district court should look at motions to dismiss under *Younger* in light of the standard prescribed for a motion to dismiss for lack of subject matter jurisdiction." (citing *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295 (10th Cir. 2003)), *report and recommendation adopted, Balderama v. Bulman*, 2023 WL 2728148 (D.N.M. Mar. 31, 2023), *aff'd, Balderama v. Bulman*, 2024 WL 158756 (10th Cir. Jan. 16, 2024).

**App. 27**

Generally, a motion to dismiss under Rule 12(b)(1) takes one of two forms: a facial attack or a factual attack. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). When the attack is factual, like here, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt*, 46 F.3d at 1003 (citations omitted). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.* As the Honorable Judge Browning has explained:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Hernandez v. Lujan Grisham*, 499 F. Supp. 3d 1013, 1043-44 (D.N.M. 2020) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981)).

**B.  Under the *Younger* abstention doctrine, this Court should dismiss Plaintiff's claims for injunctive and declaratory relief**

Under the *Younger* abstention doctrine, "federal courts should not interfere with state court proceedings' by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when the state forum provides an adequate avenue for relief." *ETP Rio Rancho Park, LLC v. Lujan Grisham*, 522 F. Supp. 3d 966, 1007 (D.N.M. 2021); *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001). A federal court must abstain when: (1) there is an ongoing state administrative proceeding; (2) the state provides an adequate forum to hear the claims; and (3) the proceeding involves important state interests. See *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 711 (10th Cir. 1989).

**App. 28**

All three conditions are met here. First, plaintiff's disciplinary proceeding has been submitted to the New Mexico State Personnel Board, which is reviewing the matter pursuant to NMSA 1978, § 52-5-2(C) (2004), and New Mexico Administrative Code, 1.7.12.25. *See* **Exhibit A**. Disciplinary proceedings qualify for *Younger* deference. See *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) (applying *Younger* abstention to state bar disciplinary proceedings). That this process began after Plaintiff filed the instant action is of no moment. *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (holding that "the principles of *Younger v. Harris* should apply in full force" where a state proceeding is instituted after the federal complaint is filed "but before any proceedings of substance on the merits have taken place in the federal court"). Accordingly, the first condition is met.

The second condition (i.e., the state provides an adequate forum to hear the claims raised in the federal complaint) is also met. The allegations that led to plaintiff's termination have been submitted to the State Personnel Board, which will initiate the hearing process by first submitting the allegations to plaintiff and allowing her the opportunity to file an answer with a hearing officer. 1.7.12.25(D) NMAC. After the parties submit a proposed pre-hearing order containing a statement of any contested facts and issues, stipulation of those matters not in dispute, the identity of all witnesses to be called and a brief summary of their testimony, a list of exhibits, and requests for subpoenas, the hearing officer will set the matter for a hearing. 1.7.12.25(E). The hearing is subject to the rules of evidence that govern proceedings in state courts and is normally open to the public in addition to being recorded. 1.7.12.25(G). Regulations expressly provide that the workers' compensation judge "shall have the right and reasonable opportunity to defend against the charges by the introduction of evidence, to be represented by counsel and to examine and cross-examine witnesses." *Id.* Following the hearing, the officer will submit to the parties a report with a brief

4

**App. 29**

statement of the proceedings, a summary of the evidence, and findings with respect to the allegations. 1.7.12.25(I). The parties then have an opportunity to file objections before the officer submits his report and the record to the State Personnel Board, which will review report and record, make findings as to whether there was a violation of the code of judicial conduct, and transmit its findings to the director of the WCA to issue a final decision. 1.7.12.25(K).

This process will give plaintiff an adequate forum to raise the allegations at the heart of her complaint: that she did not, in fact, violate the code of judicial conduct when she took voting leave without actually voting and therefore she should not have been terminated. Accordingly, the second condition is met. *See, e.g.*, *ETP Rio Rancho Park*, 517 F. Supp. 3d at 1249 (finding regulations that provide a "right to a notice, a hearing, discovery, witnesses, representation by counsel, records, a written report, and final decision" adequate to give the plaintiff "an adequate opportunity to raise the federal claims"); *see also Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 77 (2d Cir. 2003) (finding that disciplinary proceedings against a judge provided an adequate opportunity to raise federal claims).

The third condition (i.e., that the state proceedings involve important state interests) is likewise satisfied. It cannot be gainsaid that the State of New Mexico has an important interest in maintaining the integrity of its judiciary. Thus, the issue of whether plaintiff should continue to serve as a workers' compensation judge and adjudicate claims after she apparently committed time fraud is sufficiently important to warrant *Younger* abstention. *Cf. Middlesex*, 457 U.S. at 434 ("The State of New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses."); *Spargo*, 351 F.3d at 81 (finding *Younger* abstention necessary for disciplinary proceedings against state judge); *Weitzel*, 240 F.3d at 876 ("[T]here is no question that the licensing and discipline of physicians involve important state

**App. 30**

interests[.]" (cleaned up)); *see generally Williams-Yulee v. Florida Bar*, 575 U.S. 433, 445 (2015) ("We have recognized the vital state interest in safeguarding public confidence in the fairness and integrity of the nation's elected judges." (cleaned up)).

Since all three conditions are met, the Court should (and must) abstain. See *Seneca-Cayuga Tribe*, 874 F.2d at 711 ("*Younger* abstention is not discretionary once the [three] conditions are met, absent extraordinary circumstances that render a state court unable to give state litigants a full and fair hearing on their federal claims.").[1] Therefore, this Court should dismiss Counts III and IV of the Complaint seeking injunctive relief. See *ETP Rio Rancho Park, LLC*, 522 F. Supp. 3d at 1008 ("[A] federal district court should dismiss the claims for equitable relief under *Younger*, but stay the complaint with respect to the damages claim[.]" (citing *Myers v. Garff*, 876 F.2d 79, 81 (10th Cir. 1989)).

### C.  Plaintiff's claims for injunctive relief are moot

In addition, plaintiff's Complaint is moot to the extent it seeks injunctive relief because she is being provided all of the process she is allegedly due and owed.  The Court lacks subject matter jurisdiction over a moot case. *Unified Sch. Dist. No. 259,* 491 F.3d at 1146-47. "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Disability Law Ctr. v. Millcreek Health Ctr.,* 428 F.3d 992, 996 (10th

---

[1] The only exceptions are "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." *Weitzel*, 240 F.3d at 876. No such circumstances are present here, as there is no evidence that Defendant's initiation of the procedure contemplated in Section 52-5-2(C) was taken to harass plaintiff or in bad faith. To the contrary, Defendant initiated this process to address the very issues at the heart of plaintiff's complaint (i.e., an alleged lack of procedural due process). That plaintiff alleges constitutional violations does not change this conclusion. *See Gauntlett v. Cunningham*, 171 Fed. Appx. 711, 715 n.3 (10th Cir. 2006) (declining to consider the allegation of due process violations as an "extraordinary circumstance" warranting an exception to abstention).

6

**App. 31**

Cir. 2005) (internal quotation marks and citation omitted). This is true of actions for declaratory and injunctive relief. *Unified Sch. Dist. No. 259*, 491 F.3d at 1147. "The crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world." *Wyoming v. U.S. Dep't. of Agric.*, 414 F.3d 1174, 1182 (10th Cir. 2000).

The WCA's actions in filing a complaint with the State Personnel Board and reinstating plaintiff to her former position have mooted plaintiff's current complaints regarding due process. "[A]llegations of legal wrongdoing must be grounded in a concrete and particularized factual context; they are not subject to review as free-floating, ethereal grievances." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1111 (10th Cir. 2010). Because she has been reinstated and will be given all of the process requested in her Motion, plaintiff can no longer point to "some concrete and ongoing injury" requiring injunctive or declaratory relief. *Id*. at 1112. Plaintiff raises no additional concerns beyond wanting the process that the WCA has now provided. The WCA's subsequent actions places the parties in the same situation as those addressed by the Tenth Circuit in *Rio Grande Silvery Minnow*: "[W]e are not situated to issue a *present* determination with real-world effect because those regulations no longer are operational-for all material purposes, they no longer exist." *Id*. at 1113 (emphasis in original). Therefore, even if the Court finds that *Younger* does not apply (it does), the Court should nonetheless dismiss Counts III and IV.

### D. The Court should stay proceedings on the remaining claims for damages until the State Personnel Board proceedings conclude

What remains is Counts I and II, which are claims requesting damages for alleged procedural and substantive due process violations. *See* Doc. 1, Counts I-II. While these claims have very little chance of succeeding beyond a dispositive motion, especially given Defendant's qualified immunity, this Court should stay further proceedings on them until the State Personnel

**App. 32**

Board proceedings have concluded. *See Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 523 (10th Cir. 2023) ("[A]s to claims for money damages, the appropriate course is staying proceedings on the federal damages claim until the state proceeding is final [under *Younger* abstention]." (cleaned up)).

## Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Counts III and IV without prejudice and stay proceedings on Counts I and II pending the conclusion of the State Personnel Board proceedings.

Respectfully submitted,

**SERPE | ANDREWS, PLLC**

By */s/ Cody R. Rogers*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
*Attorneys for Defendant*

## CERTIFICATE OF SERIVE

I hereby certify that on this 6th day of February, 2025, I filed the foregoing through this Court's CM/ECF e-filing system and caused a true and correct copy of the same to be served upon all parties of record as reflected more fully in the electronic Notification of Service.

*/s/ Cody R. Rogers*
Cody R. Rogers

**App. 33**



State of New Mexico
# Workers' Compensation Administration

**Michelle Lujan Grisham**
Governor

**Heather Jordan**
Director

February 4, 2025

New Mexico State Personnel Board
Adjudication Division
2600 Cerrillos Road
Santa Fe, NM 87505

Via Hand Delivery and certified mail        9171 9690 0935 0155 4670 14

## COMPLAINT PURSUANT TO NMSA 1978, 52-5-2(C)
## RE: SHANON RILEY

1.       This complaint is filed pursuant to NMSA 1978, §52-5-2(C) (2004), which states that complaints shall be filed with the State Personnel Board, and pursuant to Rule 1.7.12.25(A) NMAC, which states that "[t]he {State Personnel Board's] duly appointed hearing officer shall hear all complaints filed in accordance with the provisions of NMSA 1978, § 52-5-2(C)."

2.       On or about August 20, 2011, Shanon Riley was appointed to an initial one-year term as a workers' compensation judge of the Workers' Compensation Administration (NM WCA).

3.       Shanon Riley was reappointed to subsequent five-year terms in August 2012, August 2017 and, as relevant here, she was appointed to her most current five-year term on August 4, 2022. (Exhibit 1 hereto is a true and correct copy of the August 4, 2022 reappointment letter.)

4.       Pursuant to §52-5-2(C), Shanon Riley's conduct, while acting as a workers' compensation judge, was to conform to all Canons of New Mexico Code of Judicial Conduct.

5.       On October 17, 2024, the New Mexico State Personnel Office issued an "Interpretive Memorandum 2024-00" which, as relevant here, permitted State of New Mexico employees the opportunity to take administrative leave for purposes of in-person voting. Per the Memorandum, voting leave was required to be sought and approved in advance; use of voting leave may be audited; and abuse of voting leave could result in discipline up to and including dismissal. (Exhibit 2 hereto is a true and correct copy of the Interpretive Memorandum 2024-00.)

6.       An election was held on November 5, 2024.

7.       Shanon Riley sought and was approved to use voting leave per a leave request form signed by Shannon Riley and approved by her supervisor on November 5, 2024. (Exhibit 3 hereto is a true and correct copy of the voting leave request and approval.)

8.      Shanon Riley's time entry for November 5, 2024 into the State of New Mexico's Share system included two hours of voting leave. (Exhibit 4 is a true and correct copy of Shanon Riley's time sheet for the week embracing November 5, 2024.)

9.      According to New Mexico Secretary of State voting records, which are available to the New Mexico Workers' Compensation Administration (NM WCA) for purposes of verifying employee usage of voting leave, Shanon Riley did not vote on November 5, 2024. (Exhibit 5 hereto is a true and correct copy of the New Mexico Secretary of State voting record for Shanon Riley provided to the NM WCA.)

10.     Shanon Riley did not change her time sheet in the Share system despite entering voting leave for 2 hours but failing to vote, and despite having until at least November 6, 2024 through 5:00 p.m. to enter time for the applicable pay period and until November 7, 2024 through 5:00 p.m. to make any corrections. (Exhibit 6 is a true and correct copy of an email from NM WCA human resources to all employees advising of the time entry and approval deadlines.)

11.     Shanon Riley certified in her time entry in Share by affirming the following statement: "I certify that the time reported is a true and accurate representation of the time worked in the period."

11.     Shanon Riley's conduct as described herein may violate the New Mexico Canons of Judicial Conduct, including but not limited to Rule 21-100, Canon 1 NMRA; Rule 21-101 NMRA; and Rule 21-102 NMRA.

12.     Pursuant to NMSA 1978, §52-5-2(C), and Rule 1.7.12.25 NMAC, this matter is hereby submitted to State Personnel Board and its duly appointed hearing office for appropriate action.

13.     Pursuant to and consistent with Rule 1.7.12.15 NMAC, the NM WCA requests (a) an administrative proceeding and hearing before a State Personnel hearing officer; (b) that the report of the hearing officer and any record made before the hearing officer be forwarded to the State Personnel Board for it to make its findings as to whether there was a violation of any New Mexico Canon of Judicial Conduct; and (c) the Board thereafter transmit its findings to the Director of the NM WCA.

Respectfully submitted,

*Catherine F Farrell*

Catherine Farrell,
NM WCA Human Resource Manager

Enc: Exhibits 1-6



State of New Mexico
## WORKERS' COMPENSATION ADMINISTRATION

**MICHELLE LUJAN GRISHAM**
**GOVERNOR**

**ROBERT E. DOUCETTE, JR.**
**DIRECTOR**

August 4, 2022

The Honorable Shanon Riley
Workers' Compensation Judge
2410 Centre Ave. SE
Albuquerque, NM 87106
*VIA HAND DELIVERY*

### Re: Reappointment

Dear Judge Riley:

Pursuant to NMSA 1978, §52-5-2(B), and after review of your performance, it is my pleasure to reappoint you to a new five-year term as a workers' compensation judge. This term will begin at the expiration of your current term on August 20, 2020, and will expire five years thereafter.

I congratulate you on this reappointment and thank you for your service to the Administration and to the people of the State of New Mexico.

Sincerely,

Robert E. Doucette, Jr.
WCA Director

cc: Personnel File



App. 36

**Farrell, Catherine, WCA**

| | |
|---|---|
| **From:** | Farrell, Catherine, WCA |
| **Sent:** | Friday, October 18, 2024 9:58 AM |
| **To:** | WCA-AllUsers |
| **Subject:** | FW: Interpretive Memorandum - Voting Admin Leave |
| **Attachments:** | Interpretive Memorandum 2024-001 Voting.pdf |

FYI....

**From:** Forlizzi, Denise M, SPO <DeniseM.Forlizzi@spo.nm.gov>
**Sent:** Thursday, October 17, 2024 1:35 PM
**To:** Forlizzi, Denise M, SPO <DeniseM.Forlizzi@spo.nm.gov>
**Subject:** Interpretive Memorandum - Voting Admin Leave

Good afternoon,

Please see the attached for your reference and use.

Kind Regards,



**Denise M. Forlizzi|** Special Assistant to the Director
State Personnel Office
DeniseM.Forlizzi@spo.nm.gov
505-365-3691
spo.state.nm.us

Resourceful · Responsive · Innovative



EXHIBIT
2

**App. 37**

**Michelle Lujan Grisham**
*Governor*

**Dylan K. Lange**
*Director*



**NEW MEXICO**
**STATE PERSONNEL OFFICE**

**State Personnel Board**
Laura A. Liswood, *Chair*
Carol A. Parker, *Vice Chair*
David F. Cunningham, *Member*
Sandra D. Lopez, *Member*
Fred Radosevich, *Member*

Address: 2600 Cerrillos Road, Santa Fe, NM 87505-3258

Phone: (505) 476-7759 | Fax: (505) 476-7949 | Web: https://www.spo.state.nm.us/

# Interpretive Memorandum 2024-001

**Date:**     October 17, 2024

**To:**       Cabinet Secretaries, Agency Heads, and HR Managers

**From:**     Dylan Lange, Director

**Subject:**  Administrative Leave for Voting

### Purpose

The State encourages all employees to exercise their right to vote. This Memorandum shall serve to interpret the application of State Personnel Board Rules and the New Mexico Administrative Code (NMAC) regarding the granting of administrative leave for voting.

### Background

State Personnel Board Rule (1.7.7.14 NMAC) provides:

C.    Employees who are registered voters may absent themselves from work for two hours for the purpose of voting between the time of the opening and the time of the closing of the polls. The employer may specify the hours during the period in which the voter may be absent. This leave is not available to employees whose workday begins more than two hours subsequent to the time of opening the polls, or ends more than three hours prior to the time of closing the polls. This leave is only available for those elections listed in Subsection A of Sections 1-12-42 and 1-1-19 NMSA 1978 and does not apply to absentee or early voting.

### Covered Elections
The following statutory elections apply to administrative leave for voting:

NMSA 1978, § 1-1-19. Elections covered by code.

- A. The Election Code applies to the following:
    - (1) general elections;
    - (2) primary elections;
    - (3) special elections;
    - (4) elections to fill vacancies in the office of United States representative;
    - (5) local elections included in the Local Election Act; and
    - (6) recall elections of county officers, school board members or applicable municipal officers.

- B. To the extent procedures are incorporated or adopted by reference by separate laws governing such elections or to the extent procedures are not specified by such laws, certain provisions of the Election Code shall also apply to special district elections not covered by the Local Election Act [Chapter 1, Article 22 NMSA 1978].

NMSA 1978, § 1-12-42. Conduct of election; employees; time to vote.

- A. On election.day a voter may absent themself from employment in which they are engaged for two hours for the purpose of voting between the time of opening and the time of closing the polls. The voter shall not be liable to any penalty for such absence; however, the employer may specify the hours during this period in which the voter may be absent.

- B. The provisions of Subsection A of this section do not apply to an employee whose workday begins more than two hours subsequent to the time of opening the polls, or ends more than three hours prior to the time of closing the polls.

- C. The provisions of Subsection A of this section apply to elections of Indian nations, tribes or pueblos for a voter who is enrolled as a member of the Indian nation, tribe or pueblo and is qualified to vote in the election.

Guidelines

- A. An employee utilizing administrative leave for voting shall use the Time Reporting Code "VOTES - Voting Time Paid."
- B. Pursuant to NMSA 1978, § 1-12-42(A) and 1.7.7.14 NMAC, administrative leave for voting is only available on Election Day and is not available for the purposes of early voting or absentee voting.

C. Administrative leave for voting must be requested and approved in advance. Managers and supervisors may specify the two hours between the time of opening and time of closing of the polls during which the voter may be absent.

D. An employee must have worked hours on Election Day to be eligible for administrative leave for voting.

E. Use of administrative leave for voting may be audited. Employees who abuse administrative leave for voting may be disciplined, up to and including dismissal.

###

# NEW MEXICO WORKERS' COMPENSATION ADMINISTRATION
## LEAVE REQUEST FORM

INSTRUCTIONS: Please PRINT all information as REQUIRED on form. INDICATE THE LEAVE IN HOURS ROUNDED TO THE NEAREST 15 MINUTES. Designate the date information with numerical characters.

**EMPLOYEE NAME:** Shanon S. Riley

**EMPLOYEE ID:** 0 0 0 3 0 4 4 2 4

**BUREAU:** Dispute Resolution

**LEAVE: Enter time usage in hours and minutes**

| TIME USAGE | | BEGINNING | | | | | ENDING | | | | | Date of Request |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HOURS | Min | Time of Day | | Mo | Day | Yr | Time of Day | | Mo | Day | Yr | |
| 2 | | 3:00 | am/pm | 11 | 5 | 2024 | 5:00 | am/pm | 11 | 5 | 2024 | 11/05/2024 |

Click on Leave Type Box Below and Choose One Selection from the List:

Specify: **Voting**

Comments:

**EMPLOYEE'S SIGNATURE:** Shanon S. Ri___  **DATE:** 11/5/2024

**SUPERVISOR'S SIGNATURE:**  APPROVAL/DISAPPROVAL  Date:

**LEAVE: Enter time usage in hours and minutes** (blank)

**EMPLOYEE'S SIGNATURE:**  DATE:

**SUPERVISOR'S SIGNATURE:**  APPROVAL/DISAPPROVAL  Date:

**LEAVE: Enter time usage in hours and minutes** (blank)

**EMPLOYEE'S SIGNATURE:**  DATE:

**SUPERVISOR'S SIGNATURE:**  APPROVAL/DISAPPROVAL  Date:

** Director's signature required for ADMINISTRATIVE LEAVE AND LEAVE WITHOUT PAY
** DIRECTOR'S SIGNATURE: Darin Jordan  APPROVAL/DISAPPROVAL  Date: 11-5-24

* FOR ILLNESS RELATED LEAVE
* Nature of Illness    Illness in Immediate Family: Specify Relation
NAME OF ATTENDING PHYSICIAN:
*A CERTIFICATE OF ILLNESS may be required

**EXHIBIT 3**

WCAHRO2015

App. 41

# Timesheet

Date: 2024-11-06

Employee ID: 304424

Name: Shanon Riley

Department: Adjudication

HR Status: Active

Std Hours: 40

WorkGroup: EXHEXEMPT

Employee Record: 0

Jobcode:

Full/part-Time: Full-Time

Regular/Temp: Regular - PERM for State

Union Code: CN

## Timesheet Data:

| Day | Date | TRC | Quantity | Reported Status | Elements |
|---|---|---|---|---|---|
| Monday | 2024-11-04 | PRSNT | 8 | NA | PRSNT, H, MST, H, ONL, 0, 632000001 |
| Tuesday | 2024-11-05 | REGHR | 6 | NA | REGHR, H, GOVEX-FILE, MST, H, ONL, 0, 632000001, |
| Tuesday | 2024-11-05 | VOTES | 2 | NA | VOTES, H, MST, H, ONL, 0, 632000001, |
| Wednesday | 2024-11-06 | REGHR | 8 | NA | REGHR, H, GOVEX-FILE, MST, N, TCD, 0 632000001. |
| Thursday | 2024-11-07 | REGHR | 8 | NA | REGHR, H, GOVEX-FILE, MST, N, TCD, 0, 632000001. |
| Friday | 2024-11-08 | REGHR | 8 | NA | REGHR, H, GOVEX-FILE, MST, N, TCD, 0, 632000001, |

## Total Reported Hours :

| Day | 11/02 Sat | 11/03 Sun | 11/04 Mon | 11/05 Tue | 11/06 Wed | 11/07 Thu | 11/08 Fri | Total |
|---|---|---|---|---|---|---|---|---|
| Select valid alert program ID | 0.00 | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 40.00 |

I certify that the time reported is a true and accurate representation of the time worked in the period.

Employee Signature: _____

Date: _____

Approver#1 Signature: _____

Date: _____

Approver#2 Signature: _____

Date: _____

**EXHIBIT**
tabbies
4

App. 42

SOS HOME PAGE                                VOTER INFORMATION PORTAL

Select Language ▼

# GENERAL 2024 11/05/2024 - Voter Registration Information

My Districts

My Polling Location

My Sample Ballot

My Absentee Application & Ballot Tracker

My Voting History

My County Clerk

| | |
|---|---|
| Voter Name: | **Voter ID:** 1654055 |
| **SHANON S RILEY** | **Status** Active |
| **Residence Address:** | **Status Reason:** Active Registrant |
| | **Party:** DEMOCRATIC |
| | **Precinct Name:** PCT 209 |
| | **ID Required for Voting:** No |

## My Voting History

| Election Date | Election Type | Election Name | Vote Type | Voted Where | |
|---|---|---|---|---|---|
| 06/07/2022 | Primary | 2022 PRIMARY | Election Day | VCC 15 - Petroglyph Plaza | View Results |
| 11/03/2020 | General | 2020 GENERAL | Absentee | | View Results |
| 11/06/2018 | General | 2018 GENERAL | Election Day | VCC 45 - Lyndon B Johnson Middle School | View Results |
| 11/08/2016 | General | GENERAL 2016 | Polling Place | VCC 35 - HERMAN SANCHEZ COMMUNITY CENTER | View Results |
| 11/04/2014 | General | GENERAL 2014 | Absentee | | View Results |
| 11/06/2012 | General | GENERAL 2012 | Polling Place | VOTING CONVENIENCE CENTER | View Results |
| 11/07/2006 | General | GENERAL ELECTION | Absentee | | View Results |
| 11/02/2004 | General | GENERAL ELECTION | Absentee | | View Results |
| 11/05/2002 | General | GENERAL - GUBERNATORIAL | Absentee | | View Results |
| 11/07/2000 | General | GENERAL - PRESIDENTIAL | Polling Place | | View Results |
| 06/02/1998 | Primary | PRIMARY - GUBERNATORIAL | Polling Place | | View Results |
| 01/14/1997 | Municipal | SPEC ALBUQUERQUE | Polling Place | | View Results |
| 11/05/1996 | General | GENERAL - PRESIDENTIAL | Polling Place | | View Results |

New Search

New Mexico Office of the Secretary of State

New Mexico Capitol Annex North / 325 Don Gaspar, Suite 300 / Santa Fe, NM 87501

(505) 827-3600 / (800) 477-3632 / Email SOS Elections

Visit Secretary of State Website    Contact your County Clerk    Voter Registration Information    Military & Overseas Voters Information



**EXHIBIT 5**

**App. 43**



# GENERAL 2024 11/05/2024 - Voter Registratio Information

Voter Name
**SHANON S RILEY**
Residence Address

| | |
|---|---|
| Voter ID | 165405 |
| Status | **Active** |
| Status Reason | **Active** |
| Party | **DEMOC** |
| Precinct Name | **PCT 2C** |
| ID Required for Voting | **No** |

## My Voting History

| Election Date | Election Type | Election Name | Vote Type | Voted Where |
|---|---|---|---|---|
| 06/07/2022 | Primary | 2022 PRIMARY | Election Day | VCC 15 - Petroglyph Plaza |
| 11/03/2020 | General | 2020 GENERAL | Absentee | |
| 11/06/2018 | General | 2018 GENERAL | Election Day | VCC 45 - Lyndon B Johnson Middle School |
| 11/08/2016 | General | GENERAL 2016 | Polling Place | VCC 35 - HERMAN SANCHEZ COMMUNITY CENTER |
| 11/04/2014 | General | GENERAL 2014 | Absentee | |
| 11/06/2012 | General | GENERAL 2012 | Polling Place | VOTING CONVENIENCE CENTER |
| 11/07/2006 | General | GENERAL ELECTION | Absentee | |
| 11/02/2004 | General | GENERAL ELECTION | Absentee | |
| 11/05/2002 | General | GENERAL - GUBERNATORIAL | Absentee | |
| 11/07/2000 | General | GENERAL - PRESIDENTIAL | Polling Place | |
| 06/02/1998 | Primary | PRIMARY - GUBERNATORIAL | Polling Place | |
| 01/14/1997 | Municipal | SPEC ALBUQUERQUE | Polling Place | |
| 11/05/1996 | General | GENERAL - PRESIDENTIAL | Polling Place | |

**Farrell, Catherine, WCA**

| | |
|---|---|
| **From:** | Gurule-Sers, Pauline, WCA |
| **Sent:** | Wednesday, November 6, 2024 8:41 AM |
| **To:** | WCA-AllUsers |
| **Subject:** | HOLIDAY PAYROLL SCHEDULE : Time Entry for Week 2 of  PPE ending 11/8/2024 |

**Importance:** High



shutterstock.com · 2358328085

*DUE TO THE UPCOMING HOLIDAY*

Hello 😊
Please make sure to enter your time no later than 5 pm Today,
**Wednesday November 6,2024 \*** Supervisors/Managers will need to
approve all time sheets no later than noon, **Thursday November 7,2024**

**\*\*\* If any changes need to be made to your timesheet after 5:00
p.m. on Thursday notification is required to your Supervisor and
HR  As Soon As Possible\*\*\***

**\* Please use the Comment bubbles to indicate any special leave granted
such as Administrative Leave, Parent-Teacher Conferences, Inclement
Weather, Bereavement Leave, Extra Hours and Call Back Hours worked,
Wellness and Fitness etc.\*\***

**EXHIBIT
6**

App. 45



# State of New Mexico

Michelle Lujan Grisham
  *Governor*

February 6, 2025

Shanon Riley
5305 Canada Vista Pl NW
Albuquerque, NM 87120

Dear Ms. Riley:

This letter is to notify you that effective February 15, 2025, you are hereby reinstated into your position as a Workers Compensation Judge with the NM Workers Compensation Administration.

Your rate of pay will be $194,597.23.

As an at-will exempt employee, you will serve at the pleasure of the Office of the Governor.

This is also your notification that effective immediately upon your reinstatement, you are placed on paid administrative leave pursuant to the recently filed State Personnel Board Complaint dated February 4, 2025. During this time that you are on paid administrative leave you are not to represent yourself to any person as a representative of the NM Workers Compensation Administration (NMWCA) or to perform any job duties on behalf of the NMWCA. You are not to gain access to any NMWCA computer, electronic mail account or office facility without my express permission. You are not to access the PeopleSoft-SHARE system. You are not to contact any member of the NMWCA staff, other than Cathy Farrell, while you are on paid administrative leave.

☐  I accept the reinstatement at the offered salary stated above:

    _____

☐  I decline the position reinstatement offered to me at the WCA.

Date: _____

Sincerely,

Heather Jordan
Executive Director

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**SHANON S. RILEY,**

                    **Plaintiff,**

**v.**                                               **Case 1:25-cv-00044-KWR-KK**

**HEATHER JORDAN, in her individual**
**and official capacities as the Director**
**of the New Mexico Workers'**
**Compensation Administration,**

                    **Defendant.**

## <u>DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>

Defendant Heather Jordan, in her individual and official capacities, respectfully submits this Response in Opposition to Plaintiff's Motion for Preliminary Injunction. Plaintiff's motion should be denied because she cannot meet the stringent standard for obtaining the extraordinary relief of a preliminary injunction. Plaintiff was terminated for legitimate reasons after knowingly engaging in conduct that created an appearance of impropriety—conduct that was directly contrary to the ethical obligations of her position. Her claims fail both legally and factually, and she has not demonstrated any irreparable harm requiring immediate judicial intervention.

### <u>Introduction & Factual Background</u>

As set forth in plaintiff's *Motion for Preliminary Injunction* (Doc. 2, filed 1/14/2025) ("Motion"), plaintiff served as a Workers' Compensation Judge until she was terminated from her employment after she claimed voting leave to vote in the November 5, 2024 election, but did not vote. Rather than correct this error, plaintiff instead certified that her use of voting leave was true and accurate, until such time as it was discovered by Defendant. Plaintiff's employment was terminated as a result of this violation of the Code of Judicial Conduct.

**App. 47**

Plaintiff now claims that pursuant to the New Mexico Administrative Code, 1.7.12.25, she was due additional process before her termination. *See* Doc. 2, generally. However, this complaint has been mooted by the fact that on February 4, 2025, the Workers' Compensation Administration ("WCA") served, via hand delivery and certified mail, a complaint to the State Personnel Board regarding the basis for plaintiff's termination, in accordance with NMSA 1978, § 52-5-2(C). *See Complaint Pursuant to NMSA 1978, 52-5-2(C) RE: Shanon Riley* , attached hereto as **Exhibit A**. Plaintiff has also been reinstated to her former position and placed on paid administrative leave pending the State Personnel Board proceedings. *See Letter of* Reinstatement, attached hereto as **Exhibit B.** Accordingly, plaintiff will receive all the process she claims she is due. Because Defendant has voluntarily addressed each of the concerns identified in plaintiff's request for injunctive relief, plaintiff's request is moot.[1] In addition, plaintiff cannot establish any of the remaining elements that would entitle her to injunctive relief. Finally, this Court should abstain from wading into a pending state administrative proceeding in accordance with *Younger* abstention principles. Accordingly, plaintiff's Motion should be denied.

## Argument  & Authorities

### A.  Plaintiff's claim for injunctive relief is moot

The Court lacks subject matter jurisdiction over a moot case. *Unified Sch. Dist. No. 259 v. Disability Rights Ctr. Of Kan.,* 491 F.3d 1143, 1146-47 (10th Cir. 2007). "Mootness is a

---

[1] In undertaking these actions, Defendant in no way concedes that the initial termination of plaintiff without first following this specific procedure—which is designed for handling complaints from members of the public—was improper. *See Roberts v. Winder*, 16 F.4th 1367, 1380 (10th Cir. 2021) (finding no procedural due process violation when employer informed employee his rank and pay would be reduced and subsequently sent letter to employee's counsel rejecting his grievance and explaining termination); *West v. Grand Cnty.*, 967 F.2d 362, 368 (10th Cir. 1992) ("A brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of *Loudermill*."). Rather, this was simply done out of an abundance of caution.

**App. 48**

threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Disability Law Ctr. v. Millcreek Health Ctr.,* 428 F.3d 992, 996 (10th Cir. 2005) (internal quotation marks and citation omitted). This is true of actions for declaratory and injunctive relief. *Unified Sch. Dist. No. 259*, 491 F.3d at 1147. "The crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world." *Wyoming v. U.S. Dep't. of Agric.*, 414 F.3d 1174, 1182 (10th Cir. 2000).

The WCA's actions in filing a complaint with the State Personnel Board and reinstating plaintiff to her former position have mooted plaintiff's current complaints regarding due process. "[A]llegations of legal wrongdoing must be grounded in a concrete and particularized factual context; they are not subject to review as free-floating, ethereal grievances." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1111 (10th Cir. 2010). Because she has been reinstated and will be given all of the process requested in her Motion, plaintiff can no longer point to "some concrete and ongoing injury." *Id*. at 1112. Plaintiff raises no additional concerns beyond wanting the process that the WCA has now provided. The WCA's subsequent actions places the parties in the same situation as those addressed by the Tenth Circuit in *Rio Grande Silvery Minnow*: "[W]e are not situated to issue a *present* determination with real-world effect because those regulations no longer are operational-for all material purposes, they no longer exist." *Id*. at 1113 (emphasis in original).

None of the exceptions to the mootness doctrine are applicable to this case. The first recognized exception to mootness is for disputes capable of repetition yet evading review, which occur when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016) (internal quotation marks and citation omitted). The second recognized exception is for cases in

3

which the defendant voluntarily ceases the challenged conduct. *See N.M. Health Connections*, 946 F.3d at 1159. The purpose behind this exception is to counteract gamesmanship aimed at mooting a case before resuming the illegal conduct. *Id.* Thus, the exception does not apply if it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotation marks and citation omitted). In this vein, "although governmental defendants might take action as a direct response to litigation, . . . self-correction again provides a secure foundation for mootness so long as it seems genuine." *Rio Grande Silvery Minnow*, 601 F.3d at 1118 (quoting 13C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3533.7 (3rd ed. 2008)).

Here, there is no reasonable expectation that the WCA will not proceed in accordance with the applicable NMAC provisions regarding the State Personnel Board proceeding. *See Rio Grande Silvery Minnow,* 601 F.3d at 1116 n.15 ("[I]n a mootness analysis courts must undertake to make predictions, including as to the probability of recurrence, and that the process of prediction also is shaped by the character of the defendant—claims of discontinuance by public officials are more apt to be trusted than like claims by private defendants[.]" (internal quotation marks and citation omitted)). Accordingly, this Court should deny plaintiffs' requests for preliminary injunctive relief as moot. *See Valdez v. Lujan Grisham*, 2024 WL 2319752, at *3 (10th Cir. May 22, 2024) (finding case moot when the plaintiff could not be subject to a challenged vaccine requirement that has been rescinded and there is no evidence that it would be reimposed (citing *Robert v. Austin*, 72 F.4th 1160, 1164-65 (10th Cir. 2023)); *S. Wind Women's Ctr. LLC v. Stitt*, 823 Fed. Appx. 677, 680 (10th Cir. 2020) (concluding that an appeal from a preliminary injunction enjoining Oklahoma from enforcing parts of an executive order as it related to abortions was moot because the order's abortion restrictions expired shortly after the

**App. 50**

district court granted the preliminary injunction and "Oklahoma no longer seeks to do what the injunction prohibits").[2]

### B.  The Court should abstain from addressing plaintiff's claims under the *Younger* abstention doctrine

Under the *Younger* abstention doctrine, "federal courts should not interfere with state court proceedings' by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when the state forum provides an adequate avenue for relief." *ETP Rio Rancho Park, LLC v. Lujan Grisham*, 522 F. Supp. 3d 966, 1007 (D.N.M. 2021); *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001). A federal court must abstain when: (1) there is an ongoing state administrative proceeding; (2) the state provides an adequate forum to hear the claims; and (3) the proceeding involves important state interests. See *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 711 (10th Cir. 1989).

All three conditions are met here. First, plaintiff's disciplinary proceeding has been submitted to the New Mexico State Personnel Board, which is reviewing the matter pursuant to NMSA 1978, § 52-5-2(C) (2004), and New Mexico Administrative Code, 1.7.12.25. Disciplinary proceedings qualify for *Younger* deference. See *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) (applying *Younger* abstention to state bar disciplinary proceedings). That this process began after Plaintiff filed the instant action is of no moment. *See*

---

[2] That Defendant does not concede that the initial termination of plaintiff without going through this process was improper is of no moment. *See Brown*, 822 F.3d at 1177 ("But if the allegedly unlawful conduct cannot 'reasonably be expected to recur,' it does not matter that the prosecutor ruled out prosecution because he wished to prevent adjudication of the federal claim on the merits. Either a live controversy exists, or it does not. Federal courts may not exercise jurisdiction over a case simply because the defendant wished the suit to end when ceasing his or her allegedly unlawful conduct.").

**App. 51**

*Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (holding that "the principles of *Younger v. Harris* should apply in full force" where a state proceeding is instituted after the federal complaint is filed "but before any proceedings of substance on the merits have taken place in the federal court"). Accordingly, the first condition is met.

The second condition (i.e., the state provides an adequate forum to hear the claims raised in the federal complaint) is also met. The allegations that led to plaintiff's termination have been submitted to the State Personnel Board, which will initiate the hearing process by first submitting the allegations to plaintiff and allowing her the opportunity to file an answer with a hearing officer. 1.7.12.25(D) NMAC. After the parties submit a proposed pre-hearing order containing a statement of any contested facts and issues, stipulation of those matters not in dispute, the identity of all witnesses to be called and a brief summary of their testimony, a list of exhibits, and requests for subpoenas, the hearing officer will set the matter for a hearing. 1.7.12.25(E). The hearing is subject to the rules of evidence that govern proceedings in state courts and is normally open to the public in addition to being recorded. 1.7.12.25(G). Regulations expressly provide that the workers' compensation judge "shall have the right and reasonable opportunity to defend against the charges by the introduction of evidence, to be represented by counsel and to examine and cross-examine witnesses." *Id.* Following the hearing, the officer will submit to the parties a report with a brief statement of the proceedings, a summary of the evidence, and findings with respect to the allegations. 1.7.12.25(I). The parties then have an opportunity to file objections before the officer submits his report and the record to the State Personnel Board, which will review report and record, make findings as to whether there was a violation of the code of judicial conduct, and transmit its findings to the director of the WCA to issue a final decision. 1.7.12.25(K).

**App. 52**

This process will give plaintiff an adequate forum to raise the allegations at the heart of her complaint: that she did not, in fact, violate the code of judicial conduct when she took voting leave without actually voting and therefore she should not have been terminated. Accordingly, the second condition is met. *See, e.g.*, *ETP Rio Rancho Park*, 517 F. Supp. 3d at 1249 (finding regulations that provide a "right to a notice, a hearing, discovery, witnesses, representation by counsel, records, a written report, and final decision" adequate to give the plaintiff "an adequate opportunity to raise the federal claims"); *see also Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 77 (2d Cir. 2003) (finding that disciplinary proceedings against a judge provided an adequate opportunity to raise federal claims).

The third condition (i.e., that the state proceedings involve important state interests) is likewise satisfied. It cannot be gainsaid that the State of New Mexico has an important interest in maintaining the integrity of its judiciary. Thus, the issue of whether plaintiff should continue to serve as a workers' compensation judge and adjudicate claims after she apparently committed time fraud is sufficiently important to warrant *Younger* abstention. *Cf. Middlesex*, 457 U.S. at 434 ("The State of New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses."); *Spargo*, 351 F.3d at 81 (finding *Younger* abstention necessary for disciplinary proceedings against state judge); *Weitzel*, 240 F.3d at 876 ("[T]here is no question that the licensing and discipline of physicians involve important state interests[.]" (cleaned up)); *see generally Williams-Yulee v. Florida Bar*, 575 U.S. 433, 445 (2015) ("We have recognized the vital state interest in safeguarding public confidence in the fairness and

**App. 53**

integrity of the nation's elected judges." (cleaned up)). Since all three conditions are met, the Court

should (and must) abstain. *See Seneca-Cayuga Tribe*, 874 F.2d at 711.[3]

### C.  Plaintiff cannot establish that she is entitled to preliminary injunctive relief

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule."

*Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (internal quotation

marks and citation omitted). To obtain preliminary injunctive relief, plaintiffs must show that "(1)

the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury

to the moving party outweighs whatever damage the proposed injunction may cause the opposing

party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a

substantial likelihood that the moving party will eventually prevail on the merits." *Resolution Trust*

*Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). "The third and fourth factors 'merge' when,

like here, the government is the opposing party." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir.

2020). Because preliminary injunctive relief is an "extraordinary remedy, . . . the right to relief

must be clear and unequivocal." *Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir.

2006). The movant *must* satisfy his or her burden for *each* one of these prerequisites. *See Diné*

*Citizens Against Ruining Our Env't*, 839 F.3d 1276, 1281-82 (10th Cir. 2016). Additionally, "any

preliminary    injunction    fitting    within    one    of    the    disfavored    categories    [of    preliminary

---

[3] The only exceptions are "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." *Weitzel*, 240 F.3d at 876. No such circumstances are present here, as there is no evidence that Defendant's initiation of the procedure contemplated in Section 52-5-2(C) was taken to harass plaintiff or in bad faith. To the contrary, Defendant initiated this process to address the very issues at the heart of plaintiff's complaint (i.e., an alleged lack of procedural due process). That plaintiff alleges constitutional violations does not change this conclusion. *See Gauntlett v. Cunningham*, 171 Fed. Appx. 711, 715 n.3 (10th Cir. 2006) (declining to consider the allegation of due process violations as an "extraordinary circumstance" warranting an exception to abstention).

**App. 54**

injunctions, such as the one in the instant case,] must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course[,]" and "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms[.]" *O Centro Espirita Beneficente Uniao do Vegetal ("O Centro") v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004); *see* Doc. 2 at 4 (admitting that plaintiff seeks a disfavored injunction).

    1.  Plaintiff cannot demonstrate irreparable harm

In the present case, the WCA has already acted to provide plaintiff with all of the process she claims she is due pursuant to Section 52-5-2(C), and New Mexico Administrative Code, 1.7.12.25.[4]  Accordingly, she cannot establish that she will suffer any harm, much less irreparable harm.  *See McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) ("[A] procedural due process violation is not complete 'unless and until the State fails to provide due process.' In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).

    2.  Plaintiff cannot demonstrate a likelihood of success on the merits

Defendant disputes the merits of plaintiff's procedural due process claim. *See supra* note 1. However, the Court need not address plaintiffs likelihood of succeeding on this issue since the

---

[4] To the extent plaintiff may claim she is entitled to greater relief, such a claim goes beyond any procedural protections afforded by New Mexico law, which does not prohibit putting plaintiff on administrative leave pending the State Personnel Board's hearing process, *see* § 52-5-2(C); 1.7.12.25 NMAC, or the constitution. *See Hulen v. Yates*, 322 F.3d 1229, 1248 (10th Cir. 2003) (rejecting argument that tenured professor was entitled to formal hearing before being fired and observing that "this circuit has required only the core of notice and an opportunity to be heard").

**App. 55**

WCA has taken action that has mooted plaintiff's requested injunctive relief and because plaintiff will be given all the process that she has requested and is due.  Plaintiff's substantive due process claim—which they do not even develop in their motion—likewise fails as a matter of law.  *See Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 599 (2008) "[T]he Due Process Clause does not protect a public employee from discharge, even when such discharge was mistaken or unreasonable." (citing *Bishop v. Wood*, 426 U.S. 341, 350 (1976)).  Instead, a public employee with a property interest in continued employment has substantive due process right only from termination for arbitrary or capricious reasons.  *See Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998).  This requires analysis of whether a governmental action is arbitrary, irrational, or shocking to the contemporary conscience. *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200-01 (10th Cir.  2003).  Here, plaintiff claims that Defendant's determination that plaintiff's use of voting leave when she did not vote, and then failure to correct that action, constituted a violation of the Code of Judicial Conduct was arbitrary. *See* Doc. 1 at Count II.  However, even if plaintiff is correct that her actions did not violate the Code of Judicial Conduct, Defendant's decision is not one that "shock[s] the conscience of federal judges."  *Collins v. City of Harker Heights*, 503 U.S. 115, 126.  To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).  Instead, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id*.  "The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct." *Id*.  Defendant's determination that plaintiff's actions violated the Code of Judicial Conduct simply do not meet this

exacting standard. *See Reams v. City of Frontenac, Kansas*, 587 F. Supp. 3d 1082, 1100 (D. Kan. 2022) (explaining high bar of showing conscious shocking behavior in public employee termination case).

**<u>Conclusion</u>**

For the foregoing reasons, Defendant respectfully requests that this Court deny plaintiff's Motion, and for such other and further relief as the Court deems appropriate.

Respectfully submitted,


**SERPE | ANDREWS, PLLC**

By *<u>/s/ Cody R. Rogers</u>*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
***Attorneys for Defendant***


**<u>CERTIFICATE OF SERIVE</u>**

I hereby certify that on this 6th day of February, 2025, I filed the foregoing through this Court's CM/ECF e-filing system and caused a true and correct copy of the same to be served upon all parties of record as reflected more fully in the electronic Notification of Service.

*<u>/s/ Cody R. Rogers</u>*
Cody R. Rogers

**App. 57**

State of New Mexico
# Workers' Compensation Administration

**Michelle Lujan Grisham**
Governor

**Heather Jordan**
Director

February 4, 2025

New Mexico State Personnel Board
Adjudication Division
2600 Cerrillos Road
Santa Fe, NM 87505

Via Hand Delivery and certified mail          9171 9690 0935 0155 4670 14

## COMPLAINT PURSUANT TO NMSA 1978, 52-5-2(C)
## RE: SHANON RILEY

1.      This complaint is filed pursuant to NMSA 1978, §52-5-2(C) (2004), which states that complaints shall be filed with the State Personnel Board, and pursuant to Rule 1.7.12.25(A) NMAC, which states that "[t]he {State Personnel Board's] duly appointed hearing officer shall hear all complaints filed in accordance with the provisions of NMSA 1978, § 52-5-2(C)."

2.      On or about August 20, 2011, Shanon Riley was appointed to an initial one-year term as a workers' compensation judge of the Workers' Compensation Administration (NM WCA).

3.      Shanon Riley was reappointed to subsequent five-year terms in August 2012, August 2017 and, as relevant here, she was appointed to her most current five-year term on August 4, 2022. (Exhibit 1 hereto is a true and correct copy of the August 4, 2022 reappointment letter.)

4.      Pursuant to §52-5-2(C), Shanon Riley's conduct, while acting as a workers' compensation judge, was to conform to all Canons of New Mexico Code of Judicial Conduct.

5.      On October 17, 2024, the New Mexico State Personnel Office issued an "Interpretive Memorandum 2024-00" which, as relevant here, permitted State of New Mexico employees the opportunity to take administrative leave for purposes of in-person voting. Per the Memorandum, voting leave was required to be sought and approved in advance; use of voting leave may be audited; and abuse of voting leave could result in discipline up to and including dismissal. (Exhibit 2 hereto is a true and correct copy of the Interpretive Memorandum 2024-00.)

6.      An election was held on November 5, 2024.

7.      Shanon Riley sought and was approved to use voting leave per a leave request form signed by Shannon Riley and approved by her supervisor on November 5, 2024. (Exhibit 3 hereto is a true and correct copy of the voting leave request and approval.)

8.     Shanon Riley's time entry for November 5, 2024 into the State of New Mexico's Share system included two hours of voting leave. (Exhibit 4 is a true and correct copy of Shanon Riley's time sheet for the week embracing November 5, 2024.)

9.     According to New Mexico Secretary of State voting records, which are available to the New Mexico Workers' Compensation Administration (NM WCA) for purposes of verifying employee usage of voting leave, Shanon Riley did not vote on November 5, 2024. (Exhibit 5 hereto is a true and correct copy of the New Mexico Secretary of State voting record for Shanon Riley provided to the NM WCA.)

10.    Shanon Riley did not change her time sheet in the Share system despite entering voting leave for 2 hours but failing to vote, and despite having until at least November 6, 2024 through 5:00 p.m. to enter time for the applicable pay period and until November 7, 2024 through 5:00 p.m. to make any corrections. (Exhibit 6 is a true and correct copy of an email from NM WCA human resources to all employees advising of the time entry and approval deadlines.)

11.    Shanon Riley certified in her time entry in Share by affirming the following statement: "I certify that the time reported is a true and accurate representation of the time worked in the period."

11.    Shanon Riley's conduct as described herein may violate the New Mexico Canons of Judicial Conduct, including but not limited to Rule 21-100, Canon 1 NMRA; Rule 21-101 NMRA; and Rule 21-102 NMRA.

12.    Pursuant to NMSA 1978, §52-5-2(C), and Rule 1.7.12.25 NMAC, this matter is hereby submitted to State Personnel Board and its duly appointed hearing office for appropriate action.

13.    Pursuant to and consistent with Rule 1.7.12.15 NMAC, the NM WCA requests (a) an administrative proceeding and hearing before a State Personnel hearing officer; (b) that the report of the hearing officer and any record made before the hearing officer be forwarded to the State Personnel Board for it to make its findings as to whether there was a violation of any New Mexico Canon of Judicial Conduct; and (c) the Board thereafter transmit its findings to the Director of the NM WCA.

Respectfully submitted,

Catherine Farrell

Catherine Farrell,
NM WCA Human Resource Manager

Enc: Exhibits 1-6



State of New Mexico
## WORKERS' COMPENSATION ADMINISTRATION

**MICHELLE LUJAN GRISHAM**
**GOVERNOR**

**ROBERT E. DOUCETTE, JR.**
**DIRECTOR**

August 4, 2022

The Honorable Shanon Riley
Workers' Compensation Judge
2410 Centre Ave. SE
Albuquerque, NM 87106
*VIA HAND DELIVERY*

### Re: Reappointment

Dear Judge Riley:

Pursuant to NMSA 1978, §52-5-2(B), and after review of your performance, it is my pleasure to reappoint you to a new five-year term as a workers' compensation judge. This term will begin at the expiration of your current term on August 20, 2020, and will expire five years thereafter.

I congratulate you on this reappointment and thank you for your service to the Administration and to the people of the State of New Mexico.

Sincerely,

Robert E. Doucette, Jr.
WCA Director

cc: Personnel File



App. 60

## Farrell, Catherine, WCA

| | |
|---|---|
| **From:** | Farrell, Catherine, WCA |
| **Sent:** | Friday, October 18, 2024 9:58 AM |
| **To:** | WCA-AllUsers |
| **Subject:** | FW: Interpretive Memorandum - Voting Admin Leave |
| **Attachments:** | Interpretive Memorandum 2024-001 Voting.pdf |

FYI....

**From:** Forlizzi, Denise M, SPO <DeniseM.Forlizzi@spo.nm.gov>
**Sent:** Thursday, October 17, 2024 1:35 PM
**To:** Forlizzi, Denise M, SPO <DeniseM.Forlizzi@spo.nm.gov>
**Subject:** Interpretive Memorandum - Voting Admin Leave

Good afternoon,

Please see the attached for your reference and use.

Kind Regards,



**Denise M. Forlizzi**| Special Assistant to the Director
State Personnel Office
DeniseM.Forlizzi@spo.nm.gov
505-365-3691
spo.state.nm.us

Resourceful · Responsive · Innovative



**Michelle Lujan Grisham**
*Governor*

**Dylan K. Lange**
*Director*


**NEW MEXICO**
**STATE PERSONNEL OFFICE**

**State Personnel Board**
Laura A. Liswood, *Chair*
Carol A. Parker, *Vice Chair*
David F. Cunningham, *Member*
Sandra D. Lopez, *Member*
Fred Radosevich, *Member*

Address: 2600 Cerrillos Road, Santa Fe, NM 87505-3258
Phone: (505) 476-7759 | Fax: (505) 476-7949 | Web: https://www.spo.state.nm.us/

# Interpretive Memorandum 2024-001

**Date:**      October 17, 2024

**To:**        Cabinet Secretaries, Agency Heads, and HR Managers

**From:**      Dylan Lange, Director

**Subject:**   Administrative Leave for Voting

## Purpose

The State encourages all employees to exercise their right to vote. This Memorandum shall serve to interpret the application of State Personnel Board Rules and the New Mexico Administrative Code (NMAC) regarding the granting of administrative leave for voting.

## Background

State Personnel Board Rule (1.7.7.14 NMAC) provides:

C.    Employees who are registered voters may absent themselves from work for two hours for the purpose of voting between the time of the opening and the time of the closing of the polls. The employer may specify the hours during the period in which the voter may be absent. This leave is not available to employees whose workday begins more than two hours subsequent to the time of opening the polls, or ends more than three hours prior to the time of closing the polls. This leave is only available for those elections listed in Subsection A of Sections 1-12-42 and 1-1-19 NMSA 1978 and does not apply to absentee or early voting.

## Covered Elections

The following statutory elections apply to administrative leave for voting:

NMSA 1978, § 1-1-19. Elections covered by code.

    A. The Election Code applies to the following:
      (1) general elections;
      (2) primary elections;
      (3) special elections;
      (4) elections to fill vacancies in the office of United States representative;
      (5) local elections included in the Local Election Act; and
      (6) recall elections of county officers, school board members or applicable municipal officers.

    B. To the extent procedures are incorporated or adopted by reference by separate laws governing such elections or to the extent procedures are not specified by such laws, certain provisions of the Election Code shall also apply to special district elections not covered by the Local Election Act [Chapter 1, Article 22 NMSA 1978].

NMSA 1978, § 1-12-42. Conduct of election; employees; time to vote.

    A. On election.day a voter may absent themself from employment in which they are engaged for two hours for the purpose of voting between the time of opening and the time of closing the polls. The voter shall not be liable to any penalty for such absence; however, the employer may specify the hours during this period in which the voter may be absent.

    B. The provisions of Subsection A of this section do not apply to an employee whose workday begins more than two hours subsequent to the time of opening the polls, or ends more than three hours prior to the time of closing the polls.

    C. The provisions of Subsection A of this section apply to elections of Indian nations, tribes or pueblos for a voter who is enrolled as a member of the Indian nation, tribe or pueblo and is qualified to vote in the election.

### Guidelines

    A. An employee utilizing administrative leave for voting shall use the Time Reporting Code "VOTES - Voting Time Paid."

    B. Pursuant to NMSA 1978, § 1-12-42(A) and 1.7.7.14 NMAC, administrative leave for voting is only available on Election Day and is not available for the purposes of early voting or absentee voting.

C. Administrative leave for voting must be requested and approved in advance. Managers and supervisors may specify the two hours between the time of opening and time of closing of the polls during which the voter may be absent.

D. An employee must have worked hours on Election Day to be eligible for administrative leave for voting.

E. Use of administrative leave for voting may be audited. Employees who abuse administrative leave for voting may be disciplined, up to and including dismissal.

###

## NEW MEXICO WORKERS' COMPENSATION ADMINISTRATION
## LEAVE REQUEST FORM

INSTRUCTIONS: Please PRINT all information as REQUIRED on form. INDICATE THE LEAVE IN HOURS ROUNDED TO THE NEAREST 15 MINUTES. Designate the date information with numerical characters.

**EMPLOYEE NAME:** Shanon S. Riley

**EMPLOYEE ID:** 0 0 0 3 0 4 4 2 4

**BUREAU:** Dispute Resolution

**LEAVE: Enter time usage in hours and minutes**

| TIME USAGE. | | BEGINNING | | | | | ENDING | | | | | Date of Request |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HOURS | Min | Time of Day | | Mo | Day | Yr | Time of Day | | Mo | Day | Yr | |
| 2 | | 3:00 | am ☒ pm | 11 | 5 | 2024 | 5:00 | am ☒ pm | 11 | 5 | 2024 | 11/05/2024 |

Click on Leave Type Box Below and Choose One Selection from the List:

Specify: **Voting**

Comments.

**EMPLOYEE'S SIGNATURE:** [signature]   **DATE** 11/5/2024

**SUPERVISOR'S SIGNATURE:** [signature]   **APPROVAL/DISAPPROVAL**   Date:

**LEAVE: Enter time usage in hours and minutes**

| TIME USAGE. | | BEGINNING | | | | | ENDING | | | | | Date of Request |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HOURS | Min | Time of Day | | Mo | Da | Yr | Time of Day | | Mo | Da | Yr | |
| | | | am pm | | | | | am pm | | | | |

Click on Leave Type Box Below and Choose One Selection from the List:

Specify

Comments

**EMPLOYEE'S SIGNATURE:**   **DATE:**

**SUPERVISOR'S SIGNATURE:**   **APPROVAL DISAPPROVAL**   Date:

**LEAVE: Enter time usage in hours and minutes**

| TIME USAGE. | | BEGINNING | | | | | ENDING | | | | | Date of Request |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HOURS | Min | Time of Day | | Mo | Day | Yr | Time of Day | | Mo | Day | Yr | |
| | | | am pm | | | | | am pm | | | | |

Click on Leave Type Box Below and Choose One Selection from the List:

Specify

Comments.

**EMPLOYEE'S SIGNATURE:**   **DATE:**

**SUPERVISOR'S SIGNATURE:**   **APPROVAL DISAPPROVAL**   Date:

** Director's signature required for ADMINISTRATIVE LEAVE AND LEAVE WITHOUT PAY

** **DIRECTOR'S SIGNATURE:** [signature] Dorothy Jordan   ☑ APPROVAL DISAPPROVAL   Date: 11-5-24

* FOR ILLNESS RELATED LEAVE

| * Nature of Illness | Illness in Immediate Family: Specify Relation |
|---|---|
| | |

**NAME OF ATTENDING PHYSICIAN:**

*A CERTIFICATE OF ILLNESS may be required

WCA-HR02840

**EXHIBIT 3**

# Timesheet

Date: 2024-11-06

Employee ID: 304424

Name: Sharon Riley

Department: Adjudication

HR Status: Active

Std Hours: 40

WorkGroup: EXHEXEMPT

Employee Record: 0

Jobcode:

Full/part-Time: Full-Time

Regular/Temp: Regular - PERM for State

Union Code: CN

## Timesheet Data:

| Day | Date | TRC | Quantity | Reported Status | Elements |
|---|---|---|---|---|---|
| Monday | 2024-11-04 | PRSNT | 8 | NA | PRSNT, H, MST, H, ONL, 0, 632000001 |
| Tuesday | 2024-11-05 | REGHR | 6 | NA | REGHR, H, GOVEX-FILE, MST, H, ONL, 0, 632000001, |
| Tuesday | 2024-11-05 | VOTES | 2 | NA | VOTES, H, MST, H, ONL, 0, 632000001, |
| Wednesday | 2024-11-06 | REGHR | 8 | NA | REGHR, H, GOVEX-FILE, MST, N, TCD, 0 632000001. |
| Thursday | 2024-11-07 | REGHR | 8 | NA | REGHR, H, GOVEX-FILE, MST, N, TCD, 0, 632000001. |
| Friday | 2024-11-08 | REGHR | 8 | NA | REGHR, H, GOVEX-FILE, MST, N, TCD, 0, 632000001, |

## Total Reported Hours :

| Day | 11/02 Sat | 11/03 Sun | 11/04 Mon | 11/05 Tue | 11/06 Wed | 11/07 Thu | 11/08 Fri | Total |
|---|---|---|---|---|---|---|---|---|
| Select valid alert program ID | 0.00 | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 40.00 |

I certify that the time reported is a true and accurate representation of the time worked in the period.

Employee Signature: _____

Date: _____

Approver1 Signature: _____

Date: _____

Approver2 Signature: _____

Date: _____

**EXHIBIT 4**

**App. 66**

SOS HOME PAGE                    VOTER INFORMATION PORTAL

Select Language ▼

# GENERAL 2024 11/05/2024 - Voter Registration Information

My Districts

My Polling Location

My Sample Ballot

My Absentee Application & Ballot Tracker

My Voting History

My County Clerk

Voter Name:
**SHANON S RILEY**
Residence Address:

| | |
|---|---|
| Voter ID: | **1654055** |
| Status | **Active** |
| Status Reason: | **Active Registrant** |
| Party: | **DEMOCRATIC** |
| Precinct Name: | **PCT 209** |
| ID Required for Voting: | **No** |

## My Voting History

| Election Date | Election Type | Election Name | Vote Type | Voted Where | |
|---|---|---|---|---|---|
| 06/07/2022 | Primary | 2022 PRIMARY | Election Day | VCC 15 - Petroglyph Plaza | View Results |
| 11/03/2020 | General | 2020 GENERAL | Absentee | | View Results |
| 11/06/2018 | General | 2018 GENERAL | Election Day | VCC 45 - Lyndon B Johnson Middle School | View Results |
| 11/08/2016 | General | GENERAL 2016 | Polling Place | VCC 35 - HERMAN SANCHEZ COMMUNITY CENTER | View Results |
| 11/04/2014 | General | GENERAL 2014 | Absentee | | View Results |
| 11/06/2012 | General | GENERAL 2012 | Polling Place | VOTING CONVENIENCE CENTER | View Results |
| 11/07/2006 | General | GENERAL ELECTION | Absentee | | View Results |
| 11/02/2004 | General | GENERAL ELECTION | Absentee | | View Results |
| 11/05/2002 | General | GENERAL - GUBERNATORIAL | Absentee | | View Results |
| 11/07/2000 | General | GENERAL - PRESIDENTIAL | Polling Place | | View Results |
| 06/02/1998 | Primary | PRIMARY - GUBERNATORIAL | Polling Place | | View Results |
| 01/14/1997 | Municipal | SPEC ALBUQUERQUE | Polling Place | | View Results |
| 11/05/1996 | General | GENERAL - PRESIDENTIAL | Polling Place | | View Results |

New Search

New Mexico Office of the Secretary of State

New Mexico Capitol Annex North / 325 Don Gaspar, Suite 300 / Santa Fe, NM 87501

(505) 827-3600 / (800) 477-3632 / Email SOS Elections

Visit Secretary of State Website    Contact your County Clerk    Voter Registration Information    Military & Overseas Voters Information



EXHIBIT 5

**App. 67**



# GENERAL 2024 11/05/2024 - Voter Registratio Information

My Districts

My Polling Location

My Sample Ballot

My Absentee Application & Ballot Tracker

My Voting History

My County Clerk

Voter Name
**SHANON S RILEY**
Residence Address

| | |
|---|---|
| Voter ID | **165405** |
| Status | **Active** |
| Status Reason. | **Active** |
| Party | **DEMO(** |
| Precinct Name. | **PCT 2(** |
| ID Required for Voting | **No** |

## My Voting History

| Election Date | Election Type | Election Name | Vote Type | Voted Where |
|---|---|---|---|---|
| 06/07/2022 | Primary | 2022 PRIMARY | Election Day | VCC 15 - Petroglyph Plaza |
| 11/03/2020 | General | 2020 GENERAL | Absentee | |
| 11/06/2018 | General | 2018 GENERAL | Election Day | VCC 45 - Lyndon B Johnson Middle Schoo' |
| 11/08/2016 | General | GENERAL 2016 | Polling Place | VCC 35 - HERMAN SANCHEZ COMMUNITY CENTER |
| 11/04/2014 | General | GENERAL 2014 | Absentee | |
| 11/06/2012 | General | GENERAL 2012 | Polling Place | VOTING CONVENIENCE CENTER |
| 11/07/2006 | General | GENERAL ELECTION | Absentee | |
| 11/02/2004 | General | GENERAL ELECTION | Absentee | |
| 11/05/2002 | General | GENERAL - GUBERNATORIAL | Absentee | |
| 11/07/2000 | General | GENERAL - PRESIDENTIAL | Polling Place | |
| 06/02/1998 | Primary | PRIMARY - GUBERNATORIAL | Polling Place | |
| 01/14/1997 | Municipal | SPEC ALBUQUERQUE | Polling Place | |
| 11/05/1996 | General | GENERAL - PRESIDENTIAL | Polling Place | |

**App. 68**

**Farrell, Catherine, WCA**

| | |
|---|---|
| **From:** | Gurule-Sers, Pauline, WCA |
| **Sent:** | Wednesday, November 6, 2024 8:41 AM |
| **To:** | WCA-AllUsers |
| **Subject:** | HOLIDAY PAYROLL SCHEDULE : Time Entry for Week 2 of PPE ending 11/8/2024 |

**Importance:**    High



shutterstock.com · 2358328085

## *DUE TO THE UPCOMING HOLIDAY*

Hello 😊

Please make sure to enter your time no later than 5 pm Today, **Wednesday November 6,2024 *** Supervisors/Managers will need to approve all time sheets no later than noon, **Thursday November 7,2024**

**\*\*\* If any changes need to be made to your timesheet after 5:00 p.m. on Thursday notification is required to your Supervisor and HR  As Soon As Possible\*\*\***

**\* Please use the Comment bubbles to indicate any special leave granted such as Administrative Leave, Parent-Teacher Conferences, Inclement Weather, Bereavement Leave, Extra Hours and Call Back Hours worked, Wellness and Fitness etc.\*\***

**EXHIBIT**

**6**

**App. 69**



# State of New Mexico

Michelle Lujan Grisham
*Governor*

February 6, 2025

Shanon Riley
5305 Canada Vista Pl NW
Albuquerque, NM 87120

Dear Ms. Riley:

This letter is to notify you that effective February 15, 2025, you are hereby reinstated into your position as a Workers Compensation Judge with the NM Workers Compensation Administration.

Your rate of pay will be $194,597.23.

As an at-will exempt employee, you will serve at the pleasure of the Office of the Governor.

This is also your notification that effective immediately upon your reinstatement, you are placed on paid administrative leave pursuant to the recently filed State Personnel Board Complaint dated February 4, 2025. During this time that you are on paid administrative leave you are not to represent yourself to any person as a representative of the NM Workers Compensation Administration (NMWCA) or to perform any job duties on behalf of the NMWCA. You are not to gain access to any NMWCA computer, electronic mail account or office facility without my express permission. You are not to access the PeopleSoft-SHARE system. You are not to contact any member of the NMWCA staff, other than Cathy Farrell, while you are on paid administrative leave.

☐  I accept the reinstatement at the offered salary stated above:

_____

☐  I decline the position reinstatement offered to me at the WCA.

Date: _____

Sincerely,

Heather Jordan
Executive Director

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**SHANON S. RILEY,**

       **Plaintiff,**

**v.**                                                     **No. 1:25-cv-00044-KWR-KK**

**HEATHER JORDAN, in her individual**
**and official capacities as the Director**
**of the New Mexico Workers'**
**Compensation Administration,**

       **Defendant.**

**REPLY TO RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., hereby respectfully submits this Reply in support of Plaintiff's Motion for Preliminary Injunction (Doc. 2), filed Jan. 14, 2025. In addition to arguing that Plaintiff's claim for injunctive relief is factually inadequate, Defendant argues that Plaintiff's motion is moot and barred by *Younger* abstention.[1] *See* Defendant's Response in Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. 8), filed Feb. 6, 2025 ("Response"). As discussed below, Defendant's arguments are misplaced.

**FACTUAL BACKGROUND**

After Plaintiff filed her Complaint and Motion for Preliminary Injunction on January 14, 2025, Defendant half-heartedly attempted to rectify the ongoing violation of Plaintiff's constitutional rights. On February 6, 2025, the Workers' Compensation Administration (WCA) did what should have been done months ago—it filed a complaint with the State Personnel Board (the "Board") alleging that Plaintiff's trivial timesheet error in the SHARE system amounted to a

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

**App. 71**

violation of the Code of Judicial Conduct. *See* (Doc. 8-1), filed Feb. 6, 2025. Shortly after the WCA filed the complaint, Defendant sent Plaintiff an offer of reinstatement. (Doc. 8-2), filed Feb. 6, 2025. According to the offer, Plaintiff would be reinstated and immediately placed on paid administrative leave while the Complaint to the Board was pending. *Id.*

The offer of reinstatement also imposed several conditions upon Plaintiff if she agreed to its terms. First, Plaintiff would be considered "an at-will exempt employee" to "serve at the pleasure of the Office of the Governor." *Id.* This provision clearly contradicts New Mexico law mandating that violation of the Code of Judicial Conduct "shall be exclusive grounds for dismissal" prior to the expiration of a Workers' Compensation Judge's term, NMSA 1978, § 52-5-2(C), and the elaborate hearing procedures specified by the New Mexico Administrative Code when a complaint is filed against a WCJ, *see* 1.7.12.25 NMAC. The offer of reinstatement also bars Plaintiff's contact with "any member of the NMWCA staff, other than Cathy Farrell," while she is on paid administrative leave. (Doc. 8-2). This provision violates Plaintiff's First Amendment rights to freedom of speech and association.

Essentially, the offer requires Plaintiff to give up her protected property interest in continued employment as defined by state law, her right to the hearing procedures provided by the New Mexico Administrative Code, and her First Amendment protections. It is well established that the government may not condition an offer of employment on a basis that infringes the prospective employee's constitutionally protected interests. *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972) (collecting cases).

For these reasons, Plaintiff rejected the WCA's offer of reinstatement. On February 14, 2025, Plaintiff's counsel returned Defendant's offer of reinstatement with Plaintiff's response. *See* Rejection Letter, attached hereto as Exhibit 1. Plaintiff checked the box declining the position

**App. 72**

reinstatement offer and included her signature and the date. *Id.* The body of the email clarified Plaintiff's objections to the reinstatement offer, including that it would strip Plaintiff of her statutory protections, constitutional rights, and her ability to resolve pending cases. Rejection Email, attached hereto as Exhibit 2. The email also clarified that Plaintiff was not resigning from her position as a WCJ or waiving her entitlement to full reinstatement and would continue to pursue a preliminary injunction ordering the WCA to fully reinstate Plaintiff on favorable terms. *Id.*

<u>**LEGAL ARGUMENT**</u>

**A.  Plaintiff's claim for injunctive relief is <u>not</u> moot.**

**1.  Plaintiff has not been reinstated as a WCJ.**

Defendant argues that Plaintiff's motion is moot because Plaintiff has been reinstated "and will be given all of the process requested in her Motion[.]" Response, at 3. As discussed above, however, Plaintiff rejected the WCA's existing offer of reinstatement. Accordingly, her preliminary injunction cannot be moot on that basis.

Even assuming, for the sake of argument, that Plaintiff accepted Defendant's unconstitutional conditions of reinstatement, that would still be insufficient to moot Plaintiff's claims. The purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). There are some injunctions that "disturb the status quo and those that do not." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005). To determine the status quo, the Court looks to the "last peaceable uncontested status existing between the parties before the dispute developed[.]" *Id.* (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948, at 136 (2d ed.1995)). For example, in *Schrier*, a tenured professor was summarily terminated from his position as department chair and sought injunctive relief to be reinstated to his position. *Id.* at 1257,

1260. The Tenth Circuit reasoned that the last peaceable uncontested status between the parties was when the professor was still serving as department chair. *Id.* at 1260. Thus, the professor's request for injunctive relief sought to preserve the status quo. *Id.*

Here too, Plaintiff's Motion—while mandatory in nature—seeks to return Plaintiff to the last peaceable uncontested status existing between Plaintiff and Defendant *before* Plaintiff was terminated without due process. That is, Plaintiff seeks to return to her position as a WCJ where she can attend to pending matters, speak to her co-workers, and fulfill her duties to the end of her five-year term. Rather than returning Plaintiff to her previous status as a full-time employee, Defendant has chosen to place Plaintiff on administrative leave and block her communications with her co-workers. Defendant has also attempted to coerce Plaintiff to agree to at-will employment in blatant contradiction of Section 52-5-2(C). Although Defendant refuses to restore the status quo, the Court may nonetheless do so. Because the Court may still afford Plaintiff relief, Defendant's offer of reinstatement cannot moot Plaintiff's Motion.

## 2.   The Board Lacks Jurisdiction to Adjudicate Plaintiff's Claims

Similarly, the pending proceeding before the Board does not moot Plaintiff's Motion. The Board lacks subject matter jurisdiction to hear any claim against Plaintiff. The New Mexico Administrative Code permits the board's duly appointed hearing officer to hear complaints only when "filed in accordance with the provisions of NMSA 1978, Section 52-5-2(C)." In turn, Section 52-5-2(C) mandates that "complaints against a **workers' compensation judge** shall be filed with the state personnel board[.]" (emphasis added). Plaintiff is no longer a WCJ, she was not a WCJ when the WCA filed its Complaint, she has not been reinstated to her position as a WCJ, and she does not intend to accept the WCA's offer of reinstatement. Neither the Board nor its hearing

officer have jurisdiction to hear any complaint filed against Plaintiff,[2] and Plaintiff retains her claim to a proper hearing.

### B. *Younger* abstention does not apply.

For the federal court to abstain from exercising jurisdiction over pending state proceedings, the following requirements must be met:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019). The doctrine has no application here.

First, as discussed above, there is no ongoing state administrative proceeding because the State Personnel Board lacks jurisdiction over Plaintiff.

Second, even assuming the Board has jurisdiction in this matter, the Board cannot provide an adequate forum to hear the claims asserted in Plaintiff's federal complaint. There is a fundamental difference between the proceedings in federal court and the proceedings before the Board. In her federal case, Plaintiff alleges that she was terminated without due process of law in violation of the United States Constitution and seeks to enjoin the ongoing deprivation of her constitutional rights. In contrast, the Complaint filed with the Board alleges that Plaintiff violated the New Mexico Canons of Judicial Conduct. It is silent regarding her rights to due process of law. The Board cannot provide Plaintiff the relief she seeks in federal court.

More importantly, the Board lacks authority to adjudicate Plaintiff's constitutional claims in the first place. "The Board is a public administrative body created by statute[,]" and it "is limited to the power and authority expressly granted or necessarily implied by statute[.]" *Martinez v. N.M.*

---

[2] On February 17, 2025, Plaintiff filed a Motion with the Board arguing that the complaint against Plaintiff should be dismissed for lack of jurisdiction.

*State Eng'r Office*, 2000-NMCA-074, ¶ 22, 129 N.M. 413, 9 P.3d 657. Section 52-5-2(B) states that "Workers' compensation judges shall not be subject to the provisions of the Personnel Act except as provided by Subsection C of this section." Subsection C is largely silent on the Personnel Act, requiring only that "complaints against a workers' compensation judge shall be filed with the state personnel board, which shall report its findings to the director." § 52-5-2(C). Thus, the Board derives its statutory authority from the Personnel Act, and that authority—to the extent it deals with WCJs—is limited to hearing complaints filed against them. Furthermore, given that dismissal of a WCJ is only appropriate for violations of the Code of Judicial Conduct, the Board's authority over WCJs is further constrained to resolving complaints for violations of the Code of Judicial Conduct. It cannot adjudicate Plaintiff's constitutional claims.

Third, Plaintiff does not disagree that the Board's resolution of the complaint likely involves important state interests that are typically resolved under state law. After all, Section 52-5-2(C) expressly contemplates the Board's jurisdiction over these issues. But given that there is no relationship between Plaintiff's federal complaint and the WCA's complaint before the Board, this inquiry is irrelevant.

### C.  Plaintiff has clearly established an entitlement to preliminary injunctive relief.

Plaintiff has presented overwhelming evidence that she is entitled to preliminary injunctive relief.[3] Defendant correctly notes that there are four requirements for a preliminary injunction— "(1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4)

---

[3] Plaintiff intentionally avoided discussing her substantive due process claim in the Motion for Preliminary Injunction. Given the strength of Plaintiff's procedural due process claim, that violation alone is sufficient for the Court to grant Plaintiff's requested injunctive relief.

there is a substantial likelihood that the moving party will eventually prevail on the merits." Response, at 8 (quoting *Resolution Tr. Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992)).

### 1. Factors (2) and (3)

Curiously, Defendant does not specifically contest factors (2) and (3), likely because she would be hard pressed to do so. As Plaintiff argued in her initial motion, "'when a constitutional right hangs in the balance,' as it does here '"even a temporary loss" usually trumps any harm to the defendant.'" (Doc. 2), at 8 (quoting *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (2019)). Moreover, there would be virtually no damage to Defendant in reinstating Plaintiff, as she is a competent, knowledgeable, and experienced WCJ. Her reinstatement would *benefit* the public interest, by maintaining public confidence in the WCA and the state's administrative disciplinary procedures and allowing Plaintiff to resolve her pending cases. *See also Free the Nipple-Fort Collins*, 916 F.3d at 807 (reasoning that it is "always in the public interest to prevent the violation of a party's constitutional rights").

### 2. Factors (1) and (4)

Although Defendant contests factors (1) and (4), her arguments are unavailing. First, Defendant argues that its belated provision of process negates Plaintiff's ability to demonstrate irreparable harm. Response, at 9. To support her poor argument, Defendant contorts the Eleventh Circuit's decision in *McKinney v. Pate* to stand for a clearly false proposition: that a government actor may deprive a person's constitutionally protected property interest without notice and an opportunity to be heard and remedy the violation ex post facto. Response, at 9 (quoting *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994)). That is incorrect. In a subsequent decision, the Eleventh Circuit clarified and squarely rejected Defendant's interpretation of *McKinney*: "Properly understood, *McKinney*'s holding that a state 'may cure a procedural deprivation by providing a

later procedural remedy' is true only where post-deprivation procedures satisfy due process." *Galbreath v. Hale Cty., Ala. Comm'n*, 754 F. App'x 820, 828 (11th Cir. 2018). "But where a due process violation is already complete because no hearing was held as required by *Loudermill*, *McKinney* has no application." *Id.* Here, Plaintiff suffered irreparable harm when she was terminated without a hearing, and she continues to suffer irreparable harm every day she is not fully reinstated and provided an adequate hearing. *McKinney* has no application here.

Given that Defendant's mootness arguments fail, Plaintiff's claims for injunctive relief stand strong. Defendant asserts no additional reasons why Plaintiff cannot succeed. Again— Defendant would be hard pressed to do so. For many years, courts at every level in the federal system have repeatedly held that where state law limits the grounds for termination to just cause, state law also confers a protected property interest on the employee. *See Perry*, 408 U.S. at 600; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985); *Hayward v. Henderson*, 623 F.2d 596, 597 (9th Cir. 1980); *Schaper v. City of Huntsville*, 813 F.2d 709, 713–14 (5th Cir. 1987); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998); *Pray v. Caballero*, No. 03-cv-685, 2003 WL 27384725, at *9 (D.N.M. Dec. 2, 2003) (Browning, J.). The Supreme Court has made abundantly clear that an employee facing deprivation of his protected property interest "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546. Just as Defendant's predecessors at the WCA failed to afford two WCJs a pre-termination hearing many years ago, *see Fuller v. Varela*, No. 1:03-cv-00311-WJ-RHS (D.N.M. 2003); *Harmon v. Varela*, No. 1:03-cv-00370-WJ-ACT (D.N.M. 2003), Defendant has committed the same violation here. Plaintiff is entitled to relief.

## **CONCLUSION**

For the reasons argued above, Plaintiff respectfully moves this Court for an order granting a preliminary injunction to restore the status quo by ordering Defendant to fully reinstate Plaintiff pending resolution of this matter on the merits.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

I hereby certify that a true copy of the foregoing was served electronically on February 18, 2025, through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Jeffrey D. Vescovi*
Jeffrey D. Vescovi

**App. 79**



## State of New Mexico

Michelle Lujan Grisham
*Governor*

February 6, 2025

Shanon Riley
5305 Canada Vista Pl NW
Albuquerque, NM 87120

Dear Ms. Riley:

This letter is to notify you that effective February 15, 2025, you are hereby reinstated into your position as a Workers Compensation Judge with the NM Workers Compensation Administration.

Your rate of pay will be $194,597.23.

As an at-will exempt employee, you will serve at the pleasure of the Office of the Governor.

This is also your notification that effective immediately upon your reinstatement, you are placed on paid administrative leave pursuant to the recently filed State Personnel Board Complaint dated February 4, 2025. During this time that you are on paid administrative leave you are not to represent yourself to any person as a representative of the NM Workers Compensation Administration (NMWCA) or to perform any job duties on behalf of the NMWCA. You are not to gain access to any NMWCA computer, electronic mail account or office facility without my express permission. You are not to access the PeopleSoft-SHARE system. You are not to contact any member of the NMWCA staff, other than Cathy Farrell, while you are on paid administrative leave.

☐ I accept the reinstatement at the offered salary stated above:

_____

☑ I decline the position reinstatement offered to me at the WCA.

Date: 2/14/25   Shanon J. Riley

Sincerely,

*Heather Jordan*
Heather Jordan
Executive Director

| | |
|---|---|
| **From:** | Jeff Vescovi |
| **To:** | crogers@serpeandrews.com; ballen@serpeandrews.com; slujan@serpeandrews.com |
| **Cc:** | Jessica Hernandez; Paul Kennedy; Andrea Goodwin; Elizabeth Harrison |
| **Subject:** | Reinstatement Offer |
| **Date:** | Friday, February 14, 2025 4:33:00 PM |
| **Attachments:** | Signed Rejection of Reinstatement.pdf |

Cody and Blade,

We spoke with our client regarding the WCA's offer of reinstatement. Our client wishes to reject the offer. I have attached the letter to this email.

It is our position that the terms of reinstatement violate our client's statutory and constitutional rights. Specifically, the letter would require she agree to become "an at-will exempt employee" to "serve at the pleasure of the Office of the Governor." This is directly contrary to NMSA 1978, Section 52-5-2(C) which states that violations of the Code of Judicial Conduct "shall be exclusive grounds for dismissal" prior to the expiration of a WCJ's term. The letter also prohibits Ms. Riley from contacting "any member of the NMWCA staff, other than Cathy Farrell," while she is on paid administrative leave. This provision violates Ms. Riley's freedoms of speech and association under both the state and federal constitutions. Ms. Riley should not have to agree to these conditions, especially before the State Personnel Board has conducted a proper hearing.

We filed our preliminary injunction in this matter to preserve the status quo until the federal court could properly assess Ms. Riley's claims. The status quo here is nothing less than full reinstatement. Ms. Riley should be allowed to work on pending cases and speak to her coworkers. The WCA's offer of reinstatement does not preserve the status quo. It strips Ms. Riley of her statutory protections, constitutional rights, and her ability to resolve pending cases.

Just to be clear, although Ms. Riley is rejecting the present offer of reinstatement, by no means is she resigning from her position as a WCJ or waiving her entitlement to full reinstatement. We will continue to pursue a preliminary injunction with the federal court ordering the WCA to fully reinstate Ms. Riley on favorable terms pending resolution of this matter.

Respectfully,

*Jeff Vescovi*
Associate Attorney
Kennedy, Hernandez & Harrison, P.C.
201 Twelfth Street NW
Albuquerque, NM 87102
(505) 842-8662
jvescovi@kennedyhernandez.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**SHANON S. RILEY,**

          **Plaintiff,**

**v.**                            **No. 1:25-cv-00044-KWR-KK**

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,**

          **Defendant.**

**RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS
WITHOUT PREJUDICE AND STAY PENDING THE ADMINISTRATIVE
PROCEEDINGS**

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez &
Harrison, P.C., hereby respectfully submits this Response in opposition to Defendant's Partial
Motion to Dismiss without Prejudice and Stay Pending the Administrative Proceedings (Doc. 7),
filed Feb. 6, 2025 ("Motion to Dismiss"). In her motion, Defendant argues that Counts III and IV
of Plaintiff's Complaint, (Doc. 1), filed Jan. 14, 2025, are moot and barred by *Younger* abstention.[1]
*See* Motion to Dismiss, at 1–2. As discussed below, Defendant's arguments are misplaced, and her
motion should be denied.

**FACTUAL BACKGROUND**

After Plaintiff filed her Complaint and Motion for Preliminary Injunction on January 14,
2025, Defendant half-heartedly attempted to rectify the ongoing violation of Plaintiff's
constitutional rights. On February 6, 2025, the Workers' Compensation Administration (WCA)
did what should have been done months ago—it filed a complaint with the State Personnel Board

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

**App. 82**

(the "Board") alleging that Plaintiff's trivial timesheet error in the SHARE system amounted to a violation of the Code of Judicial Conduct. *See* (Doc. 8-1), filed Feb. 6, 2025. Shortly after the WCA filed the complaint, Defendant sent Plaintiff an offer of reinstatement. (Doc. 8-2), filed Feb. 6, 2025. According to the offer, Plaintiff would be reinstated as a Workers' Compensation Judge (WCJ) and immediately placed on paid administrative leave while the Complaint to the Board was pending. *Id.*

The offer of reinstatement also imposed several conditions upon Plaintiff if she agreed to its terms. First, Plaintiff would be considered "an at-will exempt employee" to "serve at the pleasure of the Office of the Governor." *Id.* This provision clearly contradicts New Mexico law mandating that violation of the Code of Judicial Conduct "shall be exclusive grounds for dismissal" prior to the expiration of a WCJ's term, NMSA 1978, § 52-5-2(C), and the elaborate hearing procedures specified by the New Mexico Administrative Code when a complaint is filed against a WCJ, *see* 1.7.12.25 NMAC. The offer of reinstatement also bars Plaintiff's contact with "any member of the NMWCA staff, other than Cathy Farrell," while she is on paid administrative leave. (Doc. 8-2). This provision violates Plaintiff's First Amendment rights to freedom of speech and association.

Essentially, the offer requires Plaintiff to give up her protected property interest in continued employment as defined by state law, her right to the hearing procedures provided by the New Mexico Administrative Code, and her First Amendment protections. It is well established that the government may not condition an offer of employment on a basis that infringes the prospective employee's constitutionally protected interests. *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972) (collecting cases).

**App. 83**

For these reasons, Plaintiff rejected the WCA's offer of reinstatement. On February 14, 2025, Plaintiff's counsel returned Defendant's offer of reinstatement with Plaintiff's response. *See* Rejection Letter (Doc. 10-1), filed Feb. 18, 2025. Plaintiff checked the box declining the position reinstatement offer and included her signature and the date. *Id.* The body of the email clarified Plaintiff's objections to the reinstatement offer, including that it would strip Plaintiff of her statutory protections, constitutional rights, and her ability to resolve pending cases. Rejection Email (Doc. 10-2), filed Feb. 18, 2025. The email also clarified that Plaintiff was not resigning from her position as a WCJ or waiving her entitlement to full reinstatement and would continue to pursue a preliminary injunction ordering the WCA to fully reinstate Plaintiff on favorable terms. *Id.*

## **LEGAL ARGUMENT**

### A.  *Younger* abstention does not apply.

For the federal court to abstain from exercising jurisdiction over pending state proceedings—as Defendant requests—the following requirements must be met:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019). The doctrine has no application here.

First, there is no ongoing state administrative proceeding because the Board lacks subject matter jurisdiction to hear any claim against Plaintiff. The New Mexico Administrative Code permits the Board's duly appointed hearing officer to hear complaints only when "filed in accordance with the provisions of NMSA 1978, Section 52-5-2(C)." In turn, Section 52-5-2(C) mandates that "complaints against a **workers' compensation judge** shall be filed with the state

personnel board[.]" (emphasis added). Plaintiff is no longer a WCJ, she was not a WCJ when the WCA filed its Complaint, she has not been reinstated to her position as a WCJ, and she rejected the WCA's offer of reinstatement. Neither the Board nor its hearing officer have jurisdiction to hear any complaint filed against Plaintiff,[2] and Plaintiff retains her claim to a proper hearing.

Second, even assuming the Board has jurisdiction in this matter, it cannot provide an adequate forum to hear the claims asserted in Plaintiff's federal complaint. Defendant's Motion to Dismiss acknowledges this fundamental requirement of *Younger* abstention. *See* Motion to Dismiss, at 3 ("[F]ederal courts should not interfere with state court proceedings' [*sic*] by granting equitable relief . . . when the state forum provides an **adequate avenue** for relief." (emphasis added)). There is a fundamental difference between the proceedings in federal court and the proceedings before the Board. In her federal case, Plaintiff alleges that she was terminated without due process of law in violation of the United States Constitution and seeks to enjoin the ongoing deprivation of her constitutional rights. In contrast, the Complaint filed with the Board alleges that Plaintiff violated the New Mexico Canons of Judicial Conduct. It is silent regarding her constitutional right to due process of law. The Board cannot provide Plaintiff the relief she seeks in federal court.

More importantly, the Board lacks authority to adjudicate Plaintiff's constitutional claims in the first place. "The Board is a public administrative body created by statute[,]" and it "is limited to the power and authority expressly granted or necessarily implied by statute[.]" *Martinez v. N.M. State Eng'r Office*, 2000-NMCA-074, ¶ 22, 129 N.M. 413, 9 P.3d 657. Section 52-5-2(B) states that "Workers' compensation judges shall not be subject to the provisions of the Personnel Act except as provided by Subsection C of this section." Subsection C is largely silent on the Personnel

---

[2] On February 17, 2025, Plaintiff filed a Motion with the Board arguing that the complaint against Plaintiff should be dismissed for lack of subject matter jurisdiction.

Act, requiring only that "complaints against a workers' compensation judge shall be filed with the state personnel board, which shall report its findings to the director." § 52-5-2(C). Thus, the Board derives its statutory authority from the Personnel Act, and that authority—to the extent it deals with WCJs—is limited to hearing complaints filed against them. Furthermore, given that dismissal of a WCJ is only appropriate for violations of the Code of Judicial Conduct, the Board's authority over WCJs is further constrained to resolving complaints for violations of the Code of Judicial Conduct. It cannot adjudicate Plaintiff's constitutional claims.

Third, Plaintiff does not disagree that the Board's resolution of the complaint likely involves important state interests that are typically resolved under state law. After all, Section 52-5-2(C) expressly contemplates the Board's jurisdiction over these issues. But given that there is no relationship between Plaintiff's federal complaint and the WCA's complaint before the Board, this inquiry is irrelevant.

### B. Plaintiff's claims for injunctive relief are <u>not</u> moot.

#### 1. Plaintiff has not been reinstated as a WCJ.

Defendant argues that Plaintiff's claims for injunctive relief are moot because the WCA filed a complaint with the Board and reinstated Plaintiff to her former position. Motion to Dismiss, at 7. As discussed above, however, Plaintiff rejected the WCA's offer of reinstatement. Accordingly, her preliminary injunction cannot be moot on that basis.

Even assuming, for the sake of argument, that Plaintiff accepted Defendant's unconstitutional conditions of reinstatement, that would still be insufficient to moot Plaintiff's claims for injunctive relief. The purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). There are some injunctions that "disturb the status quo and those that do

**App. 86**

not." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005). To determine the status quo, the Court looks to the "last peaceable uncontested status existing between the parties before the dispute developed[.]" *Id.* (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948, at 136 (2d ed.1995)). For example, in *Schrier*, a tenured professor was summarily terminated from his position as department chair and sought injunctive relief to be reinstated to his position. *Id.* at 1257, 1260. The Tenth Circuit reasoned that the last peaceable uncontested status between the parties was when the professor was still serving as department chair. *Id.* at 1260. Thus, the professor's request for injunctive relief sought to preserve the status quo. *Id.*

Here too, Plaintiff's claims for injunctive relief seek to return Plaintiff to the last peaceable uncontested status existing between Plaintiff and Defendant *before* Plaintiff was terminated without due process. That is, Plaintiff seeks to return to her position as a WCJ where she can attend to pending matters, speak to her co-workers, and fulfill her duties to the end of her five-year term. Rather than returning Plaintiff to her previous status as a full-time employee, Defendant attempted to place Plaintiff on administrative leave, block her communications with her co-workers, and coerce Plaintiff to agree to at-will employment in blatant contradiction of Section 52-5-2(C). Although Defendant refuses to restore the status quo, the Court may nonetheless do so. Because the Court may still afford Plaintiff relief, Defendant's offer of reinstatement cannot moot Plaintiff's claims for injunctive relief.

### 2.  The Board Lacks Jurisdiction to Adjudicate Plaintiff's Claims

Similarly, the pending proceeding before the Board does not moot Plaintiff's claims for injunctive relief. As discussed above, neither the Board nor its hearing officer have jurisdiction to hear any complaint filed against Plaintiff, and Plaintiff retains her claim to a proper hearing.

**C.  The Court should <u>not</u> stay proceedings.**

Defendant argues that the Court should stay further proceedings on Counts I and II until the proceedings before the Board have concluded. As discussed above, Counts III and IV are not moot because Plaintiff rejected the Defendant's unconstitutional offer of reinstatement, and the Board does not have jurisdiction to provide Plaintiff with a hearing. Thus, all four Counts of the Complaint remain in play. Furthermore, aside from *Younger* abstention, Defendant provides this Court with no other basis to stay proceedings. *Younger* does not apply here, so this Court should deny Defendant's motion.

Assuming Defendant raises the defense of qualified immunity—as she suggests in her Motion to Dismiss—Plaintiff would be required to show that "(1) a reasonable jury could find facts supporting that the defendant violated his or her constitutional right and (2) that the right was clearly established at the time of the violation." *Works v. Byers*, ---F.4th----, 2025 WL 496066, at *3 (10th Cir. 2025) (Carson, J.). This would be an easy task. For many years, courts at every level in the federal system have repeatedly held that where state law limits the grounds for termination to just cause, state law also confers a protected property interest on the employee. *See Perry*, 408 U.S. at 600; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985); *Hayward v. Henderson*, 623 F.2d 596, 597 (9th Cir. 1980); *Schaper v. City of Huntsville*, 813 F.2d 709, 713–14 (5th Cir. 1987); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998); *Pray v. Caballero*, No. 03-cv-685, 2003 WL 27384725, at *9 (D.N.M. Dec. 2, 2003) (Browning, J.). The Supreme Court has held that an employee facing deprivation of his protected property interest "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546.

**App. 88**

New Mexico law is crystal clear that WCJs may only be terminated for violations of the Code of Judicial Conduct. *See* § 52-5-2(C). As a result, state law conferred a protected property interest upon Plaintiff, entitling her to a hearing consistent with the Supreme Court's decision in *Loudermill*. Instead of receiving a hearing, Plaintiff received a termination letter and was asked to leave the WCA premises. These facts establish that a blatant constitutional violation occurred.

In committing a constitutional violation, the Defendant also violated clearly established law. To show that the constitutional right at issue is clearly established, the Plaintiff must point to "Supreme Court precedent particularized to the case at issue[.]" *Sanchez v. Guzman*, 105 F.4th 1285, 1292 (10th Cir. 2024). Plaintiff intends to direct Defendant to *Loudermill*—a seminal procedural due process case and required reading for first-year law students. That case is sufficiently particularized to bar the application of qualified immunity here. *See Loudermill*, 470 U.S. at 535, 547–48 (finding due process violation where government failed to afford allegedly dishonest employee pretermination opportunity to respond and said employee could only be terminated for cause under state law).

Just as Defendant's predecessors at the WCA failed to afford two WCJs a pre-termination hearing many years ago, *see Fuller v. Varela*, No. 1:03-cv-00311-WJ-RHS (D.N.M. 2003); *Harmon v. Varela*, No. 1:03-cv-00370-WJ-ACT (D.N.M. 2003), Defendant has committed the same violation here.

## **CONCLUSION**

For the reasons argued above, Plaintiff respectfully moves this Court to deny Defendant's Partial Motion to Dismiss without Prejudice and Stay Pending the Administrative Proceedings.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

I hereby certify that a true copy of the foregoing was served electronically on February 19, 2025, through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Jeffrey D. Vescovi*
Jeffrey D. Vescovi

**App. 90**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHANON S. RILEY,**

**Plaintiff,**

v.                                                        No. 1:25-cv-00044-KWR-KK

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,**

**Defendant.**

<u>**NOTICE OF SUPPLEMENTAL EXHIBIT**</u>

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., respectfully submits this Notice of Supplemental Exhibit in support of Plaintiff's Response in Opposition to Defendant's Partial Motion to Dismiss without Prejudice and Stay Pending the Administrative Proceedings (Doc. 12), filed February 19, 2025 ("Response").

In arguing that her claims were neither moot nor barred by *Younger*[1] abstention and that Defendant's Motion to Dismiss should be denied, Plaintiff's Response noted that she had filed a motion to dismiss the pending complaint before the State Personnel Board (the "Board") on February 17, 2025. Response, at 4. Plaintiff's motion argued that the Board should dismiss the complaint filed by the Workers' Compensation Administration ("WCA") for lack of subject matter jurisdiction. *Id.* On March 4, 2025, the Board granted Plaintiff's motion and filed an Order of Dismissal, attached hereto as Exhibit 1, dismissing the WCA's complaint for lack of jurisdiction. Accordingly, Plaintiff submits Exhibit 1 for the Court's consideration and in further support of her Response.

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

**App. 91**

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

I hereby certify that a true copy of the foregoing was served electronically on March 4, 2025, through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Jeffrey D. Vescovi*
Jeffrey D. Vescovi

**App. 92**

BEFORE THE NEW MEXICO PESONNEL BOARD  FILED

MAR 0 4 2025

**IN THE MATTER OF**
**THE HON. SHANON RILEY,**

NM STATE PERSONNEL BOARD

**Docket No. 25-008-WC**
**Judge Haught**

## ORDER OF DISMISSAL

**THIS MATTER COMES BEFORE** the New Mexico State Personnel Board (Board) stemming from Shanon Riley's *Motion to Dismiss Complaint Filed Against Shanon S. Riley* (*Motion*), filed on February 17, 2025.

As grounds for this *Order of Dismissal*, the undersigned Administrative Law Judge **FINDS:**

1. On February 4, 2025, the Workers' Compensation Administration filed a complaint against Shanon Riley (Complaint), pursuant to NMSA 1978, §52-5-2(C).

2. Ms. Riley served as a Workers' Compensation Judge, appointed to that position, pursuant to NMSA 1978, §52-5-2(B).

3. Ms. Riley was terminated from the position of Workers' Compensation Judge on November 13, 2024. *See Riley v. NMWCA*; Docket No. 24-041.

4. NMSA 1978, §52-5-2(C) provides that "[a]ny complaints against a workers' compensation judge shall be filed with the state personnel board…"

5. On February 4, 2025, the date the Workers' Compensation Administration filed the Complaint, Ms. Riley was no longer a Workers' Compensation Judge.

1

**App. 93**

6.  Due to the fact that Ms. Riley was not a Workers' Compensation Judge on February 4, 2025, the Board lacks jurisdiction to hear the Complaint.

7.  The *Motion* is well taken.

**IT IS THEREFORE ORDERED** that the Complaint filed against Shanon Riley is **DIMISSED FOR LACK OF JURISDICTION**.

_____
K. Janelle Haught
Administrative Law Judge

Entered: March 4, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHANON S. RILEY,**

    **Plaintiff,**

**v.**                  **Case 1:25-cv-00044-KWR-KK**

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,**

    **Defendant.**

**<u>DEFENDANT'S REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS WITHOUT
PREJUDICE AND STAY PENDING THE ADMINSTRATIVE PROCEEDINGS</u>**

   Defendant Heather Jordan, in her individual and official capacities, respectfully submits this Reply in support of her Partial Motion to Dismiss Without Prejudice and Stay Pending the Administrative Proceedings.

<u>**Introduction**</u>

   In her Response to Defendant's Partial Motion to Dismiss Without Prejudice and Stay Pending the Administrative Proceeding ("Partial Motion"), plaintiff continues to insist that she be allowed to assert a constitutional due process challenge to a procedure she was granted and rejected. Despite being granted and then rejecting the very due process she claims she was owed, plaintiff now insists that this is somehow inadequate and that she should be allowed to bypass the process in order to pursue a different claim. This argument fails at every level. Procedurally, plaintiff's due process claims are moot to the extent that she seeks prospective injunctive relief because any ongoing injury she now claims is self-inflicted. Additionally, *Younger* abstention applies to this matter. Accordingly, Defendant requests that the Court dismiss Counts III and IV

**App. 95**

of plaintiff's Complaint without prejudice and stay proceedings on the remaining claims for damages until such time as the State Personnel Board proceedings are concluded.

**Argument & Authorities**

**I.    Plaintiff's claims for injunctive relief are moot**

Plaintiff claims that her request for injunctive relief is not moot because she has not been reinstated as a Workers' Compensation Judge, which is a condition she created when she rejected the reinstatement notice submitted to her. Doc. 12 at pp. 5. Plaintiff claims that she did so because she did not accept the premise of limited or partial reinstatement, which placed her on administrative leave pending resolution of the SPO complaint. Doc. 12 at pp. 6. This argument finds no support in the law or facts.

After it issued its proposed reinstatement notice to plaintiff, the Workers Compensation Administration noticed that the notice erroneously contained "governor exempt" boilerplate language typically contained in similar forms. To correct this issue, it issued a revised notice to plaintiff on February 26, 2025, which was delivered on February 28, 2025. *See* **Exhibit C**, attached hereto.[1] As of the filing of this Reply, plaintiff has not responded to that notice. Of course, plaintiff further compounded her own injury by seeking dismissal of the process she insisted that she was due. *See* Doc. 14, filed 3/4/2025. What plaintiff has accomplished is further vitiating her standing to seek injunctive relief in this matter.

Plaintiff is seeking prospective injunctive relief—viewed by courts as the "extraordinary" and "disfavored" form of preliminary relief. *See Dias v. City & Cnty. of Denver*, 567 F.3d 1169,

---

[1] The revised notice also eliminates any possibility that plaintiff could claim it limits her First Amendment rights. *See Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178 (E.D.N.Y. 2009); *Brady v. Dammer*, 573 F.Supp.2d 712, 724–25, 730 (N.D.N.Y.2008); *McDaniel v. Quick*, 2010 WL 2889026, at *6 (D.S.C. June 1, 2010), *report and recommendation adopted*, 2010 WL 2889024 (D.S.C. July 22, 2010).

**App. 96**

1176 (10th Cir. 2009) ("To establish standing to seek prospective relief, a plaintiff must show a continuing injury[.]"); *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005) ("The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." (cleaned up)). To the extent she claims her injury is ongoing, it is self-inflicted and cannot serve as the basis for any injunction against Defendant. *See Colorado v. U.S. Envtl. Prot. Agency*, 989 F.3d 874, 888 (10th Cir. 2021) (explaining that self-inflicted injuries cannot satisfy the requirements for Article III standing because they break the causal chain linking the defendant's conduct to the asserted injury).

Plaintiff came to this Court asking for the very thing that Defendant attempted to provide her: reinstatement to her position as a Workers Compensation Judge pending the resolution of the administrative proceeding contemplated in the New Mexico statutes and administrative code provisions governing the employment of Workers' Compensation Judges.[2] *See* Doc. 1, at ¶¶ 62; 67. Plaintiff's decision to reject reinstatement and the administrative procedure is an injury entirely of her own making.   Plaintiff claims that the reinstatement does not meet her demands because it does not allow her to actively report to work or handle cases but instead places her on administrative leave pending resolution of the SPO complaint.  This constantly moving target as to what details of reinstatement plaintiff prefers simply underscores the fact that there is no injury caused by Defendant that could be addressed by this Court at this point.  Plaintiff's decisions have destroyed any causal link between her purported injury and Defendant's action(s).

---

[2] Again, Defendant in no way concedes that the initial termination of plaintiff without first following this specific procedure—which is designed for handling complaints from members of the public—was improper. *See* Doc. 8, at 2 n.1. Defendant simply did this out of an abundance of caution.

**App. 97**

Article III standing requires an injury to be "fairly traceable to the challenged conduct of the defendant, and not the result of the independent action of some third party not before the court." *Colorado v. U.S. Envtl. Prot. Agency*, 989 F.3d at 889. The only "harm" at issue currently is one which plaintiff has inflicted on herself. Defendant remedied the purportedly "irreparable harm" set forth in plaintiff's complaint and in her petition for injunctive relief, which plaintiff then re-inflicted upon herself. That decision is not "fairly traceable" to any of Defendant's actions and thus does not constitute irreparable harm or provide plaintiff standing. *Id*. at 888. *See Pennsylvania v. New Jersey*, 426 U.S. 660. 664 ("The injuries to the plaintiffs' fiscs were self-inflicted, resulting from decisions by their respective state legislatures…No State can be heard to complain about damage inflicted by its own hand."); *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989) (self-inflicted injury, created if petitioners chose hazardous waste disposal methods they believed were unsafe and could expose them to strict liability, was not traceable to the challenged action because it was self-inflicted, even if it was arguably "forced" by competitive pressures.").

Here, plaintiff's decision to reject reinstatement because it did not meet every condition that she preferred has broken the causal link between Defendant's action and any ongoing harm she claims to be suffering. The break in the causal link moots her purported injury and eliminates Article III standing.

## II. Plaintiff's due process claims can be redressed in the state administrative proceeding, and a stay of plaintiff's damages claims is appropriate.

Plaintiff claims that *Younger* abstention principles do not apply to her claims in this case because she cannot litigate her § 1983 due process claims in the SPO proceeding. This argument misses the mark. *Younger* abstention applies when: (1) there is an ongoing state administrative proceeding; (2) the state provides an adequate forum to hear the claims; and (3) the proceeding

4

involves important state interests. See *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 711 (10th Cir. 1989). *Younger* abstention is appropriate in the face of ongoing state administrative proceedings. *See Ohio Civil Rights Comm'n. v. Daytron Christian Sch., Inc.*, 477 U.S. 619 (1986) (reversing district court that did not abstain from ongoing proceedings before state civil rights commission); *Middlesex County Ethics Committee v. Garden State Bar Ass'n.*, 457 U.S. 423, 432-34 (1982) (holding that district court should have abstained from lawyer disciplinary proceedings because they were ultimately within the state Supreme Court's jurisdiction). *Younger* abstention applies in these cases, where "the federal plaintiffs [seeks] to thwart a state administrative proceeding initiated to punish the federal plaintiff for a bad act." *Brown ex rel. Brown v. Day*, 555 F.3d 882, 891 (10th Cir. 2009). Here, the SPO proceeding remains "ongoing."[3] Plaintiff does not dispute that the SPO proceeding involves important state interests. Instead, plaintiff focuses solely on the allegation that her § 1983 claims cannot be heard in the SPO proceeding. However, plaintiff has adduced no evidence to suggest that she cannot present her due process claims either in the SPO proceeding or on judicial review. The SPO proceeding contemplates a complaint, an answer, a stipulated prehearing order that governs discovery and identifies facts and issues in dispute, and subpoena power to compel production of documents and the appearance of witnesses. *See* NMAC 1.7.12.25(C), (D), (E). The hearing itself is governed by the New Mexico rules of evidence, and contemplates representation by counsel, examination and cross-examination of witnesses, and post hearing briefs and proposed findings. *See* NMAC 1.7.12.25(G); (I); (J). Following the hearing,

---

[3] As plaintiff's "Notice of Supplemental Exhibit" (Doc. 14, filed 3/4/2025) reveals, the State Personnel Board granted plaintiff's request and dismissed the complaint filed by Defendant on March 4, 2025. However, that action does not preclude Defendant from submitting a new or amended complaint or appealing the State Personnel Board's order to the district court. "Ordinarily, a state proceeding ends when the time for appeal has run." *Hunter*, 660 Fe3d. Appx. at 715 (citing *Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006).

**App. 99**

the report of the hearing officer is transmitted to the State Personnel Board, which "shall consider the report of the hearing officer and the record made before the hearing officer and in connection therewith make its findings as to whether there was a violation of the code of judicial conduct and transmit its findings to the director of the workers' compensation administration."   NMAC 1.7.12.25(K).   Additionally, administrative agency decisions are appealable to the district courts of New Mexico, pursuant to Rule 1-074 NMRA and NMSA 1978 § 39-3-1.1(D) ("In a proceeding for judicial review of a final decision by an agency, the district court may set aside, reverse or remand the final decision if it determines that 1) the agency acted fraudulently, arbitrarily or capriciously; 2) the final decision was not supported by substantial evidence; or 3) the agency did not act in accordance with law.").   Plaintiff has not demonstrated that she would be precluded from raising her due process claims at any stage of these proceedings.   *See Hunter v. Hirsig*, 660 Fed. Appx. 711, 717 (10th Cir. 2016) (unpublished) (holding that *Younger* abstention applied to ongoing state proceedings governed by the Wyoming Administrative Procedure Act and subject to judicial review); *Ohio Civil Rights Comm'n.*, 477 U.S. at 629 ("[I]t is sufficient…that constitutional claims may be raised in state-court judicial review of the administrative proceeding."); *ETP Rio Rancho Park, LLC v. Lujan Grisham*, 522 F. Supp. 3d 966, 1050 (D.N.M. 2021) (finding that administrative regulations providing notice, a hearing, witnesses, representation by counsel, records, a written report and a final decision gave petitioner "a reasonable opportunity to litigate its federal claims" such that *Younger* abstention was appropriate.)

In addition, Defendant has asked the Court to dismiss the claims for *equitable* relief under *Younger*, and to stay the claims seeking monetary damages.   Plaintiff also agues the merits of a potential motion to dismiss based on qualified immunity, but that misplaced argument does not

**App. 100**

weigh against a stay. Because a stay of the damages claim is the most judicially efficient method of proceeding, the Court should stay plaintiff's claims for damages.

<u>**Conclusion**</u>

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Counts III and IV without prejudice and stay proceedings on Counts I and II pending the conclusion of the State Personnel Board proceedings.

Respectfully submitted

**SERPE | ANDREWS, PLLC**

By */s/ Cody R. Rogers*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
*Attorneys for Defendant*

<u>**CERTIFICATE OF SERIVE**</u>

I hereby certify that on this 5th day of March, 2025, I filed the foregoing through this Court's CM/ECF e-filing system and caused a true and correct copy of the same to be served upon all parties of record as reflected more fully in the electronic Notification of Service.

*/s/ Cody R. Rogers*
Cody R. Rogers

**App. 101**



# State of New Mexico

Michelle Lujan Grisham
*Governor*

February 26, 2025

Shanon Riley
5305 Canada Vista Pl NW
Albuquerque, NM 87120

Dear Ms. Riley:

This letter is to notify you that effective February 15, 2025, you are hereby reinstated into your position as a Workers Compensation Judge with the NM Workers Compensation Administration.

Your rate of pay will be $194,597.23. As a Workers Compensation Judge, and pursuant to NMSA 1978, Section 52-5-2(C), you are subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900.

This is also your notification that effective immediately upon your reinstatement, you are placed on paid administrative leave pursuant to the recently filed State Personnel Board Complaint dated February 4, 2025. During this time that you are on paid administrative leave you are not to represent yourself to any person as a representative of the NM Workers Compensation Administration (NMWCA) or to perform any job duties on behalf of the NMWCA. You are not to gain access to any NMWCA computer, electronic mail account or office facility without my express permission. You are not to access the PeopleSoft-SHARE system. You are not to contact any member of the NMWCA staff, other than Cathy Farrell, while you are on paid administrative leave regarding matters related to your employment or the State Personnel Board investigation.

☐  I accept the reinstatement at the offered salary stated above:

_____

☐  I decline the position reinstatement offered to me at the WCA.

Date: _____

Sincerely,

Heather Jordan
Executive Director

**UNITED STATES POSTAL SERVICE**

March 5, 2025

Dear Megan Aragon:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9171 9690 0935 0155 4670 52**.

| Item Details | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | February 28, 2025, 11:41 am |
| **Location:** | ALBUQUERQUE, NM 87120 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |

| Shipment Details | |
|---|---|
| **Weight:** | 0.2oz |

**Recipient Signature**

Signature of Recipient:

5305 CANADA VISTA PL NW,
ALBUQUERQUE, NM 87120

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**App. 103**

ALERT: SEVERE WEATHER IN THE MIDWEST & SOUTHWEST THROUGH THE MIDSOUTH, AND…

# USPS Tracking®

FAQs ⟩

**Tracking Number:**

Remove ✕

# 9171969009350155467052

Copy      Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to an individual at the address at 11:41 am on February 28, 2025 in ALBUQUERQUE, NM 87120.

**Get More Out of USPS Tracking:**

  **USPS Tracking Plus®**

### Delivered

**Delivered, Left with Individual**

ALBUQUERQUE, NM 87120
February 28, 2025, 11:41 am

**Out for Delivery**

ALBUQUERQUE, NM 87120
February 28, 2025, 8:35 am

**Departed USPS Facility**

ALBUQUERQUE, NM 87101
February 28, 2025, 7:33 am

**Arrived at USPS Facility**

ALBUQUERQUE, NM 87101
February 27, 2025, 11:41 pm

**Departed Post Office**

ALBUQUERQUE, NM 87106

Feedback

**App. 104**

February 26, 2025, 4:07 pm

**USPS in possession of item**

ALBUQUERQUE, NM 87106
February 26, 2025, 4:03 pm

**Hide Tracking History**

**What Do USPS Tracking Statuses Mean?** (https://faq.usps.com/s/article/Where-is-my-package)

| Text & Email Updates | ⌄ |
|---|---|

| Return Receipt Electronic | ⌄ |
|---|---|

| USPS Tracking Plus® | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

**App. 105**

**UNITED STATES**
**POSTAL SERVICE**

March 5, 2025

Dear Megan Aragon:

The following is in response to your request for proof of delivery on your item with the tracking number: **9171 9690 0935 0155 4670 52**.

| Item Details | |
| --- | --- |
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | February 28, 2025, 11:41 am |
| **Location:** | ALBUQUERQUE, NM 87120 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |

| Shipment Details | |
| --- | --- |
| **Weight:** | 0.2oz |

**Recipient Signature**

Signature of Recipient:

5305 CANADA VISTA PL NW,
ALBUQUERQUE, NM 87120

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**App. 106**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SHANNON S. RILEY,

        Plaintiff,

    vs.                                No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN *in her individual
and official capacities as the
Director of the New Mexico Workers'
Compensation Administration*,

        Defendant.

## <u>ORDER DIRECTING PARTIES TO SUPPLEMENT RECORD</u>

THIS MATTER comes before the Court based on Plaintiff's Motion for Preliminary Injunction and the associated briefing (**doc. 2; doc. 8, doc. 10**), and Defendant's Partial Motion to Dismiss Without Prejudice and Motion to Stay Pending Administrative Proceedings and the associated briefing (**doc. 7; doc. 12; doc. 15**). The parties have filed related motions that in part rely on two exhibits: Defendant's initial offer to Plaintiff for reinstatement, **doc. 7-1**, and Defendant's updated offer to Plaintiff for reinstatement, **doc. 15, exh. C**. It is in the record that Plaintiff has rejected Defendant's initial offer, but the Court has no evidence indicating whether Plaintiff has accepted or rejected Defendant's new offer, which bears directly on the merits of both parties' motions.

**IT IS THEREFORE ORDERED** that the parties shall supplement the record with evidence as to whether Plaintiff has accepted or rejected Defendant's new offer of reinstatement. The parties shall do so within thirty (30) days of the entry of this order.

                         /S/
                        KEA W. RIGGS
                        UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**SHANON S. RILEY,**

          **Plaintiff,**

**v.**                                   **No. 1:25-cv-00044-KWR-KK**

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,**

          **Defendant.**

**<u>NOTICE OF SUPPLEMENTAL EXHIBITS</u>**

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., respectfully submits this Notice of Supplemental Exhibits pursuant to the Court's Order Directing Parties to Supplement Record (Doc. 17), filed April 8, 2025. The Order stated that the record reflects the Plaintiff's rejection of Defendant's initial offer of reinstatement, "but the Court has no evidence indicating whether Plaintiff has accepted or rejected Defendant's new offer[.]" *Id.*

On February 28, 2025, Plaintiff received a new letter of reinstatement from Defendant. (Doc. 15), filed Mar. 5, 2025, at 8. Unlike Defendant's previous letter, the new letter no longer contained provisions requiring Plaintiff to become "an at-will exempt employee[,]" and the new letter allowed Plaintiff to speak with NMWCA staff on matters unrelated to her employment. *Id.* Plaintiff considered these changes and rejected the letter of reinstatement. *See* Second Rejection Letter, attached hereto as Exhibit 1. On March 7, 2025, Plaintiff's counsel delivered the signed rejection to defense counsel via email, explaining that Defendant's terms of reinstatement continued to violate Plaintiff's freedoms of speech and association and failed to preserve the status quo by fully reinstating Plaintiff to her position as a WCJ. *See* Second Rejection Email, attached

**App. 108**

hereto as Exhibit 2. Plaintiff's counsel expressed that Plaintiff would continue to pursue preliminary injunctive relief to preserve the status quo. *Id.*

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

I hereby certify that a true copy of the foregoing was served electronically on April 8, 2025, through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Jeffrey D. Vescovi*
Jeffrey D. Vescovi

**App. 109**



## State of New Mexico

Michelle Lujan Grisham
*Governor*

February 26, 2025

Shanon Riley
5305 Canada Vista Pl NW
Albuquerque, NM 87120

Dear Ms. Riley:

This letter is to notify you that effective February 15, 2025, you are hereby reinstated into your position as a Workers Compensation Judge with the NM Workers Compensation Administration.

Your rate of pay will be $194,597.23. As a Workers Compensation Judge, and pursuant to NMSA 1978, Section 52-5-2(C), you are subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900.

This is also your notification that effective immediately upon your reinstatement, you are placed on paid administrative leave pursuant to the recently filed State Personnel Board Complaint dated February 4, 2025. During this time that you are on paid administrative leave you are not to represent yourself to any person as a representative of the NM Workers Compensation Administration (NMWCA) or to perform any job duties on behalf of the NMWCA. You are not to gain access to any NMWCA computer, electronic mail account or office facility without my express permission. You are not to access the PeopleSoft-SHARE system. You are not to contact any member of the NMWCA staff, other than Cathy Farrell, while you are on paid administrative leave regarding matters related to your employment or the State Personnel Board investigation.

☐ I accept the reinstatement at the offered salary stated above:

_____

☑ I decline the position reinstatement offered to me at the WCA.

Date: 3/4/25    Shanon D. Riley

Sincerely,

Heather Jordan
Executive Director

State Capitol  •  Room 400  •  Santa Fe, New Mexico 87501  •  505-476-2200

**App. 110**

## Jeff Vescovi

**Attachments:**                25.03.05 Second Signed Rejection of Reinstatement.pdf

**From:** Jeff Vescovi
**Sent:** Friday, March 7, 2025 11:56 AM
**To:** 'crogers@serpeandrews.com' <crogers@serpeandrews.com>; 'ballen@serpeandrews.com'
<ballen@serpeandrews.com>; 'slujan@serpeandrews.com' <slujan@serpeandrews.com>
**Cc:** Jessica Hernandez <jhernandez@kennedyhernandez.com>; Paul Kennedy <pkennedy@kennedyhernandez.com>;
Andrea Goodwin <Assistant@kennedyhernandez.com>; Elizabeth Harrison <eharrison@kennedyhernandez.com>
**Subject:** RE: Reinstatement Offer

Cody and Blade,

I hope you are both doing well.

Last Friday, our client received a new letter of reinstatement from Ms. Jordan. As you are probably aware, the
letter is nearly identical to the previous letter. The date is changed; the portion requiring Ms. Riley to become
"an at-will exempt employee" is removed; and the new letter allows Ms. Riley to speak with NMWCA staff on
matters unrelated to her employment.

Our client has considered these changes and once again wishes to reject the offer of reinstatement. I have
attached her response to this email. Although the letter no longer requires Ms. Riley to agree to at-will
employment, it is still our position that the letter violates our client's freedoms of speech and association under
both the state and federal constitutions.

As we stated before, we filed our preliminary injunction to preserve the status quo until the federal court can
properly assess Ms. Riley's claims. The status quo remains nothing less than full reinstatement. It is also our
position that Ms. Riley is entitled to back pay for the time she has been wrongfully unemployed.

Now that the State Personnel Board has dismissed the complaint against Ms. Riley for lack of jurisdiction, there
is no basis for Defendant to argue that our claims for injunctive relief are moot. We will continue to pursue
those claims in court.

Respectfully,

*Jeff Vescovi*
Associate Attorney
Kennedy, Hernandez & Harrison, P.C.
201 Twelfth Street NW
Albuquerque, NM 87102
(505) 842-8662
jvescovi@kennedyhernandez.com

**App. 111**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**SHANON S. RILEY**,

        **Plaintiff,**

vs.                                                No. 1:25-cv-00044-KWR-KK

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration**,

        **Defendant.**

## JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN

Pursuant to FED. R. CIV. P. 26(f), a meeting was held on April 2, 2025 at 9:30 AM and was attended by:

Jeff Vescovi, Kennedy, Hernandez & Harrison, P.C. for Plaintiff

Blade Allen, Serpe Andrews for Defendant

## NATURE OF THE CASE

This lawsuit involves claims for injunctive relief and damages under 42 U.S.C. § 1983 for alleged violations of Plaintiff's constitutional rights, specifically, her rights to Procedural Due Process and Substantive Due Process. Plaintiff claims that Defendant terminated her without affording her a required pre-termination hearing even though Plaintiff had a constitutionally protected property interest in her continued employment as a Workers' Compensation Judge (WCJ). Plaintiff alleges that Defendant's denial of a pre-termination hearing deprived Plaintiff of her Procedural Due Process protections guaranteed by the Fourteenth Amendment's Due Process Clause. Furthermore, Plaintiff claims that her abrupt termination for a minor timesheet error was

so extreme and outrageous that it deprived Plaintiff of her Substantive Due Process protections guaranteed by the Fourteenth Amendment's Due Process Clause.

Defendant claims that Plaintiff failed to amend her timesheet to withdraw previously entered voting leave after Plaintiff failed to vote on Election Day. Defendant claims this infraction was a violation of the Code of Judicial Conduct permitting Defendant to properly terminate Plaintiff. Plaintiff disputes that this was a violation of the Code of Judicial Conduct. The parties dispute the contents and location of a conversation between Plaintiff and Defendant prior to Plaintiff's termination.

Plaintiff seeks preliminary injunctive relief to fully reinstate Plaintiff to her position as a WCJ and maintain the status quo while this suit is pending. Plaintiff also seeks permanent injunctive relief to fully reinstate Plaintiff to her position as a WCJ and to ensure that Defendant continues to comply with Due Process requirements for the duration of Plaintiff's term. Defendant opposes this relief in all forms.

### AMENDMENTS TO PLEADINGS AND JOINDER OF PARTIES

Plaintiff should be allowed until June 14, 2025, to move to amend the pleadings and until June 14, 2025, to join additional parties in compliance with the requirements of Fed. R. Civ. P. 15(a).

Defendants intends to file:     No amendments or joinder of parties are contemplated at this time.

Defendant should be allowed until July 7, 2025, to move to amend the pleadings and until the same date to join additional parties in compliance with the requirements of Fed. R. Civ. P. 15(a).

## STIPULATIONS

The parties hereto stipulate and agree that venue is properly laid in this District; that the United States District Court for the District of New Mexico has jurisdiction of the parties and the subject matter.

The parties are willing to further stipulate to the following facts:

1. Plaintiff was appointed to a five year term as a WCJ in August of 2022.

2. On November 5, 2024 (Election Day), Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting.

3. On Election Day, Plaintiff drove to a polling location to vote, but she did not vote.

4. At the time, Plaintiff had accrued over 200 hours of annual leave and over 240 hours of sick leave that she could have used to substitute the two hours of administrative voting leave.

5. Defendant ultimately delivered Plaintiff a written notice terminating her employment.

6. Prior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any other required procedure under the New Mexico Administrative Code in terminating Plaintiff.

7. Defendant Jordan acted under color of state law.

The parties further stipulate and agree that the law governing this case is New Mexico law and federal constitutional law.

## PLAINTIFF'S CONTENTIONS:

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. Later that day, she was driven home by a

colleague to obtain her vehicle, drove to a polling location, and found that there was a line. Because Plaintiff was feeling ill, she decided to forgo voting and returned home. Plaintiff intended to correct her timesheet and substitute the two hours of administrative voting leave for two hours of annual leave or sick leave, but Plaintiff forgot to do so due to her numerous administrative responsibilities and busy schedule. At the time, Plaintiff had accrued over 200 hours of annual leave and 240 hours of sick leave. One week later, the Governor's newly appointed Director of the WCA, Heather Jordan, walked into Plaintiff's office and delivered a letter to Plaintiff terminating her employment. According to the letter, Plaintiff's timesheet error amounted to "a violation of the code of judicial conduct," which required Plaintiff "to promote integrity and to 'avoid the appearance of impropriety.'"

By firing Plaintiff, Defendant acted with deliberate indifference to Plaintiff's constitutional and statutory rights. In particular, Defendant failed to follow the statutory, regulatory, and constitutional requirements that Plaintiff was entitled to by way of her position as a WCJ. Most importantly, Plaintiff was denied notice and an opportunity to be heard, a fundamental component of Plaintiff's Procedural Due Process protections.

Defendant stripped Plaintiff of her employment, income, pension, and livelihood over a minor timesheet error. This capricious decision shocks the conscience and clearly violated Plaintiff's Substantive Due Process protections. Based on these constitutional violations, Plaintiff is entitled to compensatory damages, punitive damages, attorneys' fees, and costs under 42 U.S.C. § 1983, as well as preliminary injunctive relief fully reinstating her to her position as a WCJ to preserve the status quo until this matter can be set for trial. Plaintiff is also entitled to permanent injunctive relief restoring Plaintiff to her position as a full-time Workers' Compensation Judge and ensuring Defendant's continued compliance with constitutional due process requirements for the duration of Plaintiff's term as a WCJ.

## DEFENDANT'S CONTENTIONS

Plaintiff Riley included two hours of administrative/voting leave on her November 4-8, 2024, timesheet. When the Worker's Compensation Administration conducted an audit to verify each employee who included two hours of administrative/voting leave on their timesheet participated in the 2024 election, it discovered Plaintiff Riley did not. Defendant met with Plaintiff Riley to address the discrepancy. During the meeting, Defendant asked Plaintiff Riley if she did participate in the 2024 election. Plaintiff Riley claimed she did participate. Defendant then asked if Plaintiff Riley could provide proof she voted. After discussing what documents or information might qualify as "proof," Plaintiff Riley determined she could not provide any documents or information showing she participated in the election. At that point, Defendant determined Plaintiff Riley violated the Code of Judicial Conduct which meant Plaintiff Riley could be terminated. Defendant provided Plaintiff Riley with a termination letter.

## PROVISIONAL DISCOVERY PLAN

The parties jointly propose to the Court the following discovery plan:

**Plaintiff's Fact Witnesses:**

At this time, Plaintiff believes that the following persons may either testify or be deposed in this matter:

**Shanon S. Riley**
5305 Canada Vista Pl. NW
Albuquerque, NM 87120
Shanonriley35@gmail.com

Ms. Riley may be called to testify regarding the circumstances of her termination, her decision to enter administrative voting leave, the circumstances underlying her failure to vote on Election Day, the circumstances leading up to and surrounding the submission of her timesheet, details regarding the computation of her damages and other injuries she has sustained, and any other relevant testimony regarding her claims and potential defenses.

**Heather Jordan**
Executive Director

New Mexico Workers' Compensation Administration
2410 Centre Ave. SE
Albuquerque, NM 87106
heather.jordan@wca.nm.gov

Ms. Jordan may be called to testify regarding the circumstances of Plaintiff's termination, her awareness of Plaintiff's performance and tenure at the WCA, any difficulties or personal issues Ms. Jordan encountered with Plaintiff, and any other relevant testimony regarding Plaintiff's claims and potential defenses.

**Robert E. Doucette, Jr.**
(Address unknown)

Mr. Doucette may be called to testify regarding his experience working with Plaintiff, including his evaluation of Plaintiff's performance, interaction with other employees, and the like. As Mr. Doucette reappointed Plaintiff as a WCJ, he may also be called to testify to the circumstances leading to that decision. Mr. Doucette may also be called to offer any other relevant testimony regarding Plaintiff's claims and potential defenses.

**The Honorable Anthony "Tony" Couture**
Chief Workers' Compensation Judge
New Mexico Workers' Compensation Administration
P.O. Box 27198
Albuquerque, NM 87125
Tony.couture@wca.nm.gov

Judge Couture may be called to testify regarding his experience working alongside Plaintiff, including the circumstances of her termination. Judge Couture may also offer testimony on his personal experience working as a WCJ, including working conditions, timesheet entries, administrative responsibilities, at-will employment, and any other relevant information to shed light on Plaintiff's experience as a WCJ. Mr. Doucette may also offer any other relevant testimony regarding Plaintiff's claims and potential defenses.

**Holly Agajanian**
Chief General Counsel
Office of Governor Michelle Lujan Grisham
State Capitol, Room 400
Santa Fe, NM 87501
Holly.agajanian@exec.nm.gov

Ms. Agajanian may be called to testify regarding her interactions with Plaintiff following Plaintiff's termination, any role she or the Governor played in Plaintiff's termination, and any other relevant testimony regarding Plaintiff's claims and potential defenses.

**Catherine Farrell**
Human Resources Manager
New Mexico Workers' Compensation Administration
2410 Centre Ave. SE
Albuquerque, NM 87106
Catherinef.farrell@wca.nm.gov

Ms. Farrell may testify to any interactions she had with Plaintiff, including the circumstances surrounding and following Plaintiff's termination, and any other relevant testimony regarding Plaintiff's claims and potential defenses.

**Pauline Gurule-Sers**
Human Resources Assistant
New Mexico Workers' Compensation Administration
2410 Centre Ave. SE
Albuquerque, NM 87106

Ms. Gurule-Sers may testify to the circumstances surrounding Plaintiff's termination, Plaintiff's failure to correct her timesheet, general issues with the SHARE system, and any other relevant testimony regarding Plaintiff's claims and potential defenses.

**Stephanie Rice**
Human Resources Assistant
New Mexico Workers' Compensation Administration
2410 Centre Ave. SE
Albuquerque, NM 87106

Ms. Rice may testify to the circumstances surrounding Plaintiff's termination, Plaintiff's failure to correct her timesheet, general issues with the SHARE system, and any other relevant testimony regarding Plaintiff's claims and potential defenses.

Plaintiff has endeavored to identify all known witnesses at this time but may through discovery identify additional witnesses that may be called to testify regarding the subject of this lawsuit.

**Plaintiff's Documents:**

1. Signed Letter of Termination

2. Notice of Appeal of Termination

3. State Personnel Board's Order Dismissing Notice of Appeal of Termination

4. State Personnel Board's Order Granting Motion to Dismiss Complaint Filed Against Shanon S. Riley (Doc. 14-1, filed Mar. 4, 2025)

5. August 2022 Letter of Reappointment

Any other relevant documents obtained from Defendant's initial disclosures and other written discovery.

**Plaintiff's Expert Witnesses:**

At this time, Plaintiff does not anticipate retaining expert witnesses in this litigation. In the event that Plaintiff determines an expert witness is necessary, Plaintiff reserves the right to retain expert witnesses at that time and will supplement as necessary.

**Defendant's Witnesses:**

1. **Heather Jordan**
   Executive Director
   New Mexico Workers' Compensation Administration
   c/o Serpe Andrews, PLLC
   Cody R. Rogers and Blade M. Allen
   2540 El Paseo Road, Suite D
   Las Cruces, NM 88001
   Tel. (575) 288-1453
   crogers@serpeandrews.com
   ballen@serpeandrews.com

   Ms. Jordan may be called to testify regarding the circumstances of Plaintiff's termination, her awareness of Plaintiff's performance and tenure at the WCA, any difficulties or personal issues Ms. Jordan encountered with Plaintiff, and any other relevant testimony regarding Plaintiff's claims and potential defenses.

2. **Shanon S. Riley**
   5305 Canada Vista Pl. NW
   Albuquerque, NM 87120
   c/o Kennedy, Hernandez & Harrison, P.C.
   Jeff Vescovi
   201 12th St. NW
   Albuquerque, NM 87102
   jvescovi@kennedyhernandez.com

   Plaintiff may be called to testify regarding the circumstances of her termination including the meeting she had with Defendant, her decision to enter administrative voting leave, the circumstances underlying her failure to vote on Election Day, her timesheet details, and any other relevant testimony regarding her claims and potential defenses.

3. Individuals identified in Plaintiff's Complaint.

4.  Individuals identified in other reports and/or investigations involving Plaintiff.

5.  Persons identified in discovery.

6.  Any expert witnesses retained and identified by any party.

7.  Any individuals identified by any party.

8.  Such records custodians and other witnesses as may be necessary to establish, authenticity, foundation, or other requirements for the admission of evidence.

9.  Such additional witnesses as may be identified through discovery and continuing investigation.

10. Rebuttal and/or impeachment witnesses whose identities cannot be anticipated at this time.

**Defendant's Documents:**

1.  Plaintiff Riley's personnel file from the Worker's Compensation Administration.

2.  Bernalillo County Voting Records from the 2024 Election

3.  Any documents Plaintiff listed.

4.  Any documents produced in discovery.

5.  Any documents necessary for witness impeachment.

**Defendant's Expert Witnesses:**

Defendant does not anticipate retaining expert witnesses in this litigation. In the event Defendant determines an expert witness is necessary, she reserves the right to retain expert witnesses at that time and will disclose their identities as required under the Federal Rules of Civil Procedure and the Court's Order.

---

List all witnesses who, at this time, you think will either testify or be deposed, giving their name, title, address and a brief summary of their testimony.  It is insufficient to list witnesses' addresses, save for clients, "in care of counsel."

List all documents which you believe, at this time, will be exhibits at the trial.

List all experts who you believe, at this time, will testify at the trial, giving their name, address, area of expertise, and a brief summary of the anticipated testimony.

Discovery will be needed on the following subjects: *(Brief description of subjects on which discovery will be needed.)*

Maximum of 25 interrogatories by each party to any other party. (Responses due 30 days after service).

Maximum of 25 requests for production by each party to any other party. (Responses due 30 days after service).

Maximum of 25 requests for admission by each party to any other party. (Responses due 30 days after service).

Maximum of 10 depositions by Plaintiff and 10 by Defendant(s).

Each deposition is limited to maximum of 7 hours unless extended by agreement of parties.

Reports from retained experts under Rule 26(a)(2) due:

At this time, Plaintiff does not anticipate retaining expert witnesses in this litigation. In the event that Plaintiff determines an expert witness is necessary in the future, Plaintiff reserves the right to retain expert witnesses at that time and will supplement as necessary.

Defendant will disclose any rebuttal experts within thirty (30) days from the date Plaintiff discloses any testifying expert's identity and information.

Supplementation under Rule 26(e) due in a timely manner in accordance with the Rule.

All discovery commenced in time to be complete by Friday, October 17, 2025.

Other Items: None.

## PRETRIAL MOTIONS

Plaintiff intends to file: Motion for Preliminary Injunction (filed Jan. 14, 2025); Motion for Summary Judgment (partial or otherwise); and other motions as warranted.

Defendant intends to file motions for partial and summary judgment as well as other dispositive motions.

## ESTIMATED TRIAL TIME

The parties estimate trial will require 3 days.

  __X__ This is a non-jury case.

  ____ This is a jury case.

The parties request a pretrial conference after a ruling on Plaintiff's Motion for Preliminary Injunction.

## SETTLEMENT

The possibility of settlement in this case cannot be evaluated prior to the Court's ruling on Plaintiff's Motion for Preliminary Injunction. The parties request a settlement conference after a ruling on Plaintiff's Motion for Preliminary Injunction.

## EXCEPTIONS

None.

APPROVED WITHOUT EXCEPTIONS

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
Kennedy, Hernandez & Harrison, P.C.
201 Twelfth Street Northwest
Albuquerque, NM 87102
jhernandez@kennedyhernandez.com
pkennedy@kennedyhernandez.com
eharrison@kennedyhernandez.com
jvescovi@kennedyhernandez.com

*Attorneys for Plaintiff Shanon S. Riley*

*/s/ Blade M. Allen*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
***Attorneys for Defendant***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

SHANNON S. RILEY,

        Plaintiff,

    vs.                                                                No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN *in her individual
and official capacities as the
Director of the New Mexico Workers'
Compensation Administration*,

        Defendant.

## MEMORANDUM ORDER AND OPINION GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER comes before the Court based on Plaintiff's Motion for Preliminary Injunction and the associated briefing (**doc. 2; doc. 8, doc. 10**). Having considered the parties' briefing and applicable law, finds that Plaintiff's Motion is **well taken** and is therefore **GRANTED**.

## BACKGROUND

Plaintiff served as a Workers' Compensation Judge (WCJ) for the New Mexico Worker's Compensation Administration (WCA) from her appointment on August 20, 2011, to her termination on November 13, 2024. **Doc. 2 at 1–2**. This action arises from the events leading to her termination, beginning on November 5, 2024. *Id.*

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. *Id.* at **2**. While she arrived at the polls, Plaintiff ultimately did not vote because there was a line and because she was sick. *Id.* Plaintiff was aware that she needed to make corrections to her timesheet and intended to make the corrections. the following morning on November 7, 2024. *Id.* Prior to the commencement of this action, Plaintiff had over 200 hours of annual leave and over 240 hours of sick leave, which she

1

**App. 124**

could have substituted, or alleges that she alternatively could have removed the two hours of as she had already worked a significant number of hours that day. ***Id.*** The WCA office was closed on November 7 due to inclement weather, and Plaintiff did not have access to her laptop. ***Id.*** She alleges that as a result of these events, she "simply forgot to edit her timesheet." ***Id.***

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. ***Id.*** Defendant fired Plaintiff on November 13, 2024, alleging that she had committed time fraud and had thus violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" ***Id.***

Plaintiff filed suit on January 14, 2024, seeking injunctive relief and damages under 42 U.S.C. §1983 for civil rights violations, including being deprived of her property interest in her employment without due process of law. **Doc. 1**. At the time of the initial lawsuit, Defendant had not submitted a complaint about the events to the State Personnel board. **Doc. 7 at 2**. On February 4, 2025, the Workers' Compensation Administration subsequently submitted a complaint to the State Personnel Board, in accordance with Section 52-5-2(C) and New Mexico Administrative Code, 1.7.12.25. ***Id.*** On March 4, 2025, the Board granted Plaintiff's motion and filed an Order of Dismissal dismissing the WCA's complaint for lack of jurisdiction. **Doc. 14-1**.

Defendant offered Plaintiff a modified form of reinstatement on February 6, 2025. **Doc. 7-2**. The offer involved being reinstated to her former position as a Workers' Compensation Judge and placed on paid administrative leave pending the outcome of the State Personnel Board proceedings. ***Id.*** It also departed from Plaintiff's original employment in that it made her an at-will employee serving at the pleasure of the Governor, rather than subject to firing only for

2

**App. 125**

violations of the judicial code of conduct. *Id.*; **doc. 10 at 2**. Plaintiff rejected the modified offer on February 14, 2025. **Doc. 10-1**. Plaintiff asserted that it varied substantively from her original employment and that its restrictions on communication violated her First Amendment right to freedom of speech.

Defendant gave Plaintiff an updated offer of reinstatement on February 26, 2025, that would still place her on administrative leave until the completion of proceedings but changed the at-will employee language to render Plaintiff able to be fired only in cases of violations of the code of judicial misconduct. **Doc. 18-1**. Plaintiff rejected the offer on the grounds that it continued to violate her First Amendment right to freedom of speech and still did not restore the status quo. **Doc. 18-2**. Defendant now contends that Plaintiff's second rejection renders her responsible for her ongoing unemployment and moots her cause of action. **Doc. 15 at 1**. Plaintiff maintains that she is entitled to a preliminary injunction and that the Court should not grant Defendant's motion to dismiss. **Doc. 12 at 1**.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir.2012) (citations omitted).

To obtain a preliminary injunction, Plaintiff must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4)

**App. 126**

that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

Courts disfavor preliminary injunctions that "exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797). Because Plaintiff's request mandates action, she faces "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors." *Id.*

## ANALYSIS

Plaintiff has demonstrated that she is entitled to a preliminary injunction, even when considering the higher burden she must bear in seeking an affirmative injunction.

Courts disfavor preliminary injunctions that (1) mandate action (rather than prohibiting it), (2) change the status quo, or (3) grant all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797). The Supreme Court has affirmatively stated that purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The goal is to preserve the status quo until the Court can more completely resolve the issue on its merits. *Id.* To determine the status quo, the Court looks to the "last peaceable uncontested status existing between the parties before the dispute developed[.]" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948, at 136 (2d ed.1995)). "[I]t is defined by the reality of the existing status and relationships between the parties, regardless of

**App. 127**

whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* at 1259.  The Court's findings of fact and conclusions of law when granting a preliminary injunction are not binding at a trial on the merits.  *Camenisch*, 451 U.S. at 395.

Plaintiff's requested preliminary injunction would likely return the parties to their last peaceable position prior to this conflict arising.[1]  Plaintiff seeks to return to her position as a WCJ (without being on paid administrative leave), resume hearing cases, serve the rest of her appointment, and to engage with her colleagues.  **Doc. 1 at ¶67**.  That would be the last peaceable uncontested status existing between the parties before this dispute developed— Plaintiff was not on administrative leave or barred from speaking with her colleagues before Defendant fired her. *Schrier*, 427 F.3d at 1260.  "Thus, in reality, Plaintiff seeks to preserve the status quo," which is the very purpose of a preliminary injunction.  *Porter v. Allbaugh*, No. 18-CV-0472-JED-FHM, 2019 WL 2167415, at *6 (N.D. Okla. May 17, 2019); *Camenisch*, 451 U.S. at 395.  However, because Plaintiff's requested injunction mandates action—that is, reinstating an already-fired party— the Court still applies some elevated level of scrutiny to Plaintiff's likelihood of success on the merits and the balancing of harms factors.  *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232.

---

[1] It is worth noting that the Tenth Circuit has recently noted that "An injunction is mandatory when it requires defendants to do something they were not doing during the most recent peaceable status quo—that is, the last uncontested period preceding the injunction." *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024).  Given that the last peaceable period preceding the injunction was prior to Plaintiff's firing, one could argue that requiring Defendant to restore Plaintiff to her position does not "disturb the last peaceable status quo." *Id.*; *see Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) ("In the instant case, the "last peaceable uncontested status existing between the parties before the dispute developed," . . . was on October 9, 2002, when Dr. Schrier was still serving as Chair of the Department of Medicine, a position he had held in excess of twenty-six years.").  However, because Plaintiff's Motion survives the higher burden of affirmative injunctions, it is unnecessary to delve deeper into whether Plaintiff has sought a mandatory or a prohibitive injunction.

**App. 128**

A. *Plaintiff has demonstrated a substantial likelihood of success on her procedural due process claim.*

One of the two factors the Court must weight particularly heavily is Plaintiff's likelihood of success on the merits. "All courts agree that plaintiff must present a prima facie case but need not show a certainty of winning." *Logan v. Pub. Emps. Ret. Ass'n*, 163 F. Supp. 3d 1007, 1033 (D.N.M. 2016) (internal citations omitted).

Here, Plaintiff presents two claims: deprivation of her right to procedural due process and deprivation of her right to substantive due process. Both claims arise under 42 U.S.C. § 1983. §1983 claims mandate that a person be acting under color of state law. 42 U.S.C. § 1983 (covering the conduct of "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."). The parties stipulated that Defendant was a state actor and that she acted under color of state law. **Doc. 14 at 3**. The Court will therefore find that Plaintiff has satisfied this requirement for a § 1983 claim and look only to whether she has alleged a prima facie case for both of her due process claims. The Court finds that Plaintiff has demonstrated likelihood of success on her procedural due process claim, but not on her substantive due process claim.

a. *Procedural due process*

Plaintiff has alleged a prima facie case of a violation of her procedural due process rights because she received no pretermination notice or process.

The Tenth Circuit requires a two-step inquiry in determining whether an individual's procedural due process rights were violated. First, the Court asks whether the individual possesses a protected property or liberty interest to which due process is applicable. *Camuglia v. City of*

6

**App. 129**

*Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006); *ETP Rio Rancho Park, LLC v. Grisham*, 522 F. Supp. 3d 966, 1018 (D.N.M. 2021). If the party does possess such an interest, the court then asks if the individual was afforded the appropriate level of process. *Camuglia*, 448 F.3d at 1219. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Salazar*, 776 F. Supp. 2d at 1238.

"That [Plaintiff] satisfies the first prong, whether [she] possessed a protected interest, is beyond dispute." *Garcia v. City of Albuquerque,* 232 F.3d 760, 769 (10th Cir. 2000). Public employees who can be discharged only for cause retain a constitutionally protected property interest in their continued employment and cannot be fired without due process. *Gilbert v. Homar,* 520 U.S. 924, 928–29 (1997); *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1253 (10th Cir. 1998) (The "standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment."). Neither party disputes that Plaintiff was a public employee who could only be fired for cause—that is, violations of the Code of Judicial Conduct. Plaintiff thus retains a constitutionally protected property interest in her ongoing employment and is entitled to due process.

What constitutes adequate procedural due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, (1976). Generally, [a]n essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). The Supreme Court has emphasized that this "root requirement" is *pretermination* process, meaning "that an individual be given an

**App. 130**

opportunity for a hearing *before* [they are] deprived of any significant property interest. *Id.* (citing *Boddie v. Connecticut,* 401 U.S. 371, 379(1971) (emphasis in original); *Bell v. Burson,* 402 U.S. 535, 542 (1971)).

Pretermination due process is necessary due to the "severity of depriving a person of the means of livelihood. *Loudermill*, 470 U.S. at 543. "While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which [they] left [their] previous job." *Id.* "[The] the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* And "[the] governmental interest in immediate termination does not outweigh these interests," even where an employee poses some significant hazard. *Id.* at 544. Pretermination process poses no significant administrative burden, it prevents disruption and erroneous decisions, and keeps qualified employees usefully employed. *Id.* In situations where an employee poses a hazard, the government has the option of suspension pending pretermination proceedings. *Id.* at 545.

Plaintiff received no such process here. While Defendant attempted to retroactively rectify the situation by filing a complaint with the Personnel Board *after* Plaintiff had already been fired, Plaintiff received no notice or opportunity to respond *prior* to her termination. *Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services*, 936 F.2d 483, 491 (10th Cir. 1991) ("Where the state action is the dismissal of a tenured public employee, the procedural safeguard required by the Constitution typically includes a pre-termination as well as a post-termination hearing."). As a tenured public employee, Plaintiff is entitled to some form of pretermination process, including notice of the charge and an opportunity to respond. This process, laid out in New Mexico state law, involves filing a complaint with the New Mexico Personnel Board and holding hearing

8

**App. 131**

proceedings in which both sides may argue their case.  *See Garcia v. City of Albuquerque*, 232 F.3d 760, 770 (10th Cir. 2000) ("Moreover, Garcia was afforded three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing. In the circumstances, Garcia received all of the process that he was due.").  Plaintiff received no notice or opportunity to be heard, and Defendant concedes as such. **Doc. 14 at ¶6** (Both parties stipulate that "[p]rior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any other required procedure under the New Mexico Administrative Code in terminating Plaintiff.").

Defendant argues that by submitting a complaint to the Personnel Board after she already terminated Plaintiff, Defendant has rectified any due process concern.  Indeed, Defendant argues that Plaintiff has shirked the process she is being given by filing a motion to dismiss for lack of jurisdiction with the Personnel Board.  To support her argument, Defendant relies on an Eleventh Circuit case, *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994), which ostensibly supports the argument that one can remedy a due process violation ex post facto by providing an opportunity to be heard after the deprivation has already taken place.  But Defendant's reliance on *McKinney* is misplaced for two reasons.  First, the Eleventh Circuit is persuasive, but not binding.  Tenth Circuit case law seems to clearly require *pretermination* process, and the Court can locate no precedent suggesting that *ex post facto* remedies can make up for a lack of pretermination process. *Garcia*, 232 F.3d at 769 (discussing pretermination process); *Nard v. City Of Oklahoma City*, 153 Fed. Appx. 529, 534 (10th Cir. 2005) ("The undisputed facts demonstrate that Defendant Oklahoma City provided Plaintiff with all of the procedure he was due under the Fourteenth

**App. 132**

Amendment *prior* to *demoting him*." (emphasis added)); *Archuleta*, 936 F.2d at 490 (discussing at length the pretermination process plaintiff received).

Second, even if *McKinney* did bind this Court, so would its progeny, including *Galbreath v. Hale Cnty., Alabama Comm'n*, 754 F. App'x 820 (11th Cir. 2018). *Galbreath* expressly rejects Defendant's *ex post facto* argument. The Eleventh Circuit found that "where a due process violation is already complete because no hearing was held as required by *Loudermill*, *McKinney* has no application." *Id.* at 828. Where there were *no* pretermination proceedings whatsoever, *McKinney* has no effect. Here, Plaintiff was fired with no notice or opportunity to be heard at a pretermination hearing, as required by *Loudermill*. *Galbreath* is thus significantly more persuasive in demonstrating that Plaintiff suffered a complete due process violation.

Because Plaintiff received no pretermination process, the Court finds that Plaintiff has demonstrated substantial likelihood of success on her procedural due process claim.

### b. *Substantive due process*

Plaintiff has not demonstrated substantial likelihood of success on her substantive due process claim because Defendant's action was not arbitrary or conscience-shocking and because it was rationally connected to a legitimate interest.

It is not clear whether a property interest in continued employment is protected by substantive due process. *Ishoo v. Bd. of Regents Univ. of New Mexico*, No. CV-06-0747 MV/ACT, 2007 WL 9729216, at *15 (D.N.M. Sept. 29, 2007) (citing *Archuleta*, 936 F.2d at 489 n.6). However, even assuming that Plaintiff does have a fundamental property interest in performing the duties and functions of her employment that is subject to substantive due process protection, Plaintiff has not shown substantial likelihood of success on the merits. This is because where a plaintiff has recourse to an "explicit textual source of constitutional protection," *Graham v.*

**App. 133**

*Connor*, 490 U.S. 386, 395 (1989), a more general claim of substantive due process is not available. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).  Plaintiff's substantive due process claim essentially restates her procedural due process claim, inserting the standard for substantive due process instead.  *Ishoo*, 2007 WL 9729216 at *16.

Even operating as if Plaintiff did have a substantive due process right, she cannot show substantial likelihood on the merits. Assuming a protected property interest, "[S]ubstantive due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis. . . [the] Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998) (internal quotations omitted) (citing *Bishop v. Wood,* 426 U.S. 341, 350 (1976)).  The standard for judging substantive due process violations is whether the challenged government action would "shock the conscience of federal judges." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (internal quotations omitted).

Plaintiff has not demonstrated that Defendant acted in a manner that was wholly arbitrary or conscience-shocking.  Even acting ill-advisedly and without affording Plaintiff procedural due process, Defendant did not act with a "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Id.* at 574.  Defendant's reasoning for firing Plaintiff was not arbitrary—a possible violation of the Code of Judicial Conduct is a serious charge. While the decision to fire Plaintiff over two hours of mislabeled time seems overblown, it does not surmount the high standard of being completely arbitrary or conscience-shocking.

Moreover, the decision to terminate Plaintiff is rationally related to the interests laid out in the Code of Judicial Conduct.  The Code of Conduct is meant to prevent conduct that reflects adversely on the judge's honesty, Rule 21-003(K), NMRA, or create in reasonable minds conduct

11

**App. 134**

that would impugn a judge's credibility or honestly.   Rule 21-003(B), NMRA.  Plaintiff admits that she ultimately submitted a timesheet that did not accurately reflect her time worked and time taken off.  That could create in some reasonable mind an assumption that Plaintiff is dishonest. Terminating her is thus rationally related to the interest of preventing impropriety.

Plaintiff has thus not demonstrated a likelihood of success on the merits of her substantive due process claim.  However, she has demonstrated a substantial likelihood of success on her procedural due process claim.  The Court will therefore find that this factor counsels towards granting Plaintiff relief.

B. *Plaintiff has demonstrated she would likely suffer irreparable harm.*

Plaintiff has demonstrated that she would likely suffer irreparable harm unable to be remedied solely by monetary damages.

Plaintiff asserts that she has automatically demonstrated irreparable harm where she has demonstrated a constitutional violation.  The Tenth Circuit has suggested that in the context of constitutional claims, the first and second preliminary injunction factors collapse, and a plaintiff who demonstrates a likelihood of success on the merits simultaneously demonstrates irreparable injury. *Free the Nipple-Fort Collins*, 916 F.3d at 792.  Because Plaintiff has demonstrated substantial likelihood of success on at least one of her constitutional claims, this alone is sufficient to find the second factor skews in favor of Plaintiff.

Moreover, Plaintiff also asserts that "[i]f an injunction is not granted, Plaintiff will have to explain her termination to future employers, colleagues, and other members of the bar," which is a disproportionately dangerous harm in a small legal community like New Mexico.  **Doc. 2 at 8**. "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to

**App. 135**

ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). The Tenth Circuit has held that "no remedy could repair the damage to . . . reputation and credibility," enabling district courts to grant preliminary injunctions where there is risk of reputational harm. *Id.* at 1156–57. Defendant does not dispute this in any of her pleadings. The Court will therefore take the assertions at face value and find that Plaintiff has demonstrated an additional risk of irreparable harm.

     C. *Defendant is unlikely to suffer any injury, and the injunction is not adverse to the public interest.*

     The discernible harm factor also counsels towards granting the preliminary injunction because it is not clear that Defendant would suffer any harm, much less harm that would outweigh Plaintiff's risk of harm. Nor is the preliminary injunction adverse to the public interest.

     The final two factors merge where the Government is the opposing party, meaning the Court analyzes the potential harm to Defendant and the harm to the public interest in the same prong. *Chiles v. Salazar*, 116 F.4th 1178, 1199 (10th Cir. 2024), *cert. granted,* No. 24-539, 2025 WL 746313 (U.S. Mar. 10, 2025).

     Here, there is a lack of demonstrable harm to Defendant, meaning there is nothing to outweigh Plaintiff's risk of harm. There is no evidence, for example, that Defendant has replaced Plaintiff and that restoring Plaintiff to her position would therefore cost the government hundreds of thousands of dollars. Nor is there any evidence that restoring Plaintiff to her position would somehow cause Defendant reputational harm, or some other harm not easily remedied by money. And Defendant makes no effort to demonstrate harm, leaving the Court to decide this factor solely on Plaintiff's word. Given the absence of ascertainable harm, the Court will find for Plaintiff on this factor. *See Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024)

**App. 136**

("Balancing Pineda's non-existent harms against the real harms of non-enforcement of SB 23-169 weighs in favor of Governor Polis.").

Likewise, there is nothing in the record demonstrating that the preliminary injunction would be adverse to the public interest.  Plaintiff points out several public policy interests that counsel towards relief: maintaining public confidence in the WCA and in the state's administrative disciplinary procedures, increasing the efficiency of the WCA by allowing Plaintiff to quickly resolve those cases she is already familiar with rather than assigning them to new judges.  *See Core Progression Franchise LLC v. O'Hare*, No. 21-1151, 2022 WL 1741836, at *4 (10th Cir. May 31, 2022) (finding the fourth factor counsels towards an injunction where there are several public policy interests favoring it); *Rocky Mountain Gun Owners*, 121 F.4th at 128 (same).  The public also has a demonstrated interest in preventing civil rights violations.  Given that Defendant does not contest this factor at all, the Court will find that the injunction is not only not adverse to the public interest, it is arguably in the public's interest.

The Court will therefore find that the collapsed third and fourth factors counsel towards the preliminary injunction.  The Court therefore finds that Plaintiff has met her burden of demonstrating a clear right to relief because she has demonstrated substantial likelihood of success on at least one of her claims and has demonstrated a risk of irreparable harm.  The Court will grant her motion for a preliminary injunction.

## CONCLUSION

Preliminary "injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 129 S.Ct. 365.  Plaintiff has shown that she is entitled to preliminary injunctive relief here.  Therefore, the Court will grant Plaintiff's preliminary injunction.

**App. 137**

An order granting an injunction must describe in reasonably specific detail what acts are required.  *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024); Fed. R. Civ. P. 65(d)(1)(c).  Defendant is specifically required to reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits.  Doing so restores the status quo at the last peaceable position of the parties, as is the purpose of an injunction.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Preliminary Injunction **(Doc. 2)** is **GRANTED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

———————————————

SHANNON S. RILEY,

          Plaintiff,

     vs.                                   No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN *in her individual
and official capacities as the
Director of the New Mexico Workers'
Compensation Administration*,

          Defendant.

## MEMORANDUM ORDER AND OPINION DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS AND STAY

THIS MATTER comes before the Court based on Defendant's Partial Motion to Dismiss Without Prejudice and Motion to Stay Pending Administrative Proceedings and the associated briefing (**doc. 7; doc. 12; doc. 15**). Having considered the parties' briefing and applicable law, the Court finds that Defendant's Motion is **not well taken** and is therefore **DENIED**.

### BACKGROUND

Plaintiff served as a Workers' Compensation Judge (WCJ) for the New Mexico Worker's Compensation Administration (WCA) from her appointment on August 20, 2011, to her termination on November 13, 2024. **Doc. 2 at 1–2**. This action arises from the events leading to her termination, beginning on November 5, 2024. *Id.*

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. *Id.* at 2. While she arrived at the polls, Plaintiff ultimately did not vote because there was a line and because she was sick. *Id.* Plaintiff was aware that she needed to make corrections to her timesheet and intended to make the corrections. the following morning on November 7, 2024. *Id.* Prior to the commencement of this

1

**App. 139**

action, Plaintiff had over 200 hours of annual leave and over 240 hours of sick leave, which she could have substituted, or alleges that she alternatively could have removed the two hours of as she had already worked a significant number of hours that day. *Id.* The WCA office was closed on November 7 due to inclement weather, and Plaintiff did not have access to her laptop. *Id.* She alleges that as a result of these events, she "simply forgot to edit her timesheet." *Id.*

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. *Id.* Defendant fired Plaintiff on November 13, 2024, alleging that she had committed time fraud and had thus violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

Plaintiff filed suit on January 14, 2025 seeking injunctive relief and damages under 42 U.S.C. §1983 for civil rights violations, including being deprived of her property interest in her employment without due process of law. **Doc. 1**. At the time of the initial lawsuit, Defendant had not submitted a complaint about the events to the State Personnel board. **Doc. 7 at 2**. On February 4, 2025, the Workers' Compensation Administration subsequently submitted a complaint to the State Personnel Board, in accordance with Section 52-5-2(C) and New Mexico Administrative Code, 1.7.12.25. *Id.* On March 4, 2025, the Board granted Plaintiff's motion and filed an Order of Dismissal dismissing the WCA's complaint for lack of jurisdiction. **Doc. 14-1**.

Defendant offered Plaintiff a modified form of reinstatement on February 6, 2025. **Doc. 7-2**. The offer involved being reinstated to her former position as a Workers' Compensation Judge and placed on paid administrative leave pending the outcome of the State Personnel Board proceedings. *Id.* It also departed from Plaintiff's original employment in that it made her an at-

**App. 140**

will employee serving at the pleasure of the Governor, rather than subject to firing only for violations of the judicial code of conduct. *Id.*; **doc. 10 at 2**. Plaintiff rejected the modified offer on February 14, 2025. **Doc. 10-1.** Plaintiff asserted that it varied substantively from her original employment and that its restrictions on communication violated her First Amendment right to freedom of speech.

Defendant gave Plaintiff an updated offer of reinstatement on February 26, 2025, that would still place her on administrative leave until the completion of proceedings but changed the at-will employee language to render Plaintiff able to be fired only in cases of violations of the code of judicial misconduct. **Doc. 18-1**. Plaintiff rejected the offer on the grounds that it continued to violate her First Amendment right to freedom of speech and still did not restore the status quo. **Doc. 18-2**. Defendant now contends that Plaintiff's second rejection renders her responsible for her ongoing unemployment and moots her cause of action. **Doc. 15 at 1**. Plaintiff maintains that she is entitled to a preliminary injunction and that the Court should not grant Defendant's motion to dismiss. **Doc. 12 at 1**.

**LEGAL STANDARD**

1. *12(b)(1) motions to dismiss.*

"Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. United States Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (citing *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)). In addressing a factual challenge, "the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to . . . other documents

3

**App. 141**

. . . to resolve the disputed jurisdictional facts under Rule 12(b)(1)." *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1303 (10th Cir. 2001).[1]  Defendant mounts a factual challenge.  **Doc. 7.**

2. <u>*Younger abstention.*</u>

Federal courts should not interfere with pending state judicial proceedings absent extraordinary circumstances.  *Younger v. Harris,* 401 U.S. 37 (1971); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431 (1982).  "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state court proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999).  A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies. *Amanatullah v. Colorado Bd. of Medical Examiners*, et al., 187 F.3d 1160, 1163 (10th Cir. 1999). The doctrine of *Younger* abstention is a mandatory one—the case *must* be dismissed if it meets all three conditions.  *Id.*  "*Younger* abstention is jurisdictional" and should be addressed "at the outset because a determination that the district court lacked jurisdiction over a claim moots any other challenge to the claim, including a different jurisdictional challenge." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228-29 (10th Cir. 2004).

---

[1] Neither party requests that the Court convert this matter to summary judgment under Fed. R. Civ. P. 56.

**App. 142**

## ANALYSIS

The parties have both filed motions now ripe for consideration: Plaintiff's Motion for a Preliminary Injunction, **doc. 2**, and Defendant's Motion to Dismiss and to Stay. **Doc. 7**. Defendant argues that the portion of Plaintiff's Complaint seeking injunctive relief in the form of reinstatement is moot. **Doc. 8 at 6**. Defendant also argues that the Court should stay its proceedings until termination of the administrative proceedings. *Id.* The Court considers Defendant's Motion to Dismiss below.

### I. *Younger* **abstention is inapplicable because there are no ongoing state proceedings.**

Defendant requests in her motion that the Court abstain from deciding any existing claims until the state administrative proceedings have concluded in compliance with *Younger* abstention. However, *Younger* abstention is not at issue because the proceedings concluded on March 4, 2025.

*Younger* abstention requires that a federal court abstain from granting equitable relief, such as an injunction, where there are ongoing state proceedings. *Rienhardt*, 164 F.3d at 1302. This includes an ongoing administrative proceeding. *Amanatullah*, 187 F.3d at 1163. However, that proceeding *must* be *ongoing*. Where a state administrative proceeding has reached its conclusion with a final order and the timeframe to appeal that order has run, both this district and the Tenth Circuit consider that administrative proceeding to have concluded. *Hunter v. Hirsig*, 660 F. App'x 711, 715 (10th Cir. 2016) ("Ordinarily, a state proceeding ends when the time for appeal has run."); *see also Ree-Co Uranium L.P. v. New Mexico Mining Comm'n*, No. 9-CV-881 WJ/ACT, 2010 WL 11601188, at *2 (D.N.M. Apr. 29, 2010) (finding that an administrative proceeding had concluded where an appeal was not possible).

New Mexico's Personnel Board reviews termination of WCJ's. NM State § 52-5-2(C) ("Any complaints against a workers' compensation judge shall be filed with the state personnel board. . . ."). Aggrieved parties may appeal a Personnel Board decision to the New Mexico district

**App. 143**

courts within thirty days of the date of filing of the final decision.  NM Stat § 10-9-18(G) (2024)

("A party aggrieved by the decision of the board made pursuant to this section may appeal the

decision to the district court pursuant to the provisions of Section 39-3-1.1 NMSA 1978."); NM

Stat § 39-3-1.1 (C) ("Unless standing is further limited by a specific statute, a person aggrieved by

a final decision may appeal the decision to district court by filing in district court a notice of appeal

within thirty days of the date of filing of the final decision.").

The New Mexico Personnel Board dismissed Defendant's Complaint against Plaintiff for

lack of jurisdiction on March 4, 2025. **Doc. 14-1 at 2**.  Because Defendant had already terminated

Plaintiff when Defendant filed the complaint with the Board, the Board lacked jurisdiction to hear

a complaint about someone not considered New Mexico personnel.  *Id.*  Per New Mexico law,

Defendant had thirty days from the entrance of that order to appeal the decision.  NM Stat § 39-3-

1.1 (C).  Thirty days have since lapsed.  To the Court's knowledge, Defendant has not done so,

and indeed failed to address the Personnel Board's disposition of the matter in her most recent

briefing.  **Doc. 15** (filed March 5, 2025).  The Court will therefore consider the state proceedings

to have come to their natural and final conclusion.  *Hunter*, 660 F. App'x at 715 ("Although the

Court has not squarely extended this exhaustion principle to preceding state administrative

proceedings, it has assumed without deciding "that an administrative adjudication and the

subsequent state court's review of it count as a 'unitary process' for *Younger* purposes."); *ETP Rio

Rancho Park, LLC v. Grisham*, 564 F. Supp. 3d 1023, 1071 (D.N.M. 2021) ("Because Elevate

Trampoline received a final decision on its appeal of the Notice of Contemplated Action that the

NMDOH issued, Elevate Trampoline's state proceedings have concluded and are no longer

ongoing.").  *Younger* abstention cannot apply where there are no ongoing proceedings with which

the federal court might interfere.  *Amanatullah*, 187 F.3d at 1163.

**App. 144**

*Younger* abstention is therefore not at issue.  The Court will proceed with considering each parties' requests in turn below.

## II. **Plaintiff's claims for injunctive relief are not moot.**

Next, Defendant contends that Plaintiff's claims for injunctive relief are moot because Plaintiff has received the relief that she sought: reinstatement.  However, Plaintiff's claims are still live because she has not received the precisely requested remedy.

Article III, Section 2 of the United States constitution limits federal courts' jurisdiction to actual cases and controversies.  Federal courts cannot decide questions that do not affect the rights of litigants before them.  *North Carolina v. Rice,* 404 U.S. 244, 246 (1971)); *Johansen v. City of Bartlesville, Okla.,* 862 F.2d 1423, 1426 (10th Cir.1988); *Johnson v. Riveland,* 855 F.2d 1477, 1480 (10th Cir.1988).  This means that there must be an actual controversy at all stages of review, not solely at the time the plaintiff files their complaint.  *Arizonans for Official English v. Ariz.,* 520 U.S. 43, 67 (1997); *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1121 (10th Cir. 2010).  Where the issues are no longer live or parties no longer have a legally cognizable interest in the outcome, the case becomes moot, and the court no longer has jurisdiction.  *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979); *Salazar v. City of Albuquerque*, 776 F. Supp. 2d 1217, 1227–28 (D.N.M. 2011).  "The crucial question is whether 'granting a present determination of the issues offered ... will have some effect in the real world.'" *Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) (internal citations omitted).

A due process claim is not moot where the plaintiff has not received the precise remedy they have requested.  *Veal v. Jones*, 349 F. App'x 270, 272 (10th Cir. 2009) ("Here, Veal has already received the precise remedy he has requested. . . his claim is now moot."); *ETP Rio Rancho Park, LLC v. Grisham*, 564 F. Supp. 3d 1023, 1059–60 (D.N.M. 2021)("The Court has concluded that a due process claim is not moot where the plaintiff does not receive the precise remedy which

**App. 145**

he has requested."). For example, where a party seeks reinstatement and punitive and back-pay damages, but only receives reinstatement, the claims for damages are still live because the plaintiff has not received the full remedy sought. *Salazar*, 776 F.Supp.2d at 1235–36; *c.f. Taylor v. Franklin,* 264 Fed.Appx. 764, 766 (10th Cir. 2008) (holding that a prisoner's due-process claim was rendered moot when a state appellate court granted him the relief he sought); *Brown v. Wyo. Dep't of Corrs. State Penitentiary,* 234 Fed.Appx. 874, 877 n. 1 (10th Cir. 2007) ("[A]lleged violations of due process in the first disciplinary hearing were mooted by Brown's success in having his initial charges vacated.").

Defendant argues that Plaintiff has already been reinstated and granted due process via administrative review, thus restoring the status quo, granting her the relief she sought, and mooting the claims for injunctive relief. **Doc. 7 at 6; Doc. 7-2** (offer of reinstatement). However, Plaintiff has not accepted the offer of reinstatement. Defendant argues that this renders Plaintiff's continued harm self-inflicted. **Doc. 15 at 1.** Specifically, Defendant argues that Plaintiff continues to move the target for what her desired remedy is because Defendant believes Plaintiff sought "reinstatement to her position as a Workers Compensation Judge pending the resolution of the administrative proceeding contemplated in the New Mexico statutes and administrative code provisions governing the employment of Workers' Compensation Judges." **Doc. 15 at 3 (citing Doc. 1 at ¶¶62, 67)**. However, Defendant's characterization of Plaintiff's requested remedy misstates the text of the Complaint. Plaintiff does not request reinstatement pending the resolution of administrative proceedings but pending *these* proceedings. **Doc. 1 at ¶67.** Plaintiff has not moved the target, as Defendant alleges, but rather has maintained her request from the filing of her Complaint and Motion for Preliminary Injunction. **Doc. 1; Doc. 2.**

**App. 146**

Moreover, the offer does not fully ameliorate the wrong that Plaintiff's requested injunction would remedy. It is true that Defendant corrected the error in the first offer that would have made Plaintiff an at-will employee, which counsels towards finding mootness. **Doc. 15.** However, Defendant still has not reinstated Plaintiff in her entirety. **Doc. 18-1**. Rather, Defendant sought to place Plaintiff on administrative leave and restrict her access to her colleagues. *Id.* This is not the relief Plaintiff has sought; Plaintiff has sought full reinstatement in compliance with her previous terms of employment as laid out in NM State § 52-5-2(C) pending the resolution of these federal proceedings. **Doc. 1 at ¶¶60–67**. Plaintiff made no alternative request, and the Court will not infer one. *See Mika v. Brisco*, No. CV 20-346 MV/KK, 2023 WL 2456650, at *1 (D.N.M. Mar. 10, 2023) (finding that a request for an unredacted document is moot because the complaint sought either the redacted document or the unredacted document). Plaintiff also seeks reinstatement that allows her to fully communicate with her colleagues, which she has yet to receive. **Doc. 18-2**.

Defendant alleges that "plaintiff's decision to reject reinstatement because it did not meet every condition that she preferred has broken the causal link between Defendant's action and any ongoing harm she claims to be suffering." **Doc. 15 at 4**. The Court cannot locate any binding law suggesting that a plaintiff moots their due process claim by not accepting anything less than their entire requested relief. However, even if Plaintiff had accepted the offer, she would remain without her entire requested remedy, which is full reinstatement pending the resolution of this case, not solely the administrative proceedings. **Doc. 1 at ¶67**. Where a plaintiff receives less than the complete relief they seek, that claim is not moot. *Salazar*, 776 F. Supp. 2d at 1234; *Hood v. Com. Enters.*, No. CV 23-1024 JB/JFR, 2024 WL 5119233, at *1 (D.N.M. Mar. 21, 2024) (same).

9

**App. 147**

Because Defendant still has not issued an offer that complies fully with Plaintiff's requested relief as she has sought throughout the entire action, Plaintiff's claims for preliminary and permanent injunctive relief are not moot.

**CONCLUSION**

Defendant has not shown that Plaintiff's claims for preliminary and permanent injunctive relief are moot and that the Court is thus without subject matter jurisdiction to decide them. Moreover, there are no pending administrative proceedings, negating any issue under *Younger*.  **IT IS THEREFORE ORDERED THAT** Defendant's Partial Motion to Dismiss Without Prejudice and Stay Pending the Administrative Proceedings **(Doc. 7)** is **DENIED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

**App. 148**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

────────────────────

SHANON S. RILEY,

        Plaintiff,

    vs.                                                            No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN *in her individual*
*and official capacities as the*
*Director of the New Mexico Workers'*
*Compensation Administration*,

        Defendant.

## <u>AMENDED MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>

THIS MATTER comes before the Court based on Plaintiff's Motion for Preliminary Injunction and the associated briefing (**doc. 2; doc. 8, doc. 10**).  Having considered the parties' briefing and applicable law, finds that Plaintiff's Motion is **well taken** and is therefore **GRANTED**.

## BACKGROUND

Plaintiff served as a Workers' Compensation Judge (WCJ) for the New Mexico Worker's Compensation Administration (WCA) from her appointment on August 20, 2011, to her termination on November 13, 2024.  **Doc. 2 at 1–2**.  This action arises from the events leading to her termination, beginning on November 5, 2024.  *Id.*

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting.  *Id.* **at 2**.  While she arrived at the polls, Plaintiff ultimately did not vote because there was a line and because she was sick.  *Id.*  Plaintiff was aware that she needed to make corrections to her timesheet and intended to make the corrections. the following morning on November 7, 2024.  *Id.*  Prior to the commencement of this

1

**App. 149**

action, Plaintiff had over 200 hours of annual leave and over 240 hours of sick leave, which she could have substituted, or alleges that she alternatively could have removed the two hours of as she had already worked a significant number of hours that day. *Id.* The WCA office was closed on November 7 due to inclement weather, and Plaintiff did not have access to her laptop. *Id.* She alleges that as a result of these events, she "simply forgot to edit her timesheet." *Id.*

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. *Id.* Defendant fired Plaintiff on November 13, 2024, alleging that she had committed time fraud and had thus violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

Plaintiff filed suit on January 14, 2025, seeking injunctive relief and damages under 42 U.S.C. §1983 for civil rights violations, including being deprived of her property interest in her employment without due process of law. **Doc. 1**. At the time of the initial lawsuit, Defendant had not submitted a complaint about the events to the State Personnel board. **Doc. 7 at 2**. On February 4, 2025, the Workers' Compensation Administration subsequently submitted a complaint to the State Personnel Board, in accordance with Section 52-5-2(C) and New Mexico Administrative Code, 1.7.12.25. *Id.* On March 4, 2025, the Board granted Plaintiff's motion and filed an Order of Dismissal dismissing the WCA's complaint for lack of jurisdiction. **Doc. 14-1**.

Defendant offered Plaintiff a modified form of reinstatement on February 6, 2025. **Doc. 7-2**. The offer involved being reinstated to her former position as a Workers' Compensation Judge and placed on paid administrative leave pending the outcome of the State Personnel Board proceedings. *Id.* It also departed from Plaintiff's original employment in that it made her an at-

**App. 150**

will employee serving at the pleasure of the Governor, rather than subject to firing only for violations of the judicial code of conduct. ***Id.***; **doc. 10 at 2**. Plaintiff rejected the modified offer on February 14, 2025. **Doc. 10-1.** Plaintiff asserted that it varied substantively from her original employment and that its restrictions on communication violated her First Amendment right to freedom of speech.

Defendant gave Plaintiff an updated offer of reinstatement on February 26, 2025, that would still place her on administrative leave until the completion of proceedings but changed the at-will employee language to render Plaintiff able to be fired only in cases of violations of the code of judicial misconduct. **Doc. 18-1.** Plaintiff rejected the offer on the grounds that it continued to violate her First Amendment right to freedom of speech and still did not restore the status quo. **Doc. 18-2**. Defendant now contends that Plaintiff's second rejection renders her responsible for her ongoing unemployment and moots her cause of action. **Doc. 15 at 1**. Plaintiff maintains that she is entitled to a preliminary injunction and that the Court should not grant Defendant's motion to dismiss. **Doc. 12 at 1**.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir.2012) (citations omitted).

To obtain a preliminary injunction, Plaintiff must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened

**App. 151**

injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

Courts disfavor preliminary injunctions that "exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797). Because Plaintiff's request mandates action, she faces "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors." *Id.*

## ANALYSIS

Plaintiff has demonstrated that she is entitled to a preliminary injunction, even when considering the higher burden she must bear in seeking an affirmative injunction.

Courts disfavor preliminary injunctions that (1) mandate action (rather than prohibiting it), (2) change the status quo, or (3) grant all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797). The Supreme Court has affirmatively stated that purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The goal is to preserve the status quo until the Court can more completely resolve the issue on its merits. *Id.* To determine the status quo, the Court looks to the "last peaceable uncontested status existing between the parties before the dispute developed[.]" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948, at 136 (2d ed.1995)). "[I]t is

**App. 152**

defined by the reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* at 1259. The Court's findings of fact and conclusions of law when granting a preliminary injunction are not binding at a trial on the merits. *Camenisch*, 451 U.S. at 395.

Plaintiff's requested preliminary injunction would likely return the parties to their last peaceable position prior to this conflict arising.[1] Plaintiff seeks to return to her position as a WCJ (without being on paid administrative leave), resume hearing cases, serve the rest of her appointment, and to engage with her colleagues. **Doc. 1 at ¶67**. That would be the last peaceable uncontested status existing between the parties before this dispute developed— Plaintiff was not on administrative leave or barred from speaking with her colleagues before Defendant fired her. *Schrier*, 427 F.3d at 1260. "Thus, in reality, Plaintiff seeks to preserve the status quo," which is the very purpose of a preliminary injunction. *Porter v. Allbaugh*, No. 18-CV-0472-JED-FHM, 2019 WL 2167415, at *6 (N.D. Okla. May 17, 2019); *Camenisch*, 451 U.S. at 395. However, because Plaintiff's requested injunction mandates action—that is, reinstating an already-fired party— the Court still applies some elevated level of scrutiny to Plaintiff's likelihood of success on the merits and the balancing of harms factors. *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232.

---

[1] It is worth noting that the Tenth Circuit has recently noted that "[a]n injunction is mandatory when it requires defendants to do something they were not doing during the most recent peaceable status quo—that is, the last uncontested period preceding the injunction." *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024). Given that the last peaceable period preceding the injunction was prior to Plaintiff's firing, one could argue that requiring Defendant to restore Plaintiff to her position does not "disturb the last peaceable status quo." *Id.*; *see Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) ("In the instant case, the "last peaceable uncontested status existing between the parties before the dispute developed," . . . was on October 9, 2002, when Dr. Schrier was still serving as Chair of the Department of Medicine, a position he had held in excess of twenty-six years."). However, because Plaintiff's Motion survives the higher burden of affirmative injunctions, it is unnecessary to delve deeper into whether Plaintiff has sought a mandatory or a prohibitive injunction.

**App. 153**

A. *Plaintiff has demonstrated a substantial likelihood of success on her procedural due process claim.*

One of the two factors the Court must weight particularly heavily is Plaintiff's likelihood of success on the merits. "All courts agree that plaintiff must present a prima facie case but need not show a certainty of winning." *Logan v. Pub. Emps. Ret. Ass'n*, 163 F. Supp. 3d 1007, 1033 (D.N.M. 2016) (internal citations omitted).

Here, Plaintiff presents two claims: deprivation of her right to procedural due process and deprivation of her right to substantive due process. Both claims arise under 42 U.S.C. § 1983. §1983 claims mandate that a person be acting under color of state law. 42 U.S.C. § 1983 (covering the conduct of "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."). The parties stipulated that Defendant was a state actor and that she acted under color of state law. **Doc. 14 at 3**. The Court will therefore find that Plaintiff has satisfied this requirement for a § 1983 claim and look only to whether she has alleged a prima facie case for both of her due process claims. The Court finds that Plaintiff has demonstrated likelihood of success on her procedural due process claim, but not on her substantive due process claim.

a. *Procedural due process*

Plaintiff has alleged a prima facie case of a violation of her procedural due process rights because she received no pretermination notice or process.

The Tenth Circuit requires a two-step inquiry in determining whether an individual's procedural due process rights were violated. First, the Court asks whether the individual possesses

6

**App. 154**

a protected property or liberty interest to which due process is applicable. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006); *ETP Rio Rancho Park, LLC v. Grisham*, 522 F. Supp. 3d 966, 1018 (D.N.M. 2021). If the party does possess such an interest, the court then asks if the individual was afforded the appropriate level of process. *Camuglia*, 448 F.3d at 1219. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Salazar*, 776 F. Supp. 2d at 1238.

"That [Plaintiff] satisfies the first prong, whether [she] possessed a protected interest, is beyond dispute." *Garcia v. City of Albuquerque,* 232 F.3d 760, 769 (10th Cir. 2000). Public employees who can be discharged only for cause retain a constitutionally protected property interest in their continued employment and cannot be fired without due process. *Gilbert v. Homar,* 520 U.S. 924, 928–29 (1997); *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1253 (10th Cir. 1998) (The "standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment."). Neither party disputes that Plaintiff was a public employee who could only be fired for cause—that is, violations of the Code of Judicial Conduct. Plaintiff thus retains a constitutionally protected property interest in her ongoing employment and is entitled to due process.

What constitutes adequate procedural due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, (1976). Generally, "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). The Supreme Court has emphasized that

**App. 155**

this "root requirement" is *pretermination* process, meaning "that an individual be given an opportunity for a hearing *before* [they are] deprived of any significant property interest." *Id.* (citing *Boddie v. Connecticut,* 401 U.S. 371, 379(1971) (emphasis in original); *Bell v. Burson,* 402 U.S. 535, 542 (1971)).

Pretermination due process is necessary due to the "severity of depriving a person of the means of livelihood. *Loudermill*, 470 U.S. at 543. "While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which [they] left [their] previous job." *Id.* "[The] the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* And "[the] governmental interest in immediate termination does not outweigh these interests," even where an employee poses some significant hazard. *Id.* at 544. Pretermination process poses no significant administrative burden, it prevents disruption and erroneous decisions, and keeps qualified employees usefully employed. *Id.* In situations where an employee poses a hazard, the government has the option of suspension pending pretermination proceedings. *Id.* at 545.

Plaintiff received no such process here. While Defendant attempted to retroactively rectify the situation by filing a complaint with the Personnel Board *after* Plaintiff had already been fired, Plaintiff received no notice or opportunity to respond *prior* to her termination. *Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services*, 936 F.2d 483, 491 (10th Cir. 1991) ("Where the state action is the dismissal of a tenured public employee, the procedural safeguard required by the Constitution typically includes a pre-termination as well as a post-termination hearing."). As a tenured public employee, Plaintiff is entitled to some form of pretermination process, including notice of the charge and an opportunity to respond. This process, laid out in New Mexico

**App. 156**

state law, involves filing a complaint with the New Mexico Personnel Board and holding hearing proceedings in which both sides may argue their case. *See Garcia v. City of Albuquerque*, 232 F.3d 760, 770 (10th Cir. 2000) ("Moreover, Garcia was afforded three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing. In the circumstances, Garcia received all of the process that he was due."). Plaintiff received no notice or opportunity to be heard, and Defendant concedes as such. **Doc. 14 at ¶6** (Both parties stipulate that "[p]rior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any other required procedure under the New Mexico Administrative Code in terminating Plaintiff.").

Defendant argues that by submitting a complaint to the Personnel Board after she already terminated Plaintiff, Defendant has rectified any due process concern. Indeed, Defendant argues that Plaintiff has shirked the process she is being given by filing a motion to dismiss for lack of jurisdiction with the Personnel Board. To support her argument, Defendant relies on an Eleventh Circuit case, *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994), which ostensibly supports the argument that one can remedy a due process violation ex post facto by providing an opportunity to be heard after the deprivation has already taken place. But Defendant's reliance on *McKinney* is misplaced for two reasons. First, the Eleventh Circuit is persuasive, but not binding. Tenth Circuit case law seems to clearly require *pretermination* process, and the Court can locate no precedent suggesting that *ex post facto* remedies can make up for a lack of pretermination process. *Garcia*, 232 F.3d at 769 (discussing pretermination process); *Nard v. City Of Oklahoma City*, 153 Fed. Appx. 529, 534 (10th Cir. 2005) ("The undisputed facts demonstrate that Defendant Oklahoma City provided Plaintiff with all of the procedure he was due under the Fourteenth

**App. 157**

Amendment *prior* to *demoting him*." (emphasis added)); *Archuleta*, 936 F.2d at 490 (discussing at length the pretermination process plaintiff received).

Second, even if *McKinney* did bind this Court, so would its progeny, including *Galbreath v. Hale Cnty., Alabama Comm'n*, 754 F. App'x 820 (11th Cir. 2018). *Galbreath* expressly rejects Defendant's *ex post facto* argument. The Eleventh Circuit found that "where a due process violation is already complete because no hearing was held as required by *Loudermill*, *McKinney* has no application." *Id.* at 828. Where there were *no* pretermination proceedings whatsoever, *McKinney* has no effect. Here, Plaintiff was fired with no notice or opportunity to be heard at a pretermination hearing, as required by *Loudermill*. *Galbreath* is thus significantly more persuasive in demonstrating that Plaintiff suffered a complete due process violation.

Because Plaintiff received no pretermination process, the Court finds that Plaintiff has demonstrated substantial likelihood of success on her procedural due process claim.

<h3>b. <em>Substantive due process</em></h3>

Plaintiff has not demonstrated substantial likelihood of success on her substantive due process claim because Defendant's action was not arbitrary or conscience-shocking and because it was rationally connected to a legitimate interest.

It is not clear whether a property interest in continued employment is protected by substantive due process. *Ishoo v. Bd. of Regents Univ. of New Mexico*, No. CV-06-0747 MV/ACT, 2007 WL 9729216, at *15 (D.N.M. Sept. 29, 2007) (citing *Archuleta*, 936 F.2d at 489 n.6). However, even assuming that Plaintiff does have a fundamental property interest in performing the duties and functions of her employment that is subject to substantive due process protection, Plaintiff has not shown substantial likelihood of success on the merits. This is because where a plaintiff has recourse to an "explicit textual source of constitutional protection," *Graham v.*

**App. 158**

*Connor*, 490 U.S. 386, 395 (1989), a more general claim of substantive due process is not available. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Plaintiff's substantive due process claim essentially restates her procedural due process claim, inserting the standard for substantive due process instead. *Ishoo*, 2007 WL 9729216 at *16.

Even operating as if Plaintiff did have a substantive due process right, she cannot show substantial likelihood on the merits. Assuming a protected property interest, "[S]ubstantive due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis. . . [the] Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998) (internal quotations omitted) (citing *Bishop v. Wood,* 426 U.S. 341, 350 (1976)). The standard for judging substantive due process violations is whether the challenged government action would "shock the conscience of federal judges." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (internal quotations omitted).

Plaintiff has not demonstrated that Defendant acted in a manner that was wholly arbitrary or conscience-shocking. Even acting ill-advisedly and without affording Plaintiff procedural due process, Defendant did not act with a "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 574. Defendant's reasoning for firing Plaintiff was not arbitrary—a possible violation of the Code of Judicial Conduct is a serious charge. While the decision to fire Plaintiff over two hours of mislabeled time seems overblown, it does not surmount the high standard of being completely arbitrary or conscience-shocking.

Moreover, the decision to terminate Plaintiff is rationally related to the interests laid out in the Code of Judicial Conduct. The Code of Conduct is meant to prevent conduct that reflects adversely on the judge's honesty, Rule 21-003(K), NMRA, or create in reasonable minds conduct

**App. 159**

that would impugn a judge's credibility or honestly.   Rule 21-003(B), NMRA.  Plaintiff admits that she ultimately submitted a timesheet that did not accurately reflect her time worked and time taken off.  That could create in some reasonable mind an assumption that Plaintiff is dishonest. Terminating her is thus rationally related to the interest of preventing impropriety.

Plaintiff has thus not demonstrated a likelihood of success on the merits of her substantive due process claim.  However, she has demonstrated a substantial likelihood of success on her procedural due process claim.  The Court will therefore find that this factor counsels towards granting Plaintiff relief.

B.  *Plaintiff has demonstrated she would likely suffer irreparable harm.*

Plaintiff has demonstrated that she would likely suffer irreparable harm unable to be remedied solely by monetary damages.

Plaintiff asserts that she has automatically demonstrated irreparable harm where she has demonstrated a constitutional violation.  The Tenth Circuit has suggested that in the context of constitutional claims, the first and second preliminary injunction factors collapse, and a plaintiff who demonstrates a likelihood of success on the merits simultaneously demonstrates irreparable injury. *Free the Nipple-Fort Collins*, 916 F.3d at 792.  Because Plaintiff has demonstrated substantial likelihood of success on at least one of her constitutional claims, this alone is sufficient to find the second factor skews in favor of Plaintiff.

Moreover, Plaintiff also asserts that "[i]f an injunction is not granted, Plaintiff will have to explain her termination to future employers, colleagues, and other members of the bar," which is a disproportionately dangerous harm in a small legal community like New Mexico.  **Doc. 2 at 8**. "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to

**App. 160**

ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001).  The Tenth Circuit has held that "no remedy could repair the damage to . . . reputation and credibility," enabling district courts to grant preliminary injunctions where there is risk of reputational harm.  *Id.* at 1156–57.  Defendant does not dispute this in any of her pleadings.  The Court will therefore take the assertions at face value and find that Plaintiff has demonstrated an additional risk of irreparable harm.

      C.  *Defendant is unlikely to suffer any injury, and the injunction is not adverse to the public interest.*

      The discernible harm factor also counsels towards granting the preliminary injunction because it is not clear that Defendant would suffer any harm, much less harm that would outweigh Plaintiff's risk of harm.  Nor is the preliminary injunction adverse to the public interest.

      The final two factors merge where the Government is the opposing party, meaning the Court analyzes the potential harm to Defendant and the harm to the public interest in the same prong.  *Chiles v. Salazar*, 116 F.4th 1178, 1199 (10th Cir. 2024), *cert. granted,* No. 24-539, 2025 WL 746313 (U.S. Mar. 10, 2025).

      Here, there is a lack of demonstrable harm to Defendant, meaning there is nothing to outweigh Plaintiff's risk of harm.  There is no evidence, for example, that Defendant has replaced Plaintiff and that restoring Plaintiff to her position would therefore cost the government hundreds of thousands of dollars.  Nor is there any evidence that restoring Plaintiff to her position would somehow cause Defendant reputational harm, or some other harm not easily remedied by money.  And Defendant makes no effort to demonstrate harm, leaving the Court to decide this factor solely on Plaintiff's word.  Given the absence of ascertainable harm, the Court will find for Plaintiff on this factor.  *See Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024)

**App. 161**

("Balancing Pineda's non-existent harms against the real harms of non-enforcement of SB 23-169 weighs in favor of Governor Polis.").

Likewise, there is nothing in the record demonstrating that the preliminary injunction would be adverse to the public interest. Plaintiff points out several public policy interests that counsel towards relief: maintaining public confidence in the WCA and in the state's administrative disciplinary procedures, increasing the efficiency of the WCA by allowing Plaintiff to quickly resolve those cases she is already familiar with rather than assigning them to new judges. *See Core Progression Franchise LLC v. O'Hare*, No. 21-1151, 2022 WL 1741836, at *4 (10th Cir. May 31, 2022) (finding the fourth factor counsels towards an injunction where there are several public policy interests favoring it); *Rocky Mountain Gun Owners*, 121 F.4th at 128 (same). The public also has a demonstrated interest in preventing civil rights violations. Given that Defendant does not contest this factor at all, the Court will find that the injunction is not only not adverse to the public interest, it is arguably in the public's interest.

The Court will therefore find that the collapsed third and fourth factors counsel towards the preliminary injunction. The Court therefore finds that Plaintiff has met her burden of demonstrating a clear right to relief because she has demonstrated substantial likelihood of success on at least one of her claims and has demonstrated a risk of irreparable harm. The Court will grant her motion for a preliminary injunction.

## CONCLUSION

Preliminary "injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 129 S.Ct. 365. Plaintiff has shown that she is entitled to preliminary injunctive relief here. Therefore, the Court will grant Plaintiff's preliminary injunction.

**App. 162**

An order granting an injunction must describe in reasonably specific detail what acts are required. *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024); Fed. R. Civ. P. 65(d)(1)(c). Defendant is specifically required to reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits. Doing so restores the status quo at the last peaceable position of the parties, as is the purpose of an injunction.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Preliminary Injunction **(Doc. 2)** is **GRANTED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

**App. 163**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

————————————

SHANON S. RILEY,

        Plaintiff,

    vs.                            No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN *in her individual*
*and official capacities as the*
*Director of the New Mexico Workers'*
*Compensation Administration*,

        Defendant.

<u>**AMENDED MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S**</u>
<u>**PARTIAL MOTION TO DISMISS AND STAY**</u>

    THIS MATTER comes before the Court based on Defendant's Partial Motion to Dismiss Without Prejudice and Motion to Stay Pending Administrative Proceedings and the associated briefing (**doc. 7; doc. 12; doc. 15**).  Having considered the parties' briefing and applicable law, the Court finds that Defendant's Motion is **not well taken** and is therefore **DENIED**.

**BACKGROUND**

    Plaintiff served as a Workers' Compensation Judge (WCJ) for the New Mexico Worker's Compensation Administration (WCA) from her appointment on August 20, 2011, to her termination on November 13, 2024.  **Doc. 2 at 1–2**.  This action arises from the events leading to her termination, beginning on November 5, 2024.  *Id.*

    On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting.  *Id.* **at 2**.  While she arrived at the polls, Plaintiff ultimately did not vote because there was a line and because she was sick.  *Id.*  Plaintiff was aware that she needed to make corrections to her timesheet and intended to make the corrections the morning of November 7, 2024.  *Id.*  Prior to the commencement of this action,

1

**App. 164**

Plaintiff had over 200 hours of annual leave and over 240 hours of sick leave, which she could have substituted. *Id.* Alternatively, she asserts she could have removed the two hours as she had already worked a significant number of hours that day. *Id.* The WCA office was closed on November 7 due to inclement weather, and Plaintiff did not have access to her laptop. *Id.* She alleges that as a result of these events, she "simply forgot to edit her timesheet." *Id.*

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. *Id.* Defendant fired Plaintiff on November 13, 2024, alleging that she had committed time fraud and had thus violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

Plaintiff filed suit on January 14, 2025, seeking injunctive relief and damages under 42 U.S.C. §1983 for civil rights violations, including being deprived of her property interest in her employment without due process of law. **Doc. 1**. At the time of the initial lawsuit, Defendant had not submitted a complaint about the events to the State Personnel board. **Doc. 7 at 2**. On February 4, 2025, the Workers' Compensation Administration subsequently submitted a complaint to the State Personnel Board, in accordance with Section 52-5-2(C) and New Mexico Administrative Code, 1.7.12.25. *Id.* On March 4, 2025, the Board granted Plaintiff's motion and filed an Order of Dismissal dismissing the WCA's complaint for lack of jurisdiction. **Doc. 14-1**.

Defendant offered Plaintiff a modified form of reinstatement on February 6, 2025. **Doc. 7-2**. The offer involved being reinstated to her former position as a Workers' Compensation Judge and placed on paid administrative leave pending the outcome of the State Personnel Board proceedings. *Id.* It also departed from Plaintiff's original employment in that it made her an at-

**App. 165**

will employee serving at the pleasure of the Governor, rather than subject to firing only for violations of the judicial code of conduct. ***Id.***; **doc. 10 at 2**. Plaintiff rejected the modified offer on February 14, 2025. **Doc. 10-1.** Plaintiff asserted that it varied substantively from her original employment and that its restrictions on communication violated her First Amendment right to freedom of speech.

Defendant gave Plaintiff an updated offer of reinstatement on February 26, 2025, that would still place her on administrative leave until the completion of proceedings but changed the at-will employee language to render Plaintiff able to be fired only in cases of violations of the code of judicial misconduct. **Doc. 18-1.** Plaintiff rejected the offer on the grounds that it continued to violate her First Amendment right to freedom of speech and still did not restore the status quo. **Doc. 18-2.** Defendant now contends that Plaintiff's second rejection renders her responsible for her ongoing unemployment and moots her cause of action. **Doc. 15 at 1.** Plaintiff maintains that she is entitled to a preliminary injunction and that the Court should not grant Defendant's motion to dismiss. **Doc. 12 at 1.**

## LEGAL STANDARD

1. *12(b)(1) motions to dismiss.*

"Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. United States Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (citing *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)). In addressing a factual challenge, "the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to . . . other documents

**App. 166**

. . . to resolve the disputed jurisdictional facts under Rule 12(b)(1)." *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1303 (10th Cir. 2001).[1]  Defendant mounts a factual challenge. **Doc. 7.**

2. Younger *abstention.*

Federal courts should not interfere with pending state judicial proceedings absent extraordinary circumstances.  *Younger v. Harris,* 401 U.S. 37 (1971); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state court proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999).  A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies. *Amanatullah v. Colorado Bd. of Medical Examiners*, et al., 187 F.3d 1160, 1163 (10th Cir. 1999). The doctrine of *Younger* abstention is a mandatory one—the case *must* be dismissed if it meets all three conditions.  *Id.*  "*Younger* abstention is jurisdictional" and should be addressed "at the outset because a determination that the district court lacked jurisdiction over a claim moots any other challenge to the claim, including a different jurisdictional challenge." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228-29 (10th Cir. 2004).

---

[1] Neither party requests that the Court convert this matter to summary judgment under Fed. R. Civ. P. 56.

**App. 167**

## ANALYSIS

The parties have both filed motions now ripe for consideration: Plaintiff's Motion for a Preliminary Injunction, **doc. 2**, and Defendant's Motion to Dismiss and to Stay. **Doc. 7**. Defendant argues that the portion of Plaintiff's Complaint seeking injunctive relief in the form of reinstatement is moot. **Doc. 8 at 6**. Defendant also argues that the Court should stay its proceedings until termination of the administrative proceedings. *Id.* The Court considers Defendant's Motion to Dismiss below.

### I. *Younger* **abstention is inapplicable because there are no ongoing state proceedings.**

Defendant requests in her motion that the Court abstain from deciding any existing claims until the state administrative proceedings have concluded in compliance with *Younger* abstention. However, *Younger* abstention is not at issue because the proceedings concluded on March 4, 2025.

*Younger* abstention requires that a federal court abstain from granting equitable relief, such as an injunction, where there are ongoing state proceedings. *Rienhardt*, 164 F.3d at 1302. This includes an ongoing administrative proceeding. *Amanatullah*, 187 F.3d at 1163. However, that proceeding *must* be *ongoing*. Where a state administrative proceeding has reached its conclusion with a final order and the timeframe to appeal that order has run, both this district and the Tenth Circuit consider that administrative proceeding to have concluded. *Hunter v. Hirsig*, 660 F. App'x 711, 715 (10th Cir. 2016) ("Ordinarily, a state proceeding ends when the time for appeal has run."); *see also Ree-Co Uranium L.P. v. New Mexico Mining Comm'n*, No. 9-CV-881 WJ/ACT, 2010 WL 11601188, at *2 (D.N.M. Apr. 29, 2010) (finding that an administrative proceeding had concluded where an appeal was not possible).

New Mexico's Personnel Board reviews termination of WCJ's. NM State § 52-5-2(C) ("Any complaints against a workers' compensation judge shall be filed with the state personnel board. . . ."). Aggrieved parties may appeal a Personnel Board decision to the New Mexico district

**App. 168**

courts within thirty days of the date of filing of the final decision.   NM Stat § 10-9-18(G) (2024)

("A party aggrieved by the decision of the board made pursuant to this section may appeal the

decision to the district court pursuant to the provisions of Section 39-3-1.1 NMSA 1978."); NM

Stat § 39-3-1.1 (C) ("Unless standing is further limited by a specific statute, a person aggrieved by

a final decision may appeal the decision to district court by filing in district court a notice of appeal

within thirty days of the date of filing of the final decision.").

The New Mexico Personnel Board dismissed Defendant's Complaint against Plaintiff for

lack of jurisdiction on March 4, 2025.   **Doc. 14-1 at 2**.   Because Defendant had already terminated

Plaintiff when Defendant filed the complaint with the Board, the Board lacked jurisdiction to hear

a complaint about someone not considered New Mexico personnel.   *Id.*   Per New Mexico law,

Defendant had thirty days from the entrance of that order to appeal the decision.   NM Stat § 39-3-

1.1 (C).   Thirty days have since lapsed.   To the Court's knowledge, Defendant has not done so,

and indeed failed to address the Personnel Board's disposition of the matter in her most recent

briefing.   **Doc. 15** (filed March 5, 2025).   The Court will therefore consider the state proceedings

to have come to their natural and final conclusion.   *Hunter*, 660 F. App'x at 715 ("Although the

Court has not squarely extended this exhaustion principle to preceding state administrative

proceedings, it has assumed without deciding "that an administrative adjudication and the

subsequent state court's review of it count as a 'unitary process' for *Younger* purposes."); *ETP Rio

Rancho Park, LLC v. Grisham*, 564 F. Supp. 3d 1023, 1071 (D.N.M. 2021) ("Because Elevate

Trampoline received a final decision on its appeal of the Notice of Contemplated Action that the

NMDOH issued, Elevate Trampoline's state proceedings have concluded and are no longer

ongoing.").   *Younger* abstention cannot apply where there are no ongoing proceedings with which

the federal court might interfere.   *Amanatullah*, 187 F.3d at 1163.

**App. 169**

*Younger* abstention is therefore not at issue.  The Court will proceed with considering each parties' requests in turn below.

## II. __Plaintiff's claims for injunctive relief are not moot.__

Next, Defendant contends that Plaintiff's claims for injunctive relief are moot because Plaintiff has received the relief that she sought: reinstatement.  However, Plaintiff's claims are still live because she has not received the precisely requested remedy.

Article III, Section 2 of the United States constitution limits federal courts' jurisdiction to actual cases and controversies.  Federal courts cannot decide questions that do not affect the rights of litigants before them.  *North Carolina v. Rice,* 404 U.S. 244, 246 (1971)); *Johansen v. City of Bartlesville, Okla.,* 862 F.2d 1423, 1426 (10th Cir.1988); *Johnson v. Riveland,* 855 F.2d 1477, 1480 (10th Cir.1988).  This means that there must be an actual controversy at all stages of review, not solely at the time the plaintiff files their complaint.  *Arizonans for Official English v. Ariz.,* 520 U.S. 43, 67 (1997); *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1121 (10th Cir. 2010).  Where the issues are no longer live or parties no longer have a legally cognizable interest in the outcome, the case becomes moot, and the court no longer has jurisdiction.  *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979); *Salazar v. City of Albuquerque*, 776 F. Supp. 2d 1217, 1227–28 (D.N.M. 2011).   "The crucial question is whether 'granting a present determination of the issues offered ... will have some effect in the real world.'" *Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) (internal citations omitted).

A due process claim is not moot where the plaintiff has not received the precise remedy they have requested.  *Veal v. Jones*, 349 F. App'x 270, 272 (10th Cir. 2009) ("Here, Veal has already received the precise remedy he has requested. . . his claim is now moot."); *ETP Rio Rancho Park, LLC v. Grisham*, 564 F. Supp. 3d 1023, 1059–60 (D.N.M. 2021)("The Court has concluded that a due process claim is not moot where the plaintiff does not receive the precise remedy which

**App. 170**

he has requested.").  For example, where a party seeks reinstatement and punitive and back-pay damages, but only receives reinstatement, the claims for damages are still live because the plaintiff has not received the full remedy sought.  *Salazar*, 776 F.Supp.2d at 1235–36; *c.f. Taylor v. Franklin,* 264 Fed.Appx. 764, 766 (10th Cir. 2008) (holding that a prisoner's due-process claim was rendered moot when a state appellate court granted him the relief he sought); *Brown v. Wyo. Dep't of Corrs. State Penitentiary,* 234 Fed.Appx. 874, 877 n. 1 (10th Cir. 2007) ("[A]lleged violations of due process in the first disciplinary hearing were mooted by Brown's success in having his initial charges vacated.").

Defendant argues that Plaintiff has already been reinstated and granted due process via administrative review, thus restoring the status quo, granting her the relief she sought, and mooting the claims for injunctive relief.  **Doc. 7 at 6; Doc. 7-2** (offer of reinstatement).  However, Plaintiff has not accepted the offer of reinstatement.  Defendant argues that this renders Plaintiff's continued harm self-inflicted.  **Doc. 15 at 1.**  Specifically, Defendant argues that Plaintiff continues to move the target for what her desired remedy is because Defendant believes Plaintiff sought "reinstatement to her position as a Workers Compensation Judge pending the resolution of the administrative proceeding contemplated in the New Mexico statutes and administrative code provisions governing the employment of Workers' Compensation Judges."  **Doc. 15 at 3 (citing Doc. 1 at ¶¶62, 67)**.  However, Defendant's characterization of Plaintiff's requested remedy misstates the text of the Complaint.  Plaintiff does not request reinstatement pending the resolution of administrative proceedings but pending *these* proceedings.  **Doc. 1 at ¶67.**  Plaintiff has not moved the target, as Defendant alleges, but rather has maintained her request from the filing of her Complaint and Motion for Preliminary Injunction.  **Doc. 1; Doc. 2.**

**App. 171**

Moreover, the offer does not fully ameliorate the wrong that Plaintiff's requested injunction would remedy. It is true that Defendant corrected the error in the first offer that would have made Plaintiff an at-will employee, which counsels towards finding mootness. **Doc. 15.** However, Defendant still has not reinstated Plaintiff in her entirety. **Doc. 18-1**. Rather, Defendant sought to place Plaintiff on administrative leave and restrict her access to her colleagues. *Id.* This is not the relief Plaintiff has sought; Plaintiff has sought full reinstatement in compliance with her previous terms of employment as laid out in NM State § 52-5-2(C) pending the resolution of these federal proceedings. **Doc. 1 at ¶¶60–67.** Plaintiff made no alternative request, and the Court will not infer one. *See Mika v. Brisco*, No. CV 20-346 MV/KK, 2023 WL 2456650, at *1 (D.N.M. Mar. 10, 2023) (finding that a request for an unredacted document is moot because the complaint sought either the redacted document or the unredacted document). Plaintiff also seeks reinstatement that allows her to fully communicate with her colleagues, which she has yet to receive. **Doc. 18-2**.

Defendant alleges that "plaintiff's decision to reject reinstatement because it did not meet every condition that she preferred has broken the causal link between Defendant's action and any ongoing harm she claims to be suffering." **Doc. 15 at 4**. The Court cannot locate any binding law suggesting that a plaintiff moots their due process claim by not accepting anything less than their entire requested relief. However, even if Plaintiff had accepted the offer, she would remain without her entire requested remedy, which is full reinstatement pending the resolution of this case, not solely the administrative proceedings. **Doc. 1 at ¶67**. Where a plaintiff receives less than the complete relief they seek, that claim is not moot. *Salazar*, 776 F. Supp. 2d at 1234; *Hood v. Com. Enters.*, No. CV 23-1024 JB/JFR, 2024 WL 5119233, at *1 (D.N.M. Mar. 21, 2024) (same).

**App. 172**

Because Defendant still has not issued an offer that complies fully with Plaintiff's requested relief as she has sought throughout the entire action, Plaintiff's claims for preliminary and permanent injunctive relief are not moot.

## CONCLUSION

Defendant has not shown that Plaintiff's claims for preliminary and permanent injunctive relief are moot and that the Court is thus without subject matter jurisdiction to decide them. Moreover, there are no pending administrative proceedings, negating any issue under *Younger*.

**IT IS THEREFORE ORDERED THAT** Defendant's Partial Motion to Dismiss Without Prejudice and Stay Pending the Administrative Proceedings **(Doc. 7)** is **DENIED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

**App. 173**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SHANON S. RILEY,

      Plaintiff,

v.                                            No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

      Defendant.

**DEFENDANT'S EMERGENCY MOTION**
**FOR STAY PENDING APPEAL OR CLARIFICATION**

Defendant Heather Jordan, in her individual and official capacities, by and through her

counsel of record, hereby move for this Court to immediately stay its May 9, 2025, Amended

Memorandum Opinion and Order Granting Plaintiff's Motion for Preliminary Injunction (Doc. 26)

pending appeal or, alternatively, clarify that Plaintiff may be placed on paid administrative leave

while the State Personnel Board considers Defendant's complaint so long as Plaintiff receives

adequate pre-deprivation due process.[1]

**Introduction**

Plaintiff, a New Mexico workers' compensation Judge, came to this Court alleging that

Defendant violated her due process when she dismissed Plaintiff for time fraud (after providing

Plaintiff with notice and an albeit brief opportunity to be heard) because Defendant did not comply

with a state statute and administrative code requiring that "complaints" against workers

---

[1] Defendant requested Plaintiff's position on this motion; however, she did not receive a
response.  Therefore, Defendant  presumes Plaintiff's opposition.

**App. 174**

compensation judges be heard by the State Personnel Board. Despite her disagreement with Plaintiff's reading of state law, Defendant subsequently offered to reinstate Plaintiff, initiate the State Personnel Board proceedings, and place her on paid administrative leave in the interim. Plaintiff rejected this offer and dismissed the very proceedings she demanded on the erroneous and unexplained bases that she was entitled to actively serve as a judge and have unfettered access to coworkers while the State investigated her time fraud. The Court agreed and issued a preliminary injunction forcing Defendants to reinstate Plaintiff as an active judge during the pendency of these proceedings.

Respectfully, the Court got it wrong. Defendant's initiation of the State Personnel Board proceedings and reinstatement of Plaintiff with paid administrative leave clearly mooted any need for prospective relief, let alone an extraordinary and disfavored preliminary injunction. Contrary to Plaintiff's claims, placing her on paid administrative leave while the State Personnel Board investigates her time fraud "does not raise due process concerns." *Hicks v. City of Watonga, Okl.*, 942 F.2d 737, 746 n.4 (10th Cir. 1991) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544-45 (1985)), and Plaintiff has no First Amendment right to talk to her coworkers about her employment or the ongoing investigation. Defendant, therefore, has a strong likelihood of overturning the preliminary injunction on appeal. Additionally, the State and the public will be irreparably harmed if this Court forces Defendant to reinstate Plaintiff as an active judge while she is being investigated for time fraud—only for her to possibly be subsequently placed back on administrative leave and dismissed depending on the outcome of the State Personnel Board proceedings. In contrast, Plaintiff will suffer no harm in being placed on paid administrative leave while she obtains the very process she claims was due.

Given the forgoing, Defendant respectfully requests the Court immediately stay its preliminary injunction. Alternatively, the Court should clarify that the injunction does not prevent Defendant from placing Plaintiff on paid administrative leave pending the State Personnel Board's adjudication of the complaint against her so long as Plaintiff receives adequate pre-deprivation due process.

**<u>Background</u>**

Plaintiff, who was serving as a Workers' Compensation Judge in the New Mexico Workers Compensation Administration ("WCA"), took two hours of voting leave to vote in the November 5, 2024, election. (Doc. 2 at 1-2) But Plaintiff never actually voted. *Id.* at 2 Instead of correcting her time sheet, she certified that her use of voting leave was true and accurate. *Id.* On November 13, 2024, Defendant discovered that Plaintiff had not, in fact, voted, and therefore committed time fraud. *Id.* That same day she asked Plaintiff if she had actually voted on Election Day. *Id.* Plaintiff admitted that she did not but asserted that she simply "forgot to edit her timesheet." *Id.* Defendant then handed her a letter terminating her employment for "violating the code of judicial conduct, which requires [Plaintiff] to promote the integrity and to 'avoid impropriety and the appearance of impropriety." *Id.*

On January 14, 2025, Plaintiff filed the instant suit claiming that Defendant violated her procedural and substantive due process rights when she terminated Plaintiff without first going through the process set out in NMSA 1978, § 52-5-2(C) (2004), and the New Mexico Administrative Code, 1.7.12.25. (Doc. 1) Plaintiff requested, *inter alia*, a disfavored preliminary injunction, based on the alleged procedural due process violation, ordering Defendant to "reinstate Plaintiff to her position as a Workers' Compensation Judge pending resolution of this case on the merits." (Doc. 2 at 10)

**App. 176**

On February 4, 2025, the WCA submitted a complaint about Plaintiff's time fraud and corresponding violation of the code of judicial conduct to the State Personnel Board, in accordance with Section 52-5-2(C) and New Mexico Administrative Code, 1.7.12.25. (Doc. 8-1)[2] The WCA additionally offered Plaintiff a modified form of reinstatement on February 6, 2025, in which she would be placed on *paid administrative leave* pending the outcome of the State Personnel Board proceedings. (Doc. 8-2) The offer inadvertently contained the standard "governor exempt" boilerplate language typically contained in similar forms that provided: "as an at-will exempt employee, you will serve at the pleasure of the Office of the Governor." *Id.* It also specified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while [she is] on paid administrative leave." *Id.*

On February 6, 2025, Defendant filed a response to the Motion, arguing among other things that Plaintiff's claims for injunctive relief were moot because she was going to be reinstated with pay and given the process she desired and that the Court should abstain under the *Younger* abstention doctrine given the then-ongoing proceedings in front of the State Personnel Board. (Doc. 8) Defendant also pointed out that Plaintiff's request to be fully reinstated as a WCA judge while the State Personnel Board proceedings play out "goes beyond any procedural protections afforded by New Mexico law, which does not prohibit putting plaintiff on administrative leave pending the State Personnel Board's hearing process." *Id.* at 9 n.4. For these same reasons, Defendant also filed a partial motion to dismiss without prejudice and stay, asking the Court to dismiss Plaintiffs' injunctive and declaratory claims without prejudice and stay her claims for

---

[2] In undertaking these actions, Defendant in no way concedes that the initial termination of plaintiff without first following this specific procedure—which is designed for handling complaints from members of the public—was improper. *See Roberts v. Winder*, 16 F.4th 1367, 1380 (10th Cir. 2021); *West v. Grand Cnty.*, 967 F.2d 362, 368 (10th Cir. 1992). Rather, this was simply done out of an abundance of caution.

**App. 177**

damages pending the State Personnel Board's resolution of the WCA complaint. (Doc. 7; *id.* at 2 (incorporating arguments in response to preliminary injunction))

On February 14, 2025, Plaintiff rejected Defendant's offer of reinstatement, asserting that it varied substantively from her original employment and that its restrictions on communication violated her First Amendment right to freedom of speech. (Doc. 10-1; Doc. 10-2). On February 17, 2025, Plaintiff filed a motion to dismiss with the State Personnel Board, requesting that the WCA complaint be dismissed because she is no longer an employee since she rejected the offer of reinstatement. (Doc. 10 at 5 n.2)[3] The following day, Plaintiff filed a reply in support of her motion for a preliminary injunction, arguing that *Younger* abstention did not apply and her claims were not moot since she had rejected the offer of reinstatement. (Doc. 10) Plaintiff also responded to Defendant's motion to dismiss with the same arguments. (Doc. 12)

On February 26, 2025, the WCA sent Plaintiff an updated offer of reinstatement. (Doc. 15 at 8-12) The updated offer of reinstatement was substantively identical to the first except that the erroneous "at-will" language was replaced with: "As a Workers Compensation Judge, and pursuant to NMSA 1978, Section 52-5-2(C), you are subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900." (Doc. 15 at 8) The updated offer of reinstatement also clarified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while you are on paid administrative leave *regarding matters related to your employment or the State Personnel Board investigation*." *Id.* (emphasis added).

---

[3] The State Personnel Board subsequently granted Plaintiff's motion to dismiss on the basis that she is no longer a WCA judge and therefore the Board lacked jurisdiction on March 4, 2025. (Doc. 14-1)

On March 5, 2025, Defendant filed her reply in support of her partial motion to dismiss and stay. (Doc. 15) Defendant pointed out that Plaintiff had not responded to the WCA's updated offer of reinstatement as of the time of filing. *Id.* at 1. Accordingly, Defendant argued, Plaintiff's refusal to accept reinstatement with paid administrative leave and her affirmative dismissal of the State Personnel Board proceedings broke the causal link between Defendant's actions and Plaintiff's purported injury—defeating her Article III standing. *Id.* at 2-4. On April 8, 2025, the Court issued a notice stating: "It is in the record that Plaintiff has rejected Defendant's initial offer, but the Court has no evidence indicating whether Plaintiff has accepted or rejected Defendant's new offer, which bears directly on the merits of both parties' motions." (Doc. 17) The Court ordered the parties to supplement the record with evidence as to whether Plaintiff has accepted or rejected Defendant's new offer of reinstatement. *Id.* Plaintiff subsequently filed a notice confirming that Plaintiff rejected the updated offer of reinstatement on the grounds that it allegedly "continued to violate Plaintiff's freedoms of speech and association and failed to preserve the status quo by fully reinstating Plaintiff to her position as a WCJ." (Doc. 18)

On May 9, 2025, the Court granted Plaintiff's request for a preliminary injunction and denied Defendant's motion for a partial dismissal and stay. (Doc. 26; Doc. 27) The Court found that Plaintiff had protected interest in "continued employment" and that she was likely to succeed on her procedural due process claim because she "received no notice or opportunity to respond prior to her termination." (Doc. 26 at 7-9)[4] Accordingly, the Court ordered Defendant to "reinstate

---

[4] To support this, the Court cited Defendant's stipulation that "[p]rior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any other required procedure under the New Mexico Administrative Code in terminating Plaintiff." *Id.* at 9. However, Defendant's stipulation that "she did not provide Plaintiff with a hearing" was meant in the sense that she did not provide Plaintiff with the hearing outlined in the New Mexico Administrative Code—not an informal "hearing" in the general due process sense. Defendant maintains that her

**App. 179**

Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits." *Id.* at 15. The Court also denied Defendant's partial motion to dismiss and stay because Plaintiff successfully had the State Personnel Board proceedings dismissed and it found that Plaintiff's claims were not moot since she rejected Defendant's offer of reinstatement. (Doc. 27) The Court specifically concluded that Plaintiff's rejection of the offer of reinstatement did not defeat her Article III standing because the offer did not give her "the precise remedy she requested"—full reinstatement as an active WCA judge without being placed on paid administrative leave for the duration of the federal case. *Id.* at 7-10. Defendants filed a notice of appeal of the preliminary injunction concurrently with this motion.

**Argument & Authorities**

**A. Standard of review**

"Courts must consider four factors when deciding whether to stay an order pending appeal: (1) whether the stay applicant has made a strong showing that they are likely to succeed on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay." *Sec. USA Servs., LLC v. Invariant Corp.*, 2023 WL 5055060, at *1 (D.N.M. July 28, 2023) (Riggs, J.) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

> **B. Defendant has a strong likelihood of succeeding on appeal because Plaintiff rejected the State Personnel Board proceedings and her offer of reinstatement— which gave her all the due process she was possibly entitled**

meeting with Plaintiff was sufficient to satisfy pre-deprivation due process. *See Roberts*, 16 F.4th at 1380; *West*, 967 F.2d at 368.

Defendant offered Plaintiff all the due process to which she was entitled, and her refusal to accept it negates her standing and entitlement to a preliminary injunction. The crux of Plaintiff's entire case against Defendant is that Defendant allegedly violated Plaintiff's procedural due process rights when Defendant terminated her without going through the administrative process outlined in Section 52-5-2(C) and 1.7.12.25 NMAC. (Doc. 1) Section 52-5-2(C) provides, in relevant part:

> A workers' compensation judge shall be required to conform to all canons of the code of judicial conduct as adopted by the supreme court, except canon 21-900 of that code. Violation of those canons shall be exclusive grounds for dismissal prior to the expiration of his term. Any complaints against a workers' compensation judge shall be filed with the state personnel board, which shall report its findings to the director.

1.7.12.25 NMAC, in turn, sets out the specific procedures that the State Personnel Board follows when adjudicating a complaint against a WCA judge.

While Defendant continues to dispute whether she was required to file a complaint with the State Personnel Board before dismissing Plaintiff, *see* supra notes 2-3, she voluntarily decided to reinstate Plaintiff shortly after this action was filed and initiate the process set out in out 1.7.12.25 NMAC of an abundance of caution—which would indisputably moot Plaintiff's procedural due process claim to the extent any prospective relief was requested. *See Romero v. Kaiser*, 2023 WL 2351652, at *2 (N.D. Cal. Mar. 3, 2023) (finding procedural due process claim moot after government provided plaintiff with the hearing that he sought in his claim); *Ginorio v. Contreras*, 409 F. Supp. 2d 101, 108 (D.P.R. 2006) (observing that the provision of the requested hearing mooted any need for a preliminary injunction); *see generally Winters v. Bd. of Cnty. Com'rs*, 4 F.3d 848, 856 (10th Cir. 1993) ("The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures." (citing *Zinermon v. Burch*, 110 S. Ct. 975, 983-84 (1990)). Importantly, the updated offer of

reinstatement letter specified that Plaintiff would be on ***paid administrative leave*** and would only be "subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900." (Doc. 18-1) It also clarified that Plaintiff was only prohibited from speaking to WCA staff members while she was on paid administrative leave "regarding matters related to your employment or the State Personnel Board investigation." *Id.*

Despite receiving this offer of reinstatement placing her on paid administrative leave while she receives the process she claims she was due pursuant to Section 52-5-2(C) and 1.7.12.25 NMAC, Plaintiff dismissed the State Personnel Board process, rejected the reinstatement as inadequate, and asserted she was still entitled to a disfavored preliminary injunction. (Doc. 18) Plaintiff claimed the offer was inadequate because it did not allow her to resume all of her duties as a WCA judge. *Id.* In other words, Plaintiff claimed that she had a due process right to not be placed on paid administrative leave while the State Personnel Board is investigating her for violations of the code of judicial conduct. But Plaintiff never provided any authority to support this argument. Nor could she have. As the Tenth Circuit has observed, "***Suspension with pay does not raise due process concerns.***" *Hicks*, 942 F.2d at 746 n.4 (citing *Loudermill*, 470 U.S. at 544-45) (emphasis added); *Shively v. Utah Valley Univ.*, 2022 WL 1021614, at *3 (10th Cir. Apr. 6, 2022) (same); *see also O'Connor v. Pierson*, 426 F.3d 187, 199 (2d Cir. 2005) (noting that "no court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties") (Doc. 8 at 9 n.4 (explaining that nothing "prohibit[ed] putting plaintiff on administrative leave pending the State Personnel Board's hearing process"). Thus, the fact that Plaintiff could not act as a WCA judge while the State Personnel Board investigated her time fraud did not render the offer of reinstatement constitutionally inadequate.

**App. 182**

Plaintiff also claimed she rejected the offer of reinstatement because it purportedly violated her first amendment rights by not allowing her to speak freely to everyone at the WCA. (Doc. 18) While Plaintiff never explained why this was, Defendant provided this Cout with authority demonstrating that it is permissible to prevent public employees from talking to other public employees about matters relating to their employment and investigations. (Doc. 15 at 2 n.1 (citing *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178 (E.D.N.Y. 2009); *Brady v. Dammer*, 573 F.Supp.2d 712, 724-25, 730 (N.D.N.Y.2008); *McDaniel v. Quick*, 2010 WL 2889026, at *6 (D.S.C. June 1, 2010), *report and recommendation adopted*, 2010 WL 2889024 (D.S.C. July 22, 2010))). If Plaintiff believed otherwise, it was incumbent on her to provide this Court with authority to the contrary given her burden in requesting a disfavored and extraordinary form of relief. *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) ("[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." (cleaned up)).

In sum, Plaintiff had no grounds to reject Defendant's offer of reinstatement and initiation of the State Personnel Board proceedings—which remedied the very injuries she claimed when she filed suit. Accordingly, her rejection breaks any causal connection between Defendant's actions and her purported injury and she, therefore, does not have standing to seek preliminary injunctive relief against Defendant. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 ("No [party] can be heard to complain about damage inflicted by its own hand."); *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them. Because the procedural protections existed, the state cannot be accused of withholding them in a section 1983 suit."); (Doc. 15 at 4 (making same argument)). It follows that Defendant has a

**App. 183**

strong likelihood of succeeding in her appeal of the Court's preliminary injunction since Plaintiff fails to show a strong likelihood of success for her disfavored preliminary injunction. *Cf. Church v. Polis*, 2022 WL 200661, at *11 (10th Cir. Jan. 24, 2022) ("[P]laintiffs lack standing and therefore fail to make the requisite strong showing of a substantial likelihood of success on the merits of their claims[.]").

### B. The State will be irreparably harmed absent a stay, and the public interest weighs in favor of granting a stay

It cannot be gainsaid that the State of New Mexico has a vital interest in maintaining the integrity of its judiciary. *See Williams-Yulee v. Florida Bar*, 575 U.S. 433, 445 (2015) ("We have recognized the vital state interest in safeguarding public confidence in the fairness and integrity of the nation's elected judges." (cleaned up)). As the Second Circuit has observed, "few interests can be considered more central than a state's interest in regulating its own judicial system." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003). And as this Court itself recognized, "Plaintiff admits that she ultimately submitted a timesheet that did not accurately reflect her time worked and time taken off. That could create in some reasonable mind an assumption that Plaintiff is dishonest." (Doc. 26 at 12) Requiring the State to maintain a judge with an active caseload under a cloud of ethical and legal scrutiny undermines public confidence in the integrity of the judicial process and compromises the fairness of proceedings for injured workers and employers alike. Plaintiff's continued presence could delay case resolutions, invite challenges to her rulings, and increase the risk of reversible error, further burdening the already strained workers' compensation system. Moreover, the State's ability to uphold accountability and enforce basic standards of conduct for public officials will be materially impaired, sending a signal that suspected misconduct does not warrant immediate action. This harm is undoubtedly irreparable.

**App. 184**

*Cf. Abbott v. Perez*, 585 U.S. 579, 603 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State.").

Likewise, the public interest strongly weighs in favor of granting the stay, as it ensures the integrity and stability of the workers' compensation adjudication process while the ongoing investigation into Plaintiff's time fraud is resolved. *Cf. In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("Orderly and expeditious resolution of disputes is of great importance to the rule of law."). Plaintiff's entire caseload has already been reassigned to other WCA judges. Reinstating Plaintiff immediately and reassigning her cases back to her—only for her to potentially be placed back on paid administrative leave and ultimately terminated depending on the State Personnel Board proceedings—would create needless disruption and confusion for parties with active cases. Injured workers and employers rely on consistency and trust in the impartiality of their adjudicator; cycling a judge in and out of service amid a misconduct investigation erodes that trust, delays the resolution of claims, and increases the risk of appeals or litigation over the legitimacy of her rulings. Maintaining the stay protects both the credibility of the system and the fair administration of justice.

**C. Issuing a stay will not injure Plaintiff**

In contrast to the foregoing harms that will befall the State of New Mexico and the public, granting a stay will not harm Plaintiff at all. As explained above, Plaintiff has no due process right to not be placed on paid administrative while she goes through the process she claims she was entitled to in the first place. *See Hicks*, 942 F.2d at 746 n.4. Nor does she have a first amendment right to be able to talk to other WCA staff about her employment or the investigation while the State Personnel Board process plays out. *See Dorcely*, 665 F. Supp. 2d at 204 (rejecting First Amendment claim based on school district's requirement that employee on administrative leave

not contact any one in school district because "there is no evidence that [he] wished to speak to his colleagues, his counsel or a union representative on a matter of public concern" as opposed to simply wishing to discuss matters relating to investigation and his own employment); *McDaniel v. Quick*, 2010 WL 2889026, at \*6 (rejecting first amendment claim based on employer's direction not to "have any contact with any district or school employees" while employee was on leave because it only prevented him from "speaking to other employees during and about the investigation"). Thus, there was no reason for Plaintiff to reject Defendant's offer of reinstatement, and there is no harm in staying the injunction pending appeal.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court immediately stay its May 9, 2025, Amended Memorandum Opinion and Order Granting Plaintiff's Motion for Preliminary Injunction (Doc. 26) pending appeal or, alternatively, clarify that Plaintiff may be placed on paid administrative leave while the State Personnel Board considers the WCA's complaint so long as Plaintiff receives adequate pre-deprivation due process.

Respectfully submitted,

**SERPE | ANDREWS, PLLC**

By */s/ Blade M. Allen*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
***Attorneys for Defendant***

**App. 186**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of May, 2025, I filed the foregoing through this Court's CM/ECF e-filing system and caused a true and correct copy of the same to be served upon all parties of record as reflected more fully in the electronic Notification of Service.

Respectfully submitted,

*/s/ Blade M. Allen*
Blade M. Allen

**App. 187**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SHANON S. RILEY,

      Plaintiff,

v.                                                              No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

      Defendant.

## DEFENDANT'S NOTICE OF APPEAL

      Defendant Heather Jordan, in her individual and official capacities, by and through her

counsel of record, hereby gives notice of her appeal to the Tenth Circuit Court of Appeals of this

Court's May 9, 2025, Amended Memorandum Opinion and Order Granting Plaintiff's Motion for

Preliminary Injunction (Doc. 26).

                           Respectfully submitted,

                           **SERPE | ANDREWS, PLLC**

                           By *_/s/ Blade M. Allen_*
                           Cody R. Rogers
                           Blade M. Allen
                           2540 El Paseo Road, Suite D
                           Las Cruces, NM 88001
                           Tel. (575) 288-1453
                           crogers@serpeandrews.com
                           ballen@serpeandrews.com
                           ***Attorneys for Defendant***

**App. 188**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of May, 2025, I filed the foregoing through this Court's CM/ECF e-filing system and caused a true and correct copy of the same to be served upon all parties of record as reflected more fully in the electronic Notification of Service.

Respectfully submitted,

*/s/ Blade M. Allen*
Blade M. Allen

**App. 189**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SHANON S. RILEY,

              **Plaintiff,**

v.                                     **Case 1:25-cv-00044-KWR-KK**

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

              **Defendant.**

<u>**DECLARATION OF HEATHER JORDAN**</u>

    I, Heather Jordan, declare under penalty of perjury that the foregoing is true and correct:

    1.  My name is Heather Jordan. I am the current Director of the New Mexico Workers' Compensation Administration ("WCA"). One of my previous positions at the WCA was the Clerk of the Court – a position I held from August 2015 through November 2022.

    2.  I am over eighteen years of age.

    3.  I am competent to testify to the statements set forth in this affidavit and make same on my personal knowledge.

    4.  The WCA employs multiple judges who work to resolve claims of injured workers filed pursuant to the New Mexico Workers' Compensation Act.

    5.  The WCA Director appoints workers' compensation judges. After the appointment, the judges report to the WCA Director.

    6.  When a worker's compensation complaint is filed with the WCA Clerk of the Court, the case is assigned to one of the workers' compensation judges. A party has the peremptory right to disqualify a judge no later than 10 days from the date of filing of notice of the assigned judge.

    7.  When Plaintiff Shanon Riley's employment with the WCA was terminated, all of her

**App. 190**

approximate eighty (80) cases were reassigned to other workers' compensation judges.

8.  If Plaintiff Shannon Riley were to be returned to the status quo that existed before her termination, the WCA would need to reassign to Plaintiff all of her previous cases while the preliminary injunction appeal is pending.

9.  If Plaintiff Shanon Riley is reinstated and the preliminary injunction appeal is successful, the previously re-reassigned cases would require further reassignment to other workers' compensation judges.

10. Multiple reassignments of Plaintiff Shanon Riley's prior cases, to the extent they remain open, is administratively burdensome on the WCA Clerk of the Court in terms of effectuating the electronic reassignment of the case and contemporaneous notice to the parties of the reassignment.

11.  To the extent a party has already exercised their peremptory right of recusal, the party may be foreclosed from attempting a recusal of the reassigned case to Plaintiff Shanon Riley.  The reassignment could also potentially trigger a party to seek recusal for cause of the reassigned case considering the allegations raised within the litigation at issue.

12.  By WCA rule (NMAC 11.4.4.13(A)(4), disputes relating to reassignments or disqualification of a judge are raised by application to the WCA Director.

13.  If Plaintiff Shanon Riley cases are reassigned to her during the pendency of this litigation, and then re-reassigned to a different judge upon its conclusion favorable to the Defendants, prejudice to the parties is likely to occur as they have to appear before a new judge unfamiliar with the case who may revisit a previous interim order.

14. Aside from the prejudice and burdens outlined above, if Plaintiff Shanon Riley is reinstated while the preliminary injunction appeal is pending, she will be required to report to the

**App. 191**

WCA Director who is the Defendant in this case. The required collaboration between the WCA Director and a workers' compensation judge is a routine matter during normal operations at the WCA. It will be near impossible for both Plaintiff Shanon Riley and the undersigned to work collaboratively and without detriment to the WCA, its stakeholders and litigating parties while the injunction appeal and this litigation is pending.

I, Heather Jordan, declare under penalty of perjury that the information provided herein is true and correct. Executed on May 23, 2025.

*Heather Jordan*
Heather Jordan, WCA Director

**App. 192**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SHANON S. RILEY,**

        **Plaintiff,**

**v.**                                  **No. 1:25-cv-00044-KWR-KK**

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,**

        **Defendant.**

## RESPONSE IN OPPOSITION TO DEFENDANT'S
## EMERGENCY MOTION FOR STAY PENDING APPEAL OR CLARIFICATION

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., hereby respectfully submits this Response in opposition to Defendant's Emergency Motion for Stay Pending Appeal or Clarification (Doc. 29), filed May 16, 2025 ("Motion for Stay"). Defendant urges this Court to reverse course on its prior ruling and stay the preliminary injunction. For the reasons articulated below, this Court should deny Defendant's motion and preserve the preliminary injunction during the appeal.

In the event the Court denies Defendant's Motion for Stay, Plaintiff believes Defendant will be in violation of the Court's standing preliminary injunction. On May 9, 2025, the Court issued its Amended Memorandum Opinion and Order Granting Plaintiff's Motion for Preliminary Injunction (Doc. 26) ("Preliminary Injunction Order") and directing Defendant "to reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits." Not until May 30, 2025, did Defendant provide Plaintiff with the necessary paperwork for reinstatement. As of June 2, 2025, Plaintiff has not been reinstated, and Plaintiff has not received back pay for the duration of her wrongful unemployment. Plaintiff's counsel has

conferred with Defendant's counsel in good faith on this issue, but it is Plaintiff's understanding that Defendant refuses to assign cases to Plaintiff and refuses to provide back pay until the appeal of the preliminary injunction is resolved. In other words, Plaintiff will be reinstated (at some point) and paid going forward, but she will have no work to do. While Plaintiff understands there may be logistical issues with assigning and reassigning cases, those issues do not override the Court's order to restore the status quo. Defendant must allow Plaintiff to adjudicate cases as she did prior to her termination.

<u>**FACTUAL BACKGROUND**</u>

On August 20, 2011, Plaintiff was appointed to an initial one-year term as a Workers' Compensation Judge (WCJ) for the New Mexico Workers' Compensation Administration (WCA). Motion for Preliminary Injunction (Doc. 2), filed Jan. 14, 2025, at 1. After her first year, and following review by the Director of the WCA, Plaintiff was appointed to subsequent five-year terms as established by NMSA 1978, Section 52-5-2(B). *Id.* Plaintiff was reappointed to a five-year term in August of 2012, August of 2017, and again in August of 2022. *Id.*; (Doc. 8-1), filed Feb. 6, 2025, at 3.

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. (Doc. 2), at 2. Later that day, she was driven home by a colleague to obtain her vehicle. *Id.* Plaintiff drove to a polling location and found that there was a line. *Id.* Because Plaintiff was feeling ill, she decided to forgo voting and returned home. *Id.* Due to a variety of circumstances, Plaintiff simply forgot to edit her timesheet. *Id.* At the time, Plaintiff had accrued over 200 hours of annual leave and over 240 hours of sick leave

that she could have used to substitute the two hours of administrative voting leave. Joint Status Rep. & Provisional Discovery Plan (Doc. 19), filed Apr. 14, 2025, at 3, ¶ 4.

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. (Doc. 2), at 2. The very next day, November 13, 2024, the Defendant and another WCA employee walked into Plaintiff's office and asked whether she voted on Election Day. *Id.* Plaintiff responded that she had left work and attempted to vote but ultimately did not do so. *Id.* Defendant then handed Plaintiff a letter—signed by the Defendant— immediately terminating Plaintiff's employment. *Id.*; (Doc. 19), at 3, ¶ 5; Termination Letter, attached hereto as Exhibit 1. The letter alleged that Plaintiff violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. Ex. 1. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

Plaintiff asked Defendant if there was anyone she could speak to regarding her termination. (Doc. 2), at 2–3. Defendant explained that Plaintiff could try to contact someone, but the decision regarding Plaintiff's termination had already been made. *Id.* at 3. On November 13 and 14, 2024, Plaintiff called the Office of the Governor of the State of New Mexico to request an opportunity to speak with someone and explain the events surrounding her timesheet error. *Id.* On both occasions, Plaintiff's request was denied. *Id.*

## PROCEDURAL HISTORY

On January 14, 2025, Plaintiff filed this lawsuit alleging procedural and substantive due process violations under 42 U.S.C. § 1983. *See generally* Complaint (Doc. 1). Plaintiff also filed a Motion for Preliminary Injunction seeking reinstatement to her position as a WCJ pending resolution of the case on the merits. (Doc. 2), at 1. On February 6, 2025, the WCA filed a complaint

**App. 195**

with the State Personnel Board (the "Board") alleging that Plaintiff's trivial timesheet error amounted to a violation of the Code of Judicial Conduct. *See* (Doc. 8-1), at 1–2. Shortly after the WCA filed the complaint, Defendant sent Plaintiff a letter of reinstatement. (Doc. 8-2), filed Feb. 6, 2025. According to the letter, Plaintiff would be reinstated and immediately placed on paid administrative leave while the Complaint to the Board was pending. *Id.* On February 14, 2025, Plaintiff rejected the letter of reinstatement because it required Plaintiff to give up her property interest in continued employment and violated her First Amendment rights to freedom of speech and association. *See* (Doc. 10-1) & (Doc. 10-2), filed Feb. 18, 2025. The letter also failed to preserve the status quo by fully reinstating Plaintiff. (Doc. 10-2).

After rejecting the WCA's letter of reinstatement, Plaintiff filed a motion to dismiss the pending complaint with the Board on February 17, 2025. (Doc. 14-1), filed Mar. 4, 2025, at 1. On March 4, 2025, the Board found Plaintiff's motion well taken and dismissed the complaint. *Id.* at 2.

On February 28, 2025, Plaintiff received a new letter of reinstatement from Defendant. (Doc. 15), filed Mar. 5, 2025, at 8. Unlike Defendant's previous letter, the new letter no longer contained provisions requiring Plaintiff to become "an at-will exempt employee[,]" and the new letter allowed Plaintiff to speak with NMWCA staff on matters unrelated to her employment. *Id.* Plaintiff considered these changes and rejected the letter of reinstatement. (Doc. 18-1), filed Apr. 8, 2025. On March 7, 2025, Plaintiff's counsel delivered the signed rejection to defense counsel via email, explaining that Defendant's terms of reinstatement continued to violate Plaintiff's freedoms of speech and association and failed to preserve the status quo by fully reinstating Plaintiff to her position as a WCJ. (Doc. 18-2), filed Apr. 8, 2025. Plaintiff's counsel expressed

that Plaintiff would continue to pursue preliminary injunctive relief to preserve the status quo and that Plaintiff was entitled to back pay for the time Plaintiff was wrongfully unemployed. *Id.*

On May 9, 2025, this Court issued its Preliminary Injunction Order (Doc. 26). The Court found that Plaintiff was substantially likely to succeed on her procedural due process claim, but that Plaintiff had not demonstrated a likelihood of success on her substantive due process claim. *Id.* at 6–12. Based on the procedural due process violation, the Court also found that Plaintiff had demonstrated irreparable harm, that this harm would outweigh any harm to Defendant, and that the injunction was not adverse to the public interest. *Id.* at 12–14.

On May 19, 2025, Defendant filed her Motion for Stay, arguing that the Court should stay the injunction pending Defendant's appeal to the Tenth Circuit. That same day, Defendant filed a Notice of Appeal (Doc. 31).

## **LEGAL ARGUMENT**

### **A.  This Court should exclude from consideration the Declaration of Heather Jordan.**

As an initial matter, this Court should exclude from consideration the Declaration of Heather Jordan (Doc. 34), filed May 27, 2025, because Defendant failed to raise any of the Declaration's evidence or argument in its Response in Opposition to Plaintiff's Motion for Preliminary Injunction, (Doc. 8), filed Feb. 6, 2025, or at any other point before the Court issued its Preliminary Injunction Order. "As with a motion for reconsideration, a motion to stay should not be used to relitigate matters, submit new evidence, or 'raise arguments which could, and should, have been made before the judgment issued.'" *ODonnell v. Harris Cty.*, 260 F. Supp. 3d 810, 815 (S.D. Tex. 2017) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003)). "A motion for stay pending appeal is not a second bite at the preliminary injunction apple."

**App. 197**

*Autobar Sys. of N.J. v. Berg Liquor Sys., LLC*, No. 23-3790, 2024 WL 919183, at *3 (D.N.J. Mar. 4, 2024).

Here, Defendant's Declaration states that "[w]hen Plaintiff Shanon Riley's employment with the WCA was terminated, all of her approximate eighty (80) cases were reassigned to other workers' compensation judges." (Doc. 34), at 1–2. Defendant then proceeds to explain established procedural mechanisms within the WCA to illustrate the alleged "prejudice and burdens" that would accompany Plaintiff's reinstatement. *Id.* at 2–3. Defendant also argues that she will be unable to collaborate with Plaintiff in the event Plaintiff is reinstated. *Id.*

The evidence and arguments in the Declaration "could, and should, have been made" before this Court issued its preliminary injunction. *See ODonnell*, 260 F. Supp. 3d at 815. The WCA and Defendant were aware that Plaintiff's cases were reassigned, they were aware of the possibility that the requested relief in the injunction could result in "[m]ultiple reassignments of Plaintiff Shanon Riley's prior cases," and they were aware that Plaintiff's reinstatement could cause conflict between Defendant and Plaintiff. This information was available to Defendant, or at the very least, "potentially available through the exercise of reasonable diligence[.]" *See Int'l Brotherhood of Teamsters, Loc. 211 v. PG Publ'g Co.*, No. 19-1472, 2019 WL 9101872, at *2–3 (W.D. Pa. Dec. 27, 2019) (reviewing motion to stay pending appeal and considering waived any material potentially available through the exercise of reasonable diligence but not raised at the preliminary injunction stage). Yet Defendant excluded these statements from its Response to Plaintiff's Motion for Preliminary Injunction and failed to raise them at any point thereafter.

The Court's Preliminary Injunction Order has already recognized Defendant's lack of supporting evidence in prior briefing. In analyzing the final two preliminary injunction factors, this Court reasoned that "Defendant makes no effort to demonstrate harm" and, regarding the

**App. 198**

public interest, "Defendant does not contest this factor at all[.]" (Doc. 26), at 13–14. Defendant's failure to raise such arguments and evidence at first blush dooms her ability to raise them now. *Graveline v. Johnson*, No. 18-12354, 2018 WL 4184577, at *3 (E.D. Mich. Aug. 30, 2018) ("In weighing the four factors in consideration of a motion to stay, the Court is not permitted to examine new evidence."); *Maxwell Techs., Inc. v. Nesscap, Inc.*, No. 06cv2311, 2007 WL 9723323, at *3 (S.D. Cal. June 1, 2007) ("[B]ecause the evidence presented in Defendants' declarations was available at the time the preliminary injunction was pending, this Court will not consider the evidence presented" when deciding the motion for a stay.).

**B.  The Court should decline to issue a stay here.**

In considering whether to stay its previous preliminary injunction pending Defendant's appeal to the Tenth Circuit, this Court must consider

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 425–26 (2009). "The party requesting a stay pending appeal must satisfy all four factors to obtain a stay pending appeal." *Moya v. U.S. Eagle Fed. Credit Union*, No. 17cv415, 2017 WL 11503352, at *1 (D.N.M. Dec. 8, 2017). Factors one and two are "the most critical" in this analysis. *Nken*, 556 U.S. at 434.

**1.  Defendant cannot show she is likely to succeed on the merits of her appeal.**

First, Defendant must make a "strong showing" of success on the merits; a mere possibility of relief is insufficient. *Id.* Notably, the Tenth Circuit reviews the grant of a preliminary injunction using the abuse-of-discretion standard. *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1252 (10th Cir. 2006). Under this standard, the reviewing court gives "considerable deference" to the district court in recognition that "in many cases there will be a range of possible outcomes the facts and

**App. 199**

law at issue can fairly support." *Vincent v. Nelson*, 51 F.4th 1200, 1213 (10th Cir. 2022) (citation omitted). The reviewing court "will defer to the district court's judgment so long as it falls within the realm of the[] rationally available choices." *Id.* (citation omitted). Given the low bar here, Defendant has virtually no chance of success on appeal.

In obtaining a preliminary injunction, Plaintiff had to demonstrate that "(1) [she was] substantially likely to succeed on the merits; (2) [she would] suffer irreparable injury if the injunction is denied; (3) [her] threatened injury outweigh[ed] the injury the opposing party [would] suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). This Court did not abuse its discretion in finding that Plaintiff met all four requirements. Instead, the Court applied established law to find a clear deprivation of Plaintiff's constitutional right to procedural due process.

### a. First Preliminary Injunction Factor

Prior to the expiration of her term, the WCA could only fire Plaintiff for violations of the New Mexico Code of Judicial Conduct. *See* § 52-5-2(C). As this Court recognized, that statutory guarantee conferred upon Plaintiff "a constitutionally protected property interest in her ongoing employment[.]" (Doc. 26), at 7. The Court's conclusion finds overwhelming support in both Supreme Court and Tenth Circuit precedent. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985) (finding protected property interest where Ohio law permitted dismissal of state employees only when they committed "misfeasance, malfeasance, or nonfeasance in office"); *Perry v. Sindermann*, 408 U.S. 593, 600 (1972) (finding professor had a protected property interest in continued employment where faculty handbook provided de facto tenure so long as professor's "teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-

**App. 200**

workers"); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest.").

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). As this Court recognized, despite holding a protected property interest in her continued employment, "Plaintiff received no notice or opportunity to be heard[.]" (Doc. 26), at 9. Therefore, the district court rationally concluded that "Plaintiff has demonstrated [a] substantial likelihood of success on her procedural due process claim." *Id.* at 10.

On this point, Defendant's Motion for Stay merely parrots the arguments it made before this Court in the first instance. Once again, Defendant argues that she "offered Plaintiff all the due process to which she was entitled, and her refusal to accept it negates her standing and entitlement to a preliminary injunction." (Doc. 29), at 8. As this Court recognized, however, "[w]here there were no pretermination proceedings whatsoever," post-termination proceedings cannot remedy the constitutional violation. (Doc. 26), at 9–10.

In a footnote, Defendant also argues that her previous stipulation "that 'she did not provide Plaintiff with a hearing' was meant in the sense that she did not provide Plaintiff with the hearing outlined in the New Mexico Administrative Code—not an informal 'hearing' in the general due process sense." (Doc. 29), at 6 n.4. Regardless, whatever hearing procedures Defendant claims occurred were far from adequate. Throughout this litigation, Plaintiff's narrative has remained consistent: Defendant walked into Plaintiff's office and asked Plaintiff if she voted, Plaintiff responded that she attempted to vote but ultimately did not do so, Defendant immediately delivered

**App. 201**

a letter terminating Plaintiff's employment, and Plaintiff's attempts to explain the situation were denied. *See* (Doc. 1), at 4–5; (Doc. 2), 2–3. Defendant had multiple opportunities to contest or supplement these facts prior to the Court's Order granting Plaintiff's preliminary injunction. Defendant did not do so. *See* (Doc. 26), at 3. Based on the set of facts in the record at the time of its decision, this Court correctly found that Plaintiff did not receive adequate process.

Defendant cites *Roberts v. Winder*, 16 F.4th 1367, 1380 (10th Cir. 2021), and *West v. Grand Cty.*, 967 F.2d 362, 368 (10th Cir. 1992), for the proposition that "her meeting with Plaintiff was sufficient to satisfy pre-deprivation due process." (Doc. 29), at 6 n.4. Both cases are inapposite. In *Roberts*, unlike Ms. Riley, the plaintiff did not have a protected property interest in his position. *Id.* at 1379. Furthermore, in *Roberts*, the plaintiff had the opportunity to send a detailed letter to the defendant "objecting to his removal, reassignment, and pay reduction." *Id.* at 1372. The defendant treated the letter as a grievance and rejected it in a detailed response letter. *Id.* Ms. Riley did not receive this level of process. Similarly, in *West*, the plaintiff "had several pretermination opportunities to discuss her potential termination" with the defendants. 967 F.2d at 368. The court also noted that "[p]laintiff was not fired out of the blue. Plaintiff was not fired for reasons that he did not know. Plaintiff was not fired without being given the opportunity to present his side of the story." *Id.* (internal quotation marks and citation omitted). And the "brief face-to-face meeting" that the plaintiff received was approximately two hours in length. *Id.* Plaintiff did not receive anything remotely close to this level of process.

Defendant also argues that "Plaintiff claimed that she had a due process right to not be placed on paid administrative leave while the State Personnel Board is investigating her for violations of the code of judicial conduct." (Doc. 29), at 9. Plaintiff has never made this claim. Rather, Plaintiff has repeatedly argued that her placement on administrative leave does not

**App. 202**

preserve the status quo. After all, "the very purpose of a preliminary injunction" is to preserve the status quo, i.e. "the last uncontested period preceding the injunction." (Doc. 26), at 5 & n.1 (quoting *Porter v. Allbaugh*, No. 18-CV-0472, 2019 WL 2167415, at *6 (N.D. Okla. May 17, 2019); *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024)). Here, the last uncontested period—the status quo—was when Plaintiff presided over an active caseload as a duly enacted WCJ. The preliminary injunction standard, not the due process clause, required that Plaintiff be returned to that position.[1]

Finally, Defendant cites several cases for the proposition that Plaintiff's rejection of the reinstatement letters "breaks any causal connection between Defendant's actions and her purported injury and she, therefore, does not have standing to seek preliminary injunctive relief against Defendant." (Doc. 29), at 10. Neither case stands for Defendant's proposition. In *Pennsylvania v. New Jersey*, the Supreme Court held that "[n]o State can be heard to complain about damage inflicted by its own hand." 426 U.S. 660, 664 (1976). That was a general statement of law where the Court found that the defendant had not "inflicted *any* injury upon the plaintiff[.]" *Id.* Here, however, Defendant clearly injured Plaintiff when she deprived her of adequate process. And in *Dusanek v. Hannon*—unlike this case—there was "no question that the [government entity] and its employees complied with the [entity]'s rules and the state statutes in their procedural treatment of [the plaintiff]." 677 F.2d 538, 542 (7th Cir. 1982). Prior to his termination, the plaintiff in *Dusanek* received multiple medical examinations before his supervisors determined he did not

---

[1] Plaintiff continues to believe that the WCA's reinstatement letters violated her First Amendment freedoms of speech and association. While that claim was undoubtedly one of the reasons for Plaintiff's rejection of the letters, it is irrelevant here. Plaintiff rejected the reinstatement letters because they altered the status quo. As the district court recognized, "Plaintiff was not on administrative leave or barred from speaking with her colleagues before Defendant fired her." (Doc. 26), at 5. Neither party contests this fact. Thus, contrary to Defendant's assertion, it was *not* "incumbent on her to provide this Court with authority to the contrary." *See* (Doc. 29), at 10.

**App. 203**

meet the medical standard for teaching. *Id.* at 540–41. Thus, the process afforded in *Dusanek* was far more comprehensive than the process Plaintiff received here.

### b. Remaining Preliminary Injunction Factors

The Court did not abuse its discretion in analyzing the remaining preliminary injunction factors. As for irreparable injury, this Court recognized the holding in *Free the Nipple-Fort Collins v. City of Fort Collins*, that demonstrating a substantial "likelihood of success on the merits simultaneously demonstrates irreparable injury." (Doc. 26), at 12 (citing *Free the Nipple*, 916 F.3d 792, 805–06 (10th Cir. 2019)). As the Court had already found that Plaintiff demonstrated a substantial likelihood of success, it merely applied binding precedent to arrive at the logical conclusion that Plaintiff had simultaneously demonstrated irreparable harm. *Id.* But the Court did not stop there. The Court also recognized (correctly) that Plaintiff would face reputational harm from her unlawful termination, which the Defendant did not dispute. *Id.* at 12–13.

Next, the Court addressed the balance of injuries and the public interest, two factors which merge when the government is the opposing party. *Id.* at 13–14 (quoting *Chiles v. Salazar*, 116 F.4th 1178, 1199 (10th Cir. 2024)). Based, in part, on the absence of evidence in the record that Defendant or the public interest would be harmed by an injunction, the Court correctly concluded that "the collapsed third and fourth factors counsel towards the preliminary injunction." *Id.* at 14.[2] But the Court also noted "several public policy interests that counsel towards relief" including "maintaining public confidence in the WCA and in the state's administrative disciplinary

---

[2] As argued above, any additional evidence presented in Defendant's Motion for Stay or in Defendant's Declaration was not presented to the Court previously and should be excluded from consideration here. *Autobar Sys.*, 2024 WL 919183, at *3 ("A motion for stay pending appeal is not a second bite at the preliminary injunction apple."). And, in light of the first stay factor (likelihood of success), the Tenth Circuit will surely exclude such evidence or additional arguments under its strict waiver rules. *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1234 (10th Cir. 2018) (quotations and alterations omitted) ("Generally, an issue is waived if it was not raised below in the district court.").

procedures," and "increasing the efficiency of the WCA[.]" *Id.* The Court did not abuse its discretion in granting the preliminary injunction reinstating Plaintiff. Accordingly, Defendant cannot show that her appeal to the Tenth Circuit will succeed.

### 2. Defendant cannot show she will be irreparably harmed absent a stay.

Next, the Defendant must show that she will be irreparably injured in the absence of a stay. *Nken*, 556 U.S. at 425–26. Defendant attempts to dramatize the harm she faces if this Court preserves its injunction. According to Defendant, the injunction "*could* delay case resolutions, invite challenges to [Plaintiff's] rulings, and increase the risk of reversible error[.]" (Doc. 29), at 11. But Defendant's parade of horribles is speculative at best. "[S]imply showing some 'possibility of irreparable injury[]' . . . fails to satisfy the second factor." *Nken*, 556 U.S. at 434–35. "Irreparable harm justifying a stay of an injunction must be 'actual and imminent' as opposed to 'speculative' harm, . . . ." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585, 2015 WL 5051769, at *2 (S.D.N.Y. Aug. 26, 2015); *see also Bench Billboard Co. v. City of Covington, Ky.*, No. 06-75, 2012 WL 12974009, at *2 (E.D. Ky. Aug. 30, 2012) (finding no likelihood of irreparable harm for stay pending appeal where harm alleged was speculative and unsubstantiated). Defendant also argues that Plaintiff, if reinstated, will be operating under "a cloud of ethical and legal scrutiny" and that her reinstatement will send "a signal that suspected misconduct does not warrant immediate action." *Id.* Common sense indicates otherwise, especially where Plaintiff had no motive to "steal time" given her ample annual and sick leave. As this Court recognized, "the decision to fire Plaintiff over two hours of mislabeled time seems overblown[.]" (Doc. 26), at 11.

Although the Court should exclude consideration of it entirely, the Declaration of Heather Jordan does not help Defendant. The Declaration merely discusses logistical challenges

**App. 205**

accompanying Plaintiff's reinstatement that were totally foreseeable to Defendant. What's more, allowing the government to claim that it is irreparably injured by logistical challenges when it *created* those challenges would incentivize the government to terminate employees without due process and evade accountability by simply declaring that reinstatement would cause irreparable injury.

### 3. The issuance of a stay will substantially injure Plaintiff.

In arguing that the issuance of a stay will not cause substantial injury to Plaintiff, Defendant once again argues that "Plaintiff has no due process right to not be placed on paid administrative [leave] . . . [n]or does she have a first amendment right to be able to talk to other WCA staff about her employment or the investigation[.]" (Doc. 29), at 12. Again, these points are irrelevant. Plaintiff's rejection of paid administrative leave and assertion of a first amendment right concerns the scope of injunctive relief, not a constitutional entitlement. The only constitutional entitlement at issue here is Plaintiff's right to procedural due process, which Plaintiff has yet to receive.

With that in mind, the injury to Plaintiff is substantial. Throughout this litigation, Plaintiff maintained that a preliminary injunction was necessary to prevent irreparable harm to Plaintiff, namely, the violation of Plaintiff's constitutional rights. "Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple*, 916 F.3d at 805–06 (finding that equal protection violation alone constituted irreparable harm); *see also Awad v. Ziriax*, 670 F.3d 1111, 1119 (10th Cir. 2012) (finding First Amendment violation alone constituted irreparable harm); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable harm is necessary.").

**App. 206**

If the Court stays its preliminary injunction, it will enable the Defendant's ongoing violation of Plaintiff's constitutional rights. This is sufficient to show substantial injury. But Plaintiff faces more than just constitutional injury—Plaintiff also faces the loss of her reputation, the loss of her livelihood, and the loss of social benefits that accrue from employment. *See Dominion Video Satellite*, 269 F.3d at 1156–57 (finding irreparable harm where denial of injunctive relief would have resulted in the plaintiff's loss of reputation, good will, and marketing potential); Wright et al., § 2948.1 ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable."). These losses have only grown more painful with each passing day that Plaintiff has been deprived of her position, and they will continue if this Court stays the preliminary injunction. Although Plaintiff remains confident that the Tenth Circuit will affirm the preliminary injunction, the duration of the appeal—including briefing and the possibility of oral argument—will likely take a significant amount of time. The Court should maintain the injunction during the pendency of the appeal.

### 4.  The public interest lies in the vindication of Plaintiff's constitutional rights.

The Tenth Circuit has repeatedly held that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Pryor*, 99 F.4th at 1243 (Carson, J.); *Free the Nipple*, 916 F.3d at 792; *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1147 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Awad*, 670 F.3d at 1132. Accordingly, in this case, it is in the public interest to deny Defendant's Motion for Stay, which will undeniably delay the continuing violation of Plaintiff's constitutional rights.

Defendant points out that "Plaintiff's entire caseload has already been reassigned to other WCA judges" and that reinstating Plaintiff "only for her to potentially be placed back on paid administrative leave and ultimately terminated" would create confusion and disruption. (Doc. 29),

**App. 207**

at 12. As argued above, these points were not raised in Defendant's prior briefing, and this Court should not consider them. And, as argued above, logistical challenges are a foreseeable consequence of any unlawful termination. More importantly, Defendant's argument is concerning. In the absence of an order from this Court or the Tenth Circuit, Defendant has no authority to place Plaintiff on administrative leave prior to resolution of this matter on the merits. *See* (Doc. 26), at 15 ("Defendant is specifically required to reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits.").

## **CONCLUSION**

For the reasons argued above, Plaintiff respectfully requests this Court deny Defendant's Motion to Stay and preserve the Preliminary Injunction (which requires full reinstatement and permits Plaintiff to resolve cases) pending resolution of this case on the merits.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

**App. 208**

I hereby certify that a true copy of the foregoing was served electronically on June 2, 2025, through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Jeffrey D. Vescovi*
Jeffrey D. Vescovi

**App. 209**



# State of New Mexico

Michelle Lujan Grisham
*Governor*

November 13, 2024

Shanon Riley
5305 Canada Vista Pl NW
Albuquerque, NM 87120

Dear Ms. Riley:

Upon your appointment, you were made aware that as a Governor Exempt employee, you were required to follow the Governor's Code of Conduct. On November 5, 2024, you entered two (2) hours of Voting leave for purposes of voting into your SHARE timesheet. According to the Secretary of State's Voting Records, you in fact did not vote.

Such conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to "avoid impropriety and the appearance of impropriety."

As an at-will exempt employee, you acknowledged that you served at the pleasure of the Office of the Governor and your employment could be terminated at any time.

This letter is to inform you that effective immediately, your employment as a Worker's Compensation Judge for the Workers Compensation Administration is terminated.

Sincerely,

Heather Jordan
Executive Director

State Capitol    •    Room 400    •    Santa Fe, New Mexico 87501    •    505-476-2200

App. 210

EXHIBIT
1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHANON S. RILEY,**

     **Plaintiff,**

**v.**            **No. 1:25-cv-00044-KWR-KK**

**HEATHER JORDAN, in her individual**
**and official capacities as the Director**
**of the New Mexico Workers'**
**Compensation Administration,**

     **Defendant.**

**PLAINTIFF'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT AS TO COUNTS I AND IV**

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., respectfully moves the Court to enter final judgment on Plaintiff's claims under 42 U.S.C. § 1983 for procedural due process violations against Defendant Jordan in her individual capacity (Count I) and to order permanent injunctive relief against Defendant Jordan in her official capacity (Count IV).

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.  Plaintiff Shanon S. Riley served as a Workers' Compensation Judge (WCJ) for the Workers' Compensation Administration (WCA). *Compare* Complaint (Doc. 1), filed Jan. 14, 2025, at 4, *with* Defendant's Emergency Motion for Stay Pending Appeal or Clarification (Doc. 29), filed May 16, 2025, at 3.

2.  In August of 2011, Plaintiff was appointed to an initial one-year term as a WCJ. (Doc. 7-1), filed Feb. 6, 2025, at 1.

3.  Plaintiff was reappointed to subsequent five-year terms in August 2012 and August 2017. *Id.*

**App. 211**

4.      Based on a "review of [her] performance," Plaintiff was appointed to her most current five-year term in August of 2022. *Id.* at 3.

5.      On November 5, 2024, Plaintiff took two hours of voting leave to vote in the November 5, 2024, election. *Compare* Motion for Preliminary Injunction (Doc. 2), filed Jan. 14, 2025, at 1–2, *with* (Doc. 29), at 3.

6.      For a variety of reasons, Plaintiff was unable to vote as intended, and she did not edit her timesheet to reflect that she did not vote. *Compare* (Doc. 2), at 2, *with* (Doc. 29), at 3.

7.      At the time, Plaintiff had accrued over 200 hours of annual leave and over 240 hours of sick leave that she could have used to substitute the two hours of administrative voting leave. *See* Joint Status Report and Provisional Discovery Plan (Doc. 19), filed Apr. 14, 2025, at 3, ¶ 4.

8.      On November 13, 2024, Defendant Heather Jordan, Director of the WCA, asked Plaintiff if she voted on Election Day. *Compare* (Doc. 2), at 2, *with* (Doc. 29), at 3.

9.      Plaintiff responded that she did not and that she simply forgot to edit her timesheet. *Compare* (Doc. 2), at 2, *with* (Doc. 29), at 3.

10.     After Plaintiff responded that she did not vote, Defendant handed Plaintiff a letter immediately terminating her employment. *Compare* (Doc. 2), at 2, *with* (Doc. 29), at 3; Termination Letter (Doc. 35-1), filed June 2, 2025.

11.     The letter stated that Plaintiff "entered two (2) hours of Voting leave for purposes of voting" into her timesheet but "did not vote." (Doc. 35-1). According to the letter, "Such conduct is a violation of the code of judicial conduct, which requires [Plaintiff] to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

12.     Prior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did

not comply with any other required procedure under the New Mexico Administrative Code. *See* (Doc. 19), at 3, ¶ 6.

## LEGAL ARGUMENT

### I.    Jurisdiction

As a preliminary matter, this Court retains jurisdiction to grant summary judgment, despite Defendant's pending interlocutory appeal. In *Free Speech v. Federal Election Commission*, the Tenth Circuit affirmed the district court's grant of a dispositive motion to dismiss during the pendency of the plaintiff's preliminary injunction appeal. 720 F.3d 788, 792 (10th Cir. 2013). The court reasoned that "[o]rdinarily an interlocutory injunction appeal under [28 U.S.C. §] 1292(a)(1) does not defeat the power of the trial court to proceed further with the case." *Id.* at 791 (quoting 16 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3921.2 (hereinafter "Wright & Miller")). So, "in an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits." *Id.* (quoting *United States v. Price*, 688 F.2d 204, 215 (3d Cir. 1982)); *see also Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1089 (D.N.M. 2017) (Browning, J.) (reiterating Tenth Circuit's holding and analysis in *Free Speech*).

While the *Free Speech* court considered a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), 720 F.3d at 791, several other circuits have also affirmed the district court's ability to grant summary judgment pursuant to Fed. R. Civ. P. 56 during the pendency of a preliminary injunction appeal. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174–75 (6th Cir. 1995); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 883 (5th Cir. 1993); *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1349–50 (2d Cir. 1989); *State of Ala. v. U.S. E.P.A.*,

871 F.2d 1548, 1553–54 (11th Cir. 1989). Accordingly, there is overwhelming authority supporting the Court's exercise of jurisdiction over this motion.

## II.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), to succeed on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material only where it is capable of influencing the outcome of the lawsuit. *Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025). And a dispute is genuine only where "a rational jury could find in favor of the nonmovant on the evidence presented." *Id.*

### A.  Count I: Constitutional Violations of Plaintiff's Procedural Due Process Against Defendant Jordan in her Individual Capacity

"In order to prevail on a § 1983 claim, a plaintiff must establish that the defendants acted under color of state law and that the defendants' actions deprived the plaintiff of some federal right." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). A defendant acts "under color of state law" when she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "State employment is generally sufficient to render the defendant a state actor." *Id.* (citation omitted). It is undisputed that Defendant was the director of the WCA, *UMF No. 8*, and Defendant used her position as Director to terminate Plaintiff's employment, *UMF Nos. 10–11*. Clearly then, Defendant acted under color of state law, and the only remaining issue is whether Defendant deprived Plaintiff "of some federal right." *Montgomery*, 365 F.3d at 935.

**App. 214**

1.      **Plaintiff held a constitutionally protected property interest in her continued employment with the WCA.**

The Fourteenth Amendment prohibits state actors from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. Thus, to prevail on a procedural due process claim, a plaintiff must first establish that the defendant deprived the plaintiff of a protected property interest. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). The property interest must arise from the plaintiff's "legitimate claim of entitlement" to the benefit, rather than an abstract desire or expectation. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Generally, state law creates the protected property interest, and "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (internal quotation marks and citation omitted).

The Supreme Court and Tenth Circuit have consistently held that a state employee obtains a protected property interest in continued employment where state law limits the grounds for termination to just cause. For example, in *Cleveland Bd. of Educ. v. Loudermill*, the Supreme Court concluded that state employees had a property interest in continued employment where Ohio law entitled state employees to retain their positions "during good behavior and efficient service" and permitted dismissal of these employees only when they committed "misfeasance, malfeasance, or nonfeasance in office[.]" 470 U.S. 532, 538–39 (1985); *see also Perry v. Sindermann*, 408 U.S. 593, 600 (1972) (finding professor had a protected property interest in continued employment where faculty handbook provided de facto tenure so long as professor's "teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers"). Similarly, the Tenth Circuit held that state employees had a protected property interest in continued employment where the Colorado Constitution limited the state's ability to dismiss employees to

**App. 215**

instances of "failure to comply with standards of efficient service . . . willful misconduct . . . or final conviction of a felony[.]" *Tiegen*, 511 F.3d at 1079; *see also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest.").

Here too, state law clearly limited Plaintiff's dismissal to violations of the Code of Judicial Conduct. Under NMSA 1978, Section 52-5-2(C), "[v]iolation of those canons shall be *exclusive* grounds for dismissal prior to the expiration of the term." And even if an alleged violation occurred, Section 52-5-2(C) requires that "[a]ny complaints against a workers' compensation judge shall be filed with the state personnel board, which shall report its findings to the director." Furthermore, the New Mexico Administrative Code entitled Plaintiff to elaborate hearing procedures, including the "right and reasonable opportunity to defend against the charges by introduction of evidence, to be represented by counsel and to examine and cross-examine witnesses." 1.7.12.25(G)(4) NMAC. These procedures narrowed the possible bases for termination and secured Plaintiff's right in her continued employment. The "constitutional purpose" of procedure "is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *see also Teigen*, 511 F.3d at 1072 ("[D]etailed and extensive procedural requirements may be relevant as to whether a separate substantive property interest exists[.]"). Thus, Plaintiff had a protected property interest in continued employment with the WCA. By terminating Plaintiff, Defendant deprived her of her constitutionally protected legitimate claim of entitlement to continue working as a WCJ.

**App. 216**

2.    **Defendant terminated Plaintiff's property interest without affording Plaintiff notice and an opportunity to be heard.**

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (citation omitted). While "procedural due process often requires confrontation and cross-examination of those whose word deprive a person of his [or her] livelihood[,]" *Willner v. Comm. on Character*, 373 U.S. 96, 103 (1963), "[t]he essential requirements of due process . . . are notice and an opportunity to respond[,]" *Loudermill*, 470 U.S. at 546. Thus, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*

Although Defendant's termination letter presented Plaintiff with written notice of the charges against her, Plaintiff did not receive an explanation of the WCA's evidence or an opportunity to present her side of the story. *UMF Nos. 8–12*. Defendant's termination letter alleged that Plaintiff violated the Code of Judicial Conduct, but the letter completely failed to explain in any detail why Plaintiff's conduct failed to "promote integrity" or avoid the appearance of impropriety. *UMF No. 11*; (Doc. 35-1). Had Plaintiff been provided with an opportunity to respond to the allegations, she could have explained in detail why she did not vote and that her failure to correct her timesheet was a simple mistake—not a violation of the Code of Judicial Conduct. Despite the elaborate administrative procedures laid out by the New Mexico Administrative Code for the termination of WCJs, not a single procedure was followed by the WCA to terminate Plaintiff. *UMF No. 12*. In addition to terminating Plaintiff's protected property interest in her continued employment with the WCA, there is no question—and no dispute—that Defendant clearly failed to provide Plaintiff with constitutionally adequate procedure. Accordingly, based on

**App. 217**

the undisputed facts and as a matter of law, Defendant violated Plaintiff's right to procedural due process under the Fourteenth Amendment to the United States Constitution.

### B. Count IV: Permanent Injunctive Relief Against Defendant Jordan in her Official Capacity

This Court previously granted Plaintiff's Motion for Preliminary Injunction because Plaintiff showed "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." Amended Memorandum Opinion and Order Granting Plaintiff's Motion for Preliminary Injunction (Doc. 26), filed May 9, 2025, at 3–4, 6–10, 12–14 (quoting *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016)).[1] Now, Plaintiff respectfully requests that the Court convert its standing preliminary injunction into a permanent injunction.

In its Order granting Plaintiff's Preliminary Injunction, this Court noted a recent Tenth Circuit decision holding that "an injunction is mandatory when it requires defendants to do something they were not doing during the most recent peaceable status quo—that is, the last uncontested period preceding the injunction." (Doc. 26), at 5 n.1 (quoting *Pryor v. School Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024) (Carson, J.). The Court reasoned that, based on this

---

[1] Plaintiff believes Defendant is in violation of the Court's standing preliminary injunction. On May 9, 2025, the Court issued its injunction and directed Defendant "to reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits." (Doc. 26), at 15. Not until May 30, 2025, did Defendant provide Plaintiff with the necessary paperwork for reinstatement. As of June 2, 2025, Plaintiff has not been reinstated, and Plaintiff has not received back pay for the duration of her wrongful unemployment. Plaintiff's counsel has conferred with Defendant's counsel in good faith on this issue, but it is Plaintiff's understanding that Defendant refuses to assign cases to Plaintiff and refuses to provide back pay until the appeal of the preliminary injunction is resolved. In other words, Plaintiff will be reinstated (at some point) and paid going forward, but she will have no work to do. While Plaintiff understands there may be logistical issues with assigning and reassigning cases, those issues do not override the Court's order to restore the status quo. Defendant must allow Plaintiff to adjudicate cases as she did prior to her termination.

**App. 218**

decision, "one could argue that requiring Defendant to restore Plaintiff to her position does not 'disturb the last peaceable status quo.'" *Id.* Admittedly, Plaintiff—in the interest of transparency—initially argued that she was requesting "a disfavored, mandatory preliminary injunction" because the requested injunction "'require[d] the nonmoving party to take affirmative action'—that is, the preliminary reinstatement of Plaintiff pending resolution of the case on the merits." (Doc. 2), at 4 (quoting *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)). Upon consideration of this Court's order and the reasoning in *Pryor*, Plaintiff agrees with this Court that the injunction sought is neither disfavored nor mandatory.

In *Pryor*, a high school football coach was stripped of his coaching position and facility access in retaliation for criticizing the local school district. 99 F.4th at 1248. The coach sued the school district and requested injunctive relief, which the district court granted. *Id.* at 1249. In affirming the district court, the Tenth Circuit rejected the school district's argument that the requested injunction was mandatory because it mandated action by the school district. *Id.* at 1254–55. Instead, the court reasoned that the injunction was not mandatory because it preserved the last peaceable status quo by preventing the school district from taking additional unconstitutional actions. *Id.* at 1255. "[T]he last peaceable status quo existed *before* the Restrictions[.]" *Id.*

Like the plaintiff's requested injunction in *Pryor*, Plaintiff requests an injunction prohibiting unconstitutional actions by Defendant, namely, termination without adequate process. In this case, the last peaceable status quo existed *before* Plaintiff was terminated without due process of law. Therefore, like the coach in *Pryor*, Plaintiff does not request a mandatory injunction but merely attempts to preserve the status quo. This Court should decline to apply the heightened standard of proof for mandatory injunctions.[2] While Plaintiff acknowledges she initially suggested

---

[2] Even if the Court continues to apply the heightened standard, Plaintiff has presented sufficient evidence to succeed under any standard.

**App. 219**

application of the erroneous standard, ultimately "a district court must apply the correct law." *United States v. Courtney*, 816 F.3d 681, 686 (10th Cir. 2016); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *United States v. Alvarez*, 646 F. App'x 619, 620 (10th Cir. 2016) ("The district court has an obligation to apply the correct law . . . .").

### 1.    Plaintiff has shown actual success on the merits.

The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction, with the exception that the plaintiff must show actual success on the merits rather than a substantial likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence*, 22 F.4th 892, 908 (10th Cir. 2022) ("The only measurable difference between the two is that a permanent injunction requires showing actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits." (cleaned up)). As discussed in the previous section, the undisputed facts show that Plaintiff has proved the existence of a constitutional violation as a matter of law. If this Court agrees, that will be sufficient to show actual success on the merits. The only remaining issues are whether Plaintiff can demonstrate "(2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." (Doc. 26), at 3–4 (quoting *Dine Citizens*, 839 F.3d at 1281).

     **2.      Plaintiff will face irreparable harm unless the permanent injunction is issued.**

Under the second permanent injunction factor, Plaintiff must prove "irreparable harm unless the injunction is issued[.]" *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (quoting *Fisher v. Okla Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003)) "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). "Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805–06 (10th Cir. 2019) (finding that equal protection violation alone constituted irreparable harm); *see also Awad v. Ziriax*, 670 F.3d 1111, 1119 (10th Cir. 2012) (finding First Amendment violation alone constituted irreparable harm); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable harm is necessary.").

As argued above, Plaintiff has shown actual success on her procedural due process claim. Therefore, the infringement of Plaintiff's constitutional right alone is sufficient to demonstrate irreparable injury. *See Free the Nipple*, 916 F.3d at 805–06. But Plaintiff can also show irreparable harm based on the damage to her reputation and credibility, the loss of her livelihood, and the loss of social benefits that accrue from employment. *See Dominion*, 269 F.3d at 1149 (holding that "no remedy could repair the damage to . . . reputation and credibility."). If an injunction is not granted, Plaintiff will have to explain her termination to future employers, colleagues, and other members of the bar. This particular harm would be exacerbated by the small size of the New Mexico and

**App. 221**

Albuquerque legal communities, where reputation has a disproportionate impact on success and employment. *See* (Doc. 26), at 13 ("Defendant does not dispute this in any of her pleadings."). But Plaintiff will also lose access to the career she has had for nearly 14 years, along with the tangible and intangible benefits that accompany her career. This includes work-based friendships, the satisfaction of adjudicating cases, and Plaintiff's eligibility for retirement.

### 3. The irreparable harm Plaintiff faces from the alleged injury outweighs the harm caused to Defendant by the permanent injunction.

Under the third factor, Plaintiff must prove that "the threatened injury outweighs the harm that the injunction may cause the opposing party[.]" *Prairie Band*, 476 F.3d at 822 (quoting *Fisher*, 335 F.3d at 1180). "When a constitutional right hangs in the balance," as it does here, "'even a temporary loss [of that right]' usually trumps any harm to the defendant." *Free the Nipple*, 916 F.3d at 806 (quoting Wright & Miller, § 2948.2 & n.11); *see also Pryor*, 99 F.4th at 1254 ("A governmental interest in upholding a mandate that is likely unconstitutional does not outweigh a movant's interest in protecting his constitutional rights."). In *Free the Nipple*, for instance, the plaintiffs showed that the harm accompanying the deprivation of their equal protection right "to bare their breasts in public" outweighed "the City's interest in maintaining a law that was supported by the majority of its citizens and unanimously adopted by its City Council." *Id.* Here too, Plaintiff's ongoing loss of her constitutional right to procedural due process clearly outweighs any interest articulated by the WCA.

Even assuming, however, that the loss of Plaintiff's constitutional rights alone is insufficient, there is little, if any, harm to the Defendant if the court reinstates Plaintiff. While Plaintiff faces the loss of her livelihood, reputation, wages, and benefits if an injunction is not issued, Defendant would merely be required to reinstate an otherwise excellent WCJ. Plaintiff has worked for the WCA since 2011—she has nearly fourteen years of experience. *UMF No. 2*. Her

**App. 222**

performance was evaluated at the end of every term, in 2012, 2017, and 2022, and each time, the WCA chose to retain her. *UMF Nos. 3–4*. Even Plaintiff's termination letter was silent on her performance as a WCJ. *See* (Doc. 35-1).

On this issue, the Declaration of Heather Jordan (Doc. 34), filed May 27, 2025, does not help Defendant. The Declaration merely discusses logistical challenges accompanying Plaintiff's reinstatement that were totally foreseeable to Defendant. And Defendant's parade of horribles is speculative at best. *See* (Doc. 34), at 2, ¶ 11 ("To the extent a party has already exercised their peremptory right of recusal, the party *may* be foreclosed from attempting a recusal . . . . The reassignment *could* also *potentially* trigger a party to seek recusal . . . ."), *id.* ¶ 13 ("[P]rejudice to the parties is *likely* to occur . . . ."), *id.* at 3, ¶ 14 ("It will be *near* impossible for both Plaintiff . . . and the undersigned to work collaboratively . . . ."). What's more, allowing the government to claim that it is injured by logistical challenges when it *created* those challenges would incentivize the government to terminate employees without due process and evade accountability by simply declaring that reinstatement would be injurious.

### 4.    A permanent injunction will not adversely affect the public interest.

Under the final permanent injunction factor, Plaintiff must prove that "the injunction, if issued, will not adversely affect the public interest." *Prairie Band*, 476 F.3d at 822 (quoting *Fisher*, 335 F.3d at 1180). The Tenth Circuit has repeatedly held that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Pryor*, 99 F.4th at 1243 (Carson, J.); *Free the Nipple*, 916 F.3d at 792; *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1147 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Awad*, 670 F.3d at 1132. Accordingly, a permanent injunction will not adversely affect the public interest here.

**App. 223**

**<u>CONCLUSION</u>**

For the reasons argued above, Plaintiff respectfully moves this Court to enter judgment on Count I in favor of Plaintiff. Upon the Court's entry of judgment as to Count I, Plaintiff respectfully requests that the Court enter a permanent injunction[3] (1) fully reinstating Plaintiff to her position, (2) ordering Defendant's continued compliance with constitutional, statutory, and administrative requirements for the duration of Plaintiff's five-year term of employment as a WCJ, and (3) ordering that Defendant provide back pay to Plaintiff for the period beginning with the first day of Plaintiff's termination through her reinstatement. Plaintiff also requests that the district court retain jurisdiction over this matter in the event that modification of the permanent injunction becomes necessary to further safeguard Plaintiff's constitutional rights and to prevent retaliation.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

---

[3] If the Court finds that permanent injunctive relief is proper based on the success of Plaintiff's procedural due process claim, Plaintiff is willing to abandon her substantive due process claim if it interferes with or bars the Court's entry of a permanent injunction.

I hereby certify that a true copy of the foregoing was served electronically on June 2, 2025, through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Jeffrey D. Vescovi*
Jeffrey D. Vescovi

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SHANON S. RILEY,

     Plaintiff,

v.                                        No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

     Defendant.

## DEFENDANT'S REPLY IN SUPPORT OF EMERGENCY MOTION
## FOR STAY PENDING APPEAL OR CLARIFICATION

Defendant Heather Jordan, in her individual and official capacities, by and through her counsel of record, hereby files her reply in support of her motion for this Court to immediately stay its May 9, 2025, Amended Memorandum Opinion and Order Granting Plaintiff's Motion for Preliminary Injunction (Doc. 26) pending appeal or, alternatively, clarify that Plaintiff may be placed on paid administrative leave while the State Personnel Board considers Defendant's complaint so long as Plaintiff receives adequate pre-deprivation due process. If this Court denies the instant motion, Defendant requests a brief administrative stay so she can request that the Tenth Circuit rule on her pending motion for stay in an emergency manner.

### Introduction

Plaintiff all but admits this Court should not have granted the preliminary injunction when she concedes Defendant can place her on paid administrative leave without providing pre-deprivation due process (and therefore she had no reason to reject Defendant's offer of reinstatement). While Plaintiff still claims the injunction was warranted to preserve the "status

**App. 226**

quo," this argument ignores the "well-settled principle that an injunction must be narrowly tailored to remedy *the harm shown*." *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Oklahoma Tax Comm'n*, 969 F.2d 943, 948 (10th Cir. 1992) (emphasis added). If Defendant can lawfully place Plaintiff on paid administrative leave while she receives the very process she claims was due, then Plaintiff was not entitled to the extraordinary and disfavored injunction requiring otherwise. It's as simple as that. Additionally, Plaintiff will suffer no harm in being placed on paid administrative leave while she obtains the very process she claims was due. Conversely, the State and the public will be irreparably harmed if this Court forces Defendant to reinstate Plaintiff as an active judge while she is being investigated for time fraud—only for her to possibly be subsequently placed back on administrative leave and dismissed depending on the outcome of Defendant's appeal or the State Personnel Board proceedings. The Court should, therefore, grant Defendant's motion to stay.[1]

### Argument & Authorities

I.    **Plaintiff concedes Defendant can place her on paid administrative leave without implicating due process, and therefore, the Court should not have granted the preliminary injunction**

The crux of Plaintiff's lawsuit is that Defendant purportedly violated her due process rights when she terminated Plaintiff for time fraud without going through the procedure laid out in NMSA 1978, § 52-5-2(C) (2004), and 1.7.12.25 NMAC. (Doc. 1) Instead of engaging in protracted litigation over the issue, Defendant tried to reinstate Plaintiff and provide her with paid

---

[1] Plaintiff claims Defendant is currently violating this Court's preliminary injunction. (Doc. 35 at 1-2) This is incorrect. Defendant has reinstated Plaintiff to her position and will pay her while the preliminary injunction is in effect. *See* Plaintiff's Reinstatement Letter attached hereto as Ex. A. Defendant has not yet assigned any cases to Plaintiff given the pending emergency motion, the granting of which will require yet another re-assignment and injure innocent third parties. If this Court denies the instant motion, Defendant will seek emergency relief in the Tenth Circuit. Should that relief be denied, Defendant will promptly begin assigning cases to Plaintiff.

administrative leave while she receives the very due process she claims was due. (Doc. 15 at 8-12) Had Plaintiff accepted, there would have been no need for an extraordinary and disfavored preliminary injunction. But Plaintiff inflicted a self-imposed injury by rejecting these efforts on the basis that she was supposedly entitled to the greater relief of being able to actively adjudicate workers' compensation cases during the pendency of this suit. (Doc. 18) Plaintiff was mistaken.

Had Plaintiff demonstrated that Defendant could not temporarily place Plaintiff on paid administrative leave without first providing pre-deprivation due process, Plaintiff probably would have been entitled to the preliminary injunction she received. But she did not. Nor could she. As Defendant pointed out in her motion: "[s]uspension with pay does not raise due process concerns." *Hicks v. City of Watonga, Okl.*, 942 F.2d 737, 746 n.4 (10th Cir. 1991) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544-45 (1985)); *see also O'Connor v. Pierson*, 426 F.3d 187, 199 (2d Cir. 2005) (noting that "no court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties"); *Ishoo v. Bd. of Regents Univ. of New Mexico*, 2007 WL 9729216, at *15 (D.N.M. Sept. 29, 2007) ("[U]nder Tenth Circuit law, Plaintiff was not entitled to due process protections (i.e. an explanation of the employer's evidence, adequate notice and an opportunity to be heard) prior to being suspended with pay[.]"). By failing to address this point in her response, Plaintiff has conceded the issue.[2] Indeed, Plaintiff admits she "has never made this claim." (Doc. 35 at 10). Accordingly, it is undisputed that Defendant can place Plaintiff on paid administrative leave without providing pre-deprivation due process such as notice or an opportunity to be heard.

---

[2] Plaintiff likewise fails to meaningfully address why Defendant's offer of reinstatement violated her First Amendment rights. (Doc. 18 at 11 n.1) Plaintiff has, therefore, waived any argument that she was entitled to reject the reinstatement on this basis. *See Tryon v. Quick*, 81 F.4th 1110, 1151 n.22 (10th Cir. 2023) (explaining a litigant who makes "a passing reference" but "fails to further expand on [an] argument" has failed to adequately present the issue).

**App. 228**

Despite this, Plaintiff still claims this Court correctly issued a preliminary injunction requiring Defendant to reinstate Plaintiff as an active workers' compensation judge. Specifically, Plaintiff argues (without any authority) this was correct simply because it represented the "status quo" prior to her termination. (Doc. 35 at 10-11) But this does not mean that Plaintiff is, *ipso facto*, entitled to the extraordinary and disfavored preliminary injunction she demanded. This Court may have found that Plaintiff is likely to show that she should not have been *terminated* without more due process, and therefore, Plaintiff would have been entitled to a preliminary injunction reinstating Plaintiff (had Defendant not already provided that remedy). But Plaintiff failed to show that Defendant could not reinstate her and place her on *paid administrative leave* without providing due process, and therefore Plaintiff failed to show that she is entitled to a preliminary injunction preventing this—regardless of whatever she feels the "status quo" was. *See Citizen Band Potawatomi Indian Tribe*, 969 F.2d at 948; *Sugar v. Tackett*, 2021 WL 2531080, at *2 (D.N.M. June 21, 2021) (Riggs, J.) ("Any relief must be narrowly tailored to prevent the specific harm identified." (citing *Citizen Band Potawatomi Indian Tribe*, 969 F.2d at 948)).

Perhaps it is useful to demonstrate the flaw of Plaintiff's logic by showing how it would have applied in another case pending before this Court. In *Springer v. Lujan Grisham*, the plaintiff requested a preliminary injunction against a public health order prohibiting firearms in Albuquerque-area parks and playgrounds. 704 F. Supp. 3d 1206 (D.N.M. 2023). This Court found that the plaintiff was likely to show that the prohibition was unlawful to the extent it applied to parks but unlikely to show that the prohibition was unlawful to the extent it applied to playgrounds. *Id.* Had this Court applied Plaintiff's logic, it would have enjoined the public health order in full because the plaintiff showed a likelihood of success on the merits as to one specific action (i.e., prohibiting firearms in parks), and enjoining the order would have brought the parties back to the

"status quo." But the Court did not do this. Instead, the Court properly only granted the plaintiff's request to the extent he sought to enjoin the parks prohibition, *id.*, because that "relief [was] narrowly tailored to prevent the specific harm identified." *Sugar*, 2021 WL 2531080, at *2. There is no reason the Court should apply a different rule here.

In sum, Plaintiff had no reason to reject Defendant's offer of reinstatement—which mooted the need for a preliminary injunction addressing her purported due process injury—and she failed to show that Defendant could not place her on paid administrative leave while she receives the process she claims she was owed. Accordingly, this Court should not have granted a preliminary injunction awarding more relief, and Defendant has a strong likelihood of succeeding in her appeal. *See Citizen Band Potawatomi Indian Tribe*, 969 F.2d at 948 (stating that it is a "well-settled principle that an injunction must be narrowly tailored to remedy *the harm shown*") (emphasis added); *Sugar*, 2021 WL 2531080, at *2 (Riggs, J.) (same).

## II. The non-merits factors strongly weigh in favor of a stay given the absence of irreparable harm to Plaintiff and the substantial harm to the State and the public

As an initial matter, Plaintiff cannot show any irreparable harm that she will suffer should this Court stay its preliminary injunction. Plaintiff's concession that she has no due process right to avoid being placed on paid administrative leave dooms her argument that she will be irreparably harmed based on a purported constitutional injury. *See Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024). Likewise, her purported reputational injury from temporarily being placed on paid administrative leave is not irreparable. As the Tenth Circuit has observed, "We . . . have embraced the principle that '[a]ny loss of prestige, standing, or reputation that [the plaintiff] may have suffered prior to filing this action can be remedied through money damages and does not justify a preliminary injunction.'" *Hunter v. Hirsig*, 614 Fed. Appx. 960, 963 (10th Cir. 2015)

**App. 230**

(quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1266 (10th Cir.2005)); *see also Sampson v. Murray*, 415 U.S. 61, 89 (1974) (holding that "damage to reputation" is insufficient to constitute irreparable harm). Plaintiff claims she will be able to obtain such damages, and consequently, any purported reputational harm should be reparable. (Doc. 12 at 7) Thus, Plaintiff will not be irreparably injured should the Court grant a stay; the only thing that will happen to Plaintiff is that she will get paid while she receives the very process she claims was due.

In contrast to these minimal or non-existent harms, the State of New Mexico and the public will suffer significant harm absent a stay. This Court itself recognized: "Plaintiff admits that she ultimately submitted a timesheet that did not accurately reflect her time worked and time taken off. That could create in some reasonable mind an assumption that Plaintiff is dishonest." (Doc. 26 at 12) Requiring the State to maintain a judge with an active caseload under a cloud of ethical and legal scrutiny undermines public confidence in the integrity of the judicial process and compromises the fairness of proceedings for injured workers and employers alike.[3] Additionally, forcing the State to re-assign Plaintiff's cases back to her—only for her to potentially be placed back on paid administrative leave and ultimately terminated depending on Defendant's appeal or the State Personnel Board proceedings—will create needless disruption and confusion for parties with active cases. Injured workers and employers rely on consistency and trust in the impartiality

---

[3] Plaintiff tries to downplay her culpability by pointing to her "ample annual and sick leave" that she could have used instead—suggesting she had no motive to falsely use voting leave. (Doc. 35 at 13) This is of no moment. An employee with accrued leave may be just as tempted to falsely use voting leave so he or she can preserve their leave balance for other uses. Defendant also respectfully disagrees with this Court's suggestion that her reaction "seems overblown." (Doc. 26 at 11) The State of New Mexico wishes to maintain the highest standards for those who are entrusted to adjudicate disputes. Plaintiff's conduct fell well below these standards when she falsely certified that her time reported was a "true and accurate" representation of the time worked in the period and took no action to correct that misrepresentation before being confronted nearly a week later.

of their adjudicator; cycling a judge in and out of service amid a misconduct investigation erodes that trust, delays the resolution of claims, and increases the risk of appeals or litigation over the legitimacy of her rulings. Thus, issuing a stay protects both the credibility of the system and the fair administration of justice.

Plaintiff's arguments to the contrary are unavailing. Plaintiff implores the Court to ignore this reality entirely simply because Defendant did not raise it earlier. (Doc. 35 at 5-7, 12 n.2) The Court should reject this resort to technicalities. It is true Defendant could have discussed these issues in response to Plaintiff's request for a preliminary injunction.[4] However, this seemed unnecessary since Defendant had provided Plaintiff with all the relief to which she was possibly entitled and therefore the issue was moot. The Court should exercise its discretion to consider this information at this juncture, especially since refusal to do so will injure innocent third parties (i.e., workers' compensation claimants and employers). *See Archuleta v. Duffy's Inc.*, 471 F.2d 33, 35 (10th Cir. 1973) ("[T]his court is committed to the general proposition that it will not allow technicalities to defeat the proper administration of justice[.]"); *cf. Trimble v. Univ. of Kansas Hosp. Auth.*, 2018 WL 691002, at *2 (D. Kan. Feb. 2, 2018) ("[A] plaintiff should not be penalized because of inaction by the EEOC.").

Plaintiff also attempts to downplay the harm that the State and the public will suffer absent a stay by characterizing it as "speculative." (Doc. 35 at 13) However, there is nothing "speculative" about the harm outlined above, as it necessarily flows from the preliminary injunction. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the state."); *In re Wettach*, 2013 WL 5999167, at *7 (Bankr.

---

[4] It is also true Plaintiff herself could have apprised the Court of these facts given that she has served as a workers' compensation judge and is familiar with the process.

**App. 232**

W.D. Pa. Nov. 12, 2013) ("Each time a factually intense case such as the present one is reassigned to a new judge there is inevitably going to be delay while the new judge becomes acquainted with the case and the issues presented."), *aff'd sub nom.*, 811 F.3d 99 (3d Cir. 2016). This is especially so when the Court did not require Plaintiff to post security pursuant to Fed. R. Civ. P. 65(c). (Doc. 26); *see generally W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 770 n.14 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."); *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011) ("A plaintiff satisfies the irreparable harm requirement by showing a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." (cleaned up)).

Likewise, Plaintiff's mischaracterization of the harm as mere "logistical challenges" (Doc. 35 at 13) ignores the broader injury to the State's sovereignty in having a federal court force it to allow a judge to actively adjudicate cases while she is being investigated for time fraud. *See Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) ("[F]ew interests can be considered more central than a state's interest in regulating its own judicial system."); *cf. Trump v. Wilcox*, 145 S. Ct. 1415 (2025) (granting a stay pending appeal and observing "that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty"). Plaintiff's mischaracterization also ignores the harm to injured employees and their employers who are going through the workers' compensation process: each reassignment will inevitably delay adjudication of their cases as the new judge familiarizes herself with the case and potentially revisits interim orders. *See In re Wettach*, 2013 WL 5999167, at *7; (Doc. 34). It's doubtful an injured worker in need of compensation would characterize this as a

mere "logistical challenge." Rather than impose these unnecessary disruptions on innocent third parties, the Court should issue a stay. *See Trump*, 145 S. Ct. 1415 ("A stay is appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation.").

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court immediately stay its May 9, 2025, Amended Memorandum Opinion and Order Granting Plaintiff's Motion for Preliminary Injunction (Doc. 26) pending appeal or, alternatively, clarify that Plaintiff may be placed on paid administrative leave while the State Personnel Board considers the WCA's complaint so long as Plaintiff receives adequate pre-deprivation due process. If this Court denies the instant motion, Defendant requests a brief administrative stay so she can request that the Tenth Circuit rule on her pending motion for stay in an emergency manner.

Respectfully submitted,

**SERPE | ANDREWS, PLLC**

By */s/ Blade M. Allen*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
***Attorneys for Defendant***

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on this 5th day of June, 2025, I filed the foregoing through this Court's CM/ECF e-filing system and caused a true and correct copy of the same to be served upon all parties of record as reflected more fully in the electronic Notification of Service.

Respectfully submitted,

*/s/ Blade M. Allen*
Blade M. Allen



**State of New Mexico**

# Workers' Compensation Administration

**Michelle Lujan Grisham**
Governor

**Heather Jordan**
Director

June 3, 2025

Shanon Riley                                              Via regular mail & email
5305 Canada Vista Pl NW
Albuquerque, NM 87120
shanonriley35@gmail.com

Dear Ms. Riley:

This letter is to notify you that, effective May 9, 2025, you are reinstated to your position as a Workers' Compensation Judge with the NM Workers' Compensation Administration. This reinstatement is occurring pursuant to the order of Judge Riggs in *Riley v. Jordan*. Your rate of pay will be $94.546746/hour.

Payroll in furtherance of the reinstatement will begin Saturday, June 7, 2025. You may appear at the WCA Albuquerque office for work on June 9, 2025 at 8:00 a.m.

The WCA Human Resource Department advises that new hire paperwork needs to be completed for this reinstatement. Human Resources does not want to assume that all your employee information from your earlier period of employment remains correct. In addition, given you are considered a "Gov-X" employee, Jennifer Vigil in the Governor's office may additionally need paperwork or other information to effectuate the reinstatement. Your cooperation is appreciated as the WCA works through this novel situation.

If there are any questions regarding the reinstatement, please work through Cathy Farrell.

Very truly yours

Heather Jordan
NM WCA Director

Cc:     Elizabeth Harrison, Esq., via email
        Jeffrey D. Vescovi, Esq., via email
        Jessica M. Hernandez, Esq., via email
        Cody Rogers, Esq., via email
        Blade Allen, Esq., via email

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

———————————————

SHANON S. RILEY,

            Plaintiff,

    vs.                                No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN *in her individual
and official capacities as the
Director of the New Mexico Workers'
Compensation Administration*,

            Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR STAY PENDING APPEAL OR CLARIFICATION

THIS MATTER comes before the Court based on Defendant's Emergency Motion for Stay or Clarification and the associated briefing (**doc. 29; doc. 35, doc. 38**). Having considered the parties' briefing and applicable law, finds that Defendant's Motion is not **well taken** and is therefore **DENIED in part**. The Court will **modify its injunction** to allow Defendant to place Plaintiff on paid administrative leave pending the resolution of this litigation.

### BACKGROUND

Plaintiff served as a Workers' Compensation Judge (WCJ) for the New Mexico Worker's Compensation Administration (WCA) from her appointment on August 20, 2011, to her termination on November 13, 2024. **Doc. 2 at 1–2**. This action arises from the events leading to her termination, beginning on November 5, 2024. *Id.*

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. *Id.* **at 2**. While she arrived at the polls, Plaintiff ultimately did not vote because there was a line and because she was sick. *Id.* Plaintiff was aware that she needed to make corrections to her timesheet and intended to make the

1

**App. 237**

corrections. the following morning on November 7, 2024. *Id.* The WCA office was closed on November 7 due to inclement weather, and Plaintiff did not have access to her laptop. *Id.* She alleges that as a result of these events, she "forgot to edit her timesheet." *Id.*

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. *Id.* Defendant fired Plaintiff on November 13, 2024, alleging that she had committed time fraud and had thus violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

Plaintiff filed suit on January 14, 2025, seeking injunctive relief and damages under 42 U.S.C. §1983 for civil rights violations, including being deprived of her property interest in her employment without due process of law. **Doc. 1**. At the time of the initial lawsuit, Defendant had not submitted a complaint about the events to the State Personnel board. **Doc. 7 at 2**. On February 4, 2025, the Workers' Compensation Administration subsequently submitted a complaint to the State Personnel Board, in accordance with Section 52-5-2(C) and New Mexico Administrative Code, 1.7.12.25. *Id.* On March 4, 2025, the Board granted Plaintiff's motion and filed an Order of Dismissal dismissing the WCA's complaint for lack of jurisdiction. **Doc. 14-1**.

Defendant offered Plaintiff a modified form of reinstatement on February 6, 2025. **Doc. 7-2**. The offer involved being reinstated to her former position as a Workers' Compensation Judge and placed on paid administrative leave pending the outcome of the State Personnel Board proceedings and made her an at-will employee, rather than subject to firing only for violations of the judicial code of conduct. *Id.*; **doc. 10 at 2**. Plaintiff rejected the modified offer on February 14, 2025 on the grounds that it varied from her previous employment and violated her First

**App. 238**

Amendment rights.  **Doc. 10-1.**  Defendant gave Plaintiff an updated offer of reinstatement on February 26, 2025, that would still place her on administrative leave until the completion of proceedings but changed the at-will employee language to render Plaintiff able to be fired only in cases of violations of the code of judicial misconduct.  **Doc. 18-1**.  Plaintiff rejected the offer on the grounds that it continued to violate her First Amendment right to freedom of speech and still did not restore the status quo.  **Doc. 18-2**.

This Court issued its Amended Memorandum Opinion and Order Granting Plaintiff's Motion for Preliminary Injunction on May 9, 2025.  **Doc. 26**.  The Court granted Plaintiff's request for a preliminary injunction, finding that Plaintiff had demonstrated a substantial likelihood of success on her procedural due process claim, that she would likely suffer irreparable harm absent the injunction, that Defendant would not suffer injury, and that the injunction was not adverse to the public interest.  ***See generally id.***  The Court ordered that Defendant reinstate "Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits."  ***Id.* at 15**.  Defendant now seeks to have the Court stay its preliminary injunction pending appeal or allow her to place Plaintiff on paid administrative leave.  **Doc. 29**.  The Court considers Defendant's arguments and the associated briefing below.

## LEGAL STANDARD

Courts must consider four factors when deciding whether to stay an order pending appeal: (1) whether the stay applicant has made a strong showing that they are likely to succeed on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The Supreme Court has characterized the standard for a stay pending appeal as requiring

**App. 239**

a "strong showing" that the applicant is likely to succeed on the merits. *Hilton v. Braunskill*, 481 U.S. at 776, 107 S.Ct. 2113 (citations omitted); *accord Nken v. Holder*, 556 U.S. at 434, 129 S.Ct. 1749 (requiring a "strong showing" of likelihood of success).

## ANALYSIS

Defendant argues that she has demonstrated substantial likelihood of success on the merits of her appeal because her actions following the initial controversy have mooted any due process concerns. Likewise, Defendant argues that it is Plaintiff who now deprives herself of due process by not taking advantage of the administrative process to which she allegedly has access. Defendant claims that this, combined with the harms the state will ostensibly suffer, is sufficient for the Court to stay its injunction. For the reasons discussed below, the Court disagrees.

### I.    The Court will not consider Defendant's Declaration in its reconsideration of the preliminary injunction.

Defendant filed a sworn declaration discussing the purported harm she would suffer should the Court maintain its preliminary injunction. **Doc. 34**. Interestingly, Defendant does not cite to it in her Emergency Motion, and only cites to it once in her Reply. ***See* Doc. 29; Doc. 38 at 8**. However, she alludes to the harms discussed in the Declaration several times. The Court thus must decide whether it needs to give weight to this document in its decision.

The Court in its discretion declines to consider Defendant's new evidence in deciding whether to stay the preliminary injunction. Defendant appears to request reconsideration of an interlocutory order by seeking "clarification" about whether the Court would allow Defendant to place Plaintiff on administrative leave, despite the Court's order mandating reinstatement. The Court has discretion to reconsider an interlocutory order, and its discretion is not cabined by the standards which apply to Fed. R. Civ. P. 59 and 60 motions. "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225

**App. 240**

(10th Cir. 2007). Moreover, the Court has discretion to "reconsider" an interlocutory order under Fed. R. Civ. P. 54(b).

The Court has discretion in deciding what standard to apply to reconsideration of an interlocutory order. *Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013) (stating that in considering a motion to reconsider an interlocutory order, the "court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e)"). The Rule 59(e) framework is useful when considering a motion to reconsider an interlocutory order. *Id.*

"Grounds for granting a Rule 59(e) motion include '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)); *see also Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (Rule 59(e) relief is appropriate where "the court has misapprehended the facts, a party's position, or the controlling law."). However, "[Rule 59(e)] 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.' " *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted). Additionally, Rule 59 "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *see also Servants of Paraclete*, 204 F.3d at 1012 (Filing a motion pursuant to Rule 59 is not appropriate "to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").

**App. 241**

Applying these standards in its discretion to this interlocutory order, the Court concludes that Defendant has not explained why she could not have made these arguments or advanced this evidence in her original Response to the Motion for a Preliminary Injunction. The fact that Defendant had reassigned or would be imminently reassigning Plaintiff's caseload, and the subsequent alleged upheaval would have been abundantly clear at the time Plaintiff filed this action. Moreover, in determining whether Defendants have made a strong showing that they are likely to succeed on appeal, Defendant's declaration is irrelevant. Appellate courts generally decide appeals based on the record before the district court at the time it made its decision.

The Court will therefore not consider Defendant Heather Jordan's declaration in its analysis of Defendant's request that the Court reconsider its preliminary injunction.

## II.    __Defendant has not satisfied the factors for a stay of the Court's injunction.__

First, none of the factors required for the Court to stay its injunction counsel towards Defendant. Defendant has demonstrated little possibility of success on appeal, and the harm to Plaintiff and the public interest outweighs any harm to Defendant.

### A.   *Defendant has not demonstrated likelihood of succeeding on appeal.*

First, Defendant has not shown a substantial likelihood of success on appeal because she has not demonstrated the Court erred in its application of the preliminary injunction factors.

The Court largely reincorporates its analysis from its order. **Doc. 26**. The Court found that Plaintiff demonstrated substantial likelihood of success on her procedural due process claim. The Supreme Court has held that "[a]n essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). The Supreme Court has

**App. 242**

emphasized that this "root requirement" is *pretermination* process, meaning "that an individual be given an opportunity for a hearing *before* [they are] deprived of any significant property interest. *Id.* (citing *Boddie v. Connecticut*, 401 U.S. 371, 379(1971) (emphasis in original); *Bell v. Burson*, 402 U.S. 535, 542 (1971)). Pretermination due process is necessary due to the "severity of depriving a person of the means of livelihood. *Loudermill*, 470 U.S. at 543.

The fact remains that Plaintiff received no such process, and Defendant offers no new information to demonstrate otherwise. While Defendant attempted to retroactively rectify the situation by filing a complaint with the Personnel Board after Plaintiff had already been fired, Plaintiff received no notice or opportunity to respond prior to her termination—Defendant walked into Plaintiff's office, inquired about her timesheet, and immediately fired her. *Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services*, 936 F.2d 483, 491 (10th Cir. 1991) ("Where the state action is the dismissal of a tenured public employee, the procedural safeguard required by the Constitution typically includes a pre-termination as well as a post-termination hearing."). Plaintiff was entitled to some form of pretermination process, including notice of the charge and an opportunity to respond. This process, laid out in New Mexico state law, involves filing a complaint with the New Mexico Personnel Board and holding hearing proceedings in which both sides may argue their case. *See Garcia v. City of Albuquerque*, 232 F.3d 760, 770 (10th Cir. 2000) ("Moreover, Garcia was afforded three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing. In the circumstances, Garcia received all of the process that he was due."). Plaintiff received no notice or opportunity to be heard, and Defendant conceded that she did not provide Plaintiff with any form of process prior to her termination. **Doc. 14 at ¶6** (Both parties stipulate that "[p]rior to delivering the termination letter, Defendant did not submit a complaint to the State

**App. 243**

Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any other required procedure under the New Mexico Administrative Code in terminating Plaintiff."). Given her concession and reiteration of old arguments in her new Motion, Defendant has not made the strong showing necessary for a stay. [1]

Defendant is incorrect that Plaintiff has somehow created her harm by failing to take advantage of the post-deprivation offer of pre-deprivation process Defendant claims to have offered her. By the time Defendant offered Plaintiff paid administrative leave, Defendant had already completed a procedural due process violation by failing to provide Plaintiff with notice and the opportunity to be heard before terminating her. *See e.g.*, **Doc. 1 at ¶¶20–21** (detailing how Defendant immediately terminated Plaintiff without notice upon discussing whether Plaintiff had voted). Nothing in Defendant's Motion changes the Court's understanding of the sequence of events. Nor is Plaintiff somehow ignoring or avoiding the administrative process to which she is entitled. The State Personnel Board dismissed Defendant's complaint because it lacked jurisdiction. Defendant filed her Complaint after she had terminated Plaintiff, divesting the Board of jurisdiction because Plaintiff was not a current WCJ. That is a result of Defendant's failure to follow procedure, and Plaintiff cannot be compelled to take part in proceedings where the governing body lacks jurisdiction. Tenth Circuit case law requires *pretermination* process, and the Court can locate no precedent suggesting that *ex post facto* remedies can make up for a lack of pretermination process. *Garcia*, 232 F.3d at 769 (discussing pretermination process); *Nard v. City Of Oklahoma City*, 153 Fed. Appx. 529, 534 (10th Cir. 2005) ("The undisputed facts demonstrate that Defendant Oklahoma City provided Plaintiff with all of the procedure he was due under the

---

[1] Defendant objects to the Court's consideration of Plaintiff's reputational harm in its initial Order. And it is true that reputational harm alone is not sufficient to sustain a preliminary injunction. *Hunter v. Hirsig*, 614 F. App'x 960, 963 (10th Cir. 2015). However, Plaintiff's reputational harm was incidental to her constitutional deprivation. Her reputational harm informs, but does not decide, the Court's analysis.

**App. 244**

Fourteenth Amendment *prior* to *demoting him*." (emphasis added)); *Archuleta*, 936 F.2d at 490 (discussing the pretermination process plaintiff received).

The Court also found that Plaintiff would suffer irreparable injury. The Tenth Circuit collapses the first and second factors in the context of constitutional claims, and a plaintiff who demonstrates a likelihood of success on the merits simultaneously demonstrates irreparable injury. *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 792 (10th Cir. 2019). Because Plaintiff has demonstrated substantial likelihood of success on her procedural due process claim, this alone was sufficient to find the second factor skews in favor of Plaintiff.

The third and fourth factors collapse in a constitutional analysis. Defendant offered in a sworn declaration that an injunction would irreparably harm her and the state. **Doc. 34**. However, those were not the facts before the Court at the time, and as discussed *supra*, a motion to reconsider is not a second bite at the injunctive apple. *See supra* at Section I; *see also Autobar Sys. of N.J. v. Berg Liquor Sys., LLC*, No. CV233790MASJBD, 2024 WL 919183, at *3 (D.N.J. Mar. 4, 2024) (citing *Int'l Brotherhood of Teamsters, Loc. 211 v. PG Publ'g Co.*, 19-1472, 2019 WL 9101872, at *2 (W.D. Pa. Dec. 27, 2019) and *O'Donnell v. Harris County*, 260 F. Supp. 3d 810, 815 (S.D. Tex. 2017)). At the time Plaintiff's Motion was fully briefed, Defendant did not proffer any supposed harm she might suffer if the Court were to grant Plaintiff's Motion. And even if Defendant had originally alleged the additional facts included in her declaration, it is "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple-Fort Collins*, 916 F.3d at 807. Defendant cannot show that the collapsed factors are likely to weigh against her on appeal. She thus cannot make any showing, much less a strong one, that she is substantially likely to succeed on appeal.

9

**App. 245**

### B. There would be no irreparable harm to the state absent a stay.

Defendant argues that the "Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415 (2025). The Supreme Court has held that the "governmental interest in termination does not outweigh [the plaintiff's constitutional right to due process." *Loudermill*, 470 U.S. at 544–45. The fact remains that "a loss of a constitutional right usually trumps any harm to the defendant, even under a heightened standard." *Springer v. Grisham*, 704 F. Supp. 3d 1206, 1221 (D.N.M. 2023); *Free the Nipple-Fort Collins*, 916 F.3d at 806-7 ("When a constitutional right hangs in the balance, though, even a temporary loss usually trumps any harm to the defendant.... (internal quotations and citations omitted)). Certainly, Defendant's alleged harms—disruption of the workplace, reassigning of cases, upheaval should Defendant have to terminate Plaintiff once more—do not override the substantial harm Plaintiff suffered and continues to suffer from Defendant's due process violation. The Court therefore finds that Defendant has not satisfied the second stay factor.

### C. There would be substantial injury to other parties in proceedings were the Court to stay the injunction.

Likewise, there would be substantial injury to Plaintiff if the Court stayed its injunction. Plaintiff continues to be deprived of her property interest to which she has a due process right. *See Springer*, 704 F. Supp. 3d at 1221 ("A loss of a constitutional right usually trumps any harm to the defendant, even under a heightened standard."); *see also Loudermill*, 470 U.S. at 543 ("[T]he significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood."). A loss of a constitutional right trumps harm to Defendant, particularly where Defendant already cannot satisfy any of the other stay factors. The Court therefore finds this factor counsels against a stay as well.

10

*D.  Public interest considerations counsel against a stay.*

Finally, Defendant does not satisfy the public interest factor.  Defendant maintains that the public retains an interest in preserving judicial legitimacy.  *See Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 446 (2015) (Public perception of judicial integrity is "a state interest of the highest order.").  However, it is "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple-Fort Collins*, 916 F.3d at 807.  The Court finds Defendant has not made the requisite "strong showing" to find that this factor counsels towards staying the injunction. *Nken*, 556 U.S. at 434.  The Court therefore will not stay its preliminary injunction.

III.    **The Court will modify its injunction to allow Defendant to place Plaintiff on paid administrative leave pending the resolution of the litigation.**

The Court declines to stay its injunction because Defendant has not satisfied the factors, and Plaintiff still demonstrates substantial likelihood of success on the merits.  However, given the recent language in *Trump v. Wilcox*, it finds that modifying its injunction is "appropriate to avoid the disruptive effects of repeated removal and reinstatement of officers during the pendency of this litigation.  145 S. Ct. 1415 (2025).  Fed. R. Civ. P. 62 allows a district court to "suspend, modify, restore, or grant an injunction" while an appeal is pending.  Defendant therefore may place Plaintiff on paid administrative leave.  Defendant must provide Plaintiff with the adequate pre-deprivation process she is owed. Defendant may not restrict Plaintiff's ability to speak with her colleagues, nor may Defendant modify the conditions of Plaintiff's employment such that she serves at the pleasure of the Governor rather than subject to removal for violations of the Judicial Code of Conduct.

**App. 247**

**CONCLUSION**

IT IS THEREFORE ORDERED THAT:

1.  Defendant's Emergency Motion to Stay (**Doc. 29**) is **DENIED in part;** and

2.  Defendant may place Plaintiff on Paid administrative leave in lieu of full restoration pending the conclusion of this litigation.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

**App. 248**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANON S. RILEY,

     Plaintiff,

v.                                 No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

     Defendant.

## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I AND IV

Defendant Heather Jordan, in her individual and official capacities, by and through her

counsel of record, hereby respectfully submits this Response in Opposition to Plaintiff's Motion

for Partial Summary Judgment as to Counts I and IV (Doc. 36).

## Introduction

Plaintiff came to this Court claiming that she was dismissed without adequate due process.

Plaintiff was mistaken. Regardless, Plaintiff is now receiving the very remedy she requested (and

could have received it much sooner had she not rejected Defendant's efforts to provide her with

the process she demanded at the beginning of this case). The Court should deny Plaintiff's motion

for three reasons. First, Plaintiff's claims for injunctive relief against Defendant in her official

capacity are barred by sovereign immunity because there is no ongoing violation of federal law

now that Plaintiff has been reinstated and will receive the process she wanted. Second, Plaintiff's

procedural due process claims fail on the merits because Defendant provided her with adequate

**App. 249**

pre-deprivation due process and a meaningful post-deprivation remedy is available. Lastly, Plaintiff's claims against Defendant in her individual capacity are barred by qualified immunity.

<u>**Response to Plaintiff's Statement of Undisputed Material Facts**</u>

1.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 1.

2.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 2.

3.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 3.

4.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 4.

5.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 5.

6.     Defendant does not dispute that Plaintiff did not vote and did not edit her timesheet to reflect that she did not vote. Defendant disputes Plaintiff's explanation for why she did not vote, which has yet to be finally determined. *See generally* Declaration of Heather Jordan, attached as Exhibit A. However, this fact is not material for purposes of the instant motion.

7.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 7.

8.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 8.

9.      Defendant does not dispute that Plaintiff eventually admitted she did not vote. Defendant does not recall whether Plaintiff explained that "she simply forgot to edit her timesheet." *See* Exhibit A at ¶ 11. However, Defendant does not dispute this for purposes of this motion.

10.     Defendant does not dispute that she handed Plaintiff a letter terminating her employment immediately. However, Defendant disputes Plaintiff's recollection of the meeting to the extent it differs from hers. *See* Exhibit A at ¶ 11.

11.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 11.

12.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 12 to the extent it is referring to procedures associated with the New Mexico Administrative Code. Defendant disputes that she did not provide Plaintiff with a "hearing" in the general sense of the word. Exhibit A at ¶ 11.

### Defendant's Statement of Additional Undisputed Material Facts

1.      Plaintiff "certified" that the time sheet she submitted showing that she took voting leave was "true and accurate." Exhibit A at ¶ 6.

2.      Plaintiff never amended her time sheet to remove the two hours of voting leave. Exhibit A at ¶ 7.

3.      New Mexico State Personnel Office Interpretive Memorandum 2024-001 (the "Memorandum"), which interprets the State Personnel Board rules and the New Mexico Administrative Code provisions governing the granting of administrative leave for voting, provides that "[e]mployees who are registered voters may absent themselves from work for two hours for the purpose of voting[.]" Exhibit A at ¶ 8.

4.    The Memorandum further states that "[u]se of administrative leave for voting may be audited. Employees who abuse administrative leave for voting may be disciplined, up to and including dismissal." Exhibit A at ¶ 9.

5.    On November 12, 2024, Defendant Heather Jordan, Director of the WCA, was informed that a review of public records showed that Plaintiff did not vote in the November 5, 2024, election. Exhibit A at ¶ 10.

6.    On November 13, 2024, WCA general counsel Michael Holt and Defendant met with Plaintiff and asked her if she voted on Election Day. Plaintiff initially responded that she left Election Day at 3 p.m. to vote. Defendant then asked Plaintiff if she could provide any proof of voting. Plaintiff asked if video footage from the voting location would work. Defendant responded that Plaintiff would have to provide proof from the County Clerk's office. Plaintiff then asked what would happen if she could not show such proof. Defendant informed her that she would be dismissed if she could not provide proof from the County Clerk's office. Plaintiff thought for a second and then told Defendant to go ahead and give her the termination letter. Defendant then handed her the letter, they ended the meeting, and walked her to the exit door without further discussion or questions. *Id.* at ¶ 11; (Doc. 36 at 2 ¶¶ 8-10)

7.    The meeting with Plaintiff lasted approximately fifteen to twenty minutes. Exhibit A at ¶ 13.

8.    On November 20, 2024, Plaintiff filed a notice of appeal of termination with the State Personnel Board regarding her dismissal from the WCA. (Doc. 1 at 6 ¶ 32)

9.    On November 25, 2024, the State Personnel Board issued an order of dismissal. The order stated, "[t]his forum is not aware of a complaint to the Board, which was filed against

the Appellant." As no complaint had been filed, the appeal was dismissed for lack of jurisdiction. (Doc. 1 at 6 ¶ 33)

13.     Plaintiff did not ask Defendant or anyone at the WCA if they would submit a complaint so the State Personnel Board would have jurisdiction prior to filing the instant action. Exhibit A at ¶ 14.

10.     On January 14, 2025, Plaintiff filed the instant action. (Doc. 1)

11.     On February 4, 2025, the WCA submitted a complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board. Exhibit A at ¶ 15.

12.     On February 6, 2025, the WCA offered to reinstate Plaintiff and place her on paid administrative leave pending the outcome of the State Personnel Board proceedings. The offer contained "governor exempt" language typically contained in similar forms that provided: "as an at-will exempt employee, you will serve at the pleasure of the Office of the Governor."  It also specified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while [she is] on paid administrative leave." *Id.* at ¶ 16.

13.     On February 14, 2025, Plaintiff rejected Defendant's offer of reinstatement, asserting that it varied substantively from her original employment and that its restrictions on communication violated her First Amendment rights. (Doc. 10-1; Doc. 10-2)

14.     On February 17, 2025, Plaintiff filed a motion to dismiss with the State Personnel Board, requesting that the WCA complaint be dismissed because she is no longer an employee since she rejected the offer of reinstatement. (Doc. 10 at 5 n.2)

14.     On February 26, 2025, the WCA sent Plaintiff an updated offer of reinstatement. The updated offer of reinstatement was substantively identical to the first except that the "at-will"

language was replaced with: "As a Workers Compensation Judge, and pursuant to NMSA 1978, Section 52-5-2(C), you are subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900." The updated offer of reinstatement also clarified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while you are on paid administrative leave regarding matters related to your employment or the State Personnel Board investigation." Exhibit A at ¶ 17; (Doc. 15 at 8-12)

15.     On March 4, 2025, the State Personnel Board granted Plaintiff's motion to dismiss on the basis that she is no longer a WCA judge and therefore the Board lacked jurisdiction. (Doc. 14-1)

16.     On March 4, 2025, Plaintiff rejected the updated offer of reinstatement. (Doc. 18-1)

17.     On May 9, 2025, the Court granted Plaintiff's request for a preliminary injunction ordering Defendant to reinstate Plaintiff as a workers' compensation judge (Doc. 26)

18.     Defendant subsequently reinstated Plaintiff per the Court's preliminary injunction. Exhibit A at ¶ 18; (Doc. 38-1)

19.     On June 20, 2025, the WCA re-submitted its complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board to initiate the process set out in 1.7.12.25 NMAC. Exhibit A at ¶ 20.

20.     Defendant will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until further order of the court or conclusion of the State Personnel Board complaint process. *Id.* at ¶ 21.

**App. 254**

<u>**Argument & Authorities**</u>

**I.    Standard of review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (cleaned up). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* (cleaned up). The court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999).

**II.    Count IV is moot and barred by sovereign immunity**

As an initial matter, Plaintiff's claim for injunctive relief against Defendant in her official capacity in Count IV is moot and barred by sovereign immunity. Generally, a suit against a state official in her official capacity is treated as one against the state itself and barred by sovereign immunity. *See Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024). Such a suit can proceed only if it "seeks prospective relief for an ongoing violation of federal law." *Id.* (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). The analysis for determining whether this exception applies "overlaps to a significant degree with the analysis of whether the request for injunctive relief has become moot, thereby depriving the plaintiff standing to obtain injunctive relief." *Stanley v. Gallegos*, 2018 WL 3801247, at *6 (D.N.M. Aug. 9, 2018). "The requirement of standing means that a 'plaintiff cannot maintain a[n] injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future.'" *Id.* (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991)). "Put another way, because '[t]he purpose of an injunction is

**App. 255**

to prevent future violations[,]' Plaintiff must show that 'there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. . . . To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.'" *Id.* (quoting *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997)).

Plaintiff can no longer point to any future harm stemming from her complaint that requires injunctive relief. The crux of Plaintiff's suit is that she was purportedly deprived of due process when Defendant terminated her without going through the State Personnel Board hearing process set out in 1.7.12.25 NMAC. (Doc. 1 at 6-12) To this end, Plaintiff requested an injunction "restor[ing] Plaintiff to her position" and "ensur[ing] compliance with constitutional due process requirements." (Doc. 1 at 12)[1] Both of these things have happened: Plaintiff has been reinstated, and she has been given the opportunity to go through the State Personnel Board process since as early as February 4, 2025. *See* Defendant's Statement of Additional Undisputed Material Facts ("Def. UMF") ¶¶ 18-19 Further, will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until the conclusion of the State Personnel Board complaint process. *Id.* ¶ 20.

Given the foregoing, Plaintiff cannot show that "there exists some cognizable danger of recurrent violation" that requires injunctive relief, *Roe*, 124 F.3d at 1230, and the Court should grant summary judgment in Defendant's favor for Counts III and IV of the Complaint. *See Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 886 (10th Cir. 2019) (finding procedural due process claim moot when the defendant affirmed he would provide procedural protections going

---

[1] Plaintiff now additionally requests an injunction "ordering that Defendant provide backpay to Plaintiff" and requiring compliance with state "statutory[] and administrative requirements." (Doc. 36 at 14) However, as explained below, these are clearly barred by sovereign immunity.

forward); *Romero v. Kaiser*, 2023 WL 2351652, at *2 (N.D. Cal. Mar. 3, 2023) (finding procedural due process claim moot after government provided plaintiff with the hearing that he sought in his claim); *Veal v. Jones*, 349 Fed. Appx. 270, 272 (10th Cir. 2009) (finding procedural due process claim moot when plaintiff received the remedy requested); *Park v. City of San Antonio*, 2006 WL 2519503, at *11 (W.D. Tex. Aug. 16, 2006) ("[W]hile the City did violate Plaintiff's procedural due process rights under the Fourteenth Amendment, it has now corrected the problem. Accordingly, the Court finds that a permanent injunction on this issue is unnecessary."); *Ginorio v. Contreras*, 409 F. Supp. 2d 101, 108 (D.P.R. 2006) (observing that the provision of the requested hearing mooted any need for a preliminary injunction); *cf. Wessel v. City of Albuquerque*, 299 F.3d 1186, 1194 (10th Cir. 2002) (holding that plaintiffs failed to show need for permanent injunction when the government defendant issued a corrected notice and committed itself to include the required information in future notices); *see generally Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1118 (10th Cir. 2010) ("[A]lthough governmental defendants might take action as a direct response to litigation, at any rate, self-correction again provides a secure foundation for mootness so long as it seems genuine." (cleaned up)).

## III.    Count I is barred by qualified immunity

Plaintiff's claim against Defendant in her individual capacity for backpay and damages in Count I is barred by qualified immunity.[2] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[2] Plaintiff cannot seek any other relief against Defendant in her individual capacity. *See Brown v. Montoya*, 662 F.3 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991)).

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (cleaned up). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (cleaned up). "When a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (cleaned up). As explained below, Plaintiff fails to meet both prongs of the qualified immunity analysis.[3]

"The Tenth Circuit requires a two-step inquiry in determining whether an individual's procedural due process rights were violated." *Riley v. Jordan*, 2025 WL 1375005, at *4 (D.N.M. May 9, 2025) "First, the Court asks whether the individual possesses a protected property or liberty interest to which due process is applicable." *Id.* (citation omitted) "If the party does possess such an interest, the court then asks if the individual was afforded the appropriate level of process." *Id.* (citation omitted). While the Supreme Court has observed that an employee must ordinarily be provided with "notice and opportunity for hearing appropriate to the nature of the case," it has clarified that "[t]he pretermination hearing . . . need not be elaborate." *Cleveland Bd. of Educ. v.*

---

[3] Plaintiff's failure to meet the first prong of the qualified immunity analysis also necessarily defeats any official capacity claim against Defendant. *See Barrow v. Kansas State Univ.*, 2023 WL 10101935, at *5 (10th Cir. Oct. 25, 2023) (explaining that both an official-capacity claim under *Ex Parte Young* and an individual capacity claim requires the plaintiff to prove a violation of her procedural due process rights).

*Loudermill*, 470 U.S. 532, 542, 545 (1985). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* (cleaned up).

Here, Plaintiff claims Defendant violated her procedural due process rights when Defendant terminated her without first going through the State Personnel Board hearing process set out in 1.7.12.25 NMAC. (Doc. 1) However, it is undisputed that, at a minimum: (1) Defendant met with Plaintiff and asked her if she voted; (2) Plaintiff eventually admitted she did not vote and had the opportunity to explain that she allegedly simply forgot to edit her timesheet; (3) Defendant handed Plaintiff a letter informing her that actions constituted a violation of the code of judicial conduct and grounds for her termination; (4) Plaintiff did not ask any further questions or request an opportunity to talk more at that time; (5) Plaintiff has had the opportunity to go through the State Personnel Board hearing process since February 4, 2025—which will provide robust procedural due process protections. *See* UMF ¶¶ 8-11; Def. UMF ¶ 11-13, 15-17. The foregoing constituted sufficient due process under *Loudermill*, as Plaintiff received notice and an opportunity to be heard. *See West v. Grand Cnty.*, 967 F.2d 362, 368 (10th Cir. 1992) ("A brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of *Loudermill*." (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989)).

The Tenth Circuit decision in *Powell*, is particularly instructive. There, a fire department chief heard that a firefighter (and union member) had met with officials from neighboring cities' fire departments and requested that they not respond to any calls for mutual aid until a labor dispute was resolved. 891 F.2d at 1455. Shortly after learning this, he met with the firefighter and asked if he had met with the officials from the neighboring cities' fire departments and asked them to not

**App. 259**

provide mutual aid. *Id.* When the firefighter responded in the affirmative, the chief "informed [him] that he was discharged, effective immediately." *Id.* After eventually being reinstated, the firefighter filed a § 1983 action claiming his due process rights were violated. *Id.* at 1456. However, the Tenth Circuit concluded the pretermination procedure accorded with *Loudermill* because the firefighter "received oral notice of the charge against him when [the chief] confronted him face-to-face" and the firefighter "had an opportunity to rebut that charge but chose instead to admit to it." *Powell*, 891 F.2d at 1459. Notably, the Court rejected the firefighter's argument that he was not afforded an opportunity to "explain his side of the story" because "once [he] admitted to asking the other Fire Chiefs not to sign the proposed agreement, an opportunity for further explanation would not have contributed to the prevention of an erroneous termination." *Id.* Given the availability of more a robust post-deprivation hearing, the Court concluded "that the manner in which defendants discharged [the firefighter] did not violate his rights under *Loudermill*." *Powell*, 891 F.2d at 1462.[4]

The instant situation is nearly identical to *Powell*. Like the firefighter in that case, Plaintiff "received oral notice of the charge[s] against [her]" (i.e., falsely certifying that she properly took voting leave) when Defendant "confronted [her] face-to-face." *Powell*, 891 F.2d at 1459. And, just like the firefighter, Plaintiff "had an opportunity to rebut that charge but chose instead to admit to it." *Id.* While Plaintiff may have desired an opportunity to elaborate her side of the story beyond her initial excuse, "an opportunity for further explanation would not have contributed to the

---

[4] While the Court indicated it reached this conclusion because the firefighter failed to meet his burden to demonstrate a violation of a clearly established right, the Tenth Circuit has since indicated this conclusion applies equally to the first element of the qualified immunity analysis. *See Riggins v. Goodman*, 572 F.3d 1101, 1109 (10th Cir. 2009) (observing that the *Powell* Court "concluded the pretermination process 'accorded with the requirements established in *Loudermill*' when an employee was terminated during a meeting after he was asked and admitted to having had unauthorized communications").

prevention of an erroneous termination" because she admitted to the basic facts constituting the misconduct. *Id.* Like the firefighter in *Powell*, Plaintiff has been given the opportunity to receive post-deprivation due process by going through a robust State Personnel Board hearing process set out in 1.7.12.25 NMAC—which includes, *inter alia*, the right to present evidence and call/cross examine witnesses before a neutral hearing officer.[5] (Doc. 7 at 4-5) Accordingly, "the manner in which [Defendant] discharged [Plaintiff] did not violate [her] rights under *Loudermill*." *Powell*, 891 F.2d at 1462.

Even assuming Defendant did not provide Plaintiff with adequate pre-deprivation due process, the availability of meaningful post-deprivation due process defeats her claim. When a deprivation of property is caused by "'a random, unauthorized act by a state employee, rather than by an established state procedure,' . . . . due process is satisfied so long as 'a meaningful post[-]deprivation remedy for the loss is available.'" *Requena v. Roberts*, 893 F.3d 1195, 1212 (10th Cir. 2018) (quoting *Hudson v. Palmer*, 468 U.S. 517, 532-33 (1984)). While Defendant may have authorized Plaintiff's termination, this decision was not made pursuant to an established state procedure. *See Stengel v. New Mexico Corr. Dept.*, 640 Fed. Appx. 701, 704 (10th Cir. 2016) (applying *Hudson* even when the alleged unconstitutional action was authorized by a deputy warden). Indeed, Plaintiff claims Defendant acted in violation of state law. (Doc. 1 ¶¶ 26-27) Accordingly, Plaintiff cannot state a procedural due process claim unless she can show that there

---

[5] That Defendant did not initiate this process before dismissing Plaintiff is of no moment. Even assuming Plaintiff is correct that New Mexico law required this, "a breach of state procedural requirements is not, in and of itself, a violation of the Due Process Clause." *Atencio v. Bd. of Educ. of Penasco Indep. Sch. Dist. No. 4*, 658 F.2d 774, 779 (10th Cir. 1981). Further, this process is now available to Plaintiff, so it is proper for the Court to consider it in determining whether Plaintiff' due process rights have been violated. *See Winters v. Bd. of Cnty. Com'rs*, 4 F.3d 848, 856 (10th Cir. 1993) ("The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures." (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).

is no meaningful post-deprivation remedy for her loss. *See Requena*, 893 F.3d at 1212-13 ("[Plaintiff] has alleged the donation of his television was in violation of, rather than according to, established procedure. Therefore, he must plead facts showing that his state post-deprivation remedy was inadequate." (cleaned up)); *see also Moore v. Bd. of Cty. Comm'rs of Cty. of Leavenworth*, 507 F.3d 1257, 1260 (10th Cir. 2007) (concluding that a defendant's conduct was "random and unauthorized" when the "Plaintiffs contend[ed] that [the defendant] intentionally violated Department policy by driving so fast to [an] emergency call").

Here, there is at least one meaningful post-deprivation remedy available to Plaintiff. Defendant has provided Plaintiff with the opportunity to go through the State Personnel Board procedure set out in 1.7.12.25 NMAC since early February.[6] Plaintiff does not allege that this process cannot provide her with a meaningful post-deprivation remedy. (Doc. 1; Doc. 36) Indeed, Plaintiff's continued refusal to go through this process compels this Court to reject any argument that it would be inadequate. *See McGee v. Boren*, 58 Fed. Appx. 436, 438 (10th Cir. 2003) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)); *see also Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.1984) (holding plaintiff's failure to avail self of post-deprivation hearings resulted in waiver of due process claim). Nor has Plaintiff alleged that there are no other post-deprivation measures under state law that can provide a meaningful post-deprivation remedy, such as an action for mandamus.

---

[6] Admittedly, this process was not immediately available to Plaintiff because Defendant did not submit a complaint to the State Personnel Board. However, Plaintiff never asked Defendant to submit a complaint before filing the instant action. *See* Def. UMF ¶ 13. Regardless, Defendant made this process available beginning February 4, 2025. (Doc. 8-1) Plaintiff has neither alleged nor argued that the delay in providing her with the opportunity to go through this process violated her due process rights. (Doc. 1; Doc. 36).

**App. 262**

*See generally* Complaint; *Rumford Pharmacy, Inc. v. City of E. Providence*, 970 F.2d 996, 999 (1st Cir. 1992) (dismissal appropriate where appellant claimed unreasonable delay amounted to procedural due process violation but failed to allege that state remedies were insufficient (citing *Zinermon*, 494 U.S. at 126)); *Sherwood v. Marchiori*, 76 F.4th 688, 696 (7th Cir. 2023) ("We have often cited mandamus as an adequate post-deprivation remedy available under state law."). Given the foregoing, Plaintiff's procedural due process claim fails. *See Requena*, 893 F.3d at 1212.

Even supposing Plaintiff could show that Defendant violated her procedural due process rights, she cannot show that Defendant violated a *clearly established* right. For starters, it is unclear whether New Mexico law created a protected property interest in Plaintiff's continued employment under the current circumstances. "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Loudermill*, 470 U.S. at 538 (cleaned up). "A public employee has a property interest in his continued employment where state or local law creates a sufficient expectancy of continued employment." *McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) (cleaned up). "Detailed procedures in a state statute or regulation are not, by themselves, sufficient to create a property interest." *Greene*, 174 F.3d at 1140.

Here, the statute that Plaintiff relies on provides: "Workers' compensation judges shall not be subject to the provisions of the Personnel Act[.]" § 52-5-2(B), indicating they are not entitled to the protections provided by that law. True, the statute also provides an exception to this general exception by referring generally to Subsection C, which provides in relevant part:

> A workers' compensation judge shall be required to conform to all canons of the code of judicial conduct as adopted by the supreme court, except canon 21-900 of that code. Violation of those canons shall be exclusive grounds for dismissal prior to the expiration of his term. Any complaints against a workers' compensation judge shall be filed with the state personnel board, which shall report its findings to the director.

**App. 263**

Section 52-5-2(C). However, nothing in this provision clearly requires a hearing before the director can dismiss a workers' compensation judge—especially when the grounds for the dismissal arise from an internal and undisputed issue upon which the director (and ultimate decisionmaker) already has firsthand knowledge, as opposed to a complaint stemming from the workers compensation adjudication process. *Cf. State ex rel. Duran v. Anaya*, 1985-NMSC-044, ¶¶ 10-11, 102 N.M. 609, 698 P.2d 882 (holding that board members did not have a protected property interest entitled them to notice and hearing prior to removal despite statute providing that they may only be removed "for the neglect of any duty required by law, for incompetence or for improper or unethical conduct" because the statute did not expressly require this and they were exempted from the Personnel Act). Under these circumstances, Plaintiff cannot demonstrate that Defendant deprived her of a *clearly* established property interest. *See Derda v. City of Brighton, Colo.*, 53 F.3d 1162, 1166 (10th Cir.1995) (reversing the denial of a motion for summary judgment on qualified immunity when "[i]t is at least unclear whether [the state statute] is intended to confer on employees an interest in continued employment").

Plaintiff likewise cannot show that Defendant clearly failed to provide her with sufficient due process. Defendant indisputably provided Plaintiff with pre-deprivation notice and an opportunity to be heard. While the meeting was relatively short, Plaintiff presents no on point decision from the Supreme Court or the Tenth Circuit showing that it was constitutionally inadequate—other than general statements of law, which are insufficient. (Doc. 36 at 7-8); *see Powell*, 891 F.2d at 1457 ("The plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." (cleaned up)). On the flipside, Defendants have cited binding Tenth Circuit caselaw showing that it is permissible to terminate an employee after a brief face-to-face meeting when the employee admits the facts forming the basis

**App. 264**

for the termination. *See Powell*, 891 F.2d 1454. Plaintiff has also failed to cite any on point Supreme Court or Tenth Circuit case showing that the delay in initiating the State Personnel Board process violated a clearly established due process right. *See Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 402 (10th Cir. 2016) (setting out factors for determining whether delay in providing post-deprivation hearing violated due process and observing that "the balancing of these factors is fact intensive, and a rule of law determined by a balancing of interests is inevitably difficult to clearly anticipate" (cleaned up)). Accordingly, Defendant is entitled to qualified immunity.

**IV.    Proper remedy**

Should this Court determine Plaintiff is entitled to injunctive relief, it should not blindly grant Plaintiff's requested relief. Plaintiff requests a permanent injunction:

> (1) fully reinstating Plaintiff to her position, (2) ordering Defendant's continued compliance with constitutional, statutory, and administrative requirements for the duration of Plaintiff's five-year term of employment as a WCJ, and (3) ordering that Defendant provide back pay to Plaintiff for the period beginning with the first day of Plaintiff's termination through her reinstatement.

(Doc. 36 at 14) However, the proper injunctive remedy in this case (if Defendant had not already provided it) is to simply require Defendant to provide Plaintiff with adequate due process before deciding whether to terminate her—not fully reinstate her and allow her to evade any accountability for her actions. *See Brady v. Gebbie*, 859 F.2d 1543, 1551 (9th Cir. 1988) ("[T]he Supreme Court ha[s] repeatedly held that the appropriate remedy for deprivation of a liberty and/or property interest without due process is to order the process that was due and any attendant damages which directly resulted from the failure to give the proper procedure."); *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 616 (6th Cir. 2006) (vacating injunction and ordering hearing to remedy due process violation), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022); *see generally Citizen Band Potawatomi Indian Tribe of*

**App. 265**

*Oklahoma v. Oklahoma Tax Comm'n*, 969 F.2d 943, 948 (10th Cir. 1992) (stating that it is a "well-settled principle that an injunction must be narrowly tailored to remedy the harm shown."); *Brewer v. Chauvin*, 938 F.2d 860, 863 (8th Cir. 1991) (en banc) ("The constitutional injury plaintiff has shown in this case is not the loss of his job, but rather his termination without procedural due process." (cleaned up)). Additionally, the Eleventh Amendment clearly prohibits Plaintiff's request for an injunction ordering backpay. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004) (affirming state's Eleventh Amendment immunity from claim for backpay). The same goes for Plaintiff's request for an injunction requiring compliance with state "statutory[] and administrative requirements." *See Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) ("[T]he Eleventh Amendment bars suits brought in federal court seeking to enjoin a state official from violating state law"). Accordingly, even if the Court finds in Plaintiff's favor, it should only order that Defendant provide Plaintiff with adequate due process before deciding whether to terminate her—which is already being done (and hence unnecessary).

<u>**Conclusion**</u>

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Motion for Partial Summary Judgment as to Counts I and IV (Doc. 36).

Respectfully submitted,

**SERPE | ANDREWS, PLLC**

By *<u>/s/ Blade M. Allen</u>*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
***Attorneys for Defendant***

**App. 266**

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on this 20h day of June, 2025, I filed the foregoing through this Court's CM/ECF e-filing system and caused a true and correct copy of the same to be served upon all parties of record as reflected more fully in the electronic Notification of Service.

       Respectfully submitted,

       */s/ Blade M. Allen*
       Blade M. Allen

**App. 267**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SHANON S. RILEY,

     Plaintiff,

v.                                                        No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

     Defendant.


**<u>DECLARATION OF HEATHER JORDAN</u>**

     I, Heather Jordan, declare under penalty of perjury that the foregoing is true and correct:

     1.     I am the current Director of the New Mexico Workers' Compensation Administration ("WCA").

     2.     I am over eighteen years of age.

     3.     I am competent to testify to the statements set forth in this affidavit and make same on my personal knowledge.

     4.     Plaintiff Shanon S. Riley served as a workers' compensation judge for the WCA.

     5.     On November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting.

     6.     Plaintiff subsequently "certified" that the time sheet she submitted, which included the voting leave, was "true and accurate."

     7.     Plaintiff never amended her time sheet to remove the two hours of voting leave.

1

**App. 268**

8.      New Mexico State Personnel Office Interpretive Memorandum 2024-001 (the "Memorandum"), which interprets the State Personnel Board rules and the New Mexico Administrative Code provisions governing the granting of administrative leave for voting, provides that "[e]mployees who are registered voters may absent themselves from work for two hours for the purpose of voting[.]"

9.      The Memorandum further states that "[u]se of administrative leave for voting may be audited. Employees who abuse administrative leave for voting may be disciplined, up to and including dismissal."

10.     On November 12, 2024, I was informed that a review of public records showed that Plaintiff did not vote in the November 5, 2024, election.

11.     On November 13, 2024, WCA general counsel Michael Holt and I met with Plaintiff and asked her if she voted on Election Day. Plaintiff initially responded that she left Election Day at 3 p.m. to vote. I then asked Plaintiff if she could provide any proof of voting. Plaintiff asked if video footage from the voting location would work. I responded that Plaintiff would have to provide proof from the County Clerk's office. Plaintiff then asked what would happen if she could not show such proof. I informed her that she would be dismissed if she could not provide proof from the County Clerk's office. Plaintiff thought for a second and then told me to go ahead and give her the termination letter. I then handed her the letter, we ended the meeting, and we walked her to the exit door without further discussion or questions.

12.     The letter stated that Plaintiff "entered two (2) hours of Voting leave for purposes of voting" into her timesheet but "did not vote." The letter also stated: "Such conduct is a violation of the code of judicial conduct, which requires [Plaintiff] to promote integrity and to 'avoid impropriety and the appearance of impropriety.'"

2

**App. 269**

13.     The meeting with Plaintiff lasted approximately fifteen to twenty minutes.

14.     Plaintiff did not ask me or anyone at the WCA if we would submit a complaint so the State Personnel Board would have jurisdiction prior to filing the instant federal lawsuit.

15.     On February 4, 2025, the WCA filed a complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board. The State Personnel Board dismissed the complaint due to lack of jurisdiction on March 4, 2025, as Plaintiff was no longer employed by the WCA.

16.     On February 6, 2025, the WCA offered to reinstate Plaintiff and place her on paid administrative leave pending the outcome of the State Personnel Board proceedings. The offer contained "governor exempt" language typically contained in similar forms that provided: "as an at-will exempt employee, you will serve at the pleasure of the Office of the Governor."  It also specified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while [she is] on paid administrative leave."

17.     On February 26, 2025, the WCA sent Plaintiff an updated offer of reinstatement. The updated offer of reinstatement was substantively identical to the first except that the "at-will" language was replaced with: "As a Workers Compensation Judge, and pursuant to NMSA 1978, Section 52-5-2(C), you are subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900." The updated offer of reinstatement also clarified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while you are on paid administrative leave regarding matters related to your employment or the State Personnel Board investigation."

18.     Following the Court's May 9, 2025, preliminary injunction (Doc. 26), the WCA reinstated Plaintiff.

3

**App. 270**

19.     Following the Court's June 16, 2025, order (Doc. 42) partially granting Defendant's motion to clarify that the Court's preliminary injunction, the WCA placed Plaintiff on paid administrative leave.

20.     On June 20, 2025, the WCA submitted an amended complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board to initiate the process set out in 1.7.12.25 NMAC.

21.     I will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until further order of the court or conclusion of the State Personnel Board complaint process.

Executed on June 20, 2025.

Heather Jordan, WCA Director

**App. 271**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANON S. RILEY,

      Plaintiff,

v.                                       No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

      Defendant.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Heather Jordan, in her individual and official capacities, by and through her counsel of record, hereby moves for this Court to grant summary judgment in her favor on each of Plaintiff's claims pursuant to Fed. R. Civ. P. 56.

### Introduction

Plaintiff came to this Court claiming that she was dismissed without adequate due process. Plaintiff was mistaken. Regardless, Plaintiff is now receiving the very remedy she requested (and could have received it much sooner had she not rejected Defendant's efforts to provide her with the process she demanded at the beginning of this case). The Court should grant summary judgment in Defendant's favor for three reasons. First, Plaintiff's claims for injunctive relief against Defendant in her official capacity are barred by sovereign immunity because there is no ongoing violation of federal law now that Plaintiff has been reinstated and will receive the process she wanted. Second, Plaintiff's procedural and substantive due process claims fail on the merits because Defendant provided her with adequate pre-deprivation due process, a meaningful post-

**App. 272**

deprivation remedy is available, and Defendant's decision to terminate Plaintiff for time fraud does not shock the judicial conscious. Lastly, Plaintiff's claims for damages are barred by qualified immunity.

### Statement of Undisputed Material Facts

1.      Plaintiff Shanon S. Riley served as a workers' compensation judge for the Workers' Compensation Administration ("WCA"). (Doc. 36 at 1 ¶ 1)

2.      As a workers' compensation judge, Plaintiff was "required to conform to all canons of the code of judicial conduct as adopted by the [New Mexico] supreme court, except canon 21-900 of that code." NMSA 1978 § 52-5-2(C) (2004).

3.      Section 52-5-2(C) further provides: "Violation of those canons shall be exclusive grounds for dismissal prior to the expiration of his term. Any complaints against a workers' compensation judge shall be filed with the state personnel board, which shall report its findings to the director."

4.      On November 5, 2024, Plaintiff took two hours of voting leave to vote in the November 5, 2024, election. *Id.* at 2 ¶ 5.

5.      Plaintiff did not, in fact, vote on November 5, 2024. *Id.*

6.      Plaintiff did not edit her timesheet to reflect that she did not vote. *Id.*

7.      Plaintiff "certified" that the time sheet she submitted was "true and accurate." *See* Declaration of Heather Jordan, attached as Exhibit A at ¶ 6.

8.      Plaintiff never amended her time sheet to remove the two hours of voting leave. Exhibit A at ¶ 7.

9.      New Mexico State Personnel Office Interpretive Memorandum 2024-001 (the "Memorandum"), which interprets the State Personnel Board rules and the New Mexico

Administrative Code provisions governing the granting of administrative leave for voting, provides that "[e]mployees who are registered voters may absent themselves from work for two hours for the purpose of voting[.]" Exhibit A at ¶ 8.

10. The Memorandum further states that "[u]se of administrative leave for voting may be audited. Employees who abuse administrative leave for voting may be disciplined, up to and including dismissal." *Id.* at ¶ 9.

11. On November 12, 2024, Defendant Heather Jordan, Director of the WCA, was informed that a review of public records showed that Plaintiff did not vote in the November 5, 2024, election. *Id.* at ¶ 10.

12. On November 13, 2024, WCA general counsel Michael Holt and Defendant met with Plaintiff and asked her if she voted on Election Day. Plaintiff initially responded that she left Election Day at 3 p.m. to vote. Defendant then asked Plaintiff if she could provide any proof of voting. Plaintiff asked if video footage from the voting location would work. Defendant responded that Plaintiff would have to provide proof from the County Clerk's office. Plaintiff then asked what would happen if she could not show such proof. Defendant informed her that she would be dismissed if she could not provide proof from the County Clerk's office. Plaintiff thought for a second and then told Defendant to go ahead and give her the termination letter. Defendant then handed her the letter, they ended the meeting, and walked her to the exit door without further discussion or questions. *Id.* at ¶ 11; (Doc. 36 at 2 ¶¶ 8-10)

13. The letter stated that Plaintiff "entered two (2) hours of Voting leave for purposes of voting" into her timesheet but "did not vote." The letter also stated: "Such conduct is a violation of the code of judicial conduct, which requires [Plaintiff] to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" Exhibit A at ¶ 12; (Doc. 36 at 2 ¶ 11)

14.    The meeting with Plaintiff lasted approximately fifteen to twenty minutes. Exhibit A at ¶ 13.

15.    Prior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board. (Doc. 36 at 2-3 ¶ 12)

16.    On November 20, 2024, Plaintiff filed a notice of appeal of termination with the State Personnel Board regarding her dismissal from the WCA. (Doc. 1 at 6 ¶ 32)

17.    On November 25, 2024, the State Personnel Board issued an order of dismissal. The order stated, "[t]his forum is not aware of a complaint to the Board, which was filed against the Appellant." As no complaint had been filed, the appeal was dismissed for lack of jurisdiction. (Doc. 1 at 6 ¶ 33)

18.    Plaintiff did not ask Defendant or anyone at the WCA if they would submit a complaint so the State Personnel Board would have jurisdiction prior to filing the instant action. Exhibit A at ¶ 14.

19.    On January 14, 2025, Plaintiff filed the instant action. (Doc. 1)

20.    On February 4, 2025, the WCA submitted a complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board. Exhibit A at ¶ 15.

21.    On February 6, 2025, the WCA offered to reinstate Plaintiff and place her on paid administrative leave pending the outcome of the State Personnel Board proceedings. The offer contained "governor exempt" language typically contained in similar forms that provided: "as an at-will exempt employee, you will serve at the pleasure of the Office of the Governor."  It also specified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while [she is] on paid administrative leave."  Exhibit A at ¶ 16.

**App. 275**

22.     On February 14, 2025, Plaintiff rejected Defendant's offer of reinstatement, asserting that it varied substantively from her original employment and that its restrictions on communication violated her First Amendment rights. (Doc. 10-1; Doc. 10-2)

23.     On February 17, 2025, Plaintiff filed a motion to dismiss with the State Personnel Board, requesting that the WCA complaint be dismissed because she is no longer an employee since she rejected the offer of reinstatement. (Doc. 10 at 5 n.2)

24.     On February 26, 2025, the WCA sent Plaintiff an updated offer of reinstatement. The updated offer of reinstatement was substantively identical to the first except that the erroneous "at-will" language was replaced with: "As a Workers Compensation Judge, and pursuant to NMSA 1978, Section 52-5-2(C), you are subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900." The updated offer of reinstatement also clarified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while you are on paid administrative leave regarding matters related to your employment or the State Personnel Board investigation." Exhibit A at ¶ 17; (Doc. 15 at 8-12)

25.     On March 4, 2025, the State Personnel Board granted Plaintiff's motion to dismiss on the basis that she is no longer a WCA judge and therefore the Board lacked jurisdiction. (Doc. 14-1)

26.     On March 4, 2025, Plaintiff rejected the updated offer of reinstatement. (Doc. 18-1)

27.     On May 9, 2025, the Court granted Plaintiff's request for a preliminary injunction ordering Defendant to reinstate Plaintiff as a workers' compensation judge. (Doc. 26)

28.    Defendant subsequently reinstated Plaintiff per the Court's preliminary injunction. Exhibit A at ¶ 18; (Doc. 38-1)

29.    On June 20, 2025, the WCA re-submitted its complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board to initiate the process set out in 1.7.12.25 NMAC. Exhibit A at ¶ 20.

30.    Defendant will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until further order of the court or conclusion of the State Personnel Board complaint process. *Id.* at ¶ 21.

**Argument & Authorities**

## I.    Standard of review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (cleaned up). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* (cleaned up). In contrast to a typical motion for summary judgment, which places the initial burden on the moving party, a motion based on a claim of qualified immunity imposes that burden on the plaintiff." *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1218 (10th Cir. 2006). The same goes for motions for summary judgment based on sovereign immunity. *See Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016) (observing that, to survive a motion for summary judgment, it is plaintiff's burden to assert factual allegations that plausibly suggest that the government has waived sovereign immunity with respect to her claims).

## II.    Plaintiff's claims for injunctive relief are moot and barred by sovereign immunity

As an initial matter, Plaintiff's claims for preliminary and permanent injunctive relief against Defendant in her official capacity in Counts III and IV are moot and barred by sovereign immunity. Generally, a suit against a state official in her official capacity is treated as one against the state itself and barred by sovereign immunity. *See Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024). Such a suit can proceed only if it "seeks prospective relief for an ongoing violation of federal law." *Id.* (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). The analysis for determining whether this exception applies "overlaps to a significant degree with the analysis of whether the request for injunctive relief has become moot, thereby depriving the plaintiff standing to obtain injunctive relief." *Stanley v. Gallegos*, 2018 WL 3801247, at *6 (D.N.M. Aug. 9, 2018). "The requirement of standing means that a 'plaintiff cannot maintain a[n] injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future.'" *Id.* (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991)). "Put another way, because '[t]he purpose of an injunction is to prevent future violations[,]' Plaintiff must show that 'there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. . . . To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.'" *Id.* (quoting *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997)).

Plaintiff can no longer point to any future harm stemming from her complaint that requires injunctive relief. The crux of Plaintiff's suit is that she was purportedly deprived of due process when Defendant terminated her without going through the State Personnel Board hearing process set out in 1.7.12.25 NMAC. (Doc. 1 at 6-12) To this end, Plaintiff requested an injunction

"restor[ing] Plaintiff to her position" and "ensur[ing] compliance with constitutional due process requirements." (Doc. 1 at 12) Both of these things have happened: Plaintiff has been reinstated, and she has been given the opportunity to go through the State Personnel Board process since as early as February 4, 2025. *See* UMF ¶¶ 20-29. Further, Defendant will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until further order of the court or conclusion of the State Personnel Board complaint process. *Id.* ¶ 30.

Given the foregoing, Plaintiff cannot show that "there exists some cognizable danger of recurrent violation" that requires injunctive relief, *Roe*, 124 F.3d at 1230, and the Court should grant summary judgment in Defendant's favor for Counts III and IV of the Complaint. *See Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 886 (10th Cir. 2019) (finding procedural due process claim moot when the defendant affirmed he would provide procedural protections going forward); *Romero v. Kaiser*, 2023 WL 2351652, at *2 (N.D. Cal. Mar. 3, 2023) (finding procedural due process claim moot after government provided plaintiff with the hearing that he sought in his claim); *Veal v. Jones*, 349 Fed. Appx. 270, 272 (10th Cir. 2009) (finding procedural due process claim moot when plaintiff received the remedy requested); *Park v. City of San Antonio*, 2006 WL 2519503, at *11 (W.D. Tex. Aug. 16, 2006) ("[W]hile the City did violate Plaintiff's procedural due process rights under the Fourteenth Amendment, it has now corrected the problem. Accordingly, the Court finds that a permanent injunction on this issue is unnecessary."); *Ginorio v. Contreras*, 409 F. Supp. 2d 101, 108 (D.P.R. 2006) (observing that the provision of the requested hearing mooted any need for a preliminary injunction); *cf. Wessel v. City of Albuquerque*, 299 F.3d 1186, 1194 (10th Cir. 2002) (holding that plaintiffs failed to show need for permanent injunction when the government defendant issued a corrected notice and committed itself to include the

required information in future notices); *see generally Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1118 (10th Cir. 2010) ("[A]lthough governmental defendants might take action as a direct response to litigation, at any rate, self-correction again provides a secure foundation for mootness so long as it seems genuine." (cleaned up)).

## III.    Plaintiff's claims for damages are barred by qualified immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (cleaned up). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (cleaned up). "When a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (cleaned up). As explained below, Plaintiff fails to meet both prongs of the qualified immunity analysis.[1]

---

[1] Plaintiff's failure to meet the first prong of the qualified immunity analysis also necessarily defeats any official capacity claim against Defendant. *See Barrow v. Kansas State Univ.*, 2023 WL 10101935, at *5 (10th Cir. Oct. 25, 2023) (explaining that both an official-capacity claim under *Ex Parte Young* and an individual capacity claim requires the plaintiff to prove a violation of her procedural due process rights).

A.    **Procedural Due Process**

"The Tenth Circuit requires a two-step inquiry in determining whether an individual's procedural due process rights were violated." *Riley v. Jordan*, 2025 WL 1375005, at *4 (D.N.M. May 9, 2025) "First, the Court asks whether the individual possesses a protected property or liberty interest to which due process is applicable." *Id.* (citation omitted) "If the party does possess such an interest, the court then asks if the individual was afforded the appropriate level of process." *Id.* (citation omitted). While the Supreme Court has observed that an employee must ordinarily be provided with "notice and opportunity for hearing appropriate to the nature of the case," it has clarified that "[t]he pretermination hearing . . . need not be elaborate." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 545 (1985). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* (cleaned up).

1.    **Defendant did not violate Plaintiff's procedural due process**

Here, Plaintiff claims Defendant violated her procedural due process rights when Defendant terminated her without first going through the State Personnel Board hearing process set out in 1.7.12.25 NMAC. (Doc. 1) However, it is undisputed that, at a minimum: (1) Defendant met with Plaintiff and asked her if she voted; (2) Plaintiff eventually admitted she did not vote and had the opportunity to explain that she allegedly simply forgot to edit her timesheet; (3) Defendant handed Plaintiff a letter informing her that actions constituted a violation of the code of judicial conduct and grounds for her termination; (4) Plaintiff did not ask any further questions or request an opportunity to talk more at that time; (5) Plaintiff has had the opportunity to go through the State Personnel Board hearing process since February 4, 2025—which will provide robust procedural due process protections. *See* UMF ¶¶ 12-14, 20. The foregoing constituted sufficient

due process under *Loudermill*, as Plaintiff received notice and an opportunity to be heard. *See West v. Grand Cnty.*, 967 F.2d 362, 368 (10th Cir. 1992) ("A brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of *Loudermill*." (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989)).

The Tenth Circuit decision in *Powell*, is particularly instructive. There, a fire department chief heard that a firefighter (and union member) had met with officials from neighboring cities' fire departments and requested that they not respond to any calls for mutual aid until a labor dispute was resolved. 891 F.2d at 1455. Shortly after learning this, he met with the firefighter and asked if he had met with the officials from the neighboring cities' fire departments and asked them to not provide mutual aid. *Id.* When the firefighter responded in the affirmative, the chief "informed [him] that he was discharged, effective immediately." *Id.* After eventually being reinstated, the firefighter filed a § 1983 action claiming his due process rights were violated. *Id.* at 1456. However, the Tenth Circuit concluded the pretermination procedure accorded with *Loudermill* because the firefighter "received oral notice of the charge against him when [the chief] confronted him face-to-face" and the firefighter "had an opportunity to rebut that charge but chose instead to admit to it." *Powell*, 891 F.2d at 1459. Notably, the Court rejected the firefighter's argument that he was not afforded an opportunity to "explain his side of the story" because "once [he] admitted to asking the other Fire Chiefs not to sign the proposed agreement, an opportunity for further explanation would not have contributed to the prevention of an erroneous termination." *Id.* Given the availability of more a robust post-deprivation hearing, the Court concluded "that the manner

**App. 282**

in which defendants discharged [the firefighter] did not violate his rights under *Loudermill*."

*Powell*, 891 F.2d at 1462.[2]

The instant situation is nearly identical to *Powell*. Like the firefighter in that case, Plaintiff "received oral notice of the charge[s] against [her]" (i.e., falsely certifying that she properly took voting leave) when Defendant "confronted [her] face-to-face." *Powell*, 891 F.2d at 1459. And, just like the firefighter, Plaintiff "had an opportunity to rebut that charge but chose instead to admit to it." *Id.* While Plaintiff may have desired an opportunity to elaborate her side of the story beyond her initial excuse, "an opportunity for further explanation would not have contributed to the prevention of an erroneous termination" because she admitted to the basic facts constituting the misconduct. *Id.* Like the firefighter in *Powell*, Plaintiff has been given the opportunity to receive post-deprivation due process by going through a robust State Personnel Board hearing process set out in 1.7.12.25 NMAC—which includes, *inter alia*, the right to present evidence and call/cross examine witnesses before a neutral hearing officer.[3] (Doc. 7 at 4-5) Accordingly, "the manner in

---

[2] While the Court indicated it reached this conclusion because the firefighter failed to meet his burden to demonstrate a violation of a clearly established right, the Tenth Circuit has since indicated this conclusion applies equally to the first element of the qualified immunity analysis. *See Riggins v. Goodman*, 572 F.3d 1101, 1109 (10th Cir. 2009) (observing that the *Powell* Court "concluded that the pretermination process 'accorded with the requirements established in *Loudermill*' when an employee was terminated during a meeting after he was asked and admitted to having had unauthorized communications").

[3] That Defendant did not initiate this process before dismissing Plaintiff is of no moment. Even assuming Plaintiff is correct that New Mexico law required this, "a breach of state procedural requirements is not, in and of itself, a violation of the Due Process Clause." *Atencio v. Bd. of Educ. of Penasco Indep. Sch. Dist. No. 4*, 658 F.2d 774, 779 (10th Cir. 1981). Further, this process is now available to Plaintiff, so it is proper for the Court to consider it in determining whether Plaintiff' due process rights have been violated. *See Winters v. Bd. of Cnty. Com'rs*, 4 F.3d 848, 856 (10th Cir. 1993) ("The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures." (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).

which [Defendant] discharged [Plaintiff] did not violate [her] rights under *Loudermill*." *Powell*, 891 F.2d at 1462.

Even assuming Defendant did not provide Plaintiff with adequate pre-deprivation due process, the availability of meaningful post-deprivation due process defeats her claim. When a deprivation of property is caused by "'a random, unauthorized act by a state employee, rather than by an established state procedure,' . . . . due process is satisfied so long as 'a meaningful post[-]deprivation remedy for the loss is available.'" *Requena v. Roberts*, 893 F.3d 1195, 1212 (10th Cir. 2018) (quoting *Hudson v. Palmer*, 468 U.S. 517, 532-33 (1984)). While Defendant may have authorized Plaintiff's termination, this decision was not made pursuant to an established state procedure. *See Stengel v. New Mexico Corr. Dept.*, 640 Fed. Appx. 701, 704 (10th Cir. 2016) (applying *Hudson* even when the alleged unconstitutional action was authorized by a deputy warden). Indeed, Plaintiff claims Defendant acted in violation of state law. (Doc. 1 ¶¶ 26-27) Accordingly, Plaintiff cannot state a procedural due process claim unless she can show that there is no meaningful post-deprivation remedy for her loss. *See Requena*, 893 F.3d at 1212-13 ("[Plaintiff] has alleged the donation of his television was in violation of, rather than according to, established procedure. Therefore, he must plead facts showing that his state post-deprivation remedy was inadequate." (cleaned up)); *see also Moore v. Bd. of Cty. Comm'rs of Cty. of Leavenworth*, 507 F.3d 1257, 1260 (10th Cir. 2007) (concluding that a defendant's conduct was "random and unauthorized" when the "Plaintiffs contend[ed] that [the defendant] intentionally violated Department policy by driving so fast to [an] emergency call").

Here, there is at least one meaningful post-deprivation remedy available to Plaintiff. Defendant has provided Plaintiff with the opportunity to go through the State Personnel Board

procedure set out in 1.7.12.25 NMAC since early February.[4] Plaintiff does not allege that this process cannot provide her with a meaningful post-deprivation remedy. (Doc. 1; Doc. 36) Indeed, Plaintiff's continued refusal to go through this process compels this Court to reject any argument that it would be inadequate. *See McGee v. Boren*, 58 Fed. Appx. 436, 438 (10th Cir. 2003) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)); *see also Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.1984) (holding plaintiff's failure to avail self of post-deprivation hearings resulted in waiver of due process claim). Nor has Plaintiff alleged that there are no other post-deprivation measures under state law that can provide a meaningful post-deprivation remedy, such as an action for mandamus. *See generally* Complaint; *Rumford Pharmacy, Inc. v. City of E. Providence*, 970 F.2d 996, 999 (1st Cir. 1992) (dismissal appropriate where appellant claimed unreasonable delay amounted to procedural due process violation but failed to allege that state remedies were insufficient (citing *Zinermon*, 494 U.S. at 126)); *Sherwood v. Marchiori*, 76 F.4th 688, 696 (7th Cir. 2023) ("We have often cited mandamus as an adequate post-deprivation remedy available under state law."). Given the foregoing, Plaintiff's procedural due process claim fails. *See Requena*, 893 F.3d at 1212.

### 2.    Defendant did not violate a clearly established right

Even supposing Plaintiff could show that Defendant violated her procedural due process rights, she cannot show that Defendant violated a *clearly established* right.  For starters, it is

---

[4] Admittedly, this process was not immediately available to Plaintiff because Defendant did not submit a complaint to the State Personnel Board. However, Plaintiff never asked Defendant to submit a complaint before filing the instant action. *See* UMF ¶ 18. Regardless, Defendant made this process available beginning February 4, 2025. (Doc. 8-1) Plaintiff has neither alleged nor argued that the delay in providing her with the opportunity to go through this process violated her due process rights. (Doc. 1; Doc. 36).

**App. 285**

unclear whether New Mexico law created a protected property interest in Plaintiff's continued employment under the current circumstances. "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Loudermill*, 470 U.S. at 538 (cleaned up). "A public employee has a property interest in his continued employment where state or local law creates a sufficient expectancy of continued employment." *McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) (cleaned up). "Detailed procedures in a state statute or regulation are not, by themselves, sufficient to create a property interest." *Greene*, 174 F.3d at 1140.

Here, the statute that Plaintiff relies on provides: "Workers' compensation judges shall not be subject to the provisions of the Personnel Act[.]" § 52-5-2(B), indicating they are not entitled to the protections provided by that law. True, the statute also provides an exception to this general exception by referring generally to Subsection C, which provides in relevant part:

> A workers' compensation judge shall be required to conform to all canons of the code of judicial conduct as adopted by the supreme court, except canon 21-900 of that code. Violation of those canons shall be exclusive grounds for dismissal prior to the expiration of his term. Any complaints against a workers' compensation judge shall be filed with the state personnel board, which shall report its findings to the director.

Section 52-5-2(C). However, nothing in this provision clearly requires a hearing before the director can dismiss a workers' compensation judge—especially when the grounds for the dismissal arise from an internal and undisputed issue upon which the director (and ultimate decisionmaker) already has firsthand knowledge, as opposed to a complaint stemming from the workers compensation adjudication process. *Cf. State ex rel. Duran v. Anaya*, 1985-NMSC-044, ¶¶ 10-11, 102 N.M. 609, 698 P.2d 882 (holding that board members did not have a protected property interest entitled them to notice and hearing prior to removal despite statute providing that they may only be removed "for the neglect of any duty required by law, for incompetence or for improper or

unethical conduct" because the statute did not expressly require this and they were exempted from the Personnel Act). Under these circumstances, Plaintiff cannot demonstrate that Defendant deprived her of a *clearly* established property interest. *See Derda v. City of Brighton, Colo.*, 53 F.3d 1162, 1166 (10th Cir.1995) (reversing the denial of a motion for summary judgment on qualified immunity when "[i]t is at least unclear whether [the state statute] is intended to confer on employees an interest in continued employment").

Plaintiff likewise cannot show that Defendant clearly failed to provide her with sufficient due process. Defendant indisputably provided Plaintiff with pre-deprivation notice and an opportunity to be heard. While the meeting was relatively short, Plaintiff presents no on point decision from the Supreme Court or the Tenth Circuit showing that it was constitutionally inadequate—other than general statements of law, which are insufficient. (Doc. 36 at 7-8); *see Powell*, 891 F.2d at 1457 ("The plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." (cleaned up)). On the flipside, Defendants have cited binding Tenth Circuit caselaw showing that it is permissible to terminate an employee after a brief face-to-face meeting when the employee admits the facts forming the basis for the termination. *See Powell*, 891 F.2d 1454. Plaintiff has also failed to cite any on point Supreme Court or Tenth Circuit case showing that the delay in initiating the State Personnel Board process violated a clearly established due process right. *See Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 402 (10th Cir. 2016) (setting out factors for determining whether delay in providing post-deprivation hearing violated due process and observing that "the balancing of these factors is fact intensive, and a rule of law determined by a balancing of interests is inevitably difficult to clearly anticipate" (cleaned up)). Accordingly, Defendant is entitled to qualified immunity.

### B.    Substantive Due Process

Plaintiff's substantive due process claim is likewise barred by qualified immunity. "[S]ubstantive due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis . . . [the] Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Riley v. Jordan*, 2025 WL 1375005, at \*5 (D.N.M. May 9, 2025) (quoting *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998)). "The standard for judging substantive due process violations is whether the challenged government action would 'shock the conscience of federal judges.'" *Id.* (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)).

Here, Plaintiff claims Defendant's decision to terminate Plaintiff for falsely certifying that she properly took voting leave and failing to correct this misrepresentation violated her substantive due process rights. *See* Complaint at 8-9. However, as this Court observed, "Defendant did not act with a 'a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" *Id.* (quoting *Uhlrig*, 64 F.3d at 574). "Defendant's reasoning for firing Plaintiff was not arbitrary—a possible violation of the Code of Judicial Conduct is a serious charge." *Riley*, 2025 WL 1375005, at \*6. The decision to terminate Plaintiff for falsely certifying that she properly took voting leave and failing to correct this misrepresentation "does not surmount the high standard of being completely arbitrary or conscience-shocking." *Id.* Additionally, this Court noted:

> [T]he decision to terminate Plaintiff is rationally related to the interests laid out in the Code of Judicial Conduct. The Code of Conduct is meant to prevent conduct that reflects adversely on the judge's honesty, Rule 21-003(K), NMRA, or create in reasonable minds conduct that would impugn a judge's credibility or honestly. Rule 21-003(B), NMRA. Plaintiff admits that she ultimately submitted a timesheet that did not accurately reflect her time worked and time taken off. That could create in some reasonable mind an assumption that Plaintiff is dishonest. Terminating her is thus rationally related to the interest of preventing impropriety.

*Riley*, 2025 WL 1375005, at *6. Accordingly, Plaintiff cannot show that a constitutional violation occurred, and Defendant is entitled to qualified immunity as a result. *See Quinn*, 780 F.3d at 1004.

Even assuming Plaintiff could show that Defendant violated her substantive due process, Plaintiff could not show that such a right was "clearly established." As this Court noted, "It is not clear whether a property interest in continued employment is protected by substantive due process." *Riley*, 2025 WL 1375005, at *5 (citing *Ishoo v. Bd. of Regents Univ. of New Mexico*, 2007 WL 9729216, at *15 (D.N.M. Sept. 29, 2007)). It follows that Plaintiff cannot point to any on point decision from the Supreme Court or Tenth Circuit showing that Defendant's decision to terminate her violated her substantive due process rights. *See Ullery*, 949 F.3d at 1291. Either way one cuts it, Plaintiff's substantive due process claim is barred by qualified immunity.

## Conclusion

For the foregoing reasons, Defendant respectfully requests that this Court grant summary judgment in her favor on each of Plaintiff's claims pursuant to Fed. R. Civ. P. 56.

Respectfully submitted,

**SERPE | ANDREWS, PLLC**

By */s/ Blade M. Allen*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
***Attorneys for Defendant***

**App. 289**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of June, 2025, I filed the foregoing through this Court's CM/ECF e-filing system and caused a true and correct copy of the same to be served upon all parties of record as reflected more fully in the electronic Notification of Service.

Respectfully submitted,

*/s/ Blade M. Allen*
Blade M. Allen

**App. 290**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SHANON S. RILEY,

      Plaintiff,

v.                                      No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

      Defendant.

**DECLARATION OF HEATHER JORDAN**

I, Heather Jordan, declare under penalty of perjury that the foregoing is true and correct:

1.      I am the current Director of the New Mexico Workers' Compensation Administration ("WCA").

2.      I am over eighteen years of age.

3.      I am competent to testify to the statements set forth in this affidavit and make same on my personal knowledge.

4.      Plaintiff Shanon S. Riley served as a workers' compensation judge for the WCA.

5.      On November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting.

6.      Plaintiff subsequently "certified" that the time sheet she submitted, which included the voting leave, was "true and accurate."

7.      Plaintiff never amended her time sheet to remove the two hours of voting leave.

1

8.    New Mexico State Personnel Office Interpretive Memorandum 2024-001 (the "Memorandum"), which interprets the State Personnel Board rules and the New Mexico Administrative Code provisions governing the granting of administrative leave for voting, provides that "[e]mployees who are registered voters may absent themselves from work for two hours for the purpose of voting[.]"

9.    The Memorandum further states that "[u]se of administrative leave for voting may be audited. Employees who abuse administrative leave for voting may be disciplined, up to and including dismissal."

10.    On November 12, 2024, I was informed that a review of public records showed that Plaintiff did not vote in the November 5, 2024, election.

11.    On November 13, 2024, WCA general counsel Michael Holt and I met with Plaintiff and asked her if she voted on Election Day. Plaintiff initially responded that she left Election Day at 3 p.m. to vote. I then asked Plaintiff if she could provide any proof of voting. Plaintiff asked if video footage from the voting location would work. I responded that Plaintiff would have to provide proof from the County Clerk's office. Plaintiff then asked what would happen if she could not show such proof. I informed her that she would be dismissed if she could not provide proof from the County Clerk's office. Plaintiff thought for a second and then told me to go ahead and give her the termination letter. I then handed her the letter, we ended the meeting, and we walked her to the exit door without further discussion or questions.

12.    The letter stated that Plaintiff "entered two (2) hours of Voting leave for purposes of voting" into her timesheet but "did not vote." The letter also stated: "Such conduct is a violation of the code of judicial conduct, which requires [Plaintiff] to promote integrity and to 'avoid impropriety and the appearance of impropriety.'"

2

**App. 292**

13.     The meeting with Plaintiff lasted approximately fifteen to twenty minutes.

14.     Plaintiff did not ask me or anyone at the WCA if we would submit a complaint so the State Personnel Board would have jurisdiction prior to filing the instant federal lawsuit.

15.     On February 4, 2025, the WCA filed a complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board. The State Personnel Board dismissed the complaint due to lack of jurisdiction on March 4, 2025, as Plaintiff was no longer employed by the WCA.

16.     On February 6, 2025, the WCA offered to reinstate Plaintiff and place her on paid administrative leave pending the outcome of the State Personnel Board proceedings. The offer contained "governor exempt" language typically contained in similar forms that provided: "as an at-will exempt employee, you will serve at the pleasure of the Office of the Governor." It also specified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while [she is] on paid administrative leave."

17.     On February 26, 2025, the WCA sent Plaintiff an updated offer of reinstatement. The updated offer of reinstatement was substantively identical to the first except that the "at-will" language was replaced with: "As a Workers Compensation Judge, and pursuant to NMSA 1978, Section 52-5-2(C), you are subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900." The updated offer of reinstatement also clarified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while you are on paid administrative leave regarding matters related to your employment or the State Personnel Board investigation."

18.     Following the Court's May 9, 2025, preliminary injunction (Doc. 26), the WCA reinstated Plaintiff.

**App. 293**

19.    Following the Court's June 16, 2025, order (Doc. 42) partially granting Defendant's motion to clarify that the Court's preliminary injunction, the WCA placed Plaintiff on paid administrative leave.

20.    On June 20, 2025, the WCA submitted an amended complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board to initiate the process set out in 1.7.12.25 NMAC.

21.    I will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until further order of the court or conclusion of the State Personnel Board complaint process.


Executed on June 20, 2025.

Heather Jordan, WCA Director

4

**App. 294**